UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CARLTON THEODORE LANDIS (24449-056), ) ) ) | |
| Plaintiff, ) | |
| ) | No. 20 C 50168 |
| v. ) | |
| ) | Judge Pallmeyer |
| WARDEN RIVERS, ASSOCIATE WARDEN DOERER, and CAPTAIN KIRBY, ) ) ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS LOCAL RULE 56.1 STATEMENT OF FACTS

## EXHIBIT A
## DECLARATION OF JACOB DOERER

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Monica V. Mallory
    MONICA V. MALLORY
    Assistant United States Attorney
    327 South Church Street
    Rockford, Illinois 61101
    (815) 987-4444
    monica.mallory@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

CARLTON THEODORE LANDIS (24449-056), )
                               )

                Plaintiff, )

v. )

WARDEN RIVERS, ASSOCIATE )
WARDEN DOERER, and CAPTAIN )
KIRBY, )

                Defendants. )

CASE NO. 20 C 50168

Judge Pallmeyer

## DECLARATION OF JACOB DOERER

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, the undersigned, Jacob Doerer, hereby make the following declaration, under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746:

1.    I have been employed by the United States Department of Justice, Federal Bureau of Prisons, since January of 2008. I am currently an Associate Warden at the United States Penitentiary in Thomson, Illinois. I have held this position since September of 2019. I have held multiple other positions with the BOP prior to my arrival at USP Thomson. From January of 2008 until November 2009, I was a correctional officer at the Federal Correctional Complex in Florence, Colorado. From November of 2009 until April 2014, I was a case manager at FCC Florence. From April 2014 until March of 2016, I was the case management coordinator at the Federal Correctional Institution in Greenville, Illinois. From March of 2016 until March of 2018, I was the complex case management coordinator at the Federal Correctional Complex in Terre Haute, Indiana. From March 2018 until August 0f 2019, I was an associate warden at the Federal Correctional Institution in Berlin, New Hampshire.

2.    The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP (including BOP program statements), my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. I have access to SENTRY, the BOP's computer system that tracks and stores information and records. All documents attached hereto are true and correct copies of files and records maintained by the BOP.

3.     In my roles as a case manager, unit manager, case management coordinator, and associate warden, I have learned about the BOP's administrative remedy and admission and orientation programs as I have worked with those programs and helped implement them in the institutions where I have worked.

4.     The BOP's A&O program is governed by Program Statement 5290.14, Admission and Orientation Program. Each inmate who is committed or transferred to a BOP institution will participate in the A&O program, unless the inmate is pretrial or in holdover status.[1]  A copy of P.S. 5290.14 is attached hereto as Attachment 1.  An inmate designated at and transferred to multiple BOP institutions over the course of a sentence would participate in the A&O program at each designated institution.

5.     The A&O program consists of two components – an institution component and a unit component.  The institution component provides inmates with general information regarding institution wide regulations.  The unit component provides unit specific information from the inmate's assigned unit team staff.

6.     The institution component is generally accomplished in a large group format with multiple inmates.  Multiple staff members, primarily at the department head level, present information relative to their department at that institution (i.e. Safety, Education, Health Services, etc.).  One required portion of the institution component is to describe the BOP's administrative remedy program.

7.     The unit component is generally accomplished in an individual or small group setting within the housing unit.  It is generally more informal, with each member of the unit team presenting an overview of his or her role and the unit procedures.  One required portion of the unit component is to describe the BOP's administrative remedy program.

8.     An inmate typically cannot be given a work assignment (job) at an institution until they have completed the A&O program.  Staff at some facilities will clearly note in the portion of SENTRY that tracks work assignments when an inmate has completed the A&O program.

9.     SENTRY shows that Carlton Theodore Landis, Register Number 24449-056, completed A&O at Petersburg Medium on January 8, 2004, and May 6, 2014; at Atlanta Penitentiary on August 22, 2006; at FCI Bennettsville on June 4, 2009; at Pollock Medium on October 26, 2009; at Marion Penitentiary on September 15, 2011; at Yazoo Penitentiary on March 31, 2016; and at Allenwood Penitentiary on May 3, 2017.  See SENTRY print-out "INMATE HISTORY WRK DETAIL," attached hereto as Attachment 2.

---

[1] An inmate in "holdover" status will temporarily stay at a BOP facility while en route to a permanent designation at a different BOP facility.

10.    The USP Thomson A&O handbook contains an explanation of the BOP administrative remedy program at pages 44-45.  See Admissions and Orientation Handbook (August 2017 version), attached hereto as Attachment 3.

11.    The USP Thomson Special Management Unit (SMU) Inmate A&O handbook contains an explanation of the BOP administrative remedy program at pages 53-55.  See USP Thomson Special Management Unit (SMU) Inmate A&O Handbook (January 2019 version), attached hereto as Attachment 4.

12.    The inmates at the United States Penitentiary at Thomson, Illinois who are assigned to the Special Management Unit (SMU), do not attend large group format admission and orientation program sessions.  Instead SMU designated inmates receive the Special Management Unit (SMU) Inmate A&O handbook and an MP3 player that contains an audio version of the A&O handbook.

13.    According to my review of the official files and records of the BOP, Landis acknowledged receiving a copy of a Bureau of Prisons "Admissions and Orientation Booklet" on July 31, 2019.  See Landis Intake Acknowledgement Form, attached hereto as Attachment 5.

14.    Landis also acknowledged that he received an MP3 player on August 2, 2019.  See Landis MP3 Acknowledgement Form, attached hereto as Attachment 6.

15.    The BOP's administrative remedy process is generally the same at every BOP facility.  There may be some local variation in terms of how to obtain or submit a form or how to conduct an initial informal resolution.  But the formal process is the same at every facility in terms of following the rules, time limits, and forms established by Program Statement 1330.18, Administrative Remedy Program, attached hereto as Attachment 7.

16.    If an inmate submits an informal resolution form (BP-8) to a staff member and does not get a response, that inmate is still required by Program Statement 1330.18 to file a formal BP-9 with the warden within 20 days of the incident giving rise to the complaint.

Executed this 14 day of September, 2020.

Jacob Doerer
Associate Warden
Federal Bureau of Prisons
USP Thomson

# DECLARATION OF JACOB DOERER
## ATTACHMENT 1
## PROGRAM STATEMENT 5290.14
## ADMISSION AND ORIENTATION PROGRAM



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD
**NUMBER:** 5290.14
**DATE:** 4/3/2003
**SUBJECT:** Admission and
Orientation Program

1. **PURPOSE AND SCOPE.** To require each inmate committed or transferred to a Bureau of Prisons (Bureau) institution to participate in the institution's Admission and Orientation (A&O) Program. The Warden will ensure that staff involved with this program offer each newly committed inmate an orientation to the institution, to include information on institutional requirements and, whenever practicable, visits to the various areas of the institution. The institution A&O Program must also provide the inmate with an awareness of the:

   a. Inmate's rights and responsibilities;
   b. Institution's program opportunities; and,
   c. Institution's disciplinary system.

Pretrial inmates and inmates in holdover status (en route to a different institution) are excluded from the provisions of this PS (except as provided in Sections 7.a. and 7.b.).

An effective A&O Program provides inmates with valuable information regarding institution and unit regulations, operations, and program opportunities. In addition, A&O programs provide staff with an opportunity to identify and assist inmates who may be experiencing difficulty adjusting to incarceration.

The Bureau's A&O Program consists of two separate and distinct components:

- an Institution component and
- a Unit component.

Institution A&O programs, whether centralized or decentralized, provide inmates with general information regarding institution-wide regulations, operations, and program opportunities. Unit A&O programs, on-the-other-hand, provide information that is unit specific and only for inmates assigned to that unit.

2.  **SUMMARY OF CHANGES.**  This revision includes the following change:

- Rules language has been removed from bolded text; however, all of the rules language has been retained as non-bolded implementing text.  This means that former rules language no longer exists as rules in the Code of Federal Regulations, but is now policy language instead.

- The reference to the Immigration and Naturalization Service in Section 6.b. is changed to the Bureau of Immigration and Customs Enforcement (BICE) reflecting the organizational change brought about by the creation of the Department of Homeland Security.

3.  **PROGRAM OBJECTIVES.**  The expected results of this program are:

   a.  Each inmate committed to a Bureau institution will participate in both components of the A&O Program which have been approved by the Warden.

   b.  Inmates will be provided an opportunity to receive extensive information regarding institution operations, program availability, inmate rights and responsibilities, and the Bureau's disciplinary process.

   c.  Inmates will be provided an opportunity to meet with their assigned unit team to receive more specific information relative to their unit.

   d.  Inmates identified as having problems coping with incarceration will be identified and assisted.

   e.  An inmate's participation in the A&O Program will be documented.

   f.  Time frames for completing the A&O Program will be maintained.

4. **DIRECTIVES AFFECTED**

  a. **Directive Rescinded**

    PS 5290.13    Admission and Orientation Program (7/23/02)

  b. **Directives Referenced**

    PS 1505.03    Language Translations Used in Official Documentation (10/31/97)
    PS 5264.07    Telephone Regulations for Inmates (1/31/02)
    PS 5290.12    Intake Screening (3/16/99)
    PS 5322.11    Classification and Program Review of Inmates (3/11/99)
    PS 7331.04    Pretrial Inmates (1/31/03)

5. **STANDARDS REFERENCED**

  a. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4216, 3-4272, 3-4273, 3-4274, 3-4275, 3-4276, 3-4277, and 3-4278

  b. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-4A-01 and 3-ALDF-4A-02

  c. American Correctional Association Second Edition Standards for the Administration of Correctional Agencies: 2-CO-4A-01

6. **DEFINITIONS.** The following terms are defined for the purposes of this PS:

  a. **Holdover.** An un-sentenced or sentenced inmate who is temporarily housed at an institution for the purpose of a federal writ or warrant of removal; a parole violator, special parole term violator, mandatory release violator, awaiting a disposition hearing; a convicted state prisoner on a federal writ or non-federal detainer; a state co-op; or a sentenced inmate being transported to his or her initial designated facility.

  b. **Detainee.** An un-sentenced inmate held in custody. This includes Bureau of Immigration and Customs Enforcement (BICE), formerly the Immigration and Naturalization Service (INS), detainees held in custody for the BICE. (See the SENTRY General Use Manual for appropriate codes).

  c. **Assigned Unit.** The official housing unit the inmate will be living in while at the institution.

d.  **"Central" A&O Unit.**  A unit which temporarily houses all newly committed inmates specifically for participation in the institution A&O Program.

e.  **Temporary Unit.**  A unit which temporarily houses inmates due to the lack of bed-space in the inmate's assigned housing unit.

f.  **Inmate Handbook/Orientation Materials.**  Reference material provided to an inmate regarding the institution's procedures, operations, and program opportunities.

g.  **"Master" Checklist.**  The original form BP-S518 which is used to document the date and instructor for each A&O class presented in the institution A&O Program.

7.  **PRETRIAL, HOLDOVER, AND/OR DETAINEE PROCEDURES**

a.  Normally, **pretrial inmates** are not required to participate in either component (institution or unit) of the Bureau's A&O Program (see Section 1 of this PS).  However, for the safety and security of the institution as well as other inmates and staff, pretrial inmates at least, must receive and acknowledge receipt of the following information/forms:

    (1)  Inmate Rights and Responsibilities;

    (2)  The Bureau's Prohibited Acts and Disciplinary System; and

    (3)  Completion of the Inmate Acknowledgment forms (BP-S407/408).

Providing other information, material, and/or forms is optional at the Warden's discretion.

At the Warden's discretion, pretrial inmates may also be given the institution's A&O handbook or materials, particularly if an extended pretrial status is anticipated.  Finally, in some cases, the Warden may require pretrial inmates to participate in a full or modified Unit A&O program.

The above information/forms must be filed in the inmate's drop file or in section 3 of the Inmate Central File.

b. Normally, **holdover inmates** are not required to participate in either component (institution or unit) of the Bureau's A&O Program (see Section 1 of this PS). However, for the safety and security of the institution, other inmates, and staff, holdover inmates at least, must receive and acknowledge receipt of the following information/forms at their first holdover facility:

(1) Inmate Rights and Responsibilities;

(2) The Bureau's Prohibited Acts and Disciplinary System; and

(3) Completion of the Inmate Acknowledgment forms (BP-S407/408).

Once holdovers have received the above information and forms, they need not be provided them again at subsequent en-route institutions except as noted below.

**Note:** Completing and/or verifying the information provided on the Inmate Acknowledgment form (BP-S408) is required at each holdover facility (refer to Program Statement on **Intake Screening** for procedures regarding completion of the BP-S408).

Providing other information, materials and/or forms is optional at the Warden's discretion.

Ordinarily, inmates in holdover status move promptly to their designated institution and therefore, traditional A&O programming is not effective. However, at the Warden's discretion, holdover inmates may also be given the institution's A&O handbook or materials, particularly if an extended holdover status is anticipated. Finally, in some cases, the Warden may require holdover inmates participate in a full or modified Unit A&O Program.

c. Inmates initially housed in the **Special Housing Unit (SHU)** will be provided, during the Intake Screening process, with information regarding SHU safety and operation procedures. This can be accomplished by providing written material or through discussion.

d. The housing Unit Officer will provide safety and operation procedures information to inmates initially housed in general population as specified in Section 9.c.(2) of this PS.

e.  Acknowledgment of receipt of the information/forms indicated in 7.b.(1)(2) and (3) of this Program Statement must be filed in the inmate's drop file or in section 3 of the Inmate Central File.

f.  **BICE detainee inmates** will participate in both components (Institution and Unit) of the A&O Program, unless they have previously participated in an A&O Program at the current institution.

**Non BICE detainees** need not participate in the A&O Program, however, for the safety and security of the institution and other inmates and staff, detainee inmates at least, must receive and acknowledge receipt of the following information/forms:

(1)  Inmate Rights and Responsibilities;

(2)  The Bureau's Prohibited Acts and Disciplinary System; and,

(3)  Completion of the Inmate Acknowledgment forms (BP-S407/408).

Inmates initially housed in the SHU will be provided with information regarding SHU safety and operation procedures during the Intake Screening process.  This can be accomplished by providing written material or through discussion.

Inmates initially housed in general population will be provided safety and operation procedures by the housing Unit Officer as specified in Section 9.c.(2) of this PS.

Acknowledgment of receipt of the above information/forms (7.c.(1), (2), and (3)) must be filed in the inmate's drop file or in section 3 of the Inmate Central File.

8.  **RESPONSIBILITY.**  The Warden will assign to a staff member the responsibility to coordinate the institution's A&O Program.  The Warden will assign the A&O Coordinator's role to an experienced staff member and, ordinarily, this role will not delegated below the department head level, to ensure that the institution's A&O Program's goals and objectives are being met.

Ordinarily, oversight responsibility over the A&O Coordinator and program is assigned to an Associate Warden.

Unit Managers will be responsible for developing and monitoring the A&O Program for their unit(s).

a.  **Information Preparation**.  Staff involved in the lecture
portion of the A&O Program must develop an outline of the
information they wish to include in their presentation.

The Associate Warden will ensure each department presenting
lecture material develops a lesson plan which contains pertinent
and thorough information regarding the topic.  The A&O
Coordinator will maintain lesson plans which must be reviewed
annually.

Staff must develop written orientation materials to supplement
lectures and discussions.

Institutions may develop an Inmate Handbook **and/or** provide
inmates with written materials to supplement the A&O Program.
There may be some topics or presentations which will not require
using reference materials.  Such materials are **not** intended to
replace lectures and group discussions; however, inmates
classified as pretrial, holdovers, or detainees may receive
written material to read in lieu of lectures and/or group
discussions.

b.  **Literacy Problems**.  When a literacy problem prevents an
inmate from understanding A&O information, a staff member will
offer that inmate assistance.  If an institution has a
significant number of non-English-speaking inmates, A&O Program
information (including written materials) must be made available
in the appropriate language(s).

During the A&O process, any inmate not fluent in English should
be advised of the availability of translated documents. (Refer to
the Program Statement on **Language Translations Used in Official
Documentation** for additional information regarding the
translation of material).

c.  **Inmates with Emotional Stress**.  A staff member involved in
the A&O Program who believes that an inmate is experiencing
significant emotional stress must notify the A&O Coordinator so
that the inmate may be offered appropriate assistance.

The A&O Coordinator will notify the appropriate institution
personnel (i.e., psychology staff) for further evaluation and
assistance.

9. **GUIDELINES FOR AN ADMISSION AND ORIENTATION PROGRAM**

a. **Location.**  Each Warden must determine the appropriate location for the institution's A&O Program.

b. **Quarters.**  Each Warden must establish procedures for the assignment of living quarters.

c. **Activities.**  The A&O staff coordinator is to ensure that the A&O Program provides a full schedule of activities in which each newly committed inmate may participate.  Scheduled activities must include exposure to programs responsive to the inmate's specialized need, as well as exposure to various work assignments, education programs, and physical and social activity.

The A&O Program will include, at a minimum, all areas identified on the Institution (BP-S518) and Unit (BP-S597) Checklists.  Blank spaces are provided on both forms to include additional programs or topics the institution or unit identify that are unique to that institution or unit.

Audiovisual presentations may be used when, for **security or other significant reasons**, it is not practical for inmates to attend A&O programming.  This option should be used only in **exceptional** circumstances and must have the Warden's written approval.

The Associate Warden may exempt an inmate from participating in the institution/unit A&O Program when health services staff determine that the inmate is medically or mentally incapable of participating in the program fully.  Once the inmate is capable of participating, he/she will no longer be exempted from the program.  Documentation is to be filed in section 2 of the Privacy Folder of the Inmate Central File.

d. **A&O Program Components.**  The A&O Program consists of two distinct components; Institution A&O and Unit A&O.  The Intake Screening process, which is considered the first step in orienting an inmate to the institution, is completed prior to participating in the A&O Programs.  (Refer to the Program Statement on **Intake Screening** for specific information provided during the Intake Screening process).

(1) **Institution A&O.**  This component provides instruction and/or information to inmates regarding topics identified on the Institution A&O Checklist.  This includes mandatory national policy issues as well as local issues and procedures.

Ordinarily, this segment will be completed within **four weeks** of an inmate's arrival at the institution.

It is highly recommended that inmates complete the institution portion of the A&O Program prior to their initial classification; however, this is not mandatory. Note that **old law violators** (Mandatory Release, Parole, and Special Parole Term and Old Law Supervised Release Violators) are ordinarily classified within two weeks of their arrival at the institution.

Inmates initially housed in a SHU will be required to complete the institution A&O Program ordinarily within four weeks **after** he or she has been released to general population.

(2)  **Unit A&O.** This component consists of a Safety Orientation and Unit Security Overview which the Unit Officer provides, and a unit orientation which unit staff provide.

(a)  The Unit Officer will provide the **Safety Orientation and Unit Security Overview** on the day the inmate arrives in the unit (**assigned or temporary**) and no later than by the end of the day (lights out). This segment will include information about safety issues (i.e., fire escape procedures, sanitation, smoking rules, etc.), and the unit's security procedures (i.e., counts, accountability, searches, passes, wake-up/lights out, etc.). When this component is completed, the Unit Officer will sign and date the appropriate section of the BP-S597.

> **Note:**  An inmate initially housed in a SHU will be provided this information as specified in Section 7.b. of this Program Statement.

Due to the special mission of certain units such as a "central" A&O Unit, a temporary unit, or a SHU, an inmate who transfers from this type unit to an assigned unit will be provided a safety orientation and security overview by the Unit Officer of the assigned unit. Topics which are consistent throughout the institution do not need to be readdressed; therefore, only those topics which are unique to the unit or differ from procedures in other units in the institution need to be addressed. The Unit Officer will document completion on the BP-S597 in the assigned Unit Officer's signature block.

(b)  **Unit Orientation** will include an overview of each unit staff member's role and procedures. Unit staff (Unit Manager, Case Manager and Counselor) may present their sections

of the orientation jointly or individually; however, all sections of this component must be completed within **seven calendar days after the inmate arrives in the assigned unit.** Unit staff will sign and date their section of the BP-S597 when completed.

(c) Inmates **reassigned** to another unit within the institution for any reason will be provided unit orientation within **seven calendar days after that inmate's arrival in the reassigned unit.** Only those topics which are unique to the unit or differ from procedures in other units in the institution need to be addressed. A new BP-S597 will be completed when an inmate is transferred from one unit to another within the same institution.

e. **Telephone Calls.** Ordinarily, newly committed inmates will be permitted to complete at least two local or long distance phone calls during the admission process, in accordance with the Program Statement on **Telephone Regulations for Inmates.**

f. **Length of A&O Program.** An inmate's involvement in the institution's A&O Program is based on the time necessary to accomplish the program's objectives.

The Warden will determine the length of the institution's A&O Program. Presenters should have sufficient time to address each topic on the Institution A&O Program Checklist thoroughly, and address inmate questions and/or concerns.

g. **Documentation of A&O Program Involvement.** Staff must document that the inmate has received a copy of the institution's inmate handouts and has completed the institution's A&O Program. Staff will have the inmate sign and date a copy of this document. The original document is to be placed in the Inmate's Central File. Completion of A&O programing will be documented on both the Institution A&O Checklist form (BP-S518) and the Unit A&O Checklist form (BP-S597).

In addition, documentation that the inmate received orientation information during the Intake Screening process will also be noted on the Intake Screening form.

(1) **Unit A&O Checklist Form (BP-S597).** The BP-S597 has been revised to include the following:

- An additional Unit Officer signature block has been added to the form for the Unit Officer of a "central" A&O unit or a temporary unit to sign and date indicating he/she provided a safety orientation and

> unit security overview to the newly arrived inmate in
> that unit;

- An additional inmate signature block has been added to
  the form for the inmate temporarily housed in a
  "central" A&O unit or temporary unit to sign indicating
  he/she received a safety orientation and unit security
  overview while in that unit;

Staff are to indicate in the specified section of the form:

- the inmate's initial housing unit (assigned unit, A&O
  unit, overflow unit, or SHU) and date received;

- the date of transfer from a temporary unit or a
  "central" A&O unit to an assigned unit, if applicable;
  and

- the date of transfer from a SHU to a "central" A&O unit
  or overflow unit, if applicable.

Unit staff providing Unit orientation will sign **each**
inmate's Unit A&O Checklist individually upon completing their
section.  When all areas have been presented, staff will request
the inmate sign and date the form.  The BP-S597 form will be
filed in Section 3 of the Inmate Central File.

(2) **Institution A&O Checklist Form (BP-S518).**  The Warden
has the option of either having each presenter sign each inmate's
BP-S518 individually or using a **"Master"** BP-S518.

Using a **"Master"** A&O Checklist will require each presenter
involved in the institution A&O Program to sign and date the
**"Master"** BP-S518 upon completing his or her presentation.  The
last presenter will sign the BP-S518 prior to presenting his or
her material to the class.  This allows the A&O Coordinator time
to make copies of the original checklist ("Master") prior to the
end of the presentation, for distribution to each inmate
participant to sign and date.

The signed copy will then be collected from each inmate and
forwarded to the appropriate unit for filing in section 3 of the
Inmate Central File.

The A&O Coordinator will maintain the "Master" Checklist and
a list of the inmate participants for each A&O class instructed
for three years or until the next Program Review.

The BP-S518 and BP-S597 may be duplicated back-to-back or used separately, depending on which method is most efficient for the institution's A&O Program. The approved procedure must be addressed in the Institution Supplement and used throughout the institution.

> **Note:** Neither form may be modified except for the adding topics or programs the institution or unit identified.

## 10. **REQUIRED FORMS**

- Institution A&O Checklist (BP-S518) (form will be dated the same as the Program Statement)

- Unit A&O Checklist (BP-S597) (form will be dated the same as the Program Statement)

## 11. **INSTITUTION SUPPLEMENT.** Each Warden will issue an Institution Supplement that establishes local procedures for implementing the A&O Program.

The institution will involve the Regional Office and Correctional Programs Administrator in developing and issuing the Institution Supplement.

The Institution Supplement will:

- Designate an A&O Coordinator and specify oversight responsibility over the program;

- Indicate the location for conducting the Institution A&O Program;

- Outline procedures to ensure lesson plans are developed for each topic in the institution A&O Program;

- Outline procedures to review and update lesson plans annually;

- Address whether the Unit A&O Form (BP-S597) will be separate or duplicated on the back of the Institution A&O Checklist (BP-S518);

- Address whether the Institution A&O Checklist (BP-S518) will be individually signed by each presenter or whether a "Master" A&O Checklist will be used;

- Establish procedures to track and reschedule those inmates who do not complete all the topics covered in the A&O Program;

- Establish procedures for assigning living quarters including reference to smoking preference;

- Provide guidelines for the development and content of Inmate Handbooks, **and/or** written material to be distributed to inmates; and

- Determine the extent and scope of the orientation provided to inmates who are not required to participate in the institution and unit A&O Program.


/s/
Kathleen Hawk Sawyer
Director

# DECLARATION OF JACOB DOERER
## ATTACHMENT 2
## INMATE HISTORY WRK DETAIL

```
  REG NO..: 24449-056 NAME....: LANDIS, CARLTON THEODORE
  CATEGORY: WRK       FUNCTION: PRT       FORMAT:


FCL      ASSIGNMENT DESCRIPTION                     START DATE/TIME STOP  DATE/TIME
TOM      SMU-UNASSG SMU UNASSIGNED                  03-26-2020 1313 CURRENT
TOM      SMU-UNASSG SMU UNASSIGNED                  03-26-2020 0703 03-26-2020 1310
TOM      SHU-UNASSG SHU UNASSIGNED                  12-02-2019 1421 03-26-2020 0703
TOM      SHU-UNASSG SHU UNASSIGNED                  07-31-2019 0753 12-02-2019 1420
TOM      UNASSGN    UNASSIGNED INMATE               07-30-2019 1941 07-31-2019 0753
LEW      UNASSG     UNASSIGNED WORK DETAIL          12-29-2017 1011 07-30-2019 0713
ALP      UNASSG SHU UNASSIGNED SHU                  08-24-2017 1315 12-29-2017 0919
ALP      F CARP AM  7:40 AM TO 11:30 AM             05-09-2017 0001 08-24-2017 1315
ALP      CMS CLERK  CMS CLERK - ALL DAY ASSIGNMENT  05-08-2017 0001 05-09-2017 0001
ALP      A&O COMP   INMATES COMPLETED A&O NEED JOB  05-03-2017 1416 05-08-2017 0001
ALP      A&O 1      NEW INMATES WAITING A&O         05-01-2017 1531 05-03-2017 1416
OKL      UNASSG     UNASSIGNED HOLDOVER             04-26-2017 1640 05-01-2017 0730
YAP      UNASSG/SHU UNASSIGNED SPECIAL HOUSING UNT  11-02-2016 1205 04-26-2017 0425
YAP      UNASSG     UNASSIGNED WORK DETAIL          03-31-2016 1421 11-02-2016 1205
YAP      A/O        ADMISSION AND ORIENTATION       03-17-2016 1300 03-31-2016 1421
OKL      UNASSG     UNASSIGNED HOLDOVER             03-08-2016 1530 03-17-2016 0800
ATL      DCU UNASSG DETENTION CENTER UNASSIGNED     03-07-2016 1530 03-08-2016 1255
PEM      UNASSG     UNASSIGNED TO WORK DETAIL       12-16-2015 1149 03-07-2016 0339
PEM      POUND AM1  COMPOUND AM 1                   05-08-2014 0001 12-16-2015 1149
PEM      UNASSG     UNASSIGNED TO WORK DETAIL       05-06-2014 1101 05-08-2014 0001
PEM      A&O COMPLT ADMISSION AND ORIENTATION       05-06-2014 1101 05-06-2014 1101
PEM      A&O        ADMISSION AND ORIENTATION       04-29-2014 1551 05-06-2014 1101
MAR      REC YD PM  USP RECREATION YARD             04-07-2012 0001 06-18-2012 1955
MAR      UNASSG     UNASSIGNED WORK DETAIL          04-05-2012 1151 04-07-2012 0001
MAR      Z UNASSG   Z UNASSIGNED WORK DETAIL        04-04-2012 0550 04-05-2012 1151
MAR      PM DINING  FOOD SERVICE                    10-22-2011 0001 04-04-2012 0550
MAR      AM DINING  FOOD SERVICE                    10-08-2011 0001 10-22-2011 0001
MAR      FD SVC A&O FOOD SERVICE A&O                09-28-2011 0001 10-08-2011 0001
MAR      UNASSG     UNASSIGNED WORK DETAIL          09-15-2011 1258 09-28-2011 0001
MAR      A&O UNASSG ADMISSION & ORIENTATION         08-15-2011 1647 09-15-2011 1258
OKL      UNASSG     UNASSIGNED HOLDOVER             07-14-2011 1030 08-15-2011 0930
LVN      SEG UNASSG UNASSIGNED DUTY                 03-14-2011 1058 07-14-2011 0456
LVN      CCH2 A/O   CCH2 A/O                        11-08-2010 1823 03-14-2011 1058
LVN      SEG UNASSG UNASSIGNED DUTY                 11-08-2010 1148 11-08-2010 1823
OKL      UNASSG     UNASSIGNED HOLDOVER             10-27-2010 1115 11-08-2010 0455
POM      YARD AM    ORDERLY                         07-12-2010 0001 10-27-2010 0305
POM      MED FS PND PENDING FS PRE-EMPLOY PHYSICAL  07-07-2010 0001 07-12-2010 0001
POM      UNASSG     UNASSIGN WORK STATUS            06-28-2010 1307 07-07-2010 0001
POM      UNICOR 3   UNICOR 3                        06-14-2010 0001 06-28-2010 1307
POM      YARD AM    ORDERLY                         04-19-2010 0001 06-14-2010 0001
POM      GED TUTOR  GED TUTOR AM                    04-07-2010 0001 04-19-2010 0001




G0002        MORE PAGES TO FOLLOW . . .
```

```
   REG NO..: 24449-056 NAME....: LANDIS, CARLTON THEODORE
   CATEGORY: WRK      FUNCTION: PRT      FORMAT:


FCL     ASSIGNMENT DESCRIPTION                      START DATE/TIME STOP  DATE/TIME
POM     EDUC AM    ORDERLY                          01-24-2010 0001 04-07-2010 0001
POM     YARD PM    ORDERLY                          01-22-2010 0001 01-24-2010 0001
POM     PNT 2 MED  FCI PAINT SHOP                   01-21-2010 0001 01-22-2010 0001
POM     PM DINING  PM DINING                        11-06-2009 0001 01-21-2010 0001
POM     MED FS PND PENDING FS PRE-EMPLOY PHYSICAL   11-05-2009 0001 11-06-2009 0001
POM     UNASSG     UNASSIGN WORK STATUS             10-29-2009 1148 11-05-2009 0001
POM     A&O        A&O ORDERLY                      10-26-2009 1415 10-29-2009 1148
OKL     UNASSG     UNASSIGNED HOLDOVER              10-21-2009 1700 10-26-2009 0435
ATL     DCU UNASSG DETENTION CENTER UNASSIGNED      10-15-2009 1855 10-21-2009 1036
BEN     DW CMPND   CMPND DETAIL                     08-27-2008 0001 10-15-2009 1250
BEN     PM KITCHEN PM KITCHEN WORKERS              07-08-2008 0001 08-27-2008 0001
BEN     DAYS FS    DAYS FS                          06-23-2008 0001 07-08-2008 0001
BEN     UNASSG     UNASSIGNED                       06-04-2008 2011 06-23-2008 0001
BEN     F UNASPA&O UNNASSIGNED PENDING A&O          05-15-2008 1045 06-04-2008 2011
ATL     GRD MAINT  GROUND MAINTENANCE               05-12-2008 0001 05-15-2008 0607
ATL     BDU ASB 5  BDU ASSEMBLY - #5                04-02-2008 1328 05-12-2008 0001
ATL     BDU PACK   BATTLE DRESS UNIFORM PACKING     12-05-2007 0001 04-02-2008 1328
ATL     B-1 ORD    B-1 ORDERLY                      06-18-2007 0001 12-05-2007 0001
ATL     SHU UNASSG SHU HOUSING UNIT UNASSIGNED      05-01-2007 1424 06-18-2007 0001
ATL     B-1 ORD    B-1 ORDERLY                      01-25-2007 0001 05-01-2007 1424
ATL     AM DINE RM AM DINING ROOM                   10-26-2006 0001 01-25-2007 0001
ATL     PLUMB 2    PLUMBING #2                      08-22-2006 0001 10-26-2006 0001
ATL     A/O        ADMISSION AND ORIENTATION        06-19-2006 1707 08-22-2006 0001
PEM     UNASSG     UNASSG                           06-17-2006 0007 06-19-2006 0400
PEM     POUND AM2  POUND AM ORDERLY                 09-19-2004 0001 06-17-2006 0007
PEM     UNASSG     UNASSG                           08-09-2004 0009 09-19-2004 0001
PEM     DIN RM AM  DINING ROOM                      01-22-2004 0001 08-09-2004 0009
PEM     UNASSG     UNASSG                           01-08-2004 1532 01-22-2004 0001
PEM     A&O        ADMISSION AND ORIENTATION        12-16-2003 1642 01-08-2004 1532
```

```
   G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

# DECLARATION OF JACOB DOERER

## ATTACHMENT 3

### Admissions and Orientation Handbook
### (August 2017 version)

# ADMISSION
# AND
# ORIENTATION



# HANDBOOK
## ADMINISTRATIVE UNITED
## STATES PENITENTIARY
### THOMSON, ILLINOIS

AUGUST 2017

# INDEX

INTRODUCTION                                                           3

INTAKE, CLASSIFICATION AND THE UNIT TEAM                               3

GENERAL FUNCTIONS OF UNIT STAFF                                        3

DAILY INMATE LIFE                                                      6

LIVING QUARTER RULES                                                   8

SAFETY AND ENVIRONMENTAL                                              9

CLOTHING EXCHANGE & LAUNDRY                                           10

COMMISSARY                                                            11

VISITING PROCEDURES                                                   15

SECURITY PROCEDURES                                                   18

PROGRAMS AND SERVICES                                                 20

FOOD SERVICE                                                          20

EDUCATION                                                             21

RECREATION                                                            24

RELIGIOUS SERVICES                                                    25

PSYCHOLOGY SERVICES                                                   27

MEDICAL SERVICES                                                      32

DENTAL SERVICES                                                       36

MAIL ROOM, RECEIVING AND DISCHARGE (R&D), RECORDS OFFICE             38

LEGAL SERVICES                                                        42

PROBLEM RESOLUTION                                                    44

DISCIPLINARY PROCEDURES                                              45

RELEASE                                                               49

INMATE RIGHTS AND RESPONSIBILITIES                                   53

PROHIBITED ACTS AND AVAILABLE SANCTIONS                              54

SEXUALLY ABUSIVE BEHAVIOR PREVENTION AND INTERVENTION                64

REPORTING AN INCIDENT OF SEXUALLY ABUSIVE BEHAVIOR                   65

OFFICE CONTACTS                                                       69

ATTACHMENT A: Inmate Health Care Rights and Responsibilities         70

GENERAL INFORMATION                                                  72

ATTACHMENT B: Inmate to Staff E-Mail Addresses                       73

## INTRODUCTION

The purpose of this handbook is to provide arriving inmates with information regarding the Bureau of Prisons (BOP), its programs, and the rules and regulations Admission and Orientation (A&O) Handbook. It is not a specific guide to the detailed policies of the BOP. Rather, the material in this handbook will help new inmates more quickly understand what they will be encountering when they enter prison, and hopefully assist them in their initial adjustment to incarceration.

## INTAKE, CLASSIFICATION AND THE UNIT TEAM

### Orientation

Inmates are given a social screening by Unit Management staff and medical screening by Health Services staff at the time of arrival. Additionally, Mental Health staff also provides screening if required. Inmates are immediately provided with a copy of the institution rules and regulations, which include information on inmate rights and responsibilities. It also includes information on sexual assault and abuse.

Within 28 days of arrival, inmates will participate in the A&O Program. While in A&O, inmates are advised of the programs, services, policies and procedures regarding the facility.

### Classification Teams (Unit Teams)

Each inmate is assigned to a housing unit. A unit is a self-contained inmate living area that includes both housing sections and office space for unit staff. Each unit is staffed by a Unit Team directly responsible for the inmates living in the unit. The unit offices are located in the units so staff and inmates can be accessible to each other. The unit staff typically includes a Unit Manager, Case Manager, Correctional Counselor, and Unit Secretary. The Staff Psychologist, Education Advisor and Unit Officer are considered members of the Unit Team and provide input for classification purposes.

Inmates are assigned to a specific Unit Team. Generally, the resolution of issues or matters of interest while at the institution are most appropriately initiated with the Unit Team. Unit Team members are available to assist in many areas, including visitation procedures, transfer procedures, release planning, personal and family problems, counseling, and assistance in setting and attaining goals while in prison. Ordinarily, a member of the unit staff will be at the institution from 7:30 a.m. to 9:00 p.m., and during the day on weekends and holidays.

## GENERAL FUNCTIONS OF UNIT STAFF

### Unit Manager

The Unit Manager is the administrative head of the general unit and oversees all unit programs and activities. The Unit Manager is the Chairperson of the team, which comprises the Case Manager, Correctional Counselor, with input from Education and Psychology staff. The Unit Manager reviews team decisions and may chair the Unit Discipline Committee (UDC), which is a body that hears disciplinary infractions. The Unit Manager is ordinarily present during initial classification and subsequent program review(s) in which Residential Re-Entry Center (RRC) placement is discussed.

**Case Manager**

The Case Manager is responsible for all casework services (i.e. inmates' program review and social furloughs). He/she prepares classification material, progress reports, release plans, correspondence, and other materials relating to the inmate's commitment. The Case Manager serves as a liaison between the inmate, the administration, and the community.

**Correctional Counselor**

The Correctional Counselor provides counseling and guidance for the inmates of the unit in areas of institutional adjustment, personal difficulties, and plans for the future. He/she plays a leading role in segments of unit programs relating to inmate activities such as: bed and job assignments; inmate visitor approval; as well as ensuring inmates with fines, assessments, and restitution are in compliance with the Financial Responsibility Program (FRP). The Correctional Counselor may conduct counseling groups for inmates in his/her unit and/or groups open to the general population.

**Unit Secretary**

The Unit Secretary performs clerical and administrative duties assigned by the Unit Manager, to include the preparation of release paperwork and furlough transfer packets. He/she is essential to the work of the unit organization and is knowledgeable of policies and procedures.

**Unit Officer**

The Unit Officers have direct responsibility for the daily supervision of inmates and the enforcement of rules and regulations. They have safety, security, and sanitation responsibilities in the unit. Unit Officers are in regular contact with inmates in units and are encouraged to establish professional relationships with them, as long as such interactions do not interfere with their primary duties. Unit Officers control movement in and out of the unit and conduct regular searches for contraband.

**Communications**

Normally, a unit staff member is available Monday through Friday each day of the week. The unit bulletin boards and the TRULINCS system contain written communication of interest to inmates. Unit Managers may utilize monthly Town Hall meetings to dispense information and foster improved communications. Unit Team members utilize an open door policy to address inmate concerns when available. Inmates are also encouraged to use Inmate Requests to Staff to make requests in writing.

**Initial Classification/Program Reviews**

Inmates initially designated to the institution will receive initial classification within 28 days of arrival. Unit, Education, and Psychology staff will assess each inmate and work with them to develop an individual plan, which will address skill deficits that may deter successful reentry into the community.

Subsequent program reviews will be held every 90 to 180 days, depending upon release date. These are held by the Unit Team to review progress on programming goals, work assignments, transfers, custody/security level, institutional adjustment, etc. The inmate may not waive appearance with the Unit Team.

**Release Preparation Programming (RPP)**

Release preparation begins on the first day of incarceration. The BOP's reentry strategy provides inmates with the opportunity to gain the necessary skills and resources to succeed upon release. Through coordinated efforts among the departments in the institution and collaboration with other agencies, a wide array of programs and activities are offered to better inmates' chances of a successful reentry upon release.

It is imperative at initial classification (Team) that inmates are open and honest when answering questions to allow the team to accurately identify needs and make appropriate program recommendations to improve inmates' chances of a successful reentry. Each time an inmate goes to Team, he or she will receive a progress update and new recommendations as warranted. Contributors and programming recommendations include Education, Health Services, Psychology, Unit Team, Recreation, Religious Services, the inmate's Work Detail Supervisor, and the inmate. Inmates are strongly encouraged to take advantage of programs.

Additionally, to make the transition back to the community go as smoothly as possible, inmates should obtain at least two forms of identification to include a Social Security card. Inmates may also be eligible for some benefits upon release (e.g., Social Security disability, Veteran's, Medicare etc.) to make the transition easier. Staff may be able to provide you with information concerning benefits so that you may determine your eligibility and begin the application process, if applicable, prior to release. Lastly, the Career Resource Center, normally located in the Education Department, can also provide you with pre and post release programming and education ideas, potential employment and housing information, as well as potential benefits information. Any other Reentry concerns should be directed to the institution's Reentry Affairs Coordinator (RAC).

**Town Hall Meetings**

Town Hall meetings are held to make announcements and to discuss changes in the policy and procedures of the unit. Inmates are encouraged to ask pertinent questions of the staff and any guest speakers who are present. These questions should pertain to the unit as a whole, rather than personal questions or problems. Personal issues will be resolved by unit staff during the regular working hours, which are posted in each unit.

**Treaty Transfer for Non-U.S. Inmates**

Inmates who are not U.S. citizens may be eligible for a transfer to their home country to serve the remainder of their sentence. At initial classification, the inmate will be advised if the inmate's home country has a formal exchange treaty with the United States. The Case Manager will provide additional information regarding an inmate's eligibility for participation in the program.

**Foreign Consular**

The most recent publication of the Consular Notification and Access directory will be located in the Law Library, which is located in the Education Department.

## DAILY INMATE LIFE

### Inmate Request to Staff Member

Inmates may use an electronic Inmate Request to Staff Member or (form BP-S148), commonly called a Cop-Out, to make a written request to a staff member. Any type of request can be made with this form. Cop-outs may be obtained in the living units from the Correctional Officer or Unit Team on duty. Staff members will answer the request within a reasonable period of time.

### Personal Property Limits

Items which may be retained by an inmate are limited for sanitation and security reasons, and to ensure excess personal property has not accumulated which would constitute a fire hazard or impair staff searches of the living area.

Rules Regarding Living Area and Storage of Property

- Hobby craft items maintained in the housing unit must be accompanied by an approval form from Recreation and approved by both Recreation staff and the Unit Manager.
- Empty containers are not to be kept, they must be recycled.
- Pictures/cards/notes/etc., will not be posted anywhere outside the locker.
- No strings/clotheslines are allowed.
- Windows and windowsills must be kept clear of all items.
- Beds and lockers that are not occupied by inmates must be cleared of any items.
- 1 cup, 1 bowl, 2 books, and 1 alarm clock are the only items to be stored on top of the locker. No items are to be stored behind lockers.
- 1 ironed set of khaki shirt and pant may be hung outside the locker on a hanger.
- Only shoes and issued storage bins will be allowed to be stored beneath your bed.
- Coats will be hung in front of the locker over the uniform on a hanger.
- Towels and laundry bags will be hung from the locker.
- Chairs, beds, mattresses, storage bins, and lockers are not to be altered in any way.
- Chairs assigned to cells will be placed in front of the desk, as shown in picture, when not in use.

### Clothing

Civilian clothing (i.e. clothing not issued to the inmate by the BOP or purchased by the inmate through the Commissary) ordinarily is not authorized for retention by the inmate. Pre-release civilian clothing for an inmate may be retained by staff in the Receiving and Discharge area during the last 30 days of an inmate's confinement. All inmates are prohibited from wearing any clothing not government-issued or purchased in the Commissary. No inmates may be issued, permitted to purchase, or have in their possession any blue, black, red, or camouflage clothing or cloth items. Commissary sales of clothing are limited to the following colors: Only gray and/or white clothing may be sold. The only exception is for religious headgear. All government clothing, except undergarments will be tagged with a label indicating the inmate's name and registration number.

a)    Monday through Friday, 7:30 a.m. to 4:00 p.m., inmates must wear institution issued clothing, which includes: white t-shirt, khaki shirt (buttoned and tucked into pants and outside of any other clothing, e.g. sweatshirts, or thermal tops), khaki slacks, belt, socks, and work boots (with the exception of those carrying soft shoe permits).

b) Inmates participating in recreation programs, in recreation areas, or traveling to and from recreation areas, may wear recreation clothing including sweat pants, shorts, t-shirts, and athletic shoes. **Shirts must be worn at all times in all recreation areas.** After hours and on the weekends, recreation clothing is permissible in all areas.

c) Inmates are to be properly dressed while in the units. Shirts are to be worn at all times, unless in the shower area. All clothing is to be cleaned and washed on a regular basis and maintained in an acceptable manner.

d) Shower caps may only be worn in the shower. Nylon "skull-caps or doo rags" are not permitted outside the living areas. Inmates will not wear hats or sunglasses inside any building, with the exception of hats for Food Service workers while at work, or approved religious headwear.

## Commissary/Special Purchase Items
These items are authorized to the point they can be contained in the storage area provided for personal property.

## Letters, Books, Photographs, Newspapers, and Magazines
An inmate will be limited in the number of letters, books, photographs, magazines, and newspapers that can be stored in their designated storage space. Nothing is to be tacked, stapled, or Scotch taped to any surface. Ordinarily photographs, particularly those of family and friends, are approved, since they represent meaningful ties to the community. A personal photograph is defined as a photograph intended for individual viewing, as opposed to a photograph published for commercial use. Personal photographs may be stored or displayed inside of lockers only. Inmates may not retain Polaroid photos.

Nude or sexually suggestive photos (individual prints or copies as opposed to those from publications) present special concerns about personal safety, security, and good order, particularly when the subject is an inmate's relative, friend, or acquaintance or could reasonably be perceived as such. For these reasons, an inmate will not be permitted to retain, receive, or possess a personal photograph in which the subject is partially nude, completely nude, sexually suggestive, or when the photograph depicts sexual acts such as intercourse, fellatio, or sodomy. These materials will be returned to the sender upon receipt at the institution.

## Legal Materials
Staff may allow an inmate to possess legal materials in accordance with the provisions on inmate legal activities. Refer to your Unit Team for storage of Legal Materials.

## Hobby craft Materials
Please refer to the Institution Supplement TOM 5370.11, Recreation Programs, for specific rules, procedures and a listing of approved hobby craft special purchase order items.

## Radios, MP3 Players, and Watches
An inmate may possess only one approved radio or MP3 player, and watch at a time. The inmate must be able to demonstrate proof of ownership. An inmate who purchases a radio, MP3 player, or watch through a BOP commissary is ordinarily permitted the use of that item at any BOP institution if the inmate is later transferred. If the inmate is not allowed to use the radio, MP3 player, or watch at the new institution, the inmate shall be permitted to mail, at the receiving institution's expense, the item to a destination of the inmate's choice.

Where the inmate refuses to provide a mailing address, the radio, MP3 player, and/or watch may be disposed of through approved methods, including destruction of the property. The MP3 player can be managed through TRU-Units. This service allows inmates to manage the player and to purchase non-explicit music. MP3 players are not authorized or transferrable to contract facilities.

**Jewelry**

Inmates may have a plain wedding band and an appropriate religious medallion and chain without stones.

**Smoking**

Inmate smoking is prohibited in all BOP facilities.

## LIVING QUARTERS RULES

In order to minimize maintenance costs, permit uniform inspection, search procedures, and maintain orderly congregate living, the institution has imposed reasonable regulations on inmate conduct and furnishings in housing units. Unit Officers and Correctional Counselors inspect all living areas daily.

The rules include items such as:

Monday through Friday, living quarters must be clean and ready for inspection from 7:30 a.m. to 4:00 p.m. Saturday, Sunday and federal holidays, living quarters must be clean. Living quarters will be arranged as depicted in the picture posted on the bulletin board in the unit. All beds are to be made daily in the prescribed manner. If a living area is not acceptable, disciplinary action may be taken.

Lights in the housing areas will remain on during the following hours:

Monday-Friday: 6:00 a.m. – 10:30 p.m.
Saturdays, Sundays, and federal holidays: 7:00 a.m. – 11:30 p.m.

Pictures, cards, notes, etc. will not be posted anywhere on the bunks or out of lockers.

Letters, books, photographs, newspapers and magazines will be limited in the number that can be stored in your locker in accordance with local policy TOM 5580.08B Inmate Personal Property.

Beds are to be made daily with a 6 to 12 inch collar on the top sheet as depicted in the picture posted on the bulletin board. Inmates who are off-duty, on vacation, or on medical lay-in may lie on top of the bed; however, the bed must still be made at the prescribed time.

Food items that are left open create a health hazard. These items must be properly sealed at all times. Empty containers may not be used as storage or drinking containers and are to be recycled.

**\*\*Please be aware that both male and female staff routinely work and visit inmate housing areas.\*\***

General wake-up for all inmates is 6:00 a.m. The unit is called to breakfast by Correctional Services staff. The Unit Officer will announce breakfast when notified, and the Control Center will announce meal times. Inmates are given a reasonable amount of time to leave the unit if they desire breakfast. It is the inmate's responsibility to leave the unit for work. Late sleepers who are unable to report to work on time are subject to disciplinary action.

Quiet time in the unit is from 11:30 p.m. until 6:00 a.m.

Each inmate is responsible for the cleaning and sanitation of his living area.

Everyone is responsible for cleaning up after themselves.

Sexually suggestive photographs are **NOT** authorized for display anywhere. Provocative pictures, posters, cartoons, and any items cut out of magazines may not be displayed.

Showers are available every day, but inmates may not be in the shower during an official count. Additionally, showers are closed Monday-Friday, from 7:30 a.m. – 9:30 a.m. for cleaning.

**Televisions and Housing Unit Recreation Schedule**
The outside housing unit recreation areas will be available from 6:00 a.m. until 9:15 p.m., except during count time.

Any time staff determines a television was purposefully damaged or made inoperable; all televisions will be turned off at the discretion of the Unit Manager or Lieutenant. Disruptive conduct, poor sanitation and excessive noise in the television areas may result in termination of viewing privileges. Inmates must use headphones to listen to the televisions.

## SAFETY AND ENVIRONMENTAL

Any unsafe or unhealthful condition may be reported to the Unit Manager, Environmental and Safety Compliance Administrator, or Warden. All areas of the institution are lead and asbestos free. Lighting, ventilation, and water quality meet or exceed all applicable regulatory standards.

**Sanitation**
It is the inmate's responsibility to check his living area immediately after being assigned there and report all damages to the Unit Officer or Correctional Counselor. An inmate may be held financially liable for any damage to his personal living area.

Each inmate is responsible for making his bed in accordance with posted regulations before work call (including weekends and holidays when he leaves the area). Each inmate is also responsible for sweeping and mopping his living area floor, removing trash, and ensuring it is clean and sanitary. You have access to sanitation supplies as needed; these supplies shall be returned after each use. Supplies retained for prolonged periods or returned altered may result in an incident report. Items may not be attached to, or drawn on, the walls, windows, light covers or doors. Lockers must be neatly arranged inside and out, and all shelving must be neat and clean. Chairs are assigned and will not be defaced or marked in any manner by the inmate.

Toothpaste, toothbrushes, combs, razors, and soap for personal hygiene are issued by the institution. Inmates may purchase name brand items through the Commissary.

You are encouraged to recycle paper, cardboard, plastic, newspapers, magazines, and aluminum cans in the provided recycle bins throughout the institution. In addition to these items, aluminum soda can tabs are collected and donated to local Ronald McDonald Houses.

**Pest Control**
The Environmental and Safety Compliance Department (ESCD) is responsible for Pest Control Management.

The primary and most effective method to prevent infestations of rodents and insect pests is to eliminate conditions, which promote their harborage or breeding. The use of traps and chemical poisons is a secondary activity and will not result in the elimination of the condition that led to the initial infestation.

Units and living quarters will be treated as determined necessary by the Environmental and Safety Compliance Administrator. If you have a pest control problem in your living quarters, submit a cop-out through your Unit Team to the ESCD to request treatment. Prior to any treatment in your area, your living quarters must be clean, no food/drink items exposed, and items (shoes, papers, etc.) must be picked-up off the floor. If it is determined that the infestation is related to poor sanitation, pest control treatment will not be applied.

**Adverse Weather**
In the event of adverse weather, listen and comply with staff commands. It is your responsibility to review the evacuation plans posted throughout the institution, areas shaded in green represent tornado shelters. If a Tornado Warning is issued and you are housed in units A-H, sit in the inside wall of your cube or cell in a position to protect your head.

**Fire Safety**
Fire prevention and safety is everyone's responsibility. Inmates are required to report fires to the nearest staff member, so that property and lives can be protected. It is your responsibility to review the fire evacuation plans posted throughout the institution, for the nearest escape route. Cardboard boxes and other paper containers are not permitted for storage due to their combustible nature. Accumulation of newspapers, magazines, cardboard, and books creates a fire hazard. Excessive or altered items will be confiscated and may result in an incident report.

Staff is trained in the use of emergency fire suppression equipment. During a fire emergency, you will be notified by a fire alarm and/or staff. Upon evacuation, you will be escorted to a temporary holding area until the unit has been cleared for return. Fire drills will be conducted quarterly by staff. This is to familiarize the entire unit with fire emergency procedures. Failure to participate in fire drills will result in an incident report.

**Inmate Accident Procedures**
You are required to report all injuries to your Detail Supervisor. The Health Services Department will examine and treat all inmate injuries, work and non-work related. Health Services will complete an Inmate Injury Assessment. The Detail Supervisor may complete an Inmate Injury Report. All associated documentation will be sent to the ESCD, and an inmate injury investigation may be initiated.

The purpose of inmate injury investigation is to find the cause of the injury not to assign blame. Failure to participate in an injury investigation may result in an incident report.

Inmates who suffered a physical impairment due to a work related injury are to request from the ESCD, an Inmate Claim for Compensation on Account of Work Injury form, no more than 45 days prior to the date of an inmate's release, but no less than 15 days prior to release.

## CLOTHING EXCHANGE & LAUNDRY

Institutions issue clothing to the inmate population that is properly fitted, climatically suitable, and presentable. Institutions will furnish each inmate with sufficient clothing to allow at least three changes of clothes weekly. Any destruction, mutilation, negligence or unauthorized use of institution clothing, bedding or towels, on an inmate's part, may result in disciplinary action.

A.     **Clothing issued**:
4 shirts; 4 pairs of slacks; 6 pairs of boxers;
6 pairs of socks; 6 t-shirts; 1 pair of institutional boots; 1 winter coat (issued in fall and collected in spring); 1 belt

**Linen**: 2 sheets; 2 towels; 2 washcloths; 2 blankets

*Note: Clothing/Linen may not be marked on, drawn on, or altered in any way.*

B.     **Laundry Loops**: Each inmate is issued three laundry loops for clothing, and one small laundry bag. One loop will be for khaki slacks and shirts. Another loop will be for undergarments and t-shirts. The third loop will be for any personal clothing (t-shirts, sweatpants, and sweatshirts). The small laundry bag will be for towels, washcloths, and socks <u>only.</u>

C.     **Exchanges/Repairs**: All exchanges of clothing or repairs will be requested on Inmate Request to Staff Member electronically via TRULINCS addressed to Laundry. Once approved, the request will be returned to the inmate with approved items for pick up. No items will be issued without a signed, approved request. Bring the approved request with you on Fridays to the Laundry from 11:00 a.m. to 11:30 a.m. to pick up your approved items. If you requested to exchange your clothing items, you will be required to bring your used items. All items needing exchanged will be on a one for one basis.

D.     **Linen and Blanket Exchange:** The Institution Laundry Department will exchange sheets and blankets will be exchanged on Tuesdays in the Laundry from 6:15 a.m. to 6:45 a.m., on a one-for-one exchange.

E.     **Inmate Releases:** When an inmate is released, he must turn in all clothing and linens to the Laundry that were issued to him one day prior to his release, keeping only his linens and one uniform to be turned in the morning of release. Each inmate will be responsible for each article of clothing and linen issued to him.

F.     **Hygiene Items and Correspondence Materials:** Inmates may pick up institution issued hygiene items and correspondence materials (envelopes and paper) on Fridays in the Laundry from 6:15 a.m. to 7:00 a.m.

## <u>COMMISSARY</u>

The Commissary for AUSP Thomson is located in D-Building.

The BOP maintains inmates' monies (Deposit Fund) while incarcerated. The purpose of the Deposit Fund is to provide inmates the privilege of obtaining merchandise and services either not provided by the BOP or a different quality than that provided by the BOP. An inmate may use funds in their account to purchase items at the institution Commissary, place funds on their inmate phone account, purchase TRU-Units for their TRULINCS account, or send funds by creating a BP-199. Inmates may not be in possession of currency at any time.

Upon release, all Trust Fund accounts will be consolidated and placed on an Inmate Release Debit Card.

Commissary and validation schedules are posted on the inmate bulletin boards. Funds are withdrawn after positive identification by inmate identification card or fingerprint identification. It is the

inmate's responsibility to know the amount of money available in their account.
Inmates may verify their account balances by utilizing the TRULINCS or the inmate telephone (118+PAC).

Inmates must have their identification card in their possession at all times for identification purposes. Inmates are permitted to shop once per week. Special purchase orders and shoes may be purchased on normal shopping days.

- The sales unit will be closed for a pre-determined week in March and again in September to conduct inventory. Notification of the planned closure will be posted via TRULINCS. Plan accordingly.
- When entering D-Unit to shop, proceed to your left to D-2. Deposit your completed Commissary list in the slot marked "Slips". After depositing your competed list, return to the D-Unit entry hall and wait for your name to be called. Inmates will be called by the order we receive and complete your list. Note the "Out of Bounds" area located in D-Unit and remain within the allowed areas. Inmates caught in the "Out of Bounds" areas will lose their opportunity to shop.
- Inmates must deposit a completed Commissary list and wait until your name is called to proceed to the sale window. Once your list is submitted, do not leave. No substitutions or additions will be made once the list is submitted.
- All items are sold as is, with no warranty implied, other than MP3 players. No returns will be accepted after leaving the sales area.
- All complaints must be settled before leaving the sales area. All sales are FINAL.
- Copy cards will be sold during the inmate's shopping day.
- Your spending limit will be established as described in Program Statement 4500.11, Trust Fund/Deposit Fund Manual.

## Sale Hours

Commissary sales will be conducted Monday through Thursday by unit/wing. Commissary will be opened during the morning mainline (6:15 a.m. to 7:30 a.m.) and during the noon mainline (11:00 a.m. to 12:00 p.m.).

## Spending Limitations

The National Spending Limit is $360.00 but may be further restricted at the local level. Each inmate account is revalidated on a bi-monthly cycle or the 1st and 15th of the month.

## Deposits to Accounts

*U.S. Postal Service*

Inmates' families and friends choosing to send inmates funds through the mail must send those funds to the following address with the directions provided below:

Federal Bureau of Prisons
Insert Valid Committed Inmate Name
Insert Inmate Eight-Digit Register Number
Post Office Box 474701
Des Moines, Iowa 50947-0001

The deposit must be in the form of a money order made out to the inmate's full committed name and complete eight-digit register number. Effective December 1, 2007, all non-postal money orders and non-government checks processed through the National Lockbox will be placed on a 15-day hold. The BOP will return to the sender funds that do not have valid inmate information provided the envelope has an adequate return address. Personal checks and cash cannot be accepted for deposit.

The sender's name and return address must appear on the upper left-hand corner of the envelope to ensure the funds can be returned to the sender in the event that they cannot be posted to the inmate's account. The deposit envelope must not contain any items intended for delivery to the inmate. The BOP shall dispose of all items included with the funds.

In the event funds have been mailed but have not been received in the inmate's account and adequate time has passed for mail service to Des Moines, Iowa, the sender must initiate a tracer with the entity who sold them the money order to resolve any issues.

### Western Union Quick Collect Program

Inmates' families and friends may also send inmates funds through Western Union's Quick Collect Program. All funds sent via Western Union's Quick Collect will be posted to the inmate's account within two to four hours, when those funds are sent between 7:00 a.m. and 9:00 p.m. EST (seven days per week, including holidays). Funds received after 9:00 p.m. EST will be posted by 7:00 a.m. EST the following morning. Funds sent to an inmate through the Quick Collect Program may be sent via one of the following ways:

1) At an agent location with cash: The inmate's family or friends must complete a Quick Collect Form. To find the nearest agent, they may call 1-800-325-6000 or go to www.westernunion.com.

2) By phone using a credit/debit card: The inmate's family or friends may simply call 1-800-634-3422 and press option 2.

3) ONLINE – Using a credit/debit card: The inmate's family and friends may go to www.westernunion.com and select "Quick Collect".

For each Western Union Quick Collect transaction, the following information must be provided:

1) Valid Inmate Eight-Digit Register Number (entered with no spaces or dashes) followed immediately by Inmate's Last Name.
2) Committed Inmate Full Name entered on Attention Line.
3) Code City: FBOP, DC.

Please note the inmate's committed name and eight-digit register number must be entered correctly. If the sender does not provide the correct information, the transaction cannot be completed. The Code City is always FBOP, DC.

Each transaction is accepted or rejected at the point of sale. The sender has the sole responsibility of sending the funds to the correct inmate. If an incorrect register number and/or name are used and accepted and posted to that inmate, funds shall not be returned.

Any questions or concerns regarding Western Union transfers should be directed to Western Union by the sender (general public). Questions or concerns should not be directed to the BOP.

### Commissary Fund Withdrawal

Requests for Withdrawal of Inmate Personal Funds, BP-199 forms, will be processed weekly by Trust Fund, Inmate Accounts. Withdrawals are initiated in TRULINCS, Send Funds (BP-199) by the inmate. When the BP-199 is printed, it must be signed by the inmate in staff presence and hand delivered. The Supervisor of Education approves withdrawal requests for correspondence courses and materials for approved education programs. Unit Managers will approve all other withdrawal requests. Only an Associate Warden can approve inmate withdrawals exceeding $500.00.

**TRULINCS**

The Trust Fund Limited Inmate Computer System (TRULINCS) is the inmate computer network that provides inmates access to multiple services. At no time do the inmates have any access to the Internet.

Inmate's may access dedicated TRULINCS workstations installed in various housing units and common areas to perform various functions using their register number, Phone Access Code (PAC), and the fingerprint process or Commissary Personal Identification Number (PIN). Inmate access to these workstations varies depending on the institution.

Account Transactions – This service allows inmates to search and view their Commissary, telephone, and TRULINCS account transactions, as well as, view their Media List.

Bulletin Board – This service is used to supplement the use of inmate bulletin boards within the institution for disseminating information to the inmate population.

Contact List - This service is used by inmates to manage their email address list, telephone list, and postal mailing list. Inmates also mark for print postal mailing labels within this service.

If an email address is entered for a contact, TRULINCS sends a system-generated message to the contact directing them to www.corrlinks.com to accept or reject email contact with the inmate prior to receiving any messages from the inmate. If a positive response is received, the inmate may begin exchanging electronic messages with this contact. If a contact rejects TRULINCS participation, the inmate is blocked from sending any messages to that email address.

Law Library – This service allows inmates to perform legal research.

Manage Funds – This service allows inmates to manage their personal funds by creating/canceling Requests for Withdrawal of Inmate Personal Funds (BP-199) and their Pre-Release Account.

Manage TRU-Units – This service allows inmates to purchase TRU-Units using available Commissary funds or transfer TRU-Units back to their Commissary account.

Prescription Refill – This service allows inmates to request prescription refills via TRULINCS of self-carry medications that are ready for refill directly to the Pharmacy. Pharmacy staff will receive the prescription refill request and process the request accordingly. Inmates will follow established local procedures for picking up requested prescriptions.

Print – This service allows inmates the opportunity to print various documents marked for print within TRULINCS. Mailing labels and BP-199 forms may be printed for free. All other documents can be printed at a cost.

Public Messaging – Inmates may correspond with friends and family using public messaging. This is a restricted version of email that will only allow text messages and no attachments. There is a cost per minute fee for using this service. Messages are limited to 13,000 characters.

Request to Staff – This service allows inmates to correspond with staff electronically. The list of available departments varies by institution; however, there is a standard DOJ Sexual Abuse Reporting mailbox available that provides inmate with an additional method to report allegations of sexual abuse and harassment directly to the Office of Inspector General (OIG) (see attachment B, e-mail to staff directory).

Survey – This service allows inmates to take BOP surveys (i.e., Institution Character Profile).

**Inmate Telephone System –TRUFONE**

Each inmate will be provided a nine-digit Phone Access Code (PAC) for accessing TRUFONE; including instructions for use of this system. The PAC is confidential and should not be shared with other inmates. A replacement fee will be charged if a PAC is misplaced or compromised. In addition, each inmate will need to perform voice verification registration. Management of inmates' telephone numbers is performed via the TRULINCS.

The hours of telephone operation begin at 6:00 a.m. and end no later than 11:30 p.m., excluding count times.

Inmates are expected to be at their work assignments and must not use the telephone during their work hours. For inmates who work varied work shifts, at local discretion, institutions may leave one telephone per unit available for inmates on "days off," or "evening shift."

Directions for use of TRUFONE are posted near the telephones. All calls are limited to 15 minutes. Telephone calls are subject to monitoring and recording by institution staff. Inmates are limited to 300 minutes per month and may be used for any combination of collect or direct dial calls. Ordinarily, inmates will be allowed an extra 100 minutes per month in November and December.

TRUFONE funds are transferred using the TRUFONE system and must be done in even dollar amounts. The TRUFONE funds are deducted from an inmate's commissary account and transferred to the TRUFONE account immediately. Transfers may be made from any telephone during operational hours. It is each inmate's responsibility to verify the correctness of the amount transferred at the time of transfer.

## VISITING PROCEDURES

It is the policy of the BOP to encourage visiting by family and friends, to maintain your morale, and to develop closer relationships between you and your family and others in the community. Some of your basic questions concerning visiting will be answered in this handbook. However, we recommend that you consult with your Correctional Counselor or other Unit Team members and become fully aware of the visiting regulations.

Upon your arrival, you will receive a form on which to list the persons you wish to visit you. The proposed visitors are screened and your Correctional Counselor will notify you once a visitor has been approved or denied visitation. Contact your Correctional Counselor if you wish to add or delete an individual from your list.

**Visiting Schedule for AUSP Thomson**
Friday, Saturday, Sunday & federal holidays: 8:15 a.m. to 3:00 p.m.

Due to limited space in the Visiting Room, the number of persons allowed while visiting one inmate is limited to five visitors.
The Visiting Room Officer will not allow more than five visitors to visit one inmate at any given time without prior approval of the Unit Manager. All Special Visits may be requested by submitting a written request to the Unit Manager.

**Visiting Regulations**

1. Visitors will not be processed in to the AUSP until 8:15 a.m. on visiting days. No visitors will be processed in after 2:00 p.m.

2. On weekends and federal holidays, visitor processing will cease at 9:30 a.m. in preparation for the official count and will resume upon completion of the count.

3. Children under 16 years of age must be accompanied by an adult family member. If the Visiting Room becomes too crowded, visits for persons from the local area will be terminated according to the time of arrival, with the first to arrive being the first to be terminated.

4. Anyone wishing to visit an inmate at this institution must be on the inmate's approved visiting list.

5. For identification purposes, visitors will be required to present a government issued picture identification card, (i.e. *valid driver's license, passport, or other **government issued** picture identification card*). Inmates will be required to possess their inmate identification card for verification purposes while in the Visiting Room.

6. a) Visiting is an extremely important family function and dress code requirements are necessary to maintain the dignity of those involved. All visitors will be properly dressed when coming to visit at the institution.

   b) All visitors entering the institution for a visit will be appropriately attired. Visitors may not wear open-toed shoes, shorts, mini-skirts, sheer, tight fitting, or khaki clothing, excessively short or low cut clothing, backless clothing, halter tops, mid drift shirts, camouflage or sleeveless clothing.

   c) Dresses, blouses or other apparel of a suggestive or revealing nature may not be worn. Additionally, ball caps, hats, bandanas, sweatbands, do rags or any other type of headg e a r , are not authorized with the exception of religious or medical headgear. If the Front Lobby or Visiting Room Officer determines a visitor is improperly attired, he/she will contact the Operations Lieutenant and Institution Duty Officer to determine whether to deny or terminate the visit.

   d) Inmates are responsible for advising their visitors of the dress requirements in the Visiting Room, including not wearing khaki color clothing. **Visits may be denied by the Institution Duty Officer or Operations Lieutenant for noncompliance**. Excessively provocative attire is reason to deny and/or preclude visiting.

7. Visitors are not allowed to bring food, gifts, games, needlework, pocket books, baby strollers, or packages into the Visiting Room. Business transactions and written messages may not be exchanged during a visit. Items purchased in the Visiting Room vending machines may be shared with inmates and will be consumed inside the Visiting Room.

8. Inmates are required to be in appropriate uniform (khaki shirt, khaki pants, t-shirt, belt & institution work boots) before they will be processed into the Visiting Room.

9. A kiss and embrace are permitted at the beginning and end of the visiting period. Filing fingernails, braiding of hair, etc., are not appropriate activities in the Visiting Room and are not permitted.

10. Once seated, movement by inmates and their visitors should be limited to that which is necessary (going to and from the rest rooms and/or vending machine area). Unnecessary lingering, walking the aisles, etc., is distracting to other visitors and interferes with staff supervision of the Visiting Room.

11. It is the responsibility of the adult visitor to supervise their children at all times. Children should be supervised to ensure they do not disrupt other inmates and their visitors.

12. A clear coin purse or bag is allowed, but must be no larger than 8x8x8 (inches). Visitors are allowed to bring no more than $25, in coins or bills no larger than $5, into the Visiting Room.

13. Tobacco and electronic smoking devices are strictly prohibited.

14. Visits for Special Housing Unit Inmates: Visitors will be processed by the Visiting Room Officer at AUSP Thomson for two-hour blocks of visiting. Ordinarily, SHU visits are non-contact visits.

15. A clear diaper bag, (no larger than 8"x8"x8") containing up to four of each of the following items: baby food or formula (in sealed, unopened container, NO Zip-Lock bags with any substance inside will be permitted), empty plastic bottles and diapers. The diaper bag will be supervised by the Visiting Room Officers at their station and accessed by the parent when needed. Any item that cannot be thoroughly searched will not be allowed into the AUSP.

**ANY VIOLATION OF VISITING REGULATIONS MAY RESULT IN DISCIPLINARY ACTION AND/OR LOSS OF VISITING PRIVILEGES AND POSSIBLE CRIMINAL PROSECUTION OF THE VISITOR.**

**Directions to AUSP Thomson:**
From the West (Des Moines, IA): Take I-235 E. Merge onto I-80 E via EXIT 137A toward Davenport. Merge onto US-61 N via EXIT 295B toward Eldridge/DeWitt. Merge onto US-30 E via EXIT 137 toward De Witt/Clinton. Turn right onto 8th Ave S/US-30 E. Continue to follow US-30 E. Turn left onto Waller Rd/IL-84. Continue to follow IL-84.

From the North (Madison, WI): Take S Park St/US-151 S. Continue to follow S Park St South. S Park St South becomes US-14 E. Turn right onto State Road 92/WI-92. Turn left onto S Rutland St/WI-104/County Hwy-T. Turn onto WI-59/State Road 59. Turn onto E Main St/WI-59. Turn left onto Vine St/WI-59. Merge onto WI-11 W toward Dubuque. Turn left onto County Hwy-M. Turn left onto County Hwy-B/County Hwy-M/County Road B. Take the 1st right onto County Hwy-M/County Road M. County Hwy-M/County Road M becomes IL-73. Turn right onto IL Route 64/US-52 W/IL-64. Turn left onto S Clay St/IL-78. Continue to follow IL-78. Turn right onto Argo Fay Rd. Turn right onto Illinois Route 84/IL-84.

From the South (Springfield, IL): Take IL-97E. Merge onto I-55 N toward Chicago. Merge onto I-155 N via EXIT 127 on the left toward Peoria/Hartsburg. Merge onto I-74 W. Merge onto I-80 W. Take the IL-84 exit, EXIT 1, toward East Moline/Savanna. Turn right onto IL-84/Route 84 N.

From the East (Chicago, IL): Take I-290 W/Chicago-Kansas City Expressway W/Eisenhower Expy W. Keep left to take I-88 W/Chicago-Kansas City Expressway W via EXIT 15A toward Indiana/Aurora. Take EXIT 36 toward US-30 W/Clinton. Merge onto Lincoln Hwy W. Lincoln Hwy W becomes US-30 W. Turn onto Fulton Rd/IL-136. Turn right onto Waller Rd/IL-84. Continue to follow IL-84.

**Local Transportation:**

Nearest Airports
- Quad Cities International Airport (Moline, IL) – 52 miles.
- Dubuque Regional Airport (Dubuque, IA) – 59 miles.
- Chicago-Rockford International Airport (Rockford, IL) – 65 miles.
- Chicago O'Hare International Airport (Chicago, IL) – 144 miles.
- Chicago Midway International Airport (Chicago, IL) 149 Miles.

Nearest Bus Terminal
Burlington Trailways (Davenport, IA) – 50 miles.

Nearest Train Station
Amtrak (Moline, IL) – 50 miles.

Local Taxi Companies
- Sun Valley Cabs (Savanna, IL).
- Clinton's Cab Company (Clinton, IA).
- Good To Go Taxi Cab Service (Davenport, IA).

## SECURITY PROCEDURES

**Inmate Identification Cards**
Inmates are required to have their identification cards with them at all times upon departing their assigned living area. Inmates will be issued an identification card upon arrival at the institution. Inmates are responsible for the care of these cards.

**Counts**
There are five Official Counts every day at 12:01 a.m., 3:00 a.m., 5:00 a.m., 4:00 p.m. and 9:30 p.m., plus a 10:00 a.m. count on Saturday, Sunday and federal holidays. Inmates will be in their assigned cells during all counts. The 4:00 p.m., 9:30 p.m., and the 10:00 a.m. counts will be a "stand-up-count." Inmates will stand in plain sight of the Unit Officer. Correctional Services will conduct Bed Book counts at infrequent times.

Do not distract those counting by talking or moving about. All radios will be turned off and earbuds will be removed. When you are on out-count (for example, on kitchen duty, etc.) respond quickly and accurately if asked for your name and register number so the out-count can be promptly reported.

**Call-Outs**
Call-outs are a scheduling system for appointments (which include medical, dental, educational, team meetings and other activities) and are posted each day on the unit bulletin boards after 4:00 p.m., on the day preceding the appointment. It is the inmate's responsibility to check for appointments on a daily basis.

**Controlled Movement at AUSP Thomson**
Movement throughout the main facility will be regulated by a procedure called controlled movement.

The purpose of controlled movement is to ensure all inmate movement is orderly when an institution pass system is not in effect. Controlled movement generally begins five minutes before the hour and ends five minutes after the hour. During the movement period, normally ten minutes, inmates may move from an area of the institution to another without a pass or staff escort. The start and end of each movement period will be announced by staff.

**Work Calls**

Work calls will be made on regular workdays, Monday through Friday. Work call for Facilities Department details will be at 6:30 a.m. Work call for all other details will be at 7:45 a.m. Inmates will be released for lunch at 11:00 a.m. and will be recalled back to work at 11:45 a.m. The end of the day recall will be at 3:30 p.m.

**Contraband**

Items possessed by an inmate ordinarily are not considered to be contraband if the inmate was authorized to retain the item upon admission to the institution, the item was issued by authorized staff, purchased by the inmate from the commissary, purchased or received through approved channels (to include approved for receipt by an authorized staff member or authorized by institution guidelines). This ensures a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems, which relate to inmate personal property.

Contraband includes material prohibited by law, or by regulation, or material, which can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution.

Staff shall consider as nuisance contraband any item other than hard contraband, which has never been authorized, or which previously has been authorized for possession by an inmate, but whose possession is prohibited when it presents a threat to security or its condition or excessive quantities of it present a health, fire, or housekeeping hazard.

Examples of nuisance contraband include: personal property no longer permitted for admission to the institution or permitted for sale in the commissary; altered personal property; excessive accumulation of commissary, newspapers, letters, or magazines which cannot be stored neatly and safely in the designated area; food items which are spoiled or retained beyond the point of safe consumption; government-issued items which have been altered, or other items made from government property without staff authorization.

Staff shall seize any item in the institution which has been identified as contraband whether the item is found in the physical possession of an inmate, in an inmate's living quarters or in common areas of the institution. An inmate may not purchase, give, or receive any personal property from another inmate.

Staff shall return to the institution's issuing authority any item of government property seized as contraband.

Items of personal property confiscated by staff as contraband are to be inventoried and stored pending identification of the true owner (if in question) and possible disciplinary action. Staff will then provide you with a copy of the inventory as soon as practicable.

**Searches**

The placement of metal detection devices throughout the institutions may be necessary for the control of contraband. A metal detector search may be done in addition to the pat search. Staff may conduct a pat search of an inmate on a routine or random basis to control contraband. Staff may also conduct a visual search where there is reasonable belief that contraband may be concealed on your person or a good opportunity for concealment has occurred. Finally, staff may search an inmate's housing and work area, and personal items contained within those areas, without notice, randomly, and without the inmate's presence.

The property and living area will be left as close to the same conditions as found after a search.

**Drug Surveillance / Alcohol Detection**
BOP facilities operate drug surveillance and alcohol detection programs, w h i c h include mandatory random testing, as well as testing of certain other categories of inmates. A positive test, or refusal to submit a test, shall result in an incident report.

## PROGRAMS AND SERVICES

**Job Assignments**
All inmates, who have been medically cleared, will maintain a regular job assignment. Job assignments are controlled through an Inmate Performance Pay (IPP) system, which provides monetary payment for work. Unit staff assigns work and approves all job changes. They also see that the changes are posted on the Daily Change Sheet.

**Inmate Financial Responsibility Program**
Working closely with the Administrative Office of the Courts and the Department of Justice, the BOP administers a systematic payment program for court-imposed fines, fees, and costs. All designated inmates are required to develop a financial plan to meet their financial obligations. These obligations may include: special assessments imposed under 18 USC 3013, court ordered restitution, fines and court costs, judgments in favor of the U.S., other debts owed the Federal Government, and other court-ordered obligations (e.g., child support, alimony, and other judgments).

Staff assist in inmate planning however, the inmate is responsible for making all payments required, either from earnings within the institution or from outside resources. The inmate must provide documentation of compliance and payment. If an inmate refuses to meet his or her obligations, the inmate cannot work for UNICOR nor receive performance pay above the maintenance pay level. He will also be placed in "refuse" status.

As the result of being in refuse status, the inmate has a spending limit of only $25.00 monthly, can be placed in less desirable housing, will not be considered for any favorable requests, i.e. (vacations, furloughs, early release, etc.) and will score zero in responsibility on the custody classification form. These are a few examples of the sanctions that can be imposed as a result of being in refuse status.

The status of any financial plan will be included in all progress reports, and will be considered by staff when determining Security/Custody level, job assignments, eligibility for community activities, and institutional program changes. The U.S. Parole Commission will also review financial responsibility progress at parole hearings.

## FOOD SERVICE

The BOP offers a standardized National Menu. This menu is offered at all institutions and includes approved menu items based on standard recipes and product specifications. The National Menu offers regular, heart healthy and no-flesh dietary options.

Medical diets will be provided by mainline self-selection from the items available on the National Menu for that meal unless menu items fail to meet the medical requirement. Menu item replacements may not always be provided as inmates may have to avoid certain foods in the self-selection process; however, if a dietitian determines a Special Diet is required to ensure adequate nutrition, it will be provided by pre-plating or controlled plating.

The religious diet program, called the Alternative Diet Program, consists of two distinct components: one component provides for religious dietary need through self-selection from the main line, which includes a no-flesh option. The other component accommodates dietary needs through nationally recognized, religiously certified processed foods and is available through the approval of Religious Services.

Inmates are required to have their inmate identification (I.D.) card at all times. If it is determined that you ate more than once per meal, an incident report shall be written.

Playing cards, books, personal items, legal work, laundry bags etc. are not permitted within food service spaces.

If you are interested in working in the Food Service Department, you may submit an Inmate Request to Staff form to any on duty Food Service staff member. If you are assigned to work in the Food Service Department, you will be paid for the hours of satisfactory work performed.

If you have a food related question or concern during mealtime, the Food Service staff are here to assist you. Please bring your concern to the attention of the Cook Supervisors monitoring the serving line. If you feel that they did not address your problem, the Assistant Food Service Administrator and/or the Food Service Administrator will be standing mainline to address questions and concerns as they arise.

SERVING HOURS:

| | |
|---|---|
| Breakfast | 6:00 a.m. to 7:00 a.m. Monday through Friday |
| | 7:00 a.m. to 8:00 a.m. Saturdays, Sundays, and Federal Holidays. |
| Lunch | 11:00 a.m. to 12:00 p.m. Sunday through Saturday. |
| Dinner | 4:30 p.m. to 5:30 p.m. Sunday through Saturday (contingent on a clear count). |

## EDUCATION

The mission of Education/Recreation Services is to provide mandatory literacy and English-as-a-Second Language (ESL) programs as required by law, as well as other education/recreation and related programs that meet the needs and interests of the inmate population, provide options for the positive use of inmate time, and enhance successful reintegration into the community.

Education opportunities provided for federal inmates include General Equivalency Diploma (GED) and English as a Second language (ESL) programs, as required by law.

Various nationally recognized tests will be used to place inmates in appropriate education programs. Inmates must perform to the best of their abilities on exams for appropriate placement in class.

### Literacy/GED

The Violent Crime Control and Law Enforcement Act (VCCLEA) and the Prison Litigation Act (PLRA) require inmates who lack a high school diploma to participate in a GED credential program and make satisfactory progress in the program in order to be eligible to vest the maximum amount of earned good conduct time (VCCLEA sentenced inmates) or earn the maximum amount of good conduct time.

Unless exempt (pre-trial, holdover, etc.), inmates must participate in the literacy program for one mandatory period of at least 240 instructional hours, or until they achieve a GED credential. For all inmates to receive job pay promotions above the entry level, they must have a high school diploma, a GED credential, or a pay exemption. Inmates who are exempt from attending GED class based on a deportation detainer must enroll in GED or ESL in order to receive their good conduct time.

Inmates under a final Bureau of Immigration and Customs Enforcement (BICE) order of deportation, exclusion, or removal are exempt. Inmates who have completed the mandatory period of enrollment must remain enrolled, or re-enroll to vest/earn their good conduct time. Inmates found guilty of an incident report related to their literacy program enrollment will be changed to GED UNSATISFACTORY PROGRESS, and will not vest/earn their good conduct time. Following an assignment of a GED UNSATISFACTORY PROGRESS code, inmates will be required to complete additional 240 hours of program enrollment before they can be changed back to a SATISFACTORY code.

Good conduct time will not vest while the UNSATISFACTORY assignment exists. Inmates who are eligible for District of Columbia Educational Good Time (DCEGT) can earn DCEGT for participating, but not completing GED, ESL and marketable level occupational training programs. While enrolled in the qualifying education program, inmates will earn DCEGT credit. However, DCEGT credit will show up on their sentence computation when they complete or withdraw from the qualifying program.

## Inmates with a Verified High School Diploma

In order to obtain a realistic and accurate assessment of an inmate's skill levels, a demonstration of literacy attainment must be verified for inmates with a high school diploma. Even though current policy accepts a high school diploma for custody classification, good time credits, education programs, etc., a high school diploma does not necessarily certify an inmate is literate. Inmates who have a high school diploma (not an AA or higher post-secondary degree) are encouraged to submit an Inmate Requests to Staff to the Education Department to request to sign-up for the Tests of Adult Basic Education (TABE) to validate their reading, language, and math computation, as well as applied math. The purpose of the TABE is to ensure these inmates have sufficient language and math skills to pursue their post-secondary education study and/or obtain a job in the community. Mastery of the reading, language, and math skills from the TABE is part of inmates' reentry plan.

## English as a Second Language (ESL)

The Crime Control Act of 1990 mandates non-English speaking federal prisoners participate in the ESL program. An inmates' communication skill level in English is evaluated at initial classification and interviews. Those found to have limited ability to communicate in English will be referred to the education department to determine proficiency at the 8th grade level or higher based on a nationally recognized achievement test. Inmates scoring less than the 8th grade level of proficiency will be enrolled in ESL until they function at the 8th grade level or above on a nationally recognized education achievement test.

If indicated by test scores, participation in ESL will be required regardless of education degree status. Inmates with high school diplomas or college degrees may be required to participate in the ESL program.

## Incentives

Incentive awards are provided to recognize inmates making satisfactory progress and successfully completing the literacy (i.e., GED and ESL) program.

Inmates may also receive incentives for progressing to various levels in the GED or ESL Programs. Graduation ceremonies recognize GED, ESL, and Occupational Education completions.

## Other Programs

The completion of the literacy program is often the first step towards adequate preparation for successful post-release reintegration into society. Additional educational programs such as advanced occupational training or college are needed in today's world. Vocational training and apprenticeship programs afford inmates an opportunity to obtain marketable job skills.

## Occupational Education Programs (if available)

Occupational Education programs prepare inmates for a specific occupation or cluster of occupations. Inmates can earn a Certificate, Associate of Arts Degree, Associate of Science Degree, or an industry accepted certificate upon the completion of occupational training programs. Occupational education programs vary institution-to-institution.

- Inmates must request initial enrollment through the Supervisor of Education. Education staff will determine an inmate's academic eligibility for enrollment and deportation status (if applicable).
- The Supervisor of Education will notify an inmates' Unit Team of enrollment consideration for occupational education programs.

## Apprenticeship (if available)

Apprenticeship training provides inmates the opportunity to participate in training which prepares them for employment in various trades. Apprenticeship programs in the BOP are registered with the Bureau of Apprenticeship and Training, U.S. Department of Labor. These programs are structured to offer on-the-job learning in industries. Upon completion of a registered trade, inmates can earn a Certificate of Completion from the Department of Labor.

## Adult Continuing Education (ACE)

ACE classes enhance an inmate's general knowledge on various subjects and address the skill deficits identified in an inmate's individual reentry plan. ACE classes are organized differently in different institutions. Typical ACE classes include: typing, computer literacy, foreign language, and business skills. These classes are usually offered during evening and weekend hours.

## Post-Secondary Education (Inmate Correspondence Courses)

Inmates are encouraged to expand their knowledge through a variety of methods, including correspondence courses. In general, inmates are permitted to enroll in any correspondence course that involves only "paper and pencil." Courses requiring equipment are generally not authorized. The cost for correspondence courses must be paid by the inmate. If an inmate has sufficient funds available in his commissary account, a Form BP-199 on TRULINCS may be used for payment. Inmates interested in enrolling in correspondence courses are required to contact the Staff Coordinator prior to enrollment. Catalogs are available from the Staff Coordinator. Diplomas or certificates from correspondence high school GED programs do not satisfy the criteria for an adult literacy program completion.

## Parenting

The Parenting Program provides inmates information and counseling through directed classes on how to enhance their relationship with their children even while incarcerated. All Parenting Programs include a classroom and visitation component. In addition, social service outreach contacts are often established to facilitate the provision of services to the inmate parent, visiting custodial parent, and children.

**Library Services**

Leisure libraries offer inmates a variety of reading materials, including but not limited to: periodicals, newspapers, fiction, non-fiction, and reference books. Institutions also participate in an interlibrary loan program with local, state, and college libraries.

**Electronic Law Libraries (ELL)**

Inmates are afforded access to legal materials and an opportunity to prepare legal documents in the ELL. Resources are available for inmates to prepare legal material via Trust Fund. A copying machine is available to reproduce materials needed for research. The price to reproduce materials is established by Trust Fund.

## RECREATION

**Recreation, Leisure, Wellness, and Social Programs**

The BOP encourages inmates to make constructive use of leisure time and offers group and individual activities. At each facility, physical fitness and leisure programs are provided to promote positive lifestyle changes. These programs strive to provide inmates with opportunities to reduce stress and enhance overall health and emotional well-being.

**Leisure Programs**

Institutions offer a wide range of activities in which inmates may participate when not performing assigned duties. Leisure activities include: organized and informal games, sports, physical fitness, table games, hobby crafts, music programs, intramural activities, social and cultural organizations.

**Art and Hobby Craft Programs**

Art and hobby craft programs are not meant for the mass production of art and hobby craft items or to provide a means of supplementing an inmate's income. Use of hobby craft room is a privilege that the Warden or staff delegated that authority may grant or deny.

Inmates are encouraged to participate in housing unit activities such as unit-based hobby craft (In-House Art). The Recreation Supervisor will coordinate housing unit activities with Unit Managers.

**Wellness Programs**

Wellness programs include screening, assessments, goal setting, classes, fitness, nutrition prescriptions and counseling.

**Photo Program**

Inmate photo program procedures consists of inmates purchasing a photo ticket through Commissary, exchanging one signed ticket for one picture taking to the inmate photographer during the below scheduled times.

General Population Photos: 5:00 p.m. to 8:00 p.m. on Saturday and Sunday.

Visiting Room Photos: 8:15 a.m. to 3:00 p.m. on Friday, Saturday, and Sunday.

*Visiting Room Photos also include Federal Holidays*

The areas that are designated for the inmate general population photographs are the gymnasium area at the AUSP.

Photo tickets may be purchased at the Commissary during normal sales periods. Inmates are allowed to purchase and have in their possession no more than 10 photo tickets.

Any photo that is deemed disruptive or inappropriate will be confiscated with no refund or retake photo tickets issued. Disruptive or inappropriate photos are, but not limited: gang related material, displaying of tattoos, inappropriate dress, or lack of.

**Recreation Areas and Hours**
Gymnasium:   6:00 a.m. to 10:45 a.m.
                   11:00 a.m. to 3:30 p.m.
                   4:30 p.m. to 8:30 p.m.

North Compound (Outside Recreation):  <u>Staff has the right away for movement on the north compound</u>.
                   6:00 a.m. to 10:45 a.m.
                   11:00 a.m. to 3:30 p.m.
                   4:30 p.m. to 8:30 p.m.

Weekends and Holidays (both areas):
                   6:00 a.m. to 9:45 a.m.
                   10:30 a.m. to 3:30 p.m.
                   4:30 p.m. to 8:30 p.m.

**Recreation and Zimmer**
The Zimmer Amendment was passed in 1996. The amendment does not allow for the BOP to use appropriated and non-appropriated funds to provide amenities or personal comforts in the Federal Prison System. Specifically, institutions activated prior to 1996 through attrition, will conform to the law. The main sections of Zimmer address: (1) viewing of R, X, or NC-17 movies; (2) instruction or training for boxing, wrestling, judo, karate or other martial arts or any body building or weightlifting equipment; and (3) electronic or electric instruments.

**Consequences for Rules Violation in Recreation**
Inmates are strongly encouraged to participate in recreation activities. However, when inmate behavior violates established rules, consequences may include an incident report and/or suspensions from programs.

## <u>RELIGIOUS SERVICES</u>

The Religious Services Department provides pastoral care and religious accommodation to individual and group religious beliefs and practices in accordance with the law, federal regulations and BOP policy. Chaplains also offer pastoral counseling, spiritual direction, support, and crisis intervention. Chaplains oversee the religious diet program, ceremonial religious meals and religious holiday observances.

Inmates are encouraged to read Institutional Supplement TOM 5360.09, Religious Beliefs and Practices, for more information.

**Emergency Notification**

You are encouraged to train your family to provide complete information to the institution in case of a family emergency. Incomplete information delays third-party verification, which delays notification you receive from staff.

Complete information includes, but is not limited to, the caller's name, address, telephone, the affected person's name, actual location and contact information, and the name and contact for an independent third-party who can verify. At Thomson, pastoral calls are placed via the Inmate Telephone System (ITS) unless you are documented as indigent.

**Faith-Based Re-Entry Programs (FBRE)**

New programs are offered year-round as volunteers are recruited. Some programs qualify for Release Preparation Planning (RPP) credit; others qualify for Life Threshold credit. Life Threshold is the Agency's primary FBRE program. Program offerings are posted in the housing units and on Trulincs.

Life Connection Program: Information regarding this faith-based pre-release program is available in the Religious Event Planning Binder, located in the Chapel for inmate review. A video introducing Life Connections will be presented after this orientation. Inmates are encouraged to speak with a Chaplain about the program afterward. A three-part orientation workbook may be provided after an interview with the chaplain. Note the selection criteria for applicants to Life Connections below, and ask a Chaplain for more information.

Program Selection Criteria:

- You must apply for the program voluntarily (BP-A741) within 24 to 36 months of projected release date. The length of time remaining on the sentence is not a consideration for high security or female inmates who have at least 30 months remaining before release. Those with shorter sentences have priority.
- You must not have a written deportation order.
- You must receive a recommendation from relevant components (Unit Team, Associate Warden, and Chaplaincy Team) (BP-A742).
- You will be approved by the sending institution's Warden (BP-A742).
- You will not be in FRP refuse status.
- You are meeting or have met GED obligations.
- You have met ESL obligations.
- You are willing to have the LCP site designated for them.
- You will participate in a three-session orientation.

**Religious Event Participation**

Sign up on a monthly basis using the paper forms supplied in the chapel program event binder. Electronic requests may also be sent. However, callouts will be keyed once per month; late requests may not be honored. An annual list of events and deadlines for application is posted on Trulincs, as are program schedules and flyers.

**Religious Personal Property**

See Institution Supplement TOM 5360.09B, Religious Beliefs and Practices.

# PSYCHOLOGY SERVICES

Psychology Services departments in all BOP institutions offer mental health care and counseling to inmates. This care may include screening, assessment and treatment of mental health or drug abuse problems, individual and/or group counseling, psycho-educational classes, self-help and supportive services, or referral to Health Services for medical treatment of a mental illness.

If you are new to the BOP, or if you have previously identified mental health or drug abuse programming needs, you will be scheduled for an interview with Psychology Services staff. The purpose of this interview is to review your history and identify your programming needs. A Psychologist may make recommendations to support your successful adjustment to prison and prepare you for your eventual release. We encourage you to participate actively in this process.

This interview is an ideal time for you to share your interest in specific services, such as drug abuse treatment or mental health counseling.

The Psychology Services department at this institution is currently staffed by a Chief Psychologist and Drug Abuse Program Coordinator. The department's offices are located in health services and group counseling is offered in the education area. There are a number of ways to contact Psychology Services at this institution.

You may:
- Submit an electronic Cop-out to TOM/InmatetoPsychologySvcs.
- Submit an Inmate Request to a Staff Member (a "Cop-out") to Psychology Services.
- Speak with a Psychology Services staff member during mainline or as they make rounds in your unit.
- Or in the case of a crisis situation, notify your Unit Officer, Unit Team, or any other BOP staff member of your urgent need to speak with Psychology Services.

## Suicide Prevention

Incarceration can be a difficult experience. At times, you may feel discouraged, frustrated, and helpless. It is not uncommon for people to experience depression while in jail or prison, especially if they are newly incarcerated, serving a long sentence, experiencing family problems, struggling to get along with other inmates, or receiving bad news. Over time, most inmates successfully adapt to incarceration and find ways to use their time productively and meaningfully. However, some inmates continue to struggle with the pressures of incarceration and become overwhelmed by a sense of hopelessness. If you feel a sense of hopelessness or begin thinking about suicide, talk to a staff member. Help is available and actively seeking help is a sign of your strength and determination to prevail. If you feel you are in imminent danger of harming yourself or someone else, you should contact a staff member immediately.

In addition, if you suspect another inmate is contemplating suicide, please notify a staff member. Staff do not always see everything inmates see. Most suicidal individuals display some warning signs of their intentions. PLEASE alert a staff member right away if you suspect a fellow inmate is considering suicide.

The most effective way to prevent another person from taking his or her life is to recognize the factors that put people at risk for suicide take warning signs seriously and know how to respond.
The warning signs of suicide may include:

- Threatening to hurt or kill oneself or talking about wanting to hurt or kill oneself.
- Feeling hopeless.

- Feeling rage or uncontrolled anger or seeking revenge.
- Increased alcohol or drug use.
- Withdrawing from friends, family, associates.
- Experiencing dramatic mood changes.
- Feeling anxious or agitated, being unable to sleep, or sleeping all the time.
- Seeing no reason for living or having no sense of purpose.

If your friend, cellmate, coworker, or associate is exhibiting these signs, start by telling the person you are concerned and give him/her examples of what you see that worries you.

Listen and encourage the person to seek help. If they are hesitant, offer to go with them to speak to a staff member.

If you are not confident they will seek help, notify a staff member yourself. Seeking help for a person in distress is not "snitching"; it is showing concern for the welfare of a fellow human being. If you report your concerns to staff, you can rest easy knowing you did everything within your power to assist the individual.

**Drug Abuse Programs**
Drug abuse programming is available in all BOP institutions. The BOP offers a drug education course as well as non-residential treatment options for inmates who have abused alcohol and/or drugs. Contact the Drug Abuse Program Coordinator for more information.

**Drug Abuse Education Course**
The Drug Abuse Education Course is not drug treatment. The purpose of the course is to encourage you to review the consequences of your choice to have drugs in your life, to look at the relationship between drug use and crime, and to begin to think about how different your life could be without drugs. Looking at your drug involvement in this way may motivate you to ask for drug abuse treatment. If your pre-sentence report documents a prolonged history of drug use, evidence that alcohol or drug use contributed to the commission of your offense, a judicial recommendation for treatment, or a violation of community supervision as a result of alcohol or drug use, you are required to take the Drug Abuse Education Course. Failing to take this required course will result in your ineligibility for performance pay above maintenance pay level, as well as ineligibility for bonus or vacation pay. You will also not be eligible for a Federal Prison Industries work program assignment.

The Drug Abuse Education Course is available in every BOP institution. If you are required to complete the course, your name will automatically be placed on the waiting list for the course. When it is time for you to complete the course, Psychology Services staff will contact you. If you would like to enroll in the course, but are not required to participate, you may submit an Inmate Request to a Staff Member (a "Cop-Out") in order to place your name on the waiting list for the course.

**Nonresidential Drug Abuse Treatment**
Nonresidential Drug Abuse Treatment is also available in every Bureau institution. Nonresidential Drug Abuse Treatment has been developed to provide the flexibility necessary to meet each individual's treatment needs, and more specifically for:

- Inmates with a relatively minor or low-level drug abuse problem.
- Inmates with a drug use disorder who do not have sufficient time to complete the intensive Residential Drug Abuse Treatment Program (RDAP).
- Inmates with longer sentences who are in need of treatment and are awaiting placement in the RDAP.

- Inmates with a drug use history who chose not to participate in the RDAP, but want to prepare for staying sober in the community.
- Inmates who completed the unit-based portion of the RDAP and are required to continue treatment until their transfer to a Residential Reentry Center (halfway house).

Program completion awards are only available for those who complete the program. If you are interested, ask the institution's drug abuse treatment staff for more information on these awards.

**Residential Drug Abuse Treatment**
The Residential Drug Abuse Program (RDAP) provides intensive drug abuse treatment to inmates diagnosed with a drug use disorder.

Inmates in the residential program are housed together in a treatment unit that is set apart from the general population. Treatment is provided for a minimum 9 months; however, your time in the program depends on your progress in treatment.

To apply for the RDAP you must send an Inmate Request to a Staff Member (a "Cop-Out") to obtain an interview for the program. First, staff will screen your pre-sentence report to determine if there is any documentation indicating that you have a pattern of drug abuse or dependence. If so, you will be referred to the Drug Abuse Program Coordinator for an interview to determine if you meet the diagnostic criteria for a substance use disorder.

Inmates who are diagnosed with a drug use disorder are qualified for the RDAP and are admitted to the program based on their nearness to release, as mandated by federal statute. You must have enough time left to serve on your sentence to complete the unit-based component and the community transition component of the program. Follow-up Treatment, as described earlier, is provided to inmates after they complete the unit-based component and before they transfer to a residential reentry center.

The RDAP is operated as a modified therapeutic community where inmates are expected to model the pro-social behaviors expected in a community. This means RDAP participants are role models to other inmates. Therefore, they are to demonstrate honesty, to relate positively with their peers, and to fully participate in all treatment activities in the unit. The RDAP is a half-day program, with the rest of the day devoted to work, school, and other self-improvement activities. RDAP is available in 76 BOP institutions. RDAP is **not** available at AUSP Thomson.

If you are interested in volunteering for the RDAP and would like to know if you are eligible for the program, contact the institution's Drug Abuse Program Coordinator. You may apply for the program at any time during your incarceration, but your interview, like program admittance, will be based on your proximity to release. Ordinarily inmates are interviewed 42-24 months from release depending on the facility's security level and waiting list for the RDAP.

**Early Release**
The Violent Crime Control and Law Enforcement Act of 1994 allows the BOP to grant a non- violent inmate up to 1 year off his or her term of imprisonment for successful completion of the residential drug abuse treatment program (Title 18 U.S.C. § 3621(e)(2)).

For more information, talk to an institution Drug Abuse Treatment Program Coordinator.

**Community Transition Drug Abuse Treatment**
To successfully complete the RDAP, inmates are required to participate in the Community Transition Drug Abuse Treatment component of the program.

The BOP ensures that inmates receive continued treatment when transferred to a Residential Reentry Center (RRC) or to home confinement.

The RRC is structured to help you adjust to life in the community and find suitable post-release employment. RRCs provide a structured, supervised environment and support job placement, counseling, and other services. Within the structure of the RRC, RDAP participants continue their drug abuse treatment, with a community-based treatment provider. The BOP contracts with this provider to deliver treatment services in the community. Inmates must continue to participate in transition drug abuse treatment to earn any benefit associated with successful completion of the RDAP, e.g., early release.

In addition to these drug abuse programs, drug abuse treatment services may also be provided within the context of other specialized treatment programs with the BOP, such as the Resolve Program and the Challenge Program.

**Specialized Mental Health Programs**
The BOP also has several residential mental health programs designed to help inmates with severe emotional, cognitive, and behavioral problems. These programs are indicated for inmates who are having difficulty functioning in a mainline institution due to a psychological disorder. They are designed to improve the day to day functioning of inmates with the goal of helping them return to a mainline institution or preventing the need for hospitalization. Psychology Services has additional information about these programs and can make recommendations for participation.

**The Sex Offender Management Program**
The BOP offers sex offender treatment programs at our Sex Offender Management Program (SOMP) institutions. SOMP institutions have a higher proportion of sex offenders in their general population. Having a larger number of sex offenders at SOMP institutions ensures that treatment volunteers feel safe about participating in programming.

The BOP's sex offender treatment programs are stratified into two program levels:

1.) **The Residential Sex Offender Treatment Program**
    The Residential Sex Offender Treatment Program (SOTP-R) is a high intensity program designed for high-risk sexual offenders - ordinarily inmates with multiple sex offenses, or a history of contact sexual offenders. The SOTP-R is offered at the Federal Medical Center (FMC) in Devens, Massachusetts and at USP Marion in Illinois.

2.) **The Non-residential Sex Offender Treatment Program**
    The Non-residential Sex Offender Treatment Program (SOTP-NR) is a moderate intensity program designed for low to moderate risk sexual offenders. Many of the inmates in the SOTP-NR are first-time offenders serving a sentence for an Internet sex crime. All SOMP institutions offer the SOTP-NR.

When you volunteer for treatment, BOP staff will determine whether the Residential or Non-residential Treatment Program is appropriate for you based on your offense history.

If eligible for treatment, you will be transferred to a SOMP institution based on your treatment needs and security level.

If you are interested in receiving sex offender treatment and would like to know if you are eligible for the program, contact Psychology Services.

You may apply at any point in your sentence. However, inmates ordinarily enter treatment when they have between 24 to 42 months remaining on their sentence. If you are at the beginning of your sentence or have more than 48 months remaining on your sentence, you may want to wait before applying for the program.

**Confidentiality**

Security needs and the nature of a prison environment affect mental health care in a variety of ways. Confidentiality is an important component of the therapeutic relationship. However, in a prison environment, confidentiality must be weighed against institutional needs of safety and security.

Mental health providers in the institution not only serve inmates, they also serve the institution and the public at large.

In the community, certain situations require mental health providers to violate client confidentiality. For example, many states mandate reporting of child or elder abuse.

Providers also must notify authorities if a client threatens suicide or serious harm to others. Similarly, prison mental health providers violate confidentiality when an inmate is at risk of serious harm to themselves or others, such as when an inmate presents a clear and present risk of escape or when an inmate is responsible for the creation of disorder within a facility.

Confidentiality may also be limited when prison mental health providers share information on a need-to-know basis with prison officials or other federal law enforcement entities. For example, before you are transferred to a RRC, mental health providers must communicate your mental health needs to your Unit Team.

If you tell a staff member that you are going to harm or kill yourself or someone else, or engage in a behavior that jeopardizes the safety or security of the institution, confidentiality will be breached and the appropriate individuals will be notified on a need-to-know basis only. Simply put, there is no guarantee of confidentiality in the prison setting. However, you can rely on the professional judgment of Psychology Services staff who conscientiously balance your confidentiality and the safety and security of the institution. Information that does not impact the safety and security of the institution, inmates, and staff, will not be shared. While these limitations on confidentiality may initially deter you from seeking treatment, the BOP assures you the vast majority of inmates who receive psychological services are comfortable with the decisions staff make with regard to their confidentiality. If you have additional questions about confidentiality, be certain to discuss your concerns with Psychology Services staff.

**Escorted Trips**

Escorted trips provide approved inmates with staff escorted trips into the community for such purposes as receiving medical treatment not otherwise available, for visiting a critically ill member of the inmate's immediate family, or for participating in programs or work related functions. Additionally, bedside visits and funeral trips may be authorized for inmates with custody levels below maximum. All expenses will be borne by the inmate, except for the first eight hours of each day that the employee is on duty. There are occasions based on a determination that the perceived danger to BOP staff during the proposed visit is too great, or the security concerns about the individual inmate outweigh the need to visit the community.

**Furloughs**

A furlough is an authorized absence from an institution by an inmate who is not under the escort of a staff member, a U.S. Marshal, other federal or state agent.

Furloughs are a privilege, not a right, and are only granted when clearly in the public interest and for the furtherance of a legitimate correctional goal.

An inmate who meets the eligibility requirements may submit an application for furlough (form BP-S291.052) to staff for approval.

## Central Inmate Monitoring System

The Central Inmate Monitoring System (CIMS) is a method for the Agency to monitor and control the transfer, temporary release, and participation in community activities of inmates who pose special management considerations. Designation as a CIMS case does not, in and of itself, prevent an inmate from participating in community activities. All inmates who are designated as CIMS cases will be notified by their Case Manager.

## Marriages

If an inmate wishes to be married while incarcerated, the Warden may authorize him to do so under certain conditions. All expenses of the marriage will be paid by the inmate.

If an inmate requests permission to marry he must:

- Have a letter from the intended spouse which verifies their intention to marry.
- Demonstrate legal eligibility to marry.
- Be mentally competent.
- The marriage must not present a security risk to the institution.

Marriage procedures are detailed in the local Institution Supplement TOM 5326.05 (Marriages of Inmates).

## Barber Shop

You are expected to keep your hair neat and clean. You may not wear an artificial hairpiece. Mustaches and beards are permitted.

The Barber Shop is open 5:00 p.m. – 8:00 p.m. on the following days:

- Monday (A1)
- Tuesday (A2)
- Wednesday (A3)
- Thursday (A4)
- Friday (SHU)

The Barber Shop is closed during all official counts. There will be no hair cutting anywhere other than the Barber Shop.

The Barber Shop is located in its designated area in A-Unit.

## <u>MEDICAL SERVICES</u>

The BOP inmate health care delivery system includes local ambulatory clinics as well as major medical centers. Emergency medical care is available 24 hours a day in all BOP facilities. BOP clinical staff typically covers the day and evening shifts and community emergency personnel meet emergency needs when BOP clinical staff is not on-site.

The Health Services Unit at AUSP Thomson functions as an ambulatory outpatient clinic. The Medical Staff consists of physicians, mid-level practitioners and medical and administrative ancillary support staff.

Health Services staff are available seven days per week.
Regular hours of operation are 6:00 a.m. to 6:00 p.m.

To obtain after hours emergency services, notify a staff member of your emergency immediately. Emergency medical care may be administered if an injury or illness requires emergency treatment.

## Medical Sick Call Procedures

Inmates may request medical care for a condition requiring immediate attention through sick call, by signing up in the Health Services Unit between 7:00 a.m. and 7:20 a.m. on Monday, Tuesday, Thursday, or Friday of each week. Inmates must be in the proper uniform and must show their assigned commissary ID card in order to be seen.

- Your medical complaint will be evaluated, triaged and scheduled accordingly.
- Medical complaints identified as emergencies will be a priority.
- Inmates will be encouraged by the healthcare provider to manage their complaints with over-the-counter medications.
- Failure to report for a scheduled call-out appointment may result in an incident report.
- If an inmate is late for a scheduled call-out appointment, for reasons other than an institutional operation, the appointment may be canceled, requiring the inmate to sign up for sick call to be evaluated.

Inmates will not be permitted in the Health Services Unit without an appointment or call-out. Inmates reporting to medical without a call-out or noted appointment are considered as being out of bounds, unless accompanied by a staff escort. An incident report may be written.

## Emergency Medical Treatment

A healthcare provider is available during normal working hours. Should you become ill or injured after sick call, you must notify any staff member. The healthcare provider will arrange for the most appropriate time for you to be seen in the clinic. Once your emergency status has been evaluated, you will either be treated "as an emergency" or referred to sick call for treatment in accordance with the triage protocol. At no time will an inmate report to Health Services without the approval of a medical staff member.

## Notice to Inmates - Inmate Copayment Program

Pursuant to the Federal Prisoner Health Care Copayment Act (FHCCA) of 2000 (P.L. 106-294, 18 U.S.C. 4048), the Federal Bureau of Prisons and AUSP Thomson provide notice of the Inmate Copayment Program for health care, effective October 3, 2005.

A. **Application**
   The Inmate Copayment Program applies to anyone in an institution under BOP jurisdiction and anyone who has been charged with, or convicted of, an offense against the United States, except inmates in an inpatient status at a Medical Referral Center (MRC). All inmates in an outpatient status at an MRC, and inmates assigned to the general population at these facilities, are subject to copay fees.

B.    **Health Care Visits with a Fee**
You must pay a fee of $2.00 for health care services, charged to your Inmate Commissary Account, per health care visit, if you receive health care services in connection with a health care visit that you requested, except for services described in section C at the end of this handbook.

These requested visits include sick call and after-hours requests to see a health care provider.

If you ask a non-medical staff member to contact medical staff to request a medical evaluation on your behalf for a health service not listed in section C at the end of this handbook, you will be charged a $2.00 co-pay fee for that visit.

You must pay a fee of $2.00 for health care services, charged to your Inmate Commissary Account, per health care visit, if you are found responsible through the Discipline Hearing Process to have injured an inmate who, as a result of the injury, requires a health care visit.

C.    **Health Care Visits with no Fee:**

A co-payment will not be charged for:

- Health care services based on health care staff referrals.
- Heath care staff follow up treatment.
- Preventive health care services.
- Emergency services.
- Diagnosis or treatment of chronic infectious diseases.
- Mental health care.
- Substance abuse treatment.

If a health care provider orders or approves any of the following:

- Blood pressure monitoring.
- Glucose monitoring.
- Insulin injections.
- Chronic care clinics.
- TB testing.
- Vaccinations.
- Wound care.
- Patient education.

Your health care provider will determine if the type of appointment scheduled is subject to a copay fee.

D.    **Inmates without Funds:**
An inmate without funds (indigent inmate) is defined as an inmate who has not had a Trust Fund account balance of $6.00 for the past 30 days. You will not be charged a healthcare service fee if you are considered indigent and unable to pay the fee. Health care services will never be denied due to insufficient funds. However, the Warden may impose restrictions on an inmate to prevent abuse of this provision.

Example: An inmate shows a pattern of depleting his or her Commissary funds before requesting health care services.

If an inmate is NOT indigent, but does not have sufficient funds to make the copay fee on the date of the appointment, a debt will be established by TRUFACS and the amount will be deducted as funds are deposited into the inmate's Commissary Account.

**Medication Line** (Pill Line)
Should you require medication to be dispensed at specific times; this will be arranged with Medical staff and Pharmacy Services. Certain medications are dispensed one dose at a time.

If you are prescribed such medication, you will be instructed to report to the Health Services Unit Pharmacy at the appropriate times to receive your medication.

*\*Pill line times may vary depending upon staffing and delayed counts.*

\*Controlled medications are dispensed at the pharmacy "pill line" during specified time periods. These times include:

| Monday - Friday | Saturday, Sunday & Holidays |
|---|---|
| 6:30 a.m. to 6:45 a.m. Pill & Insulin Line | 6:30 a.m. to 6:45 a.m. Pill & Insulin Line |
| 7:00 a.m. to 7:20 a.m. Sick Call Only (Except **Wednesday)** | 7:00 a.m. to 7:20 a.m. Sick Call Only No Pill-Pick-Ups |
| 11:15 a.m. to 12:00 p.m. Pill Pick-Ups | 4:30 p.m. to 4:50 p.m. Pill & Insulin Line |
| 4:30 p.m. to 4:50 p.m. Pill & Insulin Line | |

**Over-the-Counter-Medication (OTC)**
A variety of OTC medication is available in the commissary for purchase unless the inmate meets the criteria for indigent status. Indigent inmates may submit a Pharmacy OTC Medication Request form to the Pharmacy to obtain OTC medications.

**Eyeglasses**
You may request a vision screen by signing up through sick-call procedures. You will be assessed by a healthcare provider to discuss your concern and scheduled accordingly. An eye examination may be ordered by your healthcare provider based on need. If, after examination by the Optometrist, it is determined you require prescription eyewear, a pair of standard issue eyeglasses will be provided. Inmates may retain their eyeglasses at admission if there are no security concerns; however the BOP will not repair personal glasses. Glasses will not be allowed to be sent from home. The BOP will furnish prescription eyeglasses with a current prescription in the medical file. You are entitled to one pair of eyeglasses per year. If you misplace or damage the eyeglasses within the one-year period, a $20.00 fee will be imposed for replacement.

**Contact Lenses**
Contact lenses may be prescribed only when, in the clinical judgment of the optometrist with the concurrence of the Clinical Director and Health Services Administrator (HSA), an eye-refractive error is best treated with contact lenses. Inmates arriving at AUSP Thomson with contact lenses not previously approved by a BOP provider will be allowed to retain them pending further eye examination by the BOP optometrist. If not medically necessary, the inmate will be prescribed eyeglasses and the contact lenses will be mailed home once the eyeglasses are received.

**A & O Physical Examination**
If you are newly committed to the Bureau of Prisons, you will receive a complete physical examination within 14 calendar days of your arrival to the institution.

This examination includes a complete physical, various screening tests and immunizations.

Inmates transferring from other federal institutions will have their medical record reviewed for any required medical testing or examinations.

HIV and Hepatitis C testing will be offered to each newly committed inmate upon arrival. BOP policy requires you to sign a refusal if you decline to be tested for HIV.

Inmates who have a chronic medical condition and are enrolled in a Chronic Care Clinic will be assessed by the Physician within 14 days of arrival for a re-evaluation of your medical condition and medication needs.

You may request, through an Inmate Request to Staff Member form, a complete physical examination similar to the new commitment examination every two years or yearly if you are over 50 years old. If you are being released from the Bureau of Prisons, you may receive a physical examination, on request, if you have not received one in the last year. You should send your request at least two months before your scheduled release date to allow time for the appointment to be scheduled.

**Preventative Health Care**
The Preventative Health Care Clinic is being offered to inmates to promote healthy living: prevent disease, provide screening for infectious diseases, cancer and chronic diseases and to update immunizations. If you are interested in participating in the clinic, you may request a Preventative Health Care appointment by submitting your request to Health Services via an Inmate Request to Staff form.

**Testing for Communicable Diseases**
There are several diseases which can potentially be spread in a prison environment. Three of the more serious diseases are Human Immunodeficiency Virus (HIV) which causes AIDS, Hepatitis B and C and Tuberculosis (TB).

The viruses that cause chronic infection, such as HIV and Hepatitis B and C can only be passed from an infected person to another by providing a means for a small quantity of their blood or semen to come into contact with your blood stream.

This means that it is likely you will develop one of these diseases if you participate in high-risk behaviors with an infected person.

This high-risk activity includes sexual contact, sharing needles, syringes, or other drug paraphernalia, tattooing and body piercing.

Inmates may request a screening for infectious diseases, whether or not you have been involved in high-risk behavior at any time, through an Inmate Request to Staff Member form or during a clinical encounter with a medical provider.

Tuberculosis is usually spread through the air when inhaling the mist from someone with the disease who has sneezed or coughed. We test each inmate arriving at the institution for this disease. If you think you may have been exposed to someone in the past with tuberculosis, you should inform us.

**<u>DENTAL SERVICES</u>**
Dental services for routine care and emergency are available.

**ACCESS TO CARE**

If you require/request dental care, you may do so by submitting a cop-out (Inmate Request to Staff Form BP-A0148), or by submitting an e-mail via TRULINCS (TOM/InmateToDental@bop.gov).

**DENTAL SICK CALL**

Dental sick call is available Monday, Tuesday, Thursday, and Friday 7:00 a.m. to 7:20 a.m.

Inmates requiring dental care will report to Health Services sick call, submit a cop-out (Inmate Request to Staff Form BP-A0148), or by submitting an e-mail via TRULINCS (TOM/InmateToDental@bop.gov).

Inmates need to report to Health Services waiting area, sign-in, and be seated. You will be processed accordingly. Co-pay is applied at the time of assessment. Inmates must be in the proper uniform, and show their assigned commissary ID card in order to be seen.

If an inmate is late for a scheduled call-out appointment, or does not report for a scheduled call-out for reasons other than an institutional operation, the appointment will be canceled and documented as "complete due to patient no show." The inmate will then need to sign up for sick call to be seen. If an inmate leaves before being seen, the sick call sign up will be voided, and they must sign up for sick call again at later date.

**AFTER HOURS DENTAL EMERGENCY**

Report to any staff member, and they will contact Medical/Dental Services.

**ROUTINE CARE**

All permanently designated inmates are eligible to sign up for routine care. Depending on the treatment plan and eligibility, Dental routine care may include an exam with the necessary radiograph, restoration (filling), extraction and/or other treatment.

Dental routine care is elective and the patient must sign up for the routine care list.

Inmates currently housed in the Special Housing Unit (SHU) are eligible for routine care after 12 months.

Dental call-outs will be posted in the housing units, as well as sent via TRULINCS e-mail from Dental Services. E-mail call-outs will be sent the day before the appointment. Monday call-outs sent by e-mail will be posted on the previous Friday.

If an inmate is late for a scheduled appointment, or does not report for a call-out, for reasons other than an institutional operation, the appointment will be canceled and considered an unexcused absence. Any inmate on the Routine Care list will be removed from list after 2 consecutive unexcused absences (Program Statement 6400.03).

Acceptable excused absences:
- A staff member contacts Dental Services requesting an inmate be excused.
- A conflict with an inmate visit is confirmed in Sentry.

All other absences will be recognized as "unexcused" unless authorized by Dental staff prior to the scheduled appointment.

Dental Services does not have an automatic recall for dental cleaning. If you wish to have a dental cleaning, please submit a request by electronic message (e-mail), or by cop-out no sooner than 9 months after your last cleaning.

**DENTAL APPLIANCES**

All dental appliances (including, but not limited to mouth guard, dentures, retainers), regardless of origin (BOP, State, outside), needs to be recorded in the BOP charting system as "dental appliances".

Inmates with multiple sets of dental appliances will only be allowed to keep one set. The remaining set(s) can be sent home at the patient's expense, or they will be discarded.

**Administrative Concerns/Grievances**

You may seek a review of issues related to health service fees through the Bureau's Administrative Remedy Program (see 28 CFR part 542).

If you have concerns or questions of an administrative nature concerning Health Services, you may address them, in writing via an Inmate Request to Staff Member (cop-out), or discuss them with the HSA or designee during mainline.

If you are unable to resolve your issue, you may pursue your complaint through the Formal Administrative Remedy process. You have a right to necessary medical and dental care. However, if a treatment and/or care plan has been recommended, you may choose to refuse the treatment. You will be expected to sign a refusal form which will be placed in your medical record.

**Living Wills**

Inmates are entitled to a Living Will, otherwise known as an Advance Directive. This is a legal document by which a patient expresses his/her health care wishes in the event of a terminal or irreversible condition, during which that individual is no longer able to communicate such wishes to the health care provider due to incapacitation.

If you want to have a Living Will, the criteria and procedures are as follows:

1. Obtain a copy of the Illinois statue pertaining to Living Wills.
2. Contact family and/or legal counsel to have the document prepared.
3. When the inmate has received a copy of the legal final document, he must make an appointment with the Clinical Director for a review of the document and discussion of his legal request. A copy will be placed in the inmate's medical record.

At no time will any staff member assist an inmate in preparing a Living Will. If an inmate has questions concerning a Living Will, he will be directed to the Health Services Administrator.

In the absence of a Living Will or Advanced Directive, the Bureau of Prisons will ensure life-sustaining measures such as Cardiopulmonary Resuscitation, ventilators and other life support mechanics are provided.

Removal from life support will require court action either by the Bureau of Prisons or the affected inmate's family.

**Patient's Rights and Responsibilities**

See Attachment A.

## <u>MAIL ROOM, RECEIVING AND DISCHARGE (R&D) AND RECORDS OFFICE</u>

The Correctional Systems Department (CSD) consists of the Mail Room, Receiving and Discharge, and the Records Office which is located in D-Unit.

| CSD Open House Hours | |
|---|---|
| Tuesday and Thursday  (except holidays) | 11:00 a.m. – 11:30 a.m. |
| Subject to change based on day of bus, work call hours | |
| CMC/SCSS mainline during noon-meal | |

**Mail Operations**

**Outgoing mail at the AUSP may not be sealed.** All outgoing inmate mail will be picked up Monday through Friday and delivered to the Mail Room for processing. You must print your full name, register number and the institution's return address on all outgoing mail as follows: **NO ABREVIATIONS**

Committed Name/Register Number
Administrative United States Penitentiary Thomson
Post Office Box 1002
Thomson, Illinois 61285

If this information is not on your letters, they will be returned to you.  All incoming mail for the  inmate population must be received through the United States Post Office.  This includes all  letters, mail and packages.  You are not allowed to correspond with inmates confined at other  federal institutions without prior written approval by the Unit Manager of each inmate at each  facility.

Correspondence with inmates confined in non-federal institutions requires prior written  approval by the Warden at each facility.  Outgoing legal mail may be sealed but needs to be  taken to the Case Management Coordinator at the afternoon meal Monday through Friday (except holidays).

**Correspondence**

In most cases, inmates are permitted to correspond with the public, family members and others  without prior approval. Outgoing mail from AUSP Thomson may be read and inspected by Correctional Services staff. Inmates will be responsible for the contents of all of their letters. Correspondence containing threats, extortion, etc., may result in prosecution for violation of  federal laws.

Inmates may be placed on restricted correspondence status based on misconduct or as a result of classification. The inmate is notified of this placement and has the opportunity to respond. Mail  service to inmates is ordinarily provided on a five-day  schedule, Monday through Friday.  Usually, weekend and holiday mail services are not provided.

**Incoming Correspondence**

First class mail is distributed Monday through Friday (except holidays) by the evening watch Correctional Officer in each living unit.

Legal and Special Mail will be distributed by Unit staff and opened in the presence of the inmate.  Inmates are asked to advise those writing to them to put the inmate's registration number and  Housing Unit on the envelope to aid the prompt delivery of mail.

All inmate packages must have prior authorization unless otherwise approved under BOP policy.

**Incoming Publications**

The BOP permits inmates to subscribe to and receive publications without prior approval as described in Program Statement Incoming Publications 5266.11.

The term publication means a book, booklet, pamphlet, or similar document, or a single issue of a magazine, periodical, newsletter, newspaper, plus such other materials addressed to a specific inmate, such as advertising brochures, flyers, and catalogs. An inmate may only receive hard cover publications and newspapers from the publisher, a book club, or a bookstore. At minimum and low security institutions, an inmate may receive softcover publications (other than newspapers) from any source. At medium, high, and administrative institutions, an inmate may receive softcover publications only from the publisher, a book club, or a bookstore.

**Special Mail**
Special Mail is a category of correspondence sent to the following: President and Vice President of the United States, the U.S. Department of Justice (including the BOP), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other federal and state law enforcement offices, attorneys, and representatives of the news media.

Special mail also includes correspondence received from the following: President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts.

A designated staff member opens incoming Special Mail in the presence of the inmate. These items will be checked for physical contraband, funds, and for qualification as Special Mail; the correspondence will not be read or copied if the sender has adequately identified himself/herself on the envelope and the front of the envelop clearly indicates that the correspondence is "Special Mail – Open only in the presence of the inmate" or with similar language. Without adequate identification as Special Mail, the staff may treat the mail as general correspondence. In this case, the mail may be opened, read, and inspected.

**Inmate Correspondence with Representatives of the News Media**
An inmate may write, following Special Mail procedures, to representatives of the news media when specified by name and title. The inmate may not receive compensation or anything of value for correspondence with the news media. The inmate may not act as a reporter, publish under a byline, or conduct a business or profession while in BOP custody.

Representatives of the news media may initiate correspondence with an inmate. Correspondence from a representative of the news media will be opened, inspected for contraband, for qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to BOP regulations.

**Correspondence between Confined Inmates**
An inmate may be permitted to correspond with an inmate confined in another penal or correctional institution. This is permitted if the other inmate is either a member of the immediate family (mother, father, sister, child, or spouse), or party in a current legal action (or a witness) in which both parties are involved. The Unit Manager at each institution must approve the correspondence if both inmates are housed in federal institutions.

## Rejection of Correspondence

The Warden may reject general correspondence sent by or to an inmate if it is determined to be detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity.

## Notification of Rejection

The Associate Warden of Programs will give written notice to the sender concerning the rejection of mail and the reasons for rejection. The sender of the rejected correspondence may appeal the rejection. The inmate may also be notified of the rejection of correspondence and the reasons for it. The inmate also has the right to appeal the rejection.

The Warden shall refer the appeal to a designated Officer other than the one who originally disapproved the correspondence. Rejected correspondence ordinarily will be returned to the sender.

## Change of Address/Forwarding of Mail

Mail Room staff will make available to an inmate who is being released or transferred a change of address form. General correspondence (as opposed to special mail) will be forwarded to the new address for 30 days. After 30 days, general correspondence is returned to sender with the notation "Not at this address–return to sender." Staff will use all practical means to forward special mail. After 30 days, the SENTRY address will be used to forward special mail.

## Certified/Registered Mail

Inmates may use certified, registered, or insured mail services. Other mail services such as stamp collecting, express mail, cash on delivery (COD), and private carriers are not provided.

## Telephones

Telephone privileges are a supplemental means of maintaining community and family ties. Telephones are to be used for lawful purposes only.

Threats, extortion, etc. may result in prosecution. All inmate telephones are subject to monitoring and recording. Inmates must contact a member of the Unit Team to arrange an unmonitored attorney call.

While policy specifically allows inmates to make one call every three months, there is no specific limit on the number of phone calls that an inmate may make. It is expected that each inmate will handle his calls in such a manner that will allow the equal use of the phones by all inmates. Calls are limited to fifteen (15) minutes in duration.

Each inmate is allowed 300 minutes of calling time per month, unless on telephone restriction. Telephones will not be used to conduct a business.

Inmates are allowed to have thirty (30) approved numbers on their phone list. In order to use the system, you will have to transfer funds from your commissary account to your individual telephone account. There are telephones located in each housing unit for your use. No third party, credit card calls, 1-800, 1-900, 1-888, or 1-976 can be made on these lines. Collect calls can also be made to pre-approved telephone numbers.

Inmates will be given their SECRET PAC (nine digits) number by your Correctional Counselor. This will allow you to place a call by first entering the telephone number followed by your nine-d i g i t PAC number. Giving or selling your PAC number will result in disciplinary action.

All calls are automatically terminated after fifteen (15) minutes. A waiting period may be established between calls.

It is each inmate's responsibility to maintain their PAC in a way to ensure no other inmate has access to it. Inmates found to be sharing their telephone account with other inmates will result in disciplinary action taken with all inmates involved. Third part telephone contact will also result in disciplinary action. This could include, but is not limited to three way calls, call forwarding, the use of two or more telephones to communicate, and/or ANY circumstance in which the party called establishes third party telephone contact.

## LEGAL SERVICES

### Legal Correspondence
Legal correspondence from attorneys will be treated as Special Mail if it is adequately marked.

The envelope must be marked with the **attorney's name** and an indication that he/she is an attorney and the front of the envelope must be marked as **"Special Mail - open only in the presence of the inmate"** or with similar language clearly indicating the particular correspondence qualifies as legal mail and the attorney is requesting the correspondence be opened only in the inmate's presence. It is the responsibility of the inmate to advise his/her attorney of these requirements. If legal mail is not adequately marked, it may be opened as general correspondence.

### Attorney Visits
Attorneys are encouraged to visit during regular visiting hours, by advance appointment. However, visits from an attorney can be arranged at other times based on the circumstances of each case and the availability of staff.

Attorney visits will be subject to visual monitoring, but not audio monitoring. The Unit Team will make arrangements for attorney visits.

### Legal Material
During attorney visits, a reasonable amount of legal materials may be allowed in the visiting area, with prior approval. Legal material may be transferred, but is subject to inspection for contraband. Inmates are expected to handle the transfer of legal materials through the mail as often as possible.

### Attorney Phone Calls
In order to make an unmonitored phone call with an attorney, the inmate must demonstrate to the Unit Team the need, such as an imminent court deadline. Inmates are responsible for the expense of unmonitored attorney telephone calls. When possible, it is preferred that inmates place an unmonitored, collect legal call. Phone calls placed through the regular inmate phones are subject to monitoring.

### Law Library
Inmates are afforded access to legal materials and an opportunity to prepare legal documents in the Electronic Law Libraries (ELL). Resources are available for inmates to prepare legal material via Trust Fund.

### Notary Public
Unit staff will not be available to notarize your legal documents. If something needs to be notarized, inmates will be required to find an outside notary. You will then need to coordinate a Special Visit with your Unit Team. Inmates will also be responsible for all costs associated with the notary service.

**Copies of Legal Material**
Inmates may copy material necessary for their research or legal matters. A copying machine is available in the Education Department library for inmate use for a nominal fee. Individuals who have no funds and who can demonstrate a clear need for particular copies may submit a written request for a reasonable amount of free duplication through the Unit Team.

**Federal Tort Claims**
If the negligence of institution staff results in personal injury or property loss or damage to an inmate, it can be the basis of a claim under the Federal Tort Claims Act. To file such a claim, inmates must complete a Standard Form 95. Inmates may obtain this form by submitting an Inmate Request to Staff Member through their Correctional Counselor.

**Freedom of Information/Privacy Act of 1974**
The Privacy Act of 1974 forbids the release of information from agency records without a written request, or without the prior written consent of the individual to whom the record pertained, except for specific instances. All formal requests for access to records about another person and/or agency record other than those pertaining to themselves shall be processed through the Freedom of Information Act (FOIA), 5 USC 552. Requests may be made in writing to:

FOIA Branch
Federal Bureau of Prisons
320 First St. N.W.
Washington, D.C. 20534.

**Inmate Access to Central Files and Other Documents**
An inmate may request to view his/her central file (minus the FOIA section) under the supervision of his/her Case Manager by submitting a cop-out to the Unit Team.

An inmate does not need to submit a FOIA Act Request to the Director of the BOP unless the information requested is in the FOIA Exempt section. Likewise, an inmate wishing to review his/her medical file should send a request to Health Services.

An inmate can request access to the non-disclosable documents in his central file and medical file, or other documents concerning himself that are not in his central file or medical file, by submitting a Freedom of Information Act Request to the Director of the BOP, Attention: FOI Request.

A request on the behalf of an inmate by an attorney, for records concerning that inmate, will be treated as a Privacy Act Request if the attorney has forwarded an inmate's written consent to disclose materials. If a document is deemed to contain information exempt from disclosure, any reasonable part of the record will be provided to the attorney after the deletion of the exempt portions.

**Executive Clemency**
The BOP advises all inmates that the President of the United States is authorized under the Constitution to grant executive clemency by pardon, commutation of sentence, or reprieve. A pardon is an executive act of grace that is a symbol of forgiveness. It does not connote innocence nor does it expunge the record of conviction. A pardon restores civil rights and facilitates the restoration of professional and other licenses that may have been lost by reason of the conviction. Other forms of executive clemency include commutation of sentence (reduction of sentence imposed after a conviction), and a reprieve (the suspension of execution of a sentence for a period of time). Inmates should contact their assigned Case Manager for additional information regarding this program.

**Commutation of Sentence**

The BOP also advises inmates on commutation of sentences. Commutation of sentence is usually the last chance to correct an injustice which has occurred in the criminal justice process.

Inmates applying for commutation of sentence must do so on form **Petition for Commutation of Sentence** available from the assigned Unit Team. The rules governing these petitions are available in the Law Library.

**Pardon**

A pardon may not be applied for until the expiration of at least five (5) years from the date of release from confinement. In some cases involving crimes of a serious nature, such as violation of Narcotics Laws, Gun Control Laws, Income Tax Laws, Perjury, and violation of public trust involving personal dishonesty, fraud involving substantial sums of money, violations involving organized crime, or crimes of a serious nature, a waiting period of seven years is usually required.

**Compassionate Release/Reduction in Sentence**

The Director of the Bureau of Prisons may motion an inmate's sentencing court for Reduction In Sentence (RIS) for an inmate presenting extraordinary and compelling circumstances. See 18 U.S.C. § 3582 and Program Statement 5050.49 Compassionate Release/Reduction in Sentence.

The BOP may consider both medical and non-medical circumstances. The BOP consults with the U.S. Attorney's Office that prosecuted the inmate and will notify any victims of the inmate's current offense.

If the RIS is granted, the judge will issue an order for the inmate's release and he or she will then usually begin serving the previously imposed term of supervised release.

If an inmate's RIS request is denied, the inmate will be provided a statement of reasons for the denial. The inmate may appeal a denial through the Administrative Remedy Procedure. Denials by the General Counsel or the Director are final agency decisions and are not appealable. Inmates who feel their request is of an emergency nature (e.g., a terminal medical condition) may state as such in accordance with the regulation. (See 28 CFR part 542, subpart B).

## <u>PROBLEM RESOLUTION</u>

**Administrative Remedy Process**

The BOP emphasizes and encourages the resolution of complaints. The first step of the Administrative Remedy process is to attempt an **<u>Informal Resolution</u>**, utilizing the appropriate Informal Resolution form (See the Institution Supplement Administrative Remedy, TOM-1330.18).

When an informal resolution is not successful, an inmate can access the Administrative Remedy Program. All Administrative Remedy forms may be obtained from your assigned Correctional Counselor or Unit Team member.

If the issue cannot be informally resolved, a formal complaint may be filed with a Request for Administrative Remedy (formerly BP-229), commonly referred to as a BP-9. The inmate may place a single complaint or related issues on the form. If the form contains multiple unrelated issues, the submission will be rejected.

The inmate will return the completed BP-9 to the Correctional Counselor, who will deliver it to the Administrative Remedy Coordinator (BP-9 will be rejected unless processed through staff).

The BP-9 complaint must be filed within twenty (20) calendar days from the date on which the basis for the incident or complaint occurred, unless it was not feasible to file within that period of time, which should be documented in the complaint.

Institution staff has twenty (20) calendar days to act on the complaint and to provide a written response to the inmate. This time limit for the response may be extended for an additional twenty (20) calendar days. The inmate will be notified of the extension.

If the inmate is not satisfied with the Warden's response to the BP-9, he may file an appeal to the Regional Director. This appeal must be received in the Regional Office within twenty (20) calendar days from the date of the BP-9 response.

The regional appeal is filed on a Regional Administrative Remedy Appeal (form BP-230), commonly referred to as a BP-10, and must include the appropriate number of copies of the BP-9 form, the Warden's response, and any exhibits. The regional appeal must be answered within thirty (30) calendar days, but the time limit may be extended an additional thirty (30) days. The inmate will be notified of the extension

If the inmate is not satisfied with the Regional Director's response, he may appeal to the General Counsel in the Central Office.

The national appeal must be made on the Central Office Administrative Remedy Appeal (form BP-231), commonly referred to as a BP-11, and must have the appropriate number of copies of the BP-9, BP-10, both responses, and any exhibits.

The national appeal must be answered within forty (40) calendar days, but the time limit may be extended an additional twenty (20) days. The inmate will be notified of the extension.

When filing a Request for Administrative Remedy or an Appeal (BP-9, BP-10, or BP-11), the form should contain the following information:

- Statement of Facts
- Grounds for Relief
- Relief Requested

**Sensitive Complaints**
If an inmate believes a complaint is of a sensitive nature and he would be adversely affected if the complaint became known to the institution, he may file the complaint directly to the Regional Director. The inmate must explain, in writing, the reason for not filing the complaint with the institution. If the Regional Director agrees the complaint is sensitive, it shall be accepted and a response to the complaint will be processed. If the Regional Director does not agree the complaint is sensitive, the inmate will be advised in writing of that determination and the complaint will be returned. The inmate may then pursue the matter by filing a BP-9 at the institution.

**General Information**
When a complaint is determined to be of an emergency and threatens the inmate's immediate health or welfare, the reply must be made as soon as possible, usually within seventy-two (72) hours from the receipt of the complaint. For detailed instructions see Program Statement 1330.18 Administrative Remedy Program.

# DISCIPLINARY PROCEDURES

Inappropriate sexual behavior towards staff and other inmates will not be tolerated.

Inappropriate sexual behavior is defined as verbal or physical conduct perceived as a sexual proposal, act, or threat. Examples of inappropriate inmate sexual behavior include: displaying sexually explicit materials; making sexually suggestive jokes, comments, proposals, and gestures; and engaging in stalking, indecent exposure, masturbation, or physical contact.

Inmates who engage in this type of behavior will be disciplined and sanctioned accordingly, through the inmate discipline process.

## Discipline
The inmate discipline program helps ensure the safety, security, and orderly operation for all inmates. Violations of BOP rules and regulations are handled by the Unit Discipline Committee (UDC) and, for more serious violations, the Disciplinary Hearing Officer (DHO).

Upon arrival at an institution, inmates are advised of the rules and regulations and are provided with copies of the Prohibited Acts and Available Sanctions, as well as local regulations.

## Inmate Discipline Information
When a staff member witnesses or reasonably believes an inmate has committed a prohibited act, a staff member will issue an incident report, a written copy of the charges against an inmate. The incident report will ordinarily be delivered to the inmate within 24 hours of the time staff became aware of the inmate's involvement in the incident.

If the incident is referred for prosecution, the incident report is delivered by the end of the next work day after it has been released for administrative processing. An informal resolution of the incident may be attempted at any stage of the discipline process. If an informal resolution is accomplished, the incident report will be removed from the inmate's central file. Informal resolution is encouraged for all violations in the Moderate and Low severity categories. Staff may suspend disciplinary proceedings up to two calendar weeks while informal resolution is undertaken. If an informal resolution is not accomplished, staff will reinstate the discipline process at the stage at which they were suspended. Violations in the Greatest and High severity categories cannot be informally resolved and must be forwarded to the DHO for final disposition.

## Initial Hearing
Inmates will ordinarily be given an initial hearing within five (5) work days after the incident report is issued, excluding the day it was issued, weekends, and holidays.

The Warden must approve, in writing, the any extension over five (5) days. The inmate is entitled to be present at the initial hearing and may make statements and present documentary evidence. The UDC must give its decision in writing to the inmate by the close of the next workd a y . The UDC may make findings on Moderate and Low severity offenses.

The UDC will automatically refer Greatest and High severity offenses to the DHO for final disposition.

**Discipline Hearing Officer (DHO)**

The Discipline Hearing Officer (DHO) conducts disciplinary hearings on all Greatest and High severity prohibited acts and other violations referred by the UDC at the Moderate and Low severity levels. The DHO may not hear any case not referred by the UDC. An inmate will be provided with advance written notice of the charge(s) not less than 24 hours before the inmate's appearance before the DHO.

Inmates may waive this requirement. Inmates may appear before the DHO either in person or electronically (for example, by video or telephone conferencing). The Warden provides a full-time staff member to represent an inmate, if requested.

An inmate may make statements and present documentary evidence on his or her behalf. The inmate may request witnesses appear at the DHO hearing to provide statements.
The DHO will call witnesses who have information directly relevant to the charge(s) and are reasonably available.

The DHO will request a statement from all unavailable witnesses whose testimony is deemed relevant. Inmates may not question a witness at the hearing; however, the staff representative and/or the DHO will question the witness/witnesses. An inmate may submit a list of questions for the witness/witnesses to the DHO if there is no staff representative.

An inmate has the right to be present throughout the DHO hearing, except during deliberations. The inmate charged may be excluded during appearances of outside witnesses or when institution security may be jeopardized.

The DHO may postpone or continue a hearing for good cause or disposition when the case does not warrant DHO involvement, or may refer an incident report back for further investigation or review.

The DHO will give the inmate a written copy of the decision and disposition, ordinarily within 15 days of the decision.

**Appeals of Disciplinary Actions**

Appeals of all disciplinary actions may be made through the Administrative Remedy Program. The initial reviewing official for the UDC is the Warden.

The decision of the DHO is final and subject to review only by the Regional Director through the Administrative Remedy program. Appeals are made to the Regional Director (BP-230) and the General Counsel (BP-231). On appeal, the reviewing authority (Warden, Regional Director, or General Counsel) considers:

- Whether the UDC or DHO substantially complied with regulations on inmate discipline.
- Whether the UDC or DHO based its decision on facts. If there is conflicting evidence, whether the decision was based on the greater weight of the evidence.
- Whether an appropriate sanction was imposed for the severity level of the prohibited act, and other relevant circumstances.

**Special Housing Unit Status**

Special Housing Units (SHUs) are housing units in BOP institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates.

SHU helps ensure the safety, security, and orderly operation of correctional facilities, and protect the public by providing alternative housing assignments for inmates removed from the general population.

When placed in the SHU, you are either in administrative detention (A/D) status or disciplinary segregation (D/S) status.

Administrative detention (A/D) status: A/D is an administrative status, which removes you from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public.
Administrative detention status is non-punitive, and can occur for a variety of reasons.

You may be placed in A/D status for the following reasons:

- Pending Classification or Reclassification: You are a new commitment pending classification or under review for Reclassification. This includes newly arrived inmates from the bus, airlift, and U. S. Marshals Service.
- Holdover Status: You are in holdover status during transfer to a designated institution or other destination.
- Removal from general population: Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution.
- Investigation: You are under investigation or awaiting a hearing for possibly violating a Bureau regulation or criminal law.
- Transfer: You are pending transfer to another institution.
- Protection cases: You requested, or staff determined, you require administrative detention status for your own protection.
- Post-disciplinary detention: You are ending confinement in disciplinary segregation status, and your return to the general population would threaten the safety, security, and orderly operation of a correctional facility, or public safety.

When placed in A/D status, you will receive a copy of the administrative detention order, ordinarily within 24 hours, detailing the reason(s) for your placement. However, when placed in A/D status pending classification or while in holdover status, you will not receive an administrative detention order.

In A/D status you are ordinarily allowed a reasonable amount of personal property and reasonable access to the Commissary.

Disciplinary Segregation (D/S) status: D/S is a punitive status imposed only by a Discipline Hearing Officer (DHO) as a sanction for committing a prohibited act(s). When you are placed in D/S status, as a sanction for violating BOP regulations, you will be informed by the DHO at the end of your discipline hearing.

In D/S status, your personal property will be impounded, with the exception of limited reading/writing materials and religious articles. Your Commissary privileges may also be limited.

In either status, your amount of personal property may be limited for reasons of fire safety or sanitation. The Warden may modify the quantity and type of personal property allowed. Personal property may be limited or withheld for reasons of security, fire safety, or housekeeping. The unauthorized use of any authorized item may result in the restriction of the item. If there are numerous misuses of an authorized item, the Warden may determine that the item will not be issued in the SHU.

Program staff, including Unit staff, will arrange to visit inmates in a SHU within a reasonable time after receiving the inmate's request. A Health Services staff member will visit you daily to provide necessary medical care. While in SHU, you may continue taking your prescribed medications.

In addition, after every 30-calendar days of continuous placement in either A/D or D/S status, a Mental Health staff will examine and interview you.

## RELEASE

### Sentence Computation
The Designation and Sentence Computation Center (DSCC), located in Grand Prairie, Texas, is responsible for the computation of inmate sentences. Once DSCC has certified the sentence computation as being accurate, staff will provide the inmate with a copy of his or her sentence computation data. Any questions concerning good time, jail time credit, parole eligibility dates, full term dates, or release dates are resolved by staff upon inmate request for clarification.

### Fines and Costs
In addition to jail time, the court may impose committed or non-committed fines and/or costs. Committed fines mean that the inmate will remain in prison until the fine is paid, makes arrangements to pay the fine, or qualifies for release under the provisions of Title 18 USC, Section 3569 (Discharge of indigent prisoner). Non-committed fines have no condition of imprisonment based on payment of fines or costs. Payments for a non-committed fine or cost are not required for release from prison or transfer to a contract residential reentry center.

### Detainers
Case Management staff may give assistance to offenders in their efforts to have detainers against them disposed of, either by having the charges dropped, by restoration to probation or parole status, or by arrangement for concurrent service of the state sentence. The degree to which the staff can assist in such matters as these will depend on individual circumstances.

The Interstate Agreement on Detainers Act (IADA) allows for the disposition of untried charges, indictments, information, or complaints that have been lodged as a detainer by party states. The United States of America, the District of Colombia, and any U.S. state or territory that has codified the IADA into its statutes have been identified as party states. The states of Mississippi and Louisiana, the Commonwealth of Puerto Rico, and the territories have not joined the IADA.

### Good Conduct Good Time
This applies to inmates sentenced for an offense committed on or after November 1, 1987, under the Sentencing Reform Act of 1984 (SRA), the Violent Crime Control Law Enforcement Act (VCCLEA), or Prison Litigation Reform Act (PLRA).

The SRA became law on November 1, 1987. The two most significant changes made to sentencing statutes concern good time and parole issues. There are no provisions for parole under the SRA. The only good time available under the SRA is 54 days of Good Conduct Time (GCT) for each year served on the sentence.

No GCT is applied to life terms, or to sentences of 1 year or less. Good time is not awarded under the SRA until the end of each year served on the sentence, and may be awarded in part or in whole, contingent upon behavior during the year. Once awarded, GCT earned under the SRA is vested, and may not be forfeited at a later time.

For inmates convicted under the VCCLEA, for offenses committed from September 13, 1994, through April 25, 1996, the 54 days of GCT earned for each year served on the sentence will not vest if an inmate does not have a high school diploma or a GED, and the inmate is not making satisfactory progress toward earning a GED. Unsatisfactory progress is determined by the institution Education Department.

For inmates sentenced under the PLRA, for offenses committed on or after April 26, 1996, the GCT earned for time spent in service of the sentence does not vest. In addition, if an inmate does not have a high school diploma or a GED, and the inmate is not making satisfactory progress toward earning a GED, only 42 days of GCT will be earned for each year in the service of the sentence. Unsatisfactory progress is determined by the institution Education Department.

The amount of GCT an inmate is eligible to receive is based on the amount of time served on the sentence, not the length of the sentence. This calculation method has been upheld by the U.S. Supreme Court.

**THE GOOD TIME DISCUSSIONS BELOW DO NOT APPLY TO INMATES SENTENCED UNDER THE NEW SENTENCING GUIDELINES.**

### Good Time
Good Time awarded by the BOP under statutes enacted prior to November 1, 1987, has the effect of reducing the stated term of the sentence that is, it advances the date when release will be mandatory if the offender is not paroled at an earlier date. The award of Good Time does not in itself advance the offender's release date. It has that effect only if the offender would not otherwise be paroled before the mandatory date.

### Statutory Good Time
Under 18 U.S. Code 4161, an offender sentenced to a definite term of six months or more is entitled a deduction from his term, computed as follows, if the offender has faithfully observed the rules of the institution and has not been disciplined:

- Not greater than one year - 5 days for each month of the not less than six months or more than one year sentence.
- More than 1 year, less than 3 years - 6 days for each month of the stated sentence.
- At least 3 years, less than 5 years - 7 days for each month of the stated sentence.
- At least 5 years, less than 10 years - 8 days for each month of the stated sentence.
- 10 years or more - 10 days for each month of the stated sentence.
- At the beginning of a prisoner's sentence, the full amount of statutory good time is credited, subject to forfeiture if the prisoner commits disciplinary infractions.

**THE FOLLOWING APPLIES ONLY TO INMATES SENTENCED FOR AN OFFENSE COMMITTED PRIOR TO NOVEMBER 1, 1987.**

### Extra Good Time
The Bureau of Prisons awards extra good time credit for performing exceptionally meritorious service, performing duties of outstanding importance, or for employment in an Industry or Camp. An inmate may earn only one type of good time award at a time (e.g., an inmate earning industrial or Camp good time is not eligible for meritorious good time), except that a lump sum award may be given in addition to another extra good time award. Neither the Warden nor the DHO may forfeit or withhold extra good time.

The Warden may disallow or terminate the awarding of any type of Extra Good Time (except for lump sum awards), but only in a non-disciplinary context and only upon recommendation of staff. The DHO may disallow or terminate the awarding of any type of Extra Good Time, (except lump sum awards) as a disciplinary sanction. Once an awarding of meritorious good time has been terminated, the Warden must approve a new staff recommendation in order for the award to recommence.

A disallowance means that an inmate does not receive an Extra Good Time award for only one calendar month.

A disallowance must be for the entire amount of extra good time for that calendar month. There may be no partial disallowance. A decision to disallow or terminate extra good time may not be suspended pending future consideration. A retroactive award of meritorious good time may not include a month in which Extra Good Time has been disallowed or terminated.

**Parole**

Parole is release from incarceration under conditions established by the U.S. Parole Commission. Parole is not a pardon or an act of clemency. A parolee remains under the supervision of a U.S. Probation Officer until the expiration of his full term.

Federal inmates sentenced prior to 1987 are ordinarily permitted an opportunity to appear before the Parole Commission within 120 days of commitment (EXEMPTIONS: inmates sentenced before September 6, 1977 and inmates with a minimum parole eligibility of ten years). Inmates sentenced in the District of Columbia Superior Court who are eligible for parole will normally receive a parole hearing 180 days prior to their parole eligibility date. If the inmate chooses not to appear before the Parole Board for the initial hearing, a waiver must be given to the Case Manager prior to the time of the scheduled parole hearing. This waiver will be made part of the Parole Commission file and the inmate's central file.

All inmates who previously waived a parole hearing are eligible to appear before the Parole Board at any regularly scheduled hearing after they waive. Application for a parole hearing must be made at least 60 days before the first day of the month of the hearings. The Parole Board conducts hearings at most Bureau institutions every two months.

Applications, to the Parole Commission for a hearing, are the responsibility of the inmate, but in certain cases the Unit Team will assist the inmate if necessary. Application forms may be obtained from the Case Manager.

Following the hearing, the inmate will be advised of the tentative decision reached in the case by the hearing examiners. The recommendations of the hearing examiner must be confirmed by the Regional Office of the Parole Board. This confirmation usually takes three to four weeks and is made through the mail on a form called a Notice of Action. Federal inmates may appeal a decision made the Parole Commission by obtaining the appropriate forms from the Case Manager.

Inmates with a District of Columbia Superior Court case cannot appeal a decision made by the Parole Commission. If granted a presumptive parole date ( a parole date more than six months following the hearing), a parole progress report will be sent to the Parole Board three to six months before the parole date.

Parole may be granted to a detainer or for the purpose of deportation. The inmate should have an approved residence and an approved employer before being released on parole.

**Residential Reentry Center Placement**

Inmates who are nearing release, and who need assistance in obtaining a job, residence or other community resources, may be referred for placement at a Residential Reentry Center (RRC).

The Residential Reentry Management Regional Administrator supervises services provided to offenders housed in contract facilities and participating in specialized programs in the community.

The Residential Reentry Manager (RRM) links the BOP with the U.S. Courts, other federal agencies, State and local governments, and the community. Located strategically throughout the country, the RRM is responsible for developing and maintaining a variety of contract facilities and programs, working under the supervision of the appropriate regional administrator. Community programs have two major emphases: residential community-based programs provided by RRCs and programs that provide intensive nonresidential supervision to offenders in the community.

**Community-Based Residential Programs**

The community-based residential programs available include both typical RRCs and work release programs provided by local detention facilities. The RRCs provide a suitable residence, structured programs, job placement and counseling while monitoring the offender's activities.

They also provide drug testing and counseling, and alcohol monitoring and treatment. While in these programs, employed offenders are required to pay subsistence to help defray the cost of their confinement. The inmate's payment rate during RRC residence is 25 percent of the inmate's gross income.

Most BOP community-based residential programs are proved in RRCs. These facilities contract with the BOP to provide residential correctional programs near the offender's home community. RRCs are used primarily for three types of offenders:

- Those nearing release from a BOP institution, as a transitional service while the offender is finding a job, locating a place to live, and reestablishing family ties.
- Those under community supervision who need guidance and supportive services beyond what can be provided through regular supervision by U.S. Probation.
- Those serving short sentences of imprisonment and terms of community confinement.

Each RRC now provides two components within one facility, a prerelease component and a community corrections component. The prerelease component assists offenders making the transition from an institutional setting to the community, or as a resource while under supervision. The community corrections component is more restrictive.

Except for employment and other required activities, the offenders are required to main at the RRC, where recreation, visiting, and other activities are provided in-house.

The other option for community-based residential programming is local detention facilities. Some local jails and detention centers are used to confine offenders serving short sentences. Many have work release programs where an offender is employed in the community during the day and returns to the institution at night. These facilities may also be used for offenders sentenced to terms of intermittent confinement such as nights, weekends, or other short intervals. Some of these local facilities have work release programs similar to the community corrections component in a RRC, serving to facilitate the transition from the institution to the community.

**The Adam Walsh Child Protection and Safety Act**

The Adam Walsh Child Protection and Safety Act (Pub.L. 109-248) was signed into law on July 27, 2006. The legislation organizes sex offenders into 3 tiers, and mandates that Tier 3 offenders update their whereabouts every 3 months. It makes failure to register and update information a felony. It also creates a national sex offender registry and instructs each state and territory to apply identical criteria for posting offender data on the Internet (i.e., offender's name, address, date of birth, place of employment, photograph, etc.).

**Conclusion**

Hopefully this information will assist inmates during their incarceration and help clarify any concerns they may encounter. New commitments should feel free to ask any staff member for assistance, particularly Unit staff. For individuals who are not yet in custody, and who have been given this publication to prepare for commitment, the BOP's RRM or the staff at the institution to which they have been designated can help clarify any other concerns.

## INMATE RIGHTS AND RESPONSIBILITIES

| **RIGHTS** | **RESPONSIBILITIES** |
|---|---|
| 1. You have the right to expect you will be treated in a respectful, impartial, and fair manner. | 1. You are responsible for treating inmates and staff in the same manner. |
| 2. You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution. | 2. You have the responsibility to know and abide by them. |
| 3. You have the right to freedom of religious affiliation, and voluntary religious worship. | 3. You have the responsibility to recognize and respect the rights of others in this regard. |
| 4. You have the right to health care, which includes nutritious meals, proper bedding and clothing, and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles, and medical and dental treatment. | 4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it. |
| 5. You have the right to visit and correspond with family members, and friends, and correspond with members of the news media in accordance with Bureau rules and institution guidelines. | 5. It is your responsibility to conduct yourself properly during visits. You will not engage in inappropriate conduct during visits to include sexual acts and introduction of contraband, and not to violate the law or Bureau guidelines through correspondence. |
| 6. You have the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.) | 6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court. |
| 7. You have the right to legal counsel from an attorney of your choice by interviews and correspondence. | 7. It is your responsibility to use the services of an attorney honestly and fairly. |
| 8. You have the right to participate in the use of law library reference materials to assist you in resolving legal problems. You also have the right to receive help when it is available through a legal assistance program. | 8. It is your responsibility to use these resources in keeping with the procedures and schedule prescribed and to respect the rights of other inmates to the use of the materials and assistance. |
| 9. You have the right to a wide range of reading materials for materials for educational purposes and for your own enjoyment. These materials may include magazines and newspapers sent from the community, with certain restrictions. | 9. It is your responsibility to seek and utilize such materials for your personal benefit, without depriving others of their equal rights to the use of this material. |
| 10. You have the right to participate in education, vocational training and employment as far as resources are available, and in keeping with your interests, needs, and abilities. | 10. You have the responsibility to take advantage of activities which may help you live a successful and law-abiding life within the institution and in the community. You will be expected to abide by the regulations governing the use of such activities. |

| 11. You have the right to use your funds for commissary and other purchases, consistent with institution security and good order, for opening bank and/or savings accounts, and for assisting your family, in accordance with Bureau rules. | 11. You have the responsibility to meet your financial and legal obligations, including, but not limited to, DHO and court imposed assessments, fines, and restitution. You also have the responsibility to make use of your funds in a manner consistent with your release plans, your family needs, and for other obligations that you may have. |
|---|---|

# PROHIBITED ACTS AND AVAILABLE SANCTIONS

## GREATEST SEVERITY LEVEL PROHIBITED ACTS

100     Killing.

101     Assaulting any person, or an armed assault on the institution's secure perimeter (a charge  for assaulting any person at this level is to be used only when serious physical injury has  been attempted or accomplished).

102     Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape  from outside a secure institution.

103     Setting a fire (charged with this act in this category only when found to pose a threat to  life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest  Severity, *e.g.,* in furtherance of a riot or escape; otherwise the charge is properly  classified Code 218, or 329).

104     Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened  instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as  a weapon.

105     Rioting.

106     Encouraging others to riot.

107     Taking hostage(s).

108     Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be  used in an escape or escape attempt or to serve as weapons capable of doing serious  bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.,*  hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia,  portable telephone, pager, or other electronic device).

109     (Not to be used).

110     Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to  take part in other drug-abuse testing.

111     Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or  related paraphernalia, not prescribed for the individual by the medical staff.

112     Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

113    Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

114    Sexual assault of any person, involving non-consensual touching by force or threat of force.

115    Destroying and/or disposing of any item during a search or attempt to search.

196    Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act.

197    Use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act.

198    Interfering with a staff member in the performance of duties most like another Greatest Severity prohibited act. This charge is to be used only when another charge of Greatest Severity is not accurate. The offending conduct must be charged as "most like" one of the listed Greatest Severity prohibited acts.

199    Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest Severity prohibited act. This charge is to be used only when another charge of Greatest Severity is not accurate. The offending conduct must be charged as "most like" one of the listed Greatest Severity prohibited acts.

## AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS

A.    Recommend parole date rescission or retardation.

B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1.    Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.    Disciplinary segregation (up to 12 months).

D.    Make monetary restitution.

E.    Monetary fine.

F.    Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G.    Change housing (quarters).

H.    Remove from program and/or group activity.

I.    Loss of job.

J.    Impound inmate's personal property.

K.  Confiscate contraband.

L.  Restrict to quarters.

M.  Extra duty.

## HIGH SEVERITY LEVEL PROHIBITED ACTS

200  Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.

201  Fighting with another person.

202  (Not to be used).

203  Threatening another with bodily harm or any other offense.

204  Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.

205  Engaging in sexual acts.

206  Making sexual proposals or threats to another.

207  Wearing a disguise or a mask.

208  Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.

209  Adulteration of any food or drink.

210  (Not to be used).

211  Possessing any officer's or staff clothing.

212  Engaging in or encouraging a group demonstration.

213  Encouraging others to refuse to work, or to participate in a work stoppage.

214  (Not to be used).

215  (Not to be used).

216  Giving or offering an official or staff member a bribe, or anything of value.

217  Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.

218    Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.

219    Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored).

220    Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff).

221    Being in an unauthorized area with a person of the opposite sex without staff permission.

222    (Not to be used).

223    (Not to be used).

224    Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate).

225    Stalking another person through repeated behavior which harasses, alarms, or annoys the person, after having been previously warned to stop such conduct.

226    Possession of stolen property.

227    Refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, tuberculosis).

228    Tattooing or self-mutilation.

229    Sexual assault of any person, involving non-consensual touching without force or threat of force.

296    Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).

297    Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.

298    Interfering with a staff member in the performance of duties most like another High Severity prohibited act. This charge is to be used only when another charge of High Severity is not accurate. The offending conduct must be charged as "most like" one of the listed High Severity prohibited acts.

299    Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High Severity prohibited act. This charge is to be used only when another charge of High Severity is not accurate. The offending conduct must be charged as "most like" one of the listed High Severity prohibited acts.

## AVAILABLE SANCTIONS FOR HIGH SEVERITY LEVEL PROHIBITED ACTS

A.    Recommend parole date rescission or retardation.

B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1   Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.    Disciplinary segregation (up to 6 months).

D.    Make monetary restitution.

E.    Monetary fine.

F.    Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G.    Change housing (quarters).

H.    Remove from program and/or group activity.

I.    Loss of job.

J.    Impound inmate's personal property.

K.    Confiscate contraband.

L.    Restrict to quarters.

M.    Extra duty.

## MODERATE SEVERITY LEVEL PROHIBITED ACTS

300    Indecent Exposure.

301    (Not to be used).

302    Misuse of authorized medication.

303    Possession of money or currency, unless specifically authorized, or in excess of the amount authorized.

304    Loaning of property or anything of value for profit or increased return.

305   Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.

306   Refusing to work or to accept a program assignment.

307   Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, *e.g.* failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110).

308   Violating a condition of a furlough.

309   Violating a condition of a community program.

310   Unexcused absence from work or any program assignment.

311   Failing to perform work as instructed by the supervisor.

312   Insolence towards a staff member.

313   Lying or providing a false statement to a staff member.

314   Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper (may be categorized in terms of greater severity according to the nature of the item being reproduced, *e.g.,* counterfeiting release papers to effect escape, Code 102).

315   Participating in an unauthorized meeting or gathering.

316   Being in an unauthorized area without staff authorization.

317   Failure to follow safety or sanitation regulations (including safety regulations, chemical instructions, tools, MSDS sheets, OSHA standards).

318   Using any equipment or machinery without staff authorization.

319   Using any equipment or machinery contrary to instructions or posted safety standards.

320   Failing to stand count.

321   Interfering with the taking of count.

322   (Not to be used).

323   (Not to be used).

324   Gambling.

325   Preparing or conducting a gambling pool.

326    Possession of gambling paraphernalia.

327    Unauthorized contacts with the public.

328    Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization.

329    Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less.

330    Being unsanitary or untidy; failing to keep one's person or quarters in accordance with posted standards.

331    Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements).

332    Smoking where prohibited.

333    Fraudulent or deceptive completion of a skills test (*e.g.,* cheating on a GED, or other educational or vocational skills test).

334    Conducting a business; conducting or directing an investment transaction without staff authorization.

335    Communicating gang affiliation; participating in gang related activities; possession of paraphernalia indicating gang affiliation.

336    Circulating a petition.

396    Use of the mail for abuses other than criminal activity which do not circumvent mail monitoring; or use of the mail to commit or further a Moderate category prohibited act.

397    Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act.

398    Interfering with a staff member in the performance of duties most like another Moderate Severity prohibited act. This charge is to be used only when another charge of Moderate Severity is not accurate. The offending conduct must be charged as "most like" one of the listed Moderate Severity prohibited acts.

399    Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Moderate Severity prohibited act. This charge is to be used only when another charge of Moderate S everity is not accurate. The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.

# AVAILABLE SANCTIONS FOR MODERATE SEVERITY LEVEL PROHIBITED ACTS

A.     Recommend parole date rescission or retardation.

B.     Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1     Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.     Disciplinary segregation (up to 3 months).

D.     Make monetary restitution.

E.     Monetary fine.

F.     Loss of privileges (*e.g.,* visiting, telephone, commissary, movies, recreation).

G.     Change housing (quarters).

H.     Remove from program and/or group activity.

I.     Loss of job.

J.     Impound inmate's personal property.

K.     Confiscate contraband.

L.     Restrict to quarters.

M.     Extra duty.

# LOW SEVERITY LEVEL PROHIBITED ACTS

400     (Not to be used).

401     (Not to be used).

402     Malingering, feigning illness.

403     (Not to be used).

404     Using abusive or obscene language.

405     (Not to be used).

406     (Not to be used).

407     Conduct with a visitor in violation of Bureau regulations.

408      (Not to be used).

409      Unauthorized physical contact (e.g., kissing, embracing).

498      Interfering with a staff member in the performance of duties most like another Low Severity prohibited act. This charge is to be used only when another charge of Low Severity is not accurate. The offending conduct must be charged as "most like" one of the listed Low Severity prohibited acts.

499      Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Low Severity prohibited act. This charge is to be used only when another charge of Low Severity is not accurate. The offending conduct must be charged as "most like" one of the listed Low Severity prohibited acts.

## AVAILABLE SANCTIONS FOR LOW SEVERITY LEVEL PROHIBITED ACTS

B.1      Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).

C.      Make monetary restitution.

D.      Monetary fine.

E.      Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

F.      Change housing (quarters).

G.      Remove from program and/or group activity.

H.      Loss of job.

I.      Impound inmate's personal property.

J.      Confiscate contraband

K.      Restrict to quarters.

L.      Extra duty.

Table 2.  ADDITIONAL AVAILABLE SANCTIONS FOR REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL

| Prohibited Act Severity Level | Time Period for Prior Offense (same code) | Frequency of Repeated Offense | Additional Available Sanctions |
|---|---|---|---|
| Low Severity (400 level) | 6 months | 2nd offense | 1. Disciplinary segregation (up to 1 month). 2. Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended). |
| | | 3rd or more offense | Any available Moderate Severity level sanction (300 series). |
| Moderate Severity (300 level) | 12 months | 2nd offense | 1. Disciplinary segregation (up to 6 months). 2. Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3rd or more offense | Any available High Severity level sanction (200 series). |
| High Severity (200 level) | 18 months | 2nd offense | 1. Disciplinary segregation (up to 12 months). 2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3rd or more offense | Any available Greatest Severity level sanction (100 series). |
| Greatest Severity (100 level) | 24 months | 2nd or more offense | Disciplinary Segregation (up to 18 months). |

# U. S. Department of Justice
# Federal Bureau of Prisons



# Sexually Abusive Behavior
# Prevention and Intervention

An Overview for Offenders

**You Have the Right to be Safe from Sexually Abusive Behavior**
The Federal Bureau of Prisons has a zero tolerance policy against sexual abuse and sexual harassment. While you are incarcerated, **no one has the right to pressure you to engage in sexual acts.**

You do not have to tolerate sexually abusive/harassing behavior or pressure to engage in unwanted sexual behavior from another inmate or a staff member. Regardless of your age, size, race, ethnicity, gender or sexual orientation, you have the right to be safe from sexually abusive behavior.

**What Can You Do To Prevent Sexually Abusive Behavior?**
Here are some things you can do to protect yourself and others against sexually abusive behavior:

- Carry yourself in a confident manner at all times. Do not permit your emotion (fear/anxiety) to be obvious to others.
- Do not accept gifts or favors from others. Most gifts or favors come with strings attached to them.
- Do not accept an offer from another inmate to be your protector.
- Find a staff member with whom you feel comfortable discussing your fears and concerns.
- Be alert! Do not use contraband substances such as drugs or alcohol; these can weaken your ability to stay alert and make good judgments.
- Be direct and firm if others ask you to do something you do not want to do. Do not give mixed messages to other inmates regarding your wishes for sexual activity.
- Stay in well-lit areas of the institution.
- Choose your associates wisely. Look for people who are involved in positive activities like educational programs, psychology groups, or religious services. Get involved in these activities.
- Trust your instincts. If you sense that a situation may be dangerous, it probably is. If you fear for your safety, report your concerns to staff.

**What Can You Do if You Are Afraid or Feel Threatened?**

If you are afraid or feel you are being threatened or pressured to engage in sexual behaviors, you should discuss your concerns with staff. Because this can be a difficult topic to discuss, some staff, like psychologists, are specially trained to help you deal with problems in this area.

If you feel immediately threatened, approach any staff member and ask for assistance. It is part of his/her job to ensure your safety. If a staff member that is threatening you, report your concerns immediately to another staff member that you trust, or follow the procedures for making a confidential report.

**What Can You Do if You Are Sexually Assaulted?**

If you become a victim of a sexually abusive behavior, **you should report it immediately to staff** who will offer you protection from the assailant. You do not have to name the inmate(s) or staff assailant(s) in order to receive assistance, but specific information may make it easier for staff to know how best to respond. You will continue to receive protection from the assailant, whether or not you have identified him or her (or agree to testify against him/her).

After reporting any sexual assault, you will be referred immediately for a medical examination and clinical assessment. Even though you many want to clean up after the assault **it is important to see medical staff BEFORE you shower, wash, drink, eat, change clothing, or use the bathroom**. Medical staff will examine you for injuries, which may or may not be readily apparent to you. They can also check you for sexually transmitted diseases, pregnancy, if appropriate, and gather any physical evidence of assault. The individuals who sexually abuse or assault inmates can only be disciplined and/or prosecuted if the abuse is reported. **Regardless of whether your assailant is an inmate or a staff member, it is important to understand that you will never be disciplined or prosecuted for being the victim of a sexual assault.**

## REPORTING AN INCIDENT OF SEXUALLY ABUSIVE BEHAVIOR

It is important that you **tell a staff member if you have been sexually assaulted or have been a victim of sexual harassment.**

It is equally important to inform staff if you have witnessed sexually abusive behavior. You can tell your case manager, Chaplain, Psychologist, SIS, the Warden or any other staff member you trust. BOP staff members are instructed to keep reported information confidential and only discuss it with the appropriate officials on a need to know basis concerning the inmate-victim's welfare and for law enforcement or investigative purposes. There are other means to confidentiality report sexually abusive behavior if you are not comfortable talking with staff.

- **Write directly to the Warden, Regional Director or Director.** You can send the Warden an Inmate Request to Staff Member (Cop-out) or a letter reporting the sexually abusive behavior. You may also send a letter to the Regional Director or Director of the Bureau of Prisons. To ensure confidentiality, use special mail procedures.

- **File an Administrative Remedy.** You can file a Request for Administrative Remedy (BP-9). If you determine your complaint is too sensitive to file with the Warden, you have the opportunity to file your administrative remedy directly with the Regional Director (BP-10). You can get the forms from your counselor or other unit staff. Clearly mark "Emergency" on the BP-9 (10), and explain, in writing, the reason for filling as an emergency administrative remedy.

- **Write the Office of the Inspector General (OIG)** which investigates allegations of staff misconduct by employees of the U.S. Department of Justice; all other sexual abuse/harassment allegations will be forwarded by the OIG to the BOP. OIG is a component of the Department of Justice and is not a part of the Bureau of Prisons. The address is:

**Office of the Inspector General**
**U.S. Department of Justice**
**Investigations Division**
**950 Pennsylvania Avenue, N.W.**
**Room 4706**
**Washington, D.C. 20530**

**E-mail OIG**. You can send an e-mail directly to OIG by clicking on the TRULINCS Request to Staff tab and selecting the Department Mailbox titled, DOJ Sexual Abuse Reporting. This method of reporting is processed by OIG during normal business hours, Monday – Friday. It is not a 24-hour hotline. For immediate assistance, contact institution staff.

Note: These e-mails:

- are untraceable at the local institution.
- are forwarded directly to OIG.
- will not be saved in your e-mail 'Sent' list.
- do not allow for a reply from OIG.
- If you want to remain anonymous to the BOP, you must request in e-mail to OIG.

**Third-party Reporting**. Anyone can report such abuse on your behalf by accessing the BOP's public website, specifically:

http://www.bop.gov/inmate_programs/sa_prevention_reporting.jsp.

**Understanding the Investigative Process**
Once the sexually abusive behavior is reported, the BOP and/or other appropriate law enforcement agencies will conduct an investigation. The purpose of the investigation is to determine the nature and scope of the abusive behavior. You may be asked to give a statement during the investigation. If criminal charges are brought, you may be asked to testify during the criminal proceedings.

**Counseling Programs for Victims of Sexually Abusive Behavior**
Most people need help to recover from the emotional effects of sexually abusive behavior. If you are the victim of sexually abusive behavior, whether recent or in the past, you may seek counseling and/or advice from a psychologist or chaplain. Crisis counseling, coping skills, suicide prevention, mental health counseling, and spiritual counseling are all available to you.

Contact your local Rape Crisis Center (RCC). Additionally, if you prefer to contact outside sexual abuse emotional support services, you can call [Riverview Center 888-557-0310]. However, be aware that inmate communication is monitored in a manner consistent with agency security practices.

**Management Program for Inmate Assailants**
Those who sexually abuse/assault/harass others while in the custody of the BOP will be disciplined and prosecuted to the fullest extent of the law. If you are an inmate assailant, you will be referred to Correctional Services for monitoring. You will be referred to Psychology Services for an assessment of risk and treatment and management needs. Treatment compliance or refusal will be documented and decisions regarding your conditions of confinement and release may be effected. If you feel that you need help to keep from engaging in sexually abusive behaviors, psychological services are available.

**Policy Definitions**

**Prohibited Acts:** Inmates who engage in inappropriate sexual behavior can be charged with following Prohibited Acts under the Inmate Disciplinary Policy (PS 5270.09, PS 5324.12, TOM 5324.11).

**Code 114/ (A): Sexual Assault by Force**
**Code 205/ (A): Engaging in a Sex Act**
**Code 206/ (A): Making a Sexual Proposal**
**Code 221/ (A): Being in an Unauthorized Area with a Member of the Opposite Sex**
**Code 229/ (A): Sexual Assault without Force**
**Code 300/ (A): Indecent Exposure**
**Code 404/ (A): Using Abusive or Obscene Language**

**Staff Misconduct:** The Standards of Employee Conduct prohibit employees from engaging in, or allowing another person to engage in sexual, indecent, profane or abusive language or gestures, and inappropriate visual surveillance of inmates. Influencing, promising or threatening an inmate's safety, custody, privacy, housing, privileges, work detail or program status in exchange for sexual favors is also prohibited.

**What is sexually abusive behavior?** According to federal law, (Prison Rape Elimination Act of 2003) sexually abusive behavior is defined as:

**Rape:** The carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person **FORCIBLY** or against that person's will; the carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person not forcibly or against the person's will, where the victim is **incapable of giving consent** because of his/her youth or his/her temporary or permanent mental or physical incapacity; or

The carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person achieved through the **exploitation of the fear or threat** of physical violence or bodily injury.

**Carnal Knowledge:** Contact between the penis and vulva or the penis and the anus, including penetration of any sort, however slight.

**Oral Sodomy:** Contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

**Sexual Assault with an Object**: The use of any hand, finger, object, or other instrument to penetrate, however slightly, the genital or anal opening of the body of another person (**NOTE**: This does NOT apply to custodial or medical personnel engaged in evidence gathering or legitimate medical treatment, nor to health care provider's performing body cavity searches in order to maintain security and safety within the prison).

**Sexual Fondling**: The touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) for the purpose of sexual gratification.

**Sexual Harassment**: Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate/detainee/resident to another; or repeated verbal comments or gestures of a sexual nature to an inmate/detainee/resident by a staff member/contractor/volunteer, including demeaning references to gender, sexually suggestive, or derogatory comments about body or clothing, or obscene language or gestures.

**Sexual Misconduct** (staff only): The use of indecent sexual language, gestures, or sexually oriented visual surveillance for the purpose of sexual gratification.

An incident is considered **Inmate-on-Inmate Abuse/Assault** when any sexually abusive behavior occurs between two or more inmates. An incident is considered **Staff-on-Inmate Abuse/Assault** when any sexually abusive behavior is initiated by a staff member toward one or more inmates. It is also considered Staff-on-Inmate Abuse/Assault if a staff member willingly engages in sexual acts or contacts that are initiated by an inmate.

**NOTE: Sexual acts or contacts between two or more inmates, even when no objections are raised, are prohibited acts, and may be illegal. Sexual acts or contacts between an inmate and a staff member, even when no objections are raised by either party, are always forbidden and illegal. Inmates who have been sexual assaulted by another inmate or staff member will not be prosecuted or disciplined for reporting the assault. However, inmates will be penalized for knowingly filing any false report.**

**\*\* Please be aware that both male and female staff routinely work and visit inmate housing areas. \*\***

## OFFICE CONTACTS

U.S. Department of Justice
Office of the Inspector General
**Investigations Division**
950 Pennsylvania Avenue, NW Suite 4706
Washington, D.C. 20530-0001

**Federal Bureau of Prisons**
**Central Office**
**National PREA Coordinator**
320 First Street, NW, Room 554
Washington, D.C. 20534

**Federal Bureau of Prisons**
**Mid-Atlantic Regional Office**
**Regional PREA Coordinator**
302 Sentinel Drive, Suite 200
Annapolis Junction, MD  20701

**Federal Bureau of Prisons**
**North Central Regional Office**
**Regional PREA Coordinator**
Gateway Complex Tower II, 8th Floor
400 State Avenue
Kansas City, KS 66101-2492

**Federal Bureau of Prisons**
**Northeast Regional Office**
**Regional PREA Coordinator**
U.S. Customs House, 7th Floor
2nd and Chestnut Streets
Philadelphia, Pennsylvania 19106

**Federal Bureau of Prisons**
 **South Central Regional Office**
**Regional PREA Coordinator**
**U.S. Armed Forces Reserve Complex**
344 Marine Forces Drive
Grand Prairie, Texas 75051

**Federal Bureau of Prisons**
Southeast Regional Office
Regional PREA Coordinator

3800 North Camp Creek Parkway, SW
Building 2000
Atlanta, GA 30331-5099

**Federal Bureau of Prisons**
**Western Regional Office**
**Regional PREA Coordinator**

7338 Shoreline Drive
Stockton, CA 95219

**Third-party reporting (outside of institution):**
http://www.bop.gov/inmate_programs/sa_prevention_reporting.jsp

# ATTACHMENT A

## Inmate Health Care Rights and Responsibilities

1. You have the right to health care services, based on the local procedures at this institution. Health services include medical and dental sick call and all support services.

1. You have the responsibility to comply with the health care policies of this institution. You have the responsibility to follow recommended treatment plans that have been established for you by institution health care staff, to include proper use of medications, proper diet and following all health related instructions with which you are provided.

2. You have the right to be offered a "Living Will," or to provide the Bureau of Prisons with "Advance Directives" that would provide the Bureau of Prisons with instructions if you are admitted, as an inpatient, to a hospital in the local community, or the Bureau of Prisons.

2. You have the responsibility to provide the Bureau of Prisons with accurate information to complete this agreement.

3. You have the right to participate in health promotion and disease prevention programs including education regarding infectious diseases.

3. You have the responsibility to maintain your health and not to endanger yourself, or others, by participating in activity that could result in the spreading or contracting of an infectious disease.

4. You have the right to know the name and professional status of your health care providers.

4. You have the responsibility to respect these providers as professionals and follow their instructions to maintain and improve your overall health.

5. You have the right to be treated with respect, consideration and dignity.

5. You have the responsibility to treat staff in the same manner.

6. You have the right to be provided with information regarding your diagnosis, treatment and prognosis.

6. You have the responsibility to keep this information confidential.

7. You have the right to be examined in privacy.

7. You have the responsibility to comply with security procedures.

8. You have the right to obtain copies of certain releasable portions of your health record.

8. You have the responsibility of being familiar with the current policy to obtain these records.

9. You have the right to address any concern regarding your health care to any member of the institution staff including your physician, the Health Services Administrator, members of your Unit Team and the Warden.

9. You have the responsibility to address your concerns in the accepted format, such as the Inmate Request to Staff Member form, open houses or the accepted Inmate Grievance Procedures.

10.   You have the right to receive prescribed medications and treatments in a timely manner, consistent with the recommendations of the prescribing health care provider.

11.   You have the right to be provided healthy and nutritious food.  You have the right to be instructed regarding a healthy choice when selecting your food.

12.   You have the right to request a routine physical examination, as often as every two years.  If you are over the age of 50, you may request an examination once a year.

13.   You have the right to dental care as defined in BOP policy to include preventive services, emergency and routine care.

14.   You have the right to a safe, clean and healthy environment, including smoke-free living areas.

15.   You have the right to refuse medical treatment in accordance with BOP policy. Refusal of certain diagnostic tests for infectious diseases can result in administrative action against you.

10.   You have the responsibility to comply with prescribed treatments and follow prescription orders.  You also have the responsibility not to provide any other person your medication or other prescribed item.

11.   You have the responsibility to eat healthy and not abuse or waste food or drink.

12.   You have the responsibility to notify medical staff that you wish to have an examination.

13.   You have the responsibility to maintain your oral hygiene and health.

14.   You have the responsibility to maintain the cleanliness and safety in consideration of others.  You have the responsibility to follow smoking regulations.

# **General Information**

| | |
|---|---|
| **Facility Address:** | AUSP Thomson |
| | Post Office Box 1001 |
| | Thomson, IL 61285 |
| | (815) 259-1000 |
| | |
| **Regional Office:** | Federal Bureau of Prisons |
| | North Central Regional Office |
| | 400 State Avenue |
| | Tower II, Suite 800 |
| | Kansas City, KS 66101 |
| | |
| **Central Office:** | Federal Bureau of Prisons |
| | Office of the Director 320 |
| | First Street, N.W. |
| | Washington, DC 20534 |
| | |
| **Send Money to:** | Committed Name |
| | Register Number |
| | Post Office Box 474701 |
| | Des Moines, Iowa 50947-0001 |
| | |
| **Western Union:** | Inmate Register Number |
| | Committed Name |
| | City Code: FBOP State |
| | Code: DC |

www.westernunion.com (select bill payment, then select quick collect) 1-800-634-3422 (select option 2)

*The only way an inmate can receive money is through the mail and through Western Union.*

**Miscellaneous:** www.bop.gov

# ATTACHMENT B:
# STAFF DIRECTORIES

| | |
|---|---|
| TOM/InmatetoAWCustody | TOM/InmatetoTrustFund |
| TOM/InmatetoAWOperations | TOM/InmatetoUnitA |
| TOM/InmatetoAWPrograms | TOM/InmatetoUnitB |
| TOM/InmatetoBusinessOffice | TOM/InmatetoUnitC |
| TOM/InmatetoCampAdministrator | TOM/InmatetoUnitD |
| TOM/InmatetoChaplain | TOM/InmatetoUnitE |
| TOM/InmatetoCMC | TOM/InmatetoUnitF |
| TOM/InmatetoCorrectionalSys | TOM/InmatetoUnitG |
| TOM/InmatetoSvcs | TOM/InmatetoUnitH |
| TOM/InmatetoDental | TOM/InmatetoUnitM |
| TOM/InmatetoDHO | TOM/InmatetoWarden |
| TOM/InmatetoEducation | TOM/InmatetoFacilities |
| TOM/InmatetoFoodService | TOM/InmatetoHealthServices |
| TOM/InmatetoLegal | TOM/InmatetoPsychology |
| TOM/InmatetoRecreation | TOM/InmatetoReEntry |
| TOM/InmatetoSafety | TOM/InmatetoSIS |

# DECLARATION OF JACOB DOERER

# ATTACHMENT 4

# USP Thomson
# Special Management Unit (SMU) Inmate
# A&O Handbook
# (January 2019 version)

# AUSP THOMSON

# SPECIAL MANAGEMENT UNIT (SMU)

# INMATE

# ADMISSION & ORIENTATION

# HANDBOOK



# January 2019

## INTRODUCTION

The purpose of this handbook is to provide arriving inmates with information regarding the Bureau of Prisons (BOP), its programs, and the rules and regulations. It is not a specific guide to the detailed policies of the BOP. Rather, the material in this handbook is designed to help you more quickly understand what you will encounter when you enter prison, and to help you in your initial adjustment to incarceration.

You have been assigned to the Special Management Unit (SMU) at the Administrative United States Penitentiary (AUSP) Thomson, Illinois. The SMU program is a multi-level program whose mission is to teach self-discipline, pro-social values, and the ability to successfully coexist with members of other geographical, cultural, and religious backgrounds. AUSP Thomson offers Levels One, Two, and Three of the program. Ordinarily, this program will be completed within 9-13 months.

Successful completion requires strict adherence to BOP policies and procedures, in addition to strict adherence to the rules and regulations of your assigned housing unit. Moreover, completion of the program requires your active participation in self-study, as well as your active participation in individual and group activities geared toward the development of behavior and values that will allow for successful reintegration into a general population.

Advancement through the levels of this program is dependent upon observed behavior and program participation. As you progress to the high levels of the program, you will be afforded additional privileges. A lack of effort, rule and disciplinary infractions, or a poor attitude may result in delaying completion of the program, including requiring you to repeat levels. Progress in the program is evaluated by a multi-disciplinary team ordinarily consisting of Executive, Unit, Correctional, Psychology, and Education staff.

This inmate handbook is designed to present a general overview of the BOP and the SMU program at AUSP Thomson. This handbook is not intended to be a complete guide to all of the laws, regulations, BOP-specific policies, and AUSP Thomson-specific policies and procedures governing inmate behavior. Rather, this handbook is intended to assist you in understanding and adjusting to your new institution.

## INTAKE, CLASSIFICATION AND THE UNIT TEAM

### Orientation

Inmates are given a social screening by Unit Management staff and medical screening by Health Services staff at the time of arrival. Inmates are immediately provided with a copy of the institution's rules and regulations, which includes information on inmate rights and responsibilities. It also includes information on sexual assault and abuse.

During the intake screening process, inmates designated to the SMU will receive a SMU Inmate Admission & Orientation (A&O) handbook. This handbook contains information specific to the SMU program, as well as information traditionally covered in A&O lectures. Additionally, the entire A&O lecture is saved to each

individual MP3 player and may be listened to at any time to advise inmates of the programs, services, policies, and procedures regarding AUSP Thomson.

**Classification Teams (Unit Teams)**
Each inmate is assigned to a housing unit. A unit is a self-contained inmate living area that includes both housing sections and office space for unit staff. Each unit is staffed by a Unit Team directly responsible for the inmates living in the unit. The unit offices are located in the units so staff and inmates can be accessible to each other. The unit staff typically includes a Unit Manager, Case Manager, Correctional Counselor, and Unit Secretary. The Staff Psychologist, Education Advisor, and Unit Officer are considered members of the Unit Team and provide input for classification purposes.

Inmates are assigned to a specific Unit Team. Generally, the resolution of issues or matters of interest while at the institution are most appropriately initiated with the Unit Team. Unit Team members are available to assist in many areas, including parole matters, release planning, personal and family problems, counseling, and assistance in setting and attaining goals while in prison. Ordinarily, a member of the unit staff will be at the institution from 7:30 a.m. to 9:00 p.m., and during the day on weekends and holidays.

## GENERAL FUNCTIONS OF UNIT STAFF

**Unit Manager:** The Unit Manager is the administrative head of the general unit and oversees all unit programs and activities. The Unit Manager is the Chairperson of the team that comprises the Case Manager and Correctional Counselor, with input from Education and Psychology staff.

The Unit Manager reviews team decisions and may chair the Unit Discipline Committee (UDC), which is a body that hears disciplinary infractions.

The Unit Manager is ordinarily present during initial classification and subsequent program review(s) in which RRC placement is discussed.

**Case Manager:** The Case Manager is responsible for all casework services and prepares classification material, progress reports, release plans, correspondence, and other materials relating to the inmate's commitment. The Case Manager serves as a liaison between the inmate, the administration, and the community.

**Correctional Counselor:** The Counselor provides counseling and guidance for the inmates of the unit in areas of institutional adjustment, personal difficulties, and plans for the future. The Counselor plays a leading role in segments of unit programs relating to inmate activities.

**Unit Secretary:** The Unit Secretary performs clerical and administrative duties, to include the preparation of release paperwork.

**Unit Officer:** The Unit Officers have direct responsibility for the daily supervision of inmates and the enforcement of rules and regulations. They have safety, security, and sanitation responsibilities in the unit. Unit Officers are in regular contact with inmates in units and are encouraged to establish

professional relationships with them, as long as such interaction does not interfere with their primary duties. Unit Officers control movement in and out of the unit and conduct regular searches for contraband.

**Communications**
Normally, a unit staff member is available each day of the week and most evenings until 9:00 p.m.

Inmates are encouraged to speak with a unit staff member when they are making rounds or by submitting an Inmate Request to Staff.

**Initial Classification/Program Reviews**
Inmates initially designated to the institution will receive initial classification within 28 days of arrival.

Unit, Education, and Psychology staff will assess each inmate and work with them to develop an individual plan that will address skill deficits that may deter successful reentry into the community.

Your custody classification will ordinarily occur annually or with greater frequency, when factors such as program refusal, detainers, acts of violence, completion of programs, or changes in sentence length occur.

Subsequent program reviews will be held every 90 to 180 days, depending upon release date. These are held by the Unit Team to review progress on programming goals, work assignments, transfers, custody/security level, institutional adjustment, etc. The inmate may not waive appearance with the Unit Team.

**Reentry Pre-Release Programming**
Release preparation begins on the first day of incarceration. The BOP's reentry strategy provides inmates with the opportunity to gain the necessary skills and resources to succeed upon release. Through coordinated efforts among the departments in the institution and collaboration with other agencies, a wide array of programs and activities are offered to better inmates' chances of a successful reentry upon release.

AUSP Thomson's Reentry Affairs Department offers the SMU population the opportunity to request individualized reentry packets containing information to assist with identifying and connecting with local support resources near their release residence on file. Services include: Programs for Sex-Offenders, Veterans, Tribal populations, Employment, Housing/Transportation, Medical or Mental Health, Clothing/Food/Household Goods, Financial Education, Substance Abuse Treatment, Counseling, Family Services, Mentoring, and Faith Based Reentry programs.

Inmates must be within 18 months of their projected release date to qualify for this service and must be specific when requesting a particular service. To request a reentry packet or for additional reentry-related questions, you must submit an Inmate Request to Staff to the Reentry Affairs Department.

When answering questions at initial classification (Team), it is imperative that inmates are open and honest so that the team can accurately identify needs and make appropriate program recommendations to improve inmates' chances

of a successful reentry. Each time an inmate goes to team, he or she will receive a progress update and new recommendations as warranted. Contributors and programming recommendations include Education, Health Services, Psychology, Unit Team, Recreation, Religious Services, and the inmate.

Inmates are strongly encouraged to take advantage of the program recommendations.

Additionally, to make the transition back to the community go as smoothly as possible, inmates should obtain at least two forms of identification, to include a Social Security card. Inmates may also be eligible for some benefits upon release (e.g., social security disability, veteran's benefits, Medicare, etc.) to make the transition easier.

**Treaty Transfer for Non-U.S. Inmates**
Inmates who are not U.S. citizens may be eligible for a transfer to their home country to serve the remainder of their sentence. At initial classification, the inmate will be advised if the inmate's home country has a formal exchange treaty with the United States. The Case Manager will provide additional information regarding an inmate's eligibility for participation in the program.

**Foreign Consular**
The most recent publication of the Consular Notification and Access directory will be located in the Law Library.

**SMU Progression and Program Completion**
As dictated by Program Statement 5217.02, Special Management Units (SMU), dated August 9, 2016, inmates will be reviewed within the first 28 days of their arrival and subsequently, every 90 days through Levels One, Two, and Three.

These reviews will be conducted by members of the Unit Team, Education, Correctional Services, Psychology, and chaired by the Associate Warden of Programs. These reviews will be used to determine the progression through levels. Inmates found guilty of disciplinary infractions in the greatest or high category will ordinarily be returned to the previously completed level or back to Level One. In situations where an inmate is pending a disciplinary hearing with the Disciplinary Hearing Officer (DHO), he may be placed in the housing level commensurate with the infraction until the hearing is conducted. During this time, he will still be eligible for privileges at his SMU level. If the inmate is found guilty of the infraction, he will lose those privileges, return to the previously completed level, or return to Level One. If the inmate is found not guilty by the DHO, the inmate will retain his current level, with all the time and effort being credited to the current level.

Upon completion of Level Three, inmates will be referred via form 325, Program Completion transfer.

If an inmate fails to complete the SMU program within 24 consecutive months, he will be placed in SMU "Fail" status. A thorough review will be conducted by the Correctional Programs Division (CPD) in the Central Office, which will

make a recommendation for the inmate's placement in an appropriate institution.

**Program Completion**

Upon successful completion of the SMU program, Unit Team staff will refer inmates for a Program Complete Transfer to an institution commensurate with their security and custody needs.

## DAILY INMATE LIFE

**Sanitation**

It is the inmate's responsibility to check his cell immediately after being assigned there and report all damages to the Unit Officer or Correctional Counselor. An inmate may be held financially liable for any damage to his personal living area.

The accumulation of food items, newspapers, magazines, books, etc., is a safety/fire hazard. Excess items will be confiscated and disciplinary action may be taken.

Cleaning supplies will be distributed on an as-needed basis and will include a small brush/broom, a dustpan, and cleaning/disinfectant solution in a paper cup. You will be issued a green scrub pad that you will retain in your cell for intermittent cleaning.

Items may not be attached to or drawn on walls, windows, light covers, or doors. All property will be neatly arranged and clean. See APPENDIX B.

**Personal Hygiene**

Toothpaste, toothbrush, deodorant, shampoo, and soap for personal hygiene are issued by the institution on shower days.

All SMU levels (One, Two, and Three) inmates will be afforded the use of hair/beard clippers two (2) times per month and may purchase a non-shaving solution from the commissary.

Showers will be provided three (3) times per week.

**Barber Shop**

Haircuts will be provided by submitting a Request to a Staff Member to the Unit Officer no later than the Friday of the preceding week. Inmates are permitted one (1) haircut per month.

**Personal Property Limits**

Items that may be retained by an inmate are limited for sanitation and security reasons, and to ensure excess personal property does not accumulate and pose a fire hazard or impair staff searches of the cell. Each institution is required to establish an Institution Supplement regarding Inmate Personal Property, specifically identifying personal property an inmate may retain.

**Storage Space**

The amount of personal property allowed each inmate is limited to those items that can be neatly and safely placed in the space designated.

Under no circumstances will any materials be accumulated to the point where they become a fire, sanitation, security, or housekeeping hazard.

**Clothing**
Civilian clothing (i.e. clothing not issued to the inmate by the BOP or purchased by the inmate through the Commissary) ordinarily is not authorized for retention by the inmate. Prerelease civilian clothing for an inmate may be retained by staff in the Receiving and Discharge area during the last 30 days of an inmate's confinement. All inmates are prohibited from wearing any clothing not government-issued or purchased in the Commissary.

No inmates may be issued, permitted to purchase, or have in their possession any blue, black, red, or camouflage clothing or cloth items. Commissary sales of clothing are limited to the following colors: Only gray and/or white clothing may be sold in institutions for males. The only exception is for religious headgear. All government clothing (except undergarments) will be tagged with a label indicating the inmate's name and registration number. These items are to be neatly stored in the identified storage space provided. Individual washcloths and towels are issued to inmates.

**Commissary/Special Purchase Items**
Inmates in all SMU levels (One, Two, and Three) may shop once every two weeks. Specific dates of the week an inmate ships from the commissary may vary from week to week due to institutional needs.

There are two (2) authorized commissary lists for SMU levels, Level One and Two, and Level Three and Complete. Inmates who are placed on commissary restriction will be able to purchase stamps, hygiene items, and over the counter medication (as specified by staff). Additionally, over the counter medication will be available to purchase per medical request.

Commissary sales will be conducted Tuesday-Thursday by Unit/Wing.

Hours: 6:30 a.m. to 3:30 p.m.

**Letters, Books, Photographs, Newspapers, and Magazines**
An inmate will be limited in the number of letters, books, photographs, magazines, and newspapers that can be stored in their designated storage space. Nothing is to be tacked, stapled, or taped to any surface. Ordinarily, photographs, particularly those of family and friends, are approved, since they represent meaningful ties to the community.

A personal photograph is defined as a photograph intended for individual viewing, as opposed to a photograph published for commercial use. Personal photographs may be stored or displayed in the housing units according to local sanitation and housekeeping guidelines. Inmates may not retain Polaroid photos.

Nude or sexually suggestive photos (individual prints or copies as opposed to those from publications) present special concerns about personal safety, security, and good order, particularly when the subject is an inmate's relative, friend, or acquaintance, or could reasonably be perceived as such.

For these reasons, an inmate is not permitted to retain, receive, or possess a personal photograph in which the subject is partially nude or nude, or when the photograph depicts sexual acts such as intercourse, fellatio, or sodomy. These materials will be returned to the sender upon receipt at the institution.

**Legal Materials**

SMU inmates are permitted no more than one cubit foot of legal materials in their cell at any given point in time.

SMU inmates will be provided a means to access their legal materials, along with the opportunity to prepare legal documents.

In order to request an exchange of legal materials in the cell with an equal amount of legal materials held in Unit storage as excess legal material, the inmate must complete a Request to Staff form and hand it to a member of the Unit Team.

Refer to 28 C.F.R. § 543.10 *et seq.* and BOP Program Statement 1315.07 for more information on inmate legal materials.

**Hobby Craft Materials**

Staff shall limit an inmate's hobby shop projects within the cell or living area to those projects which the inmate may store in designated personal property containers. Staff may make an exception for an item (for example, a painting) where size would prohibit placing the item in a locker. This exception is made with the understanding that the placement of the item is at the inmate's own risk. Staff shall require that hobby shop items be removed from the living area when completed.

**Radios & MP3 Players**

Each SMU participant will receive one MP3 player upon his arrival at AUSP Thomson. Personal radios and MP3 players are not allowed and will be mailed home at the institutions expense.

**Jewelry**

Inmates may have a plain wedding band and an appropriate religious medallion and chain without stones.

**Smoking**

Inmate smoking is prohibited in all BOP facilities.

**Quarters Rules**

In order to minimize maintenance costs, permit uniform inspection, search procedures, and maintain orderly congregate living, the institution has imposed reasonable regulations on inmate conduct and furnishings in housing units.

It is the inmate's responsibility to check his living area immediately after being assigned there and report all damages to the Unit Officer or Correctional Counselor. An inmate may be held financially liable for any damage to his personal living area.

Housekeeping, cleanliness, and storage of food and clothing items are an important aspect of your stay here. Each inmate is responsible for making

his bed daily.  You are to maintain proper levels of sanitation in your cell at all times.  Cardboard boxes and other paper containers are not permitted for storage due to their combustible nature.  The accumulation of food items, newspapers, magazines, books, etc. must be kept to a minimum, excessive items will be confiscated.  Any newspapers older than one week or magazines older than one month or modified in any way will be removed from the cell.

No items (i.e. family/personal photos, magazine pictures, newspaper, calendars, cloth lines, gang graffiti etc.) may be displayed on the cell walls, window, light covers or doors.  Failure to follow sanitation standards may result in incident reports.

Sexually suggestive photographs are NOT authorized for display. Provocative pictures, posters, cartoons, and any items cut out of magazines may not be displayed in any cell or dorm.

Unit officers will be responsible for scheduling weekly cell cleaning. An ample amount of cleaning supplies will be supplied.  Supplies retained for prolonged periods or returned altered may result in an incident report.

**Pest Control**
The Environmental and Safety Compliance Department (ESCD) is responsible for Pest Control Management.  The primary and most effective method to prevent infestations of rodents and insect pests is to eliminate conditions which promote their harborage or breeding.  The use of traps and chemical poisons is a secondary activity and will not result in the elimination of the condition that led to the initial infestation.

Units and living quarters will be treated as determined necessary by the Environmental and Safety Compliance Administrator.  If you have a pest control problem in your living quarters, submit a cop-out through your Unit Team to the ESCD to request treatment.  Prior to any treatment in your area, your living quarters must be clean, no food/drink items exposed, and items (shoes, papers, etc.) must be picked-up off the floor.  If it is determined that the infestation is related to poor sanitation, pest control treatment will not be applied.

**Adverse Weather**
In the event of adverse weather, listen and comply with staff commands.  If a Tornado Warning is issued and you are housed in units A-H, sit in the inside wall of your cell in a position to protect your head.

**Clothing Exchange & Laundry**
Institutions issue clothing to the inmate population that is properly fitted, climatically suitable, and presentable.  Institutions will furnish each inmate with sufficient clothing to allow at least three changes of cloths weekly.

Institutions establish local procedures to account for the initial issue of Government-furnished items to inmates and for their return before release. Government-issued clothing will not be altered or disfigured in any manner. Examples include, but not limited to, the following:  converting pants to shorts, pleats, cutting off shirt sleeves, defacing clothing, etc.  An inmate

found to have destroyed government property may receive an Incident Report, and appropriate disciplinary action will be taken.

**Clothing Issued:**
3 – Pants
3 – Boxers
3 – T-shirts
2 – Socks
1 – Shower shoes
1 – Canvas shoe

**Linen:**
2 – Towels
2 – Washcloths
2 – Sheets
1 – Blanket
1 – Seasonal blanket

Note:  Clothing/Linen may not be marked on, drawn on, or altered in any way.

Laundry Loops:  Inmates will be issued one laundry loop with their name on it. Inmate clothing will be laundered twice a week.

Exchanges/Repairs:  All exchanges of clothing or repairs will be requested on Inmate Request to Staff Member electronically via TRULINCS addressed to Laundry.  Once approved, the request will be returned to the inmate with approved items for pick up.  No items will be issued without a signed, approved request.  Bring the approved request with you on Fridays to the Laundry from 11:00 a.m. to 11:30 a.m. to pick up your approved items.  If you requested to exchange your clothing items, you will be required to bring your used items. All items needing exchanged will be on a one for one basis.

Linen and Blanket Exchange:  The Institution Laundry Department will exchange sheets and blankets.  The schedule will vary per unit.  Blankets will be exchanged once per month.  Sheets will be exchanged once per week.

Inmate Releases:  When an inmate is released, he must turn in all clothing and linens to the Laundry that were issued to him one day prior to his release, keeping only his linens and one uniform to be turned in the morning of release. Each inmate will be responsible for each article of clothing and linen issued to him.

Hygiene Items and Correspondence Materials:  Inmates may pick up institution issued hygiene items and correspondence materials (envelopes and paper) from their Unit Team.

**Commissary**
The BOP maintains inmates' monies (Deposit Fund) while incarcerated.  The purpose of the Deposit Fund is to provide inmates the privilege of obtaining merchandise and services either not provided by the BOP or a different quality than that provided by the BOP.

An inmate may use funds in their account to purchase items through the institution commissary, place funds on their inmate phone account, purchase TRU-Units for their TRULINCS account, or send funds by creating a BP-199. Inmates may not be in possession of cash at any time.  Upon release, all Trust Fund accounts will be consolidated and placed on an Inmate Release Debit Card.

**Spending Limitations**
Your spending limit will be established as described in Program Statement 4500.12, Trust Fund/Deposit Manual.

The National Spending Limit is $360.00 but may be further restricted at the local level. Each inmate account is revalidated on a monthly, bi-weekly, or weekly cycle.

**Deposits to Accounts**

**U.S. Postal Service**
Inmates' families and friends choosing to send inmates funds through the mail must send those funds to the following address and in accordance with the directions provided below:

Federal Bureau of Prisons
Insert Valid Committed Inmate Name
Insert Inmate Eight-Digit Register Number
Post Office Box 474701
Des Moines, Iowa 50947-0001

The deposit must be in the form of a money order made out to the inmate's full committed name and complete eight-digit register number.  Effective December 1, 2007, all non-postal money orders and non-government checks processed through the National Lockbox will be placed on a 15-day hold.  The BOP will return to the sender funds that do not have valid inmate information provided the envelope has an adequate return address.  Personal checks and cash cannot be accepted for deposit.

The sender's name and return address must appear on the upper left-hand corner of the envelope to ensure the funds can be returned to the sender in the event that they cannot be posted to the inmate's account.  The deposit envelope must not contain any items intended for delivery to the inmate.  The BOP shall dispose of all items included with the funds.

In the event funds have been mailed but have not been received in the inmate's account, and adequate time has passed for mail service to Des Moines, Iowa, the sender must initiate a tracer with the entity that sold them the money order to resolve any issues.

**Western Union Quick Collect Program**
Inmates' families and friends may also send inmates funds through Western Union's Quick Collect Program.  All funds sent via Western Union's Quick Collect will be posted to the inmate's account within two to four hours, when those funds are sent between 7:00 a.m. and 9:00 p.m. EST (seven days per week, including holidays).

Funds received after 9:00 p.m. EST will be posted by 7:00 am EST the following morning. Funds sent to an inmate through the Quick Collect Program may be sent via one of the following ways:

1) At an agent location with cash: The inmate's family or friends must complete a Quick Collect Form. To find the nearest agent, they may call 1-800-325-6000 or go to www.westernunion.com.

2) By phone using a credit/debit card: The inmate's family or friends may simply call 1-800-634-3422 and press option 2.

3) ONLINE using a credit/debit card: The inmate's family and friends may go to www.westernunion.com and select "Quick Collect".

**For each Western Union Quick Collect transaction, the following information must be provided:**

1) Valid Inmate Eight-Digit Register Number (entered with no spaces or dashes) followed immediately by Inmate's Last Name

2) Committed Inmate Full Name entered on Attention Line

3) Code City: FBOP, DC

Please note the inmate's committed name and eight-digit register number must be entered correctly. If the sender does not provide the correct information, the transaction cannot be completed. The Code City is always FBOP, DC.

Each transaction is accepted or rejected at the point of sale. The sender has the sole responsibility of sending the funds to the correct inmate. If an incorrect register number and/or name are used and accepted and posted to that inmate, funds may not be returned.

Any questions or concerns regarding Western Union transfers should be directed to Western Union by the sender (general public). Questions or concerns should not be directed to the BOP.

**MoneyGram ExpressPayment Program**
Inmates' families and friends may also send inmates funds through MoneyGram's ExpressPayment Program. All funds sent via MoneyGram's ExpressPayment will be posted to the inmate's account within two to four hours, when those funds are sent between 7:00 a.m. and 9:00 p.m. EST (seven days per week, including holidays). Funds received after 9:00 p.m. EST will be posted by 7:00 a.m. EST the following morning. Funds sent to an inmate through the MoneyGram ExpressPayment Program may be sent via one of the following ways:

1) At an agent location with cash: The inmate's family or friends must complete a MoneyGram ExpressPayment Blue Form. To find the nearest agent, they may call 1-800-926-9400 or go to www.moneygram.com.

**For each MoneyGram ExpressPayment transaction, the following information must be provided:**

1) Valid Inmate Eight-Digit Register Number (entered with no spaces or dashes), followed immediately by Inmate's Last Name

2) Company Name: Federal Bureau of Prisons

3) City & State: Washington, DC

4) Receive Code: Must always be 7932

5) Committed Inmate Full Name entered on Beneficiary Line

Please note that the inmate's committed name and eight-digit register number must be entered correctly.  If the sender does not provide the correct information, the transaction cannot be completed.

Each transaction is accepted or rejected at the point of sale. The sender has the sole responsibility of sending the funds to the correct inmate.  If an incorrect register number and/or name are used and accepted and posted to that inmate, funds may not be returned.

2) ONLINE using a credit, debit or prepaid card (Visa or MasterCard only): The inmate's family and friends can click on www.moneygram.com/paybills. Enter the Receive Code (7932) and the amount you are sending (up to $300). If you are a first time user you also must set up a profile and account.

Any questions or concerns regarding MoneyGram ExpressPayment transfers should be directed to MoneyGram by the sender (general public). Questions or concerns should not be directed to the BOP.

**Commissary Fund Withdrawals**

Requests for Withdrawal of Inmate Personal Funds, BP-199 forms, will be processed weekly by Trust Fund, Inmate Accounts. Withdrawals are initiated in TRULINCS, Send Funds (BP-199) by the inmate. When the BP-199 is printed it must be signed by the inmate in staff presence and hand delivered.  The Supervisor of Education approves withdrawal requests for correspondence courses and materials for approved education programs.  Unit Managers will approve all other withdrawal requests. Only an Associate Warden can approve inmate withdrawals exceeding $500.00.

**TRULINCS**

The Trust Fund Limited Inmate Computer System (TRULINCS) is the inmate computer network that provides inmates access to multiple services.  At no time do the inmates have any access to the Internet.

Inmate's access dedicated TRULINCS workstations installed in various housing units and common areas to perform various functions using their register number, Phone Access Code (PAC), and the fingerprint process or Commissary Personal Identification Number (PIN).  Inmate access to these workstations varies depending on the institution.

Account Transactions:  This service allows inmates to search and view their Commissary, telephone, and TRULINCS account transactions, as well as, view their Media List.

Bulletin Board:  This service is used to supplement the use of inmate bulletin boards within the institution for disseminating information to the inmate population.

Contact List:  This service is used by inmates to manage their email address list, telephone list, and postal mailing list.  Inmates also mark for print postal mailing labels within this service.

If an email address is entered for a contact, TRULINCS sends a system generated message to the contact directing them to www.corrlinks.com to accept or reject email contact with the inmate prior to receiving any messages from the inmate. If a positive response is received, the inmate may begin exchanging electronic messages with this contact.  If a contact rejects TRULINCS participation, the inmate is blocked from sending any messages to that email address.

Law Library:  This service allows inmates to perform legal research.

Manage Funds:  This service allows inmates to manage their personal funds by creating/canceling Requests for Withdrawal of Inmate Personal Funds (BP-199) and their Pre-Release Account.

Manage TRU-Units:  This service allows inmates to purchase TRU-Units using available Commissary funds or transfer TRU-Units back to their Commissary account.

Prescription Refill:  This service allows inmates to request prescription refills via TRULINCS of self-carry medications that are ready for refill directly to the Pharmacy.  Pharmacy staff will receive the prescription refill request and process the request accordingly.  Inmates will follow established local procedures for picking up requested prescriptions.

Print:  This service allows inmates the opportunity to print various documents marked for print within TRULINCS.  Mailing labels and BP-199 forms may be printed for free.  All other documents can be printed at a cost.

Public Messaging:  Inmates may correspond with friends and family using public messaging.  This is a restricted version of email that will only allow text messages and no attachments.  There is a cost per minute fee for using this service.  Messages are limited to 13,000 characters.

Request to Staff:  This service allows inmates to correspond with staff electronically.  The list of available departments varies by institution; however, there is a standard DOJ Sexual Abuse Reporting mailbox available that provides inmate with an additional method to report allegations of sexual abuse and harassment directly to the Office of Inspector General (OIG).

Survey:  This service allows inmates to take BOP surveys (i.e., Institution Character Profile).

**Inmate Telephone System — TRUFONE**

**SMU Telephone Calls**
Inmates participating in the SMU Program at the USP who wish to utilize ITS for calling privileges; will need to generate and maintain their phone lists using the contacts field in TRULINCS. Inmates will be allowed to make changes to their phone lists once every (30) days. Once a phone list is generated, the phone numbers on the inmates ITS account will transfer in/out from institution to institution.

Provided there are no telephone restrictions as the result of disciplinary sanctions or other administrative reasons, inmates in Level One will be permitted two (2) 15-minute telephone calls per month.  Inmates in Level Two will be permitted four (4) 15-minute calls per month.  Access to the telephone in Levels One and Two is based on calls per month, not minutes. Inmates in Level Three will be permitted fifteen (15) phone calls per month, not to exceed 150 minutes.  Inmates in SMU COMPLETE status will receive the same phone privileges as Level Three.  Replacement calls will not be given due to the call being dropped by the called party or dropped due to the called party's cell phone.  The telephones utilized by inmates are **MONITORED and TAPED.**

Each inmate will be provided a nine-digit Phone Access Code (PAC) for accessing TRUFONE; including instructions for use of this system.  The PAC is confidential and should not be shared with other inmates.  A replacement fee will be charged if a PAC is misplaced or compromised.  In addition, each inmate will need to perform voice verification registration.  Management of inmates' telephone numbers is performed via the TRULINCS.

TRUFONE funds are transferred using the TRUFONE system and must be done in even dollar amounts.  The TRUFONE funds are deducted from an inmate's commissary account and transferred to the TRUFONE account immediately. Transfers may be made from any telephone during operational hours.  It is each inmate's responsibility to verify the correctness of the amount transferred at the time of transfer.

**Visiting Procedures**
Provided there are no visiting restrictions as the result of disciplinary or other reasons, visitation for inmates in all SMU Levels (One, Two, and Three) will be facilitated via video visiting, and will only be available to immediate family members, which include parents or (legal guardians which must be verified), siblings, offspring, spouses, and grandparents.  The relationship must be verified.  These visits are limited to one hour only.

Inmates in all levels must submit a request in writing to the Unit Manager, at least two weeks in advance of the expected visit.  As the availability of video equipment will be limited, visits will be limited to one hour per inmate (more time may be allotted based on availability of visiting booths/equipment).
Visits will be scheduled in accordance with the availability of video equipment needed to facilitate the visit, and rotated according to the level

and the living quarters.  NOTE:  Visitation is subject to monitoring and participation in the visiting process constitutes consent to this monitoring.

**Inappropriate Sexual Behavior**
Inappropriate sexual behavior towards staff and other inmates will not be tolerated.

Inappropriate sexual behavior is defined as verbal or physical conduct perceived as a sexual proposal, act, or threat.  Examples of inappropriate inmate sexual behavior include, but are not limited to: displaying sexually explicit materials; making sexually suggestive jokes, comments, proposals, and gestures; and engaging in stalking, indecent exposure, masturbation, or other inappropriate or unauthorized physical contact.

Inmates who engage in this type of behavior will be disciplined and sanctioned accordingly through the inmate discipline process and may be subject to criminal prosecution.

**ANY VIOLATION OF VISITING REGULATIONS MAY RESULT IN DISCIPLINARY ACTION AND/OR LOSS OF VISITING PRIVILEGES AND POSSIBLE CRIMINAL PROSECUTION OF THE VISITOR.**

**Directions to AUSP Thomson**

- From the West (Des Moines, IA): Take I-235 E. Merge onto I-80 E via EXIT 137A toward Davenport. Merge onto US-61 N via EXIT 295B toward Eldridge/DeWitt. Merge onto US-30 E via EXIT 137 toward De Witt/Clinton. Turn right onto 8th Ave S/US-30 E. Continue to follow US-30 E. Turn left onto Waller Rd/IL-84. Continue to follow IL-84.

- From the North (Madison, WI): Take S Park St/US-151 S. Continue to follow S Park St South. S Park St South becomes US-14 E. Turn right onto State Road 92/WI-92. Turn left onto S Rutland St/WI-104/County Hwy-T. Turn onto WI-59/State Road 59. Turn onto E Main St/WI-59. Turn left onto Vine St/WI-59. Merge onto WI-11 W toward Dubuque. Turn left onto County Hwy-M. Turn left onto County Hwy-B/County Hwy-M/County Road B. Take the 1st right onto County Hwy-M/County Road M. County Hwy-M/County Road M becomes IL-73. Turn right onto IL Route 64/US-52 W/IL-64. Turn left onto S Clay St/IL-78. Continue to follow IL-78. Turn right onto Argo Fay Rd. Turn right onto Illinois Route 84/IL-84.

- From the South (Springfield, IL): Take IL-97E. Merge onto I-55 N toward Chicago. Merge onto I-155 N via EXIT 127 on the left toward Peoria/Hartsburg. Merge onto I-74 W. Merge onto I-80 W. Take the IL-84 exit, EXIT 1, toward East Moline/Savanna. Turn right onto IL-84/Route 84 N.

- From the East (Chicago, IL): Take I-290 W/Chicago-Kansas City Expressway W/Eisenhower Expy W. Keep left to take I-88 W/Chicago-Kansas City Expressway W via EXIT 15A toward Indiana/Aurora. Take EXIT 36 toward US-30 W/Clinton. Merge onto Lincoln Hwy W. Lincoln Hwy W becomes US-30 W.

Turn onto Fulton Rd/IL-136. Turn right onto Waller Rd/IL-84. Continue to follow IL-84.

**Local Transportation & Accommodations**

**Nearest Airports**

- Quad Cities International Airport (Moline, IL) – 52 miles.
- Dubuque Regional Airport (Dubuque, IA) – 59 miles.
- Chicago-Rockford International Airport (Rockford, IL) – 65 miles.
- Chicago O'Hare International Airport (Chicago, IL) – 144 miles.
- Chicago Midway International Airport (Chicago, IL) 149 Miles.

**Nearest Bus Terminal**

- Burlington Trailways (Davenport, IA) – 50 miles.

**Nearest Train Station**

- Amtrak (Moline, IL) – 50 miles.

**Local Taxi Companies**

- Sun Valley Cabs                  Savanna, IL.
- Clinton's Cab Company            Clinton, IA.
- Good to Go Taxi Cab Service      Davenport, IA.

**Local Hotels**

- Hampton Inn 2781 Wild Rose Dr. Clinton, IA. (563) 243-5555
- AmericInn    1301 17th St, Fulton, IL.      (815) 589-3333
- Knights Inn 800 1 Mile Rd, Thomson, IL.     (815) 259-7378

**SECURITY PROCEDURES**

**Attire**
Inmates must be in their proper uniform (normally khaki pants and khaki shirts) Monday through Friday, between 7:30 a.m. and 3:30 p.m.  The uniform must be maintained in a neat and professional manner, with shirts tucked in and pants around the waist line.  Other than approved religious headgear, hats will not be worn while indoors.

**Counts**
Each institution will conduct, at a minimum, five official inmate counts during every 24-hour period.  On weekends and holidays, an additional count will be conducted at 10:00 a.m.

The inmate is expected to be standing at bedside during official counts held at 4:00 p.m. and 9:30 p.m. on weekdays. The inmate will also be required to stand for count during the 10:00 a.m., 4:00 p.m., and 9:30 p.m. on weekends and holidays, and during any emergency count.

Any inmate who either refuses to stand for the count, or in any way delays the counting officers, will be subject to disciplinary action.

**Contraband**

Items possessed by an inmate ordinarily are not considered to be contraband if the inmate was authorized to retain the item upon admission to the institution, if the item was issued by authorized staff, purchased by the inmate from the commissary, or purchased or received through approved channels (to include approval for receipt by an authorized staff member or authorization by institution guidelines). Controlling contraband ensures a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems related to inmate personal property.

Contraband includes material prohibited by law or regulation, or any material that can reasonably be expected to cause physical injury or otherwise adversely affect the security, safety, or good order of the institution.

Staff shall consider as nuisance contraband any item (other than hard contraband) that has never been authorized, or which previously has been authorized for possession by an inmate, but which possession is prohibited when either it presents a threat to security or its condition or excessive quantities present a health, fire, or housekeeping hazard. Examples of nuisance contraband include, but are not necessarily limited to: personal property no longer permitted for admission to the institution or permitted for sale in the commissary; altered personal property; excessive accumulation of commissary, newspapers, letters, or magazines that cannot be stored neatly and safely in the designated area; food items which are spoiled or retained beyond the point of safe consumption; government-issued items which have been altered, or other items made from government property without staff authorization.

Staff shall seize any item in the institution that has been identified as contraband, regardless of whether the item is found in the physical possession of an inmate, in an inmate's living quarters, or in common areas of the institution.

An inmate may not purchase, give, or receive any personal property from another inmate.

Staff shall return to the institution's issuing authority any item of government property seized as contraband.

Items of personal property confiscated by staff as contraband are to be inventoried and stored pending identification of the true owner (if in question) and possible disciplinary action. Staff will then provide you with a copy of the inventory as soon as practicable.

**Shakedowns**

Staff may search an inmate's housing and work area and personal items contained within those areas, without notice, randomly, and without the inmate's presence. The property and living area will be left as close to the same conditions as found.

**Pat Searches**

You will be subject to pat searches by staff at any time. Random pat searches are utilized to control weapons and other contraband that provides for the safety of both staff and inmates. Inmates who refuse to submit to a pat search by a staff member will be subject to disciplinary action.

Inmates assigned to the Special Management Unit will be pat searched and metal detected every time they are moved from one area to another.

### Cell Moves
Cell moves will be conducted at least once every twenty-one (21) days, but may occur sooner. Staff will determine housing assignments, and cell moves are not optional. Refusing cell moves will result in an incident report and other actions deemed appropriate by staff.

### Drug Surveillance / Alcohol Detection
BOP facilities operate drug surveillance and alcohol detection programs, which include mandatory random testing, as well as testing of certain other categories of inmates. A positive test, or refusal to submit a test, will result in an incident report.

### Fire Prevention and Control
Fire prevention and safety is everyone's responsibility, including yours. Inmates are required to report fires to the nearest staff member so that property and lives can be protected. Piles of trash or rags in closed areas, combustible material, items hanging from fixtures or electrical receptacles, or other hazards will not be tolerated.

Staff at the institution are trained in using emergency fire suppression equipment. During a fire emergency, you may be notified by the unit officer(s) to cuff up prior to being evacuated. Upon evacuation, you will be escorted to a temporary holding area until the unit has been cleared for return. Simulated fire drills will be conducted quarterly, to familiarize the entire unit with fire emergency procedures. Failure to follow staff orders during a fire emergency or drill will result in an incident report.

### PROGRAMS AND SERVICES

### Inmate Financial Responsibility Program
Working closely with the Administrative Office of the United States Courts and the United States Department of Justice, the BOP administers a systematic payment program for court-imposed fines, fees, and costs. All designated inmates are required to develop a financial plan to meet their financial obligations. These obligations may include: special assessments imposed under 18 U.S.C. 3013, court ordered restitution, fines and court costs, judgments in favor of the United States, other debts owed to the United States, and other court-ordered obligations (e.g., child support, alimony, and other judgments).

Institution staff assist in planning, but the inmate is responsible for making all required payments either from earnings within the institution or from outside resources. The inmate must provide documentation of compliance and payment. If an inmate refuses to meet his or her obligations, the inmate

cannot work for UNICOR or receive performance pay above the maintenance pay level. He/She will also be placed in "refuse" status. As the result of being in refuse status, the inmate has a spending limit of only $25.00 monthly, can be placed in less desirable housing, will not be considered for any favorable requests, i.e. (vacations, furloughs, early release, etc.) and will score zero in responsibility on the progress report. These are a few examples of the sanctions that can be imposed as a result of being in refuse status.

The status of any financial plan will be included in all progress reports, and will be considered by staff when determining Security/Custody level, job assignments, eligibility for community activities, and institutional program changes. The U.S. Parole Commission will also review financial responsibility progress at parole hearings.

**Food Service**
The mission of AUSP Thomson's Food Service Department is to prepare and serve nutritionally adequate meals. The BOP has adopted a National Menu to which all food service departments must adhere. This menu is offered at all institutions and includes approved menu items based on standard recipes and product specifications. The National Menu offers regular, heart healthy and no-flesh dietary options. Meals are served in reusable trays with snap-on lids. This ensures the wholesomeness of the items served. Trays are color-coded to distinguish between certified religious diets, no flesh, no pork, regular meals, and medical diets.

All meals are to be consumed in the cells. The menu at AUSP Thomson does not include fried items, items with bones, sugar, or other food items that can pose an imminent security concern to the institution. A suitable alternative for these items will be provided when listed on the menu. Substitutions of similar items are authorized when necessary per Program Statement 4700.05, Food Service Manual.

Medical diets are directed only by the Health Services Department and must be prescribed only by the CD, staff physician, staff psychiatrist, or staff dentist. A heart-healthy choice is offered to all inmates. This diet is the option of a low fat food item versus a high fat food item. If you wish to obtain the heart-healthy choice, you must request it.

Religious meals are only directed by the Religious Services Department. The BOP provides inmates requesting a religious diet reasonable and equitable opportunity to observe their religious dietary practice within the constraints of budget limitations and the security and orderly running of the institution and the BOP through a religious diet menu.

**Education/ Recreation Services**
The mission of Education/Recreation Services is to provide mandatory literacy and English-as-a-Second Language programs as required by law, as well as other education/recreation and related programs that meet the needs and interests of the inmate population, provide options for the positive use of inmate time, and enhance successful reintegration into the community.

Education opportunities provided for Federal inmates include General Equivalency Diploma (GED) and ESL programs, as required by law. Various nationally recognized tests will be used to place inmates in appropriate education programs. Inmates must perform to the best of their abilities on exams for appropriate placement in class.

**Literacy/GED**

In order to be considered as participating in Education programming to advance through the SMU program, inmates must continuously participate in at least one (1) of the following programs offered:

- Literacy Program
- GED
- Pre-GED
- Spanish GED
- Special Learning Needs
- English as a Second Language
- Adult Continuing Education and Radio Courses
- Post-secondary College Correspondence Courses

**\*\* Failure to participate in the above programs can negatively affect your advancement through the SMU program. \*\***

Enrollment Requirement: Inmates who do not show proof of a high school diploma or GED are required to attend a mandatory 240 hour GED program.

**English as a Second Language (ESL)**

Enrollment Requirement: Mandatory for non-English speaking inmates.

Background: The Crime Control Act of 1990 requires that non-English speaking federal prisoners participate in an ESL program until they function at a minimum of the 8.0 grade level on the CASAS examination.

The purpose of the ESL class is to provide the student with the opportunity to develop effective English language skills.

Participation in the program is mandatory for all non-English speaking inmates unless they have an INS detainer on file, as verified by their Case Manager. However, the Education Department encourages all non-English speaking inmates to participate in the program.

Once enrolled, inmates who do not complete their assigned work two (2) consecutive times will be dropped from the ESL program and listed as "refused" participation. Once dropped, the inmate will remain out of the program for a minimum of 2 months/60 days. It will be the responsibility of the inmates to contact the Education Department for reenrollment after 2 months/60 days has expired.

**Official Testing**

Official GED testing and CASAS Certification testing is a privilege in the SMU program. Inmates who demonstrate successful completion of all assignments, who have passing scores on practice tests, and who have their instructor's recommendation will be placed on the official GED Exam waiting list.

Violent Crime Control and Law Enforcement Act/Prison Litigation Reform Act (VCCLEA/PLRA)

VCCLEA applies to an inmate whose offense occurred on or after September 13, 1994, but before April 26, 1996. PLRA applies to inmates whose offense occurred on or after April 26, 1996. Both laws, (VCCLEA and PLRA) mandate that inmates who do not possess a GED or high school diploma must satisfactorily participate in the literacy program for a minimum of 240 hours or until attainment of a GED. Failure to do so will result in an inmate being coded as GED UNSAT, which may affect the inmate's Good Conduct Time (GCT) by 12 days per year.

Inmates determined to be in need of the literacy program (and sentenced under VCCLEA/PLRA) will be provided in-cell assignments and material appropriate for their placement.

Inmates enrolled in the literacy program will ordinarily be visited once a week by an Education staff member to pick-up, distribute, and answer questions on their assigned work. The amount of time it takes to receive materials depends on many factors, including available resources, institutional needs, and the competitive needs of all inmates. Inmates who do not complete their assigned work two (2) consecutive times will be dropped from the literacy program, listed as "refused" participation and coded appropriately. Once dropped, they will remain out of the program for a minimum of 2 months/60 days. It will be the responsibility of the inmates to contact the Education Department for the reenrollment after 2 months/60 days has expired.

**Educational Good Time Sentence Credit for D.C. Offenders (DCEGT)**
This credit is authorized by the District of Columbia (D.C.) Code and reduces the amount of time to serve under a term of imprisonment. The policy applies to D.C. code offenders in BOP custody who committed their offenses before August 5, 2000, and completed designated education programs successfully while in BOP custody on or after August 5, 1997. It is the inmate's responsibility to submit a cop-out to staff requesting that DCEGT be applied to their sentence.

This should be done after the completion of an eligible program.

**GED/ESL Incentive:**

A. Each student completing the Literacy Program/GED/ESL will receive a monetary award of $25.00 (if eligible).

C. Due to the special circumstances of the Special Management Unit program at AUSP Thomson, a formal graduation ceremony will not take place.

**Adult Continuing Education (ACE)**
Adult Continuing Education (ACE) courses are offered to the entire inmate population without regard to an inmate's education level. ACE courses are rotated on a two (2) month basis and are broadcast over TBD SMU Radio.

ACE Radio Program packet information will be distributed to each cell every two (2) months.  Every week, an Education staff member will make rounds to pick up ACE packet answer sheets.

Any requests, questions, or concerns need to be submitted to Education staff in writing.  The amount of time it takes to receive materials depends on many factors including available resources, institutional needs, and competitive needs of all inmates.  In order to be considered as participating in the ACE SMU Radio Program, inmates must complete all four courses offered every two (2) months.

If the ACE packet is lost or damaged, inmates may print or copy a new packet from the Electronic Law Library/Local Documents.

A certificate of SMU Radio course completion will be issued by the Education/Recreation Department upon successful completion of each level of advancement.  This certificate will highlight all of the radio courses that were completed within the previous level.

**Post-Secondary Education (PSE)**
Enrollment Requirement:  Verified GED or high school diploma.  Inmates who wish to enroll in Education-related correspondence courses must first receive approval from the Supervisor of Education (SOE).  To obtain approval for enrollment in a correspondence course, the requesting inmate must complete an Application for Correspondence Study Approval Form and attach copies of any information related to the course requested.  If the correspondence course is determined to be suitable, an Authorization to Receive Package or Property form will be completed, and the requesting inmate will be notified of approval. Any correspondence course material that is received prior to approval will be returned to sender.  The costs of enrollment in the requested correspondence course will be the responsibility of the requesting inmate.

Inmates who do not complete their assigned work assignments or receive two (2) consecutive non-participation responses from the school will be dropped from the PSE program and listed as "refused" participation.


**Vocational Training (VT)**
Inmates may participate in limited VT preparation courses, provided they meet the qualifications/pre-requisites.  Only qualifying inmates will be contacted by the Education Department to enroll in this course within the first 30 days of placement in Level Two.  Inmates must have a high school diploma or GED. When entering Level Two, inmates must have 6+ months available to complete the course.  Inmates cannot have any 100 or 200 series incident reports or pending incident reports within the last 4 months in their disciplinary record. Disciplinary records will be monitored during enrollment.  If at any time an inmate receives a 100 or 200 series incident report, that inmate will be removed from this course and program permanently.  Inmates enrolled in the VT preparation program will be normally visited once every week by the VT Instructor to pick up and distribute their assigned work.

Any requests, questions, or concerns need to be submitted to the VT Instructor in writing.  Once enrolled, inmates who do not complete their assigned work will be dropped from the VT program permanently and listed as "refused" participation.  Rules, procedures, and schedules are subject to change at any time according to institutional needs.

## Library Services

### Law Library

Each housing unit has a computer that is equipped with an Electronic Law Library (ELL) for inmate use. Inmates must submit a request to the Unit Officer to use the ELL computer. There is one ELL computer per Unit, and it is the joint responsibility of all inmates living in that Unit to safeguard and respect their fellow inmates' right to access the ELL computer by refraining from damaging or attempting to damage/destroy the ELL computer, the printer, or any part of the cell in which the equipment is maintained.

**NOTICE IS HEREBY GIVEN THAT ANY INMATE WHO ABUSES THE PRIVILEGE OF THE USE OF THE ELL COMPUTER—INCLUDING BY TAMPERING WITH, DAMAGING, DESTROYING, OR ATTEMPTING TO TAMPER, DAMAGE, OR DESTROY THE CELL OR THE COMPONENTS THEREIN—--MAY BE SUBJECT TO DISCIPLINARY ACTION PURSUANT TO PROGRAM STATEMENT 5270.09 AND/OR TO CRIMINAL PROSECUTION, IN ADDITION TO THE POSSIBILITY OF THE SUSPENSION OF THAT INMATE'S ABILITY TO ACCESS THE ELL COMPUTER.**

Inmates will be afforded a reasonable amount of time to conduct legal research using the ELL computer. Moreover, because there is only one ELL computer within each Unit, use of the ELL computer will be based on priority of need. Inmates who can demonstrate a requirement to meet an imminent court deadline will receive priority over inmates with no imminent court deadline.

Refer to 28 C.F.R. § 543.10 *et seq.* and BOP Program Statement 1315.07 for more information on the inmate law library and legal research.

All legal materials required to be made available to inmates by applicable federal law and BOP policy are available on the ELL computer. Institution Supplements and Central Office notices are also made available on the ELL computer under the "Bulletin Board" section.

NOTE:  The Education Department and Law Library do not supply any reference materials (dictionaries, thesauruses, phone books, etc.), pencils, paper, or other supplies to any SMU inmates.

### Legal Material

Inmates may request copies of their legal materials by submitting a Legal Materials Request Form. In order to get this form, inmates must submit a Request to Staff (cop-out). More detailed instructions are located on the Legal Materials Request Form.

Copies will be made of legal materials only, and you must provide proof of a legal need for copies as laid out in Program Statement 1315.07, <u>Legal Activities, Inmate</u>.

Copies will only be reproduced on one side of standard 8½" x 11" copy paper, and the Library will not honor any requests for enlargements and/or reductions of your legal materials. In order to help maintain acceptable levels of legal materials, there is a LIMIT OF 5 COPIES per page unless you can provide a written court-mandated need for more. Also, the Library WILL NOT make copies of BLANK LEGAL FORMS, these items are not considered to be legal in nature until something is written on the form.

Accommodations will be made for legal copies to those inmates with a verified imminent court deadline.

In the event that you are on indigent status (inmates lacking funds) and need items printed off of the ELL computer, you may request an Indigent Inmate Request for Printed Legal Pages form from the Law Library. Please read and carefully follow the directions before completing the form in its entirety. A verification of indigent status will be completed prior to fulfilling the request.

NOTE: Inmates on encumbered status are not indigent.

All inmates, including indigent inmates, will be required to legibly sign a pre-completed form BP-199.045 (Request for Withdrawal of Inmate Personal Funds) in the amount for which it costs to complete the copies.

This form will be provided to the inmate by the Law Library Staff (or its representative) when the completed copied are delivered. All copies cost $0.15 per page. When signing the form BP-199, please provide your signature only on the designated line. No political statements, nicknames, or other written statements will be accepted. If you fail to abide by this rule, you WILL NOT receive your requested copies and an incident report may be written. Additionally, any inmate who refuses to sign the form BP-199 WILL NOT receive his requested copies and an incident report may be written for your refusal to pay.

Delivery of legal copies and indigent printouts are customarily provided to all units once a week. The amount of time it takes to receive materials depends on many factors including, but not limited to, available resources, institutional needs, date of submission, and the competitive needs of all inmates. No deliveries will be made on legal holidays or weekends.

**Typewriters**

SMU inmates will not have access to typewriters, but will instead have access to a writing instrument and paper to draft legal documents.

**Leisure Library**

**Services Available**

A. Levels One, Two, and Three inmates have book carts/shelves on each floor in their units.

B. Book titles are limited to what is available on the cart/shelf. No requests will be accepted for specific book titles.

C.    Books are rotated quarterly.

D.    Books are handed out by the Unit Officers with the established unit schedules.

**Recreation**

**Recreation, Leisure, Wellness**
The BOP encourages inmates to make constructive use of leisure time and offers activities. These activities strive to provide inmates with opportunities to reduce stress and enhance overall health and emotional well-being.

Inmates in Level 1 and 2 will be provided the opportunity to participate in recreational in cell activities. These activities will be in the form of handouts. To receive credit for individual participation, inmates must complete the activities within the allotted time. The activities will be handed out and collected by recreation staff. If any recreation material is altered, damaged or lost, the inmate will receive an incident report, which may result in an adjustment of the delivery of recreation materials to the inmate.

The institution does not provide an inmate photograph program for the SMU inmates.

**Exercise**
Inmates will be offered five (5) hours of recreation per week.  If the inmate refuses recreation when the recreation area is available, he will be considered to have refused his recreation for that day. Inmates are not allowed to choose recreation partners.

**Religious Services**
The Religious Services Department provides pastoral care and religious accommodation in accordance with the law, federal regulations and BOP policy. Chaplains offer pastoral counseling, spiritual direction, support, and crisis intervention. Chaplains oversee the religious diet program, ceremonial religious meals, and religious holiday observances.

Program Statement 5360.09 and Institution Supplement TOM 5360.09, <u>Religious Beliefs and Practices</u>, provide more information.

Inform your family to provide complete information to the institution in case of a family emergency.

Complete information includes, but is not limited to: the caller's names, address, telephone number, your registration number, the affected person's name, the actual location/address and contact information, and the name and contact information for an independent third-party who can verify.  Pastoral calls are ordinarily placed via Inmate Telephone System (ITS).

This information will be verified before you are notified.  If the information received cannot be verified by an outside agency (hospital, funeral home, law enforcement, etc.), you will not be notified.  After the information has been verified, a Chaplain will notify you of the emergency and, if appropriate, arrange for you to communicate with your family.

**Pastoral Counseling**
Chaplains are available during rounds. Appointments may be requested through submission of a written request. Pastoral counseling will be conducted at the cell door.

**Written Requests**
Written Inmate to Staff Requests must be submitted on a full sheet of paper including last name, register number, unit and cell assignment, and date. Incomplete requests will not be accepted.  Staff will not complete incomplete written requests.

**Religious Preference & Tolerance**
If AUSP Thomson is your first assignment in the BOP, Unit Team will denote your religious preference.  If you wish to change your preference, submit a written request to Religious Services.

No one may disparage the religious beliefs of an inmate, nor coerce or harass an inmate to change religious preference. Inmates are expected to be respectful to others with differing beliefs.

**Programs that Enhance Reentry Success**
Chaplains may provide addresses for ministries that supply correspondence courses, subject to availability.  The Chapel library has resources available for your spiritual growth.  A list of available softcover books is posted on the TRULINCS computer system.  Book lists are posted by religion.

A list of Holy Days, Fast Days, Ceremonial Meals, and their deadlines, is located on the TRULINCS computer system.  All accommodations must be requested in writing individually.

**Religious Items and Literature**
Authorized personal religious items may be purchased / acquired by the adherent. Authorized items available from Commissary may be purchased by those whose religious preference reflects a need for those items.  Authorized items not available from Commissary may be purchased via Special Purchase Order from an approved vendor.

Items should be less than $100 in value. Pre-approved items are listed and available from Religious Services upon written request.  Authorized items not available for purchase may be acquired by Authorization to Receive a Package form (i.e., eagle feathers).  Softcover books may be checked out from the Chapel library in two-week increments. Loaned books must be returned to the Chaplain in order to receive new books. Books are traded on a one-for-one basis.  Lost or damaged books will be charged to the inmate, and an incident report may be written.

Religious books may also be purchased according to Program Statement 5266.11, Incoming Publications.

**Religious Diet Program**
Inmates must submit a written request to be interviewed.  The Chaplaincy team will review your answers to the interview.  A determination will be made to approve you for self-selection from the mainline, with access to a no-flesh

option, or for certified processed foods.  You will be notified in writing
via form BP-S700-053, Notification of Religious Diet Accommodation.  If
approved for the certified food component, Food Service will ordinarily begin
serving the certified food in two working days under normal operations.  Those
not approved may request a re-interview at six-month intervals.

An inmate may be removed from the certified food diet if he is observed eating
from mainline, missing consecutive meals, changing his religious preference,
and/or purchasing food items from Commissary that are not permissible based
on his religious requirements.  Removal is not punitive in nature but provides
an opportunity for the inmate and staff to reevaluate the program's
appropriateness to meet the inmate's demonstrated need.  The process of re-
approving a religious diet for an inmate who voluntarily withdraws or who is
removed will ordinarily extend up to thirty days.  Repeated withdrawals
(voluntary or otherwise) may result in a waiting period of up to one year.
At that time, a request for reinstatement will require a re-interview.

**Religious Rights**
Opportunities for religious activities are open to the entire inmate
population without regard to race, color, nationality or, ordinarily, creed.
The Warden, after consulting with the institution Chaplain, may limit
participation in a particular religious activity or practice to the members
of that religious group.

Ordinarily, when the nature of the activity or practice (e.g., religious
fasts, wearing of headwear, work proscription, ceremonial meals) indicates a
need for such limitation, only those inmates whose files reflect the pertinent
religious preference will be included.  When seeking religious accommodation,
submit the request in writing.  Religious Services staff will attempt to
accommodate your request within the limits of policy.

**Schedules**
The Supervisory Chaplain works 12:00 p.m. - 8:30 p.m. on Sundays, earlier
hours Monday through Thursday, and off duty Friday and Saturday.  Staff
Chaplains' days off will ordinarily occur during the week.  The Religious
Services Assistant will ordinarily work Monday through Friday. Specific
schedules are available on the Chapel Program Schedule posted on TRULINCS.

**Community Resources**
Procedures regarding Ministry of Record, Clergy Visits, and Prison Visitation
Support (PVS) will occur according to procedures in
Program Statement 5360.09, Religious Beliefs and Practices.

**Psychology Services**
Psychology Services departments in all BOP institutions offer mental health
care to inmates.  This care may include screening, assessment, and treatment
of mental health or drug abuse problems, individual and/or group counseling,
psycho-educational classes, self-help and supportive services, or referral to
Health Services for medical treatment of a mental illness.

If you are new to the BOP, or if you have previously identified mental health
or drug abuse programming needs, you will be scheduled for an interview with

Psychology Services staff. The purpose of this interview is to review your history and identify your programming needs. A psychologist may make recommendations to support your successful adjustment to prison and prepare you for your eventual release. We encourage you to participate actively in this process. This interview is an ideal time for you to share your interest in specific services, such as drug abuse treatment or mental health counseling.

The AUSP Thomson Psychology Services department is staffed by a Chief Psychologist, a SMU Treatment Coordinator, Restrictive Housing Psychologists, a Drug Treatment Coordinator, SMU Treatment Specialists, a Drug Abuse Treatment Specialist, a Social Worker, and a technician. Staff offices are located in the programming wing of the housing units or next to Education in the programs building. There are a number of ways to contact Psychology Services at this institution. You may:

- Submit an Inmate Request to a Staff Member (a "cop-out") to Psychology Services.
- Speak with a Psychology Services staff member as they make rounds in your unit.
- Or in the case of a crisis situation, notify your Unit Officer, Unit Team, or any other BOP staff member of your urgent need to speak with Psychology Services.

Psychology Services will be responsible for providing mental health services to SMU participants on an as-needed basis.

**Suicide Prevention**
Incarceration can be a difficult experience. At times, you may feel discouraged, frustrated, and helpless. It is not uncommon for people to experience depression while in jail or prison, especially if they are newly incarcerated, serving a long sentence, experiencing family problems, struggling to get along with other inmates, or receiving bad news. Over time, most inmates successfully adapt to incarceration and find ways to use their time productively and meaningfully. However, some inmates continue to struggle with the pressures of incarceration and become overwhelmed by a sense of hopelessness. If you feel a sense of hopelessness or begin thinking about suicide, talk to a staff member. Help is available and actively seeking help is a sign of your strength and determination to prevail. If you feel you are in imminent danger of harming yourself or someone else, you should contact a staff member immediately.

In addition, if you suspect another inmate is contemplating suicide, please notify a staff member. Staff do not always see everything inmates see. And, most suicidal individuals display some warning signs of their intentions. PLEASE alert a staff member right away if you suspect a fellow inmate is considering suicide. The most effective way to prevent another person from taking his or her life is to recognize the factors that put people at risk for suicide, take warning signs seriously and know how to respond.

The warning signs of suicide may include:

- Threatening to hurt or kill oneself or talking about wanting to hurt or kill oneself.
- Feeling hopeless.
- Feeling rage or uncontrolled anger or seeking revenge.
- Increased alcohol or drug use.
- Withdrawing from friends, family, associates.
- Experiencing dramatic mood changes.
- Feeling anxious or agitated, being unable to sleep, or sleeping all the time.
- Seeing no reason for living or having no sense of purpose.

If your friend, cellmate, coworker, or associate is exhibiting these signs, start by telling the person you are concerned and give him/her examples of what you see that worries you.  Listen and encourage the person to seek help.  If they are hesitant, offer to go with them to speak to a staff member.  If you are not confident they will seek help, notify a staff member yourself.  Seeking help for a person in distress isn't "snitching", it is showing concern for the welfare of a fellow human being.  If you report your concerns to staff, you can rest easy knowing you did everything within your power to assist the individual.

**Drug Abuse Programs**
Drug abuse programming is available in all BOP institutions. The BOP offers a drug education course as well as treatment options for inmates who have abused alcohol and/or drugs.

NOTE: Drug abuse programs are not currently available to SMU inmates at AUSP Thomson.

**Drug Abuse Education Course**
The Drug Abuse Education Course is not drug treatment.  The purpose of the course is to encourage you to review the consequences of your choice to have drugs in your life, to look at the relationship between drug use and crime, and to begin to think about how different your life could be without drugs.  Looking at your drug involvement in this way may motivate you to ask for drug abuse treatment.  If your pre-sentence report documents a prolonged history of drug use, evidence that alcohol or drug use contributed to the commission of your offense, a judicial recommendation for treatment, or a violation of community supervision as a result of alcohol or drug use, you are required to take the Drug Abuse Education Course.  Failing to take this required course results in your ineligibility for performance pay above maintenance pay level, as well as ineligibility for bonus or vacation pay.  You will also not be eligible for a Federal Prison Industries work program assignment. If you are not sure what this means, you may want to ask your counselor.

The Drug Abuse Education Course is available in every BOP institution.  If you are required to complete the course, your name will automatically be placed on the waiting list for the course.  When it is time for you to complete the course, Psychology Services staff will contact you.  If you would like to enroll in the course, but are not required to participate, you may submit an

Inmate Request to a Staff Member (a "Cop-Out") in order to place your name on the waiting list for the course.

NOTE: Drug abuse education course are not currently available to SMU inmates at AUSP Thomson.

**Nonresidential Drug Abuse Treatment**
Nonresidential Drug Abuse Treatment is also available in every BOP institution.  Nonresidential Drug Abuse Treatment has been developed to provide the flexibility necessary to meet each individual's treatment needs, and more specifically for:

- Inmates with a relatively minor or low-level drug abuse problem.
- Inmates with a drug use disorder who do not have sufficient time to complete the intensive Residential Drug Abuse Treatment Program (RDAP).
- Inmates with longer sentences who are in need of treatment and are awaiting placement in the RDAP.
- Inmates with a drug use history who chose not to participate in the RDAP, but want to prepare for staying sober in the community.
- Inmates who completed the unit-based portion of the RDAP and are required to continue treatment until their transfer to a Residential Reentry Center (half-way house).

Program completion awards are only available for those who complete the program.  If you are interested, ask the institution's drug abuse treatment staff for more information on these awards.

NOTE:  Nonresidential Drug Abuse Treatment programs are not currently available to SMU inmates at AUSP Thomson.

**Residential Drug Abuse Treatment**
The RDAP provides intensive drug abuse treatment to inmates diagnosed with a drug use disorder.  Inmates in the residential program are housed together in a treatment unit that is set apart from the general population.  Treatment is provided for a minimum 9 months; however, your time in the program depends on your progress in treatment.

To apply for the RDAP you must send an Inmate Request to a Staff Member (a "Cop-Out") to obtain an interview for the program.  First, staff will screen your pre-sentence report to determine if there is any documentation indicating that you have a pattern of drug abuse or dependence.  If so, you will be referred to the Drug Abuse Program Coordinator for an interview to determine if you meet the diagnostic criteria for a substance use disorder.

Inmates who are diagnosed with a drug use disorder are qualified for the RDAP and are admitted to the program based on their nearness to release, as mandated by federal statute.

You must have enough time left to serve on your sentence to complete the unit-based component and the community transition component of the program.  Follow-up Treatment, as described earlier, is provided to inmates after they complete

the unit-based component and before they transfer to a residential reentry center.

The RDAP is operated as a modified therapeutic community where inmates are expected to model the pro-social behaviors expected in a community. This means RDAP participants are role models to other inmates. Therefore, they are to demonstrate honesty, to relate positively with their peers, and to fully participate in all treatment activities in the unit. The RDAP is a half-day program, with the rest of the day devoted to work, school, and other self-improvement activities. The RDAP is available in 76 BOP institutions.

NOTE: Residential Drug Abuse Treatment programs are not currently available to SMU inmates at AUSP Thomson. However, if you are interested in knowing your RDAP eligibility for any future institutions at which an RDAP program is available, you may contact the institution's drug abuse program coordinator. You may apply for the program at any time during your incarceration, but your interview, like program admittance, will be based on your proximity to release. Ordinarily inmates are interviewed 42-24 months from release depending on the facility's security level and waiting list for the RDAP.


**Early Release**
The Violent Crime Control and Law Enforcement Act of 1994 allows the BOP to grant a non-violent inmate up to 1 year off his or her term of imprisonment for successful completion of the residential drug abuse treatment program (Title 18 U.S.C. § 3621(e)(2)). For more information, talk to an institution drug abuse treatment specialist or drug abuse program coordinator.

**Community Transition Drug Abuse Treatment**
To successfully complete the RDAP, inmates are required to participate in the Community Transition Drug Abuse Treatment component of the program. The BOP ensures that inmates receive continued treatment when transferred to a residential reentry center (RRC) or to home confinement. The RRC, is structured to help you adjust to life in the community and find suitable post-release employment. RRCs provide a structured, supervised environment and support job placement, counseling, and other services. Within the structure of the RRC, RDAP participants continue their drug abuse treatment, with a community-based treatment provider. The BOP contracts with this provider to deliver treatment services in the community. Inmates must continue to participate in transition drug abuse treatment to earn any benefit associated with successful completion of the RDAP, e.g., early release.

In addition to these drug abuse programs, drug abuse treatment services may also be provided within the context of other specialized treatment programs with the BOP, such as the Resolve Program and the Challenge Program.

NOTE: Community Transition Drug Abuse Treatment programs do not currently apply to SMU inmates at AUSP Thomson because there is currently no RDAP program for SMU inmates at AUSP Thomson.

**The Trauma in Life Workshop**

The Resolve Program includes a psycho-educational component, the Trauma in Life Workshop.  This workshop addresses the challenges individuals face following exposure to traumatic life events and the strategies these individuals may use to enhance their resilience or ability to survive and thrive following these events.

The Resolve Program also includes a treatment component of non-residential counseling groups.  Only those inmates with a history of trauma and an associated mental health problem may participate in Resolve Program counseling groups.  These groups are designed to improve coping skills, build healthy relationships, and enhance emotional stability.

NOTE:  The Resolve Program is not currently available to SMU inmates at AUSP Thomson.

**The Challenge Program (high security institutions only)**
The Challenge Program is an intensive, residential program for inmates with drug abuse and/or mental health problems and is available in all BOP penitentiaries. Treatment is highly structured, and inmates with drug programs and those with mental health programs are housed together in a treatment unit that is set apart from the general population.  The Challenge Unit is a safe harbor for those who want to work out drug abuse and/or mental health problems. Inmates may volunteer for the Challenge program at any time during their incarceration.  The Challenge program is typically a 9 month program, but your time in the program depends on your treatment needs and your progress in treatment.

NOTE:  The Challenge Program is not currently available to SMU inmates at AUSP Thomson.

**Specialized Residential Mental Health Programs**
The BOP also has several residential mental health programs designed to help inmates with severe emotional, cognitive, and behavioral problems.  These programs are indicated for inmates who are having difficulty functioning in a mainline institution due to a psychological disorder. They are designed to improve the day to day functioning of inmates with the goal of helping them return to a mainline institution or preventing the need for hospitalization. Psychology Services has additional information about these programs and can make recommendations for participation.

NOTE:  Specialized Residential Mental Health Programs are not currently available to SMU inmates at AUSP Thomson.

**The Sex Offender Management Program**
The BOP offers sex offender treatment programs at our Sex Offender Management Program (SOMP) institutions.  SOMP institutions have a higher proportion of sex offenders in their general population.  Having a larger number of sex offenders at SOMP institutions ensures that treatment volunteers feel safe about participating in programming.

The BOP's sex offender treatment programs are stratified into two program levels:

The Residential Sex Offender Treatment Program (male institutions only).

The Residential Sex Offender Treatment Program (SOTP-R) is a high intensity program designed for high risk sexual offenders - ordinarily inmates with multiple sex offenses, or a history of contact sexual offenders.

The Non-residential Sex Offender Treatment Program (SOTP-NR) is a moderate intensity program designed for low to moderate risk sexual offenders.  Many of the inmates in the SOTP-NR are first-time offenders serving a sentence for an Internet sex crime.  All SOMP institutions offer the SOTP-NR.

When you volunteer for treatment, BOP staff will determine whether the Residential or Non-residential Treatment Program is appropriate for you based on your offense history.  If eligible for treatment, you will be transferred to a SOMP institution based on your treatment needs and security level.

If you are interested in receiving sex offender treatment and would like to know if you are eligible for the program, contact Psychology Services.  You may apply at any point in your sentence.  However, inmates ordinarily enter treatment when they have between 24 to 42 months remaining on their sentence. If you are at the beginning of your sentence or have more than 48 months remaining on your sentence, you may want to wait before applying for the program.

NOTE:  Sex Offender Management or Treatment Programs are not currently available to SMU inmates at AUSP Thomson.

## SMU Services
Each SMU inmate will be assigned Psychology staff members to provide both monitoring of mental health and treatment programs aimed at facilitating transfer back to a mainstream USP or an open compound.  Psychology staff will also be available to offer assistance with difficulties adjusting to restrictive housing, other situational problems, and symptoms of mental disorder.  Monthly assessments will be conducted by a psychologist, and most treatment programming will be administered by a SMU treatment specialist. During initial phases of programming, most treatment will be in-cell homework assignments (e.g., reading, workbooks, and journaling). If you have difficulty with reading assignments, it is important to share such information with your treatment specialist.  During the last phases of SMU programming, you will be encouraged to participate in group programming geared toward interactions with a wide range of peers.

If you are in restrictive housing and would like to have a private conversation with a Psychology staff member, it is important to clearly request such a conversation.  While psychology staff members can arrange private conversations, it is important that you realize Psychology staff will not maintain the privacy of conversations under the some of the circumstances described below.

## Confidentiality
Security needs and the nature of a prison environment affect mental health care in a variety of ways.  Confidentiality is an important component of the

therapeutic relationship. However, in a prison environment, confidentiality must be weighed against institutional needs of safety and security. Mental health providers in the institution not only serve inmates, they also serve the institution and the public at large.

In the community, certain situations require mental health providers to violate client confidentiality. For example, many states mandate reporting of child or elder abuse. Providers also must notify authorities if a client threatens suicide or serious harm to others. Similarly, prison mental health providers violate confidentiality when an inmate is at risk of serious harm to themselves or others, such as when an inmate presents a clear and present risk of escape or when an inmate is responsible for the creation of disorder within a facility. Confidentiality may also be limited when prison mental health providers share information on a need-to-know basis with prison officials or other federal law enforcement entities. For example, before you are transferred to a residential reentry center, mental health providers must communicate your mental health needs to your unit team.

Like all other staff, Psychology staff are required to write incident reports and supporting memos if they observe inmates violate institutional rules.

If you tell a staff member, including a Psychology Services staff member that you are going to harm or kill yourself or someone else, or engage in a behavior that jeopardizes the safety or security of the institution, confidentiality will be breached, and the appropriate individuals will be notified on a need-to-know basis only.

Simply put, there is no guarantee of confidentiality in the prison setting. However, you can rely on the professional judgment of Psychology Services staff who conscientiously balance your confidentiality and the safety and security of the institution. Information that does not impact the safety and security of the institution, inmates, and staff, will not be shared. While these limitations on confidentiality may initially deter you from seeking treatment, the vast majority of inmates who receive psychological services are comfortable with the decisions staff make with regard to their confidentiality. If you have additional questions about confidentiality, be certain to discuss your concerns with Psychology Services staff.

**Central Inmate Monitoring System**
The Central Inmate Monitoring System (CIMS) is a method for the BOP (or BOP) to monitor and control the transfer, temporary release, and participation in community activities of inmates who pose special management considerations. Designation as a CIMS case does not, in and of itself, prevent an inmate from participating in community activities. All inmates who are designated as CIMS cases will be notified by their Case Manager.

**Marriages**
If an inmate wishes to be married while incarcerated, the Warden may authorize him to do so under certain conditions. All expenses of the marriage will be paid by the inmate. If an inmate requests permission to marry he must:

- Have a letter from the intended spouse which verifies their intention to marry.
- Demonstrate legal eligibility to marry.
- Be mentally competent.
- The marriage must not present a security risk to the institution.

Marriage procedures are detailed in the local Institution Supplement.

## Medical Services

The BOP inmate health care delivery system includes local ambulatory clinics as well as major medical centers. Emergency medical care is available 24 hours a day in all BOP facilities. BOP clinical staff typically covers the day and evening shifts and community emergency personnel meet emergency needs when BOP clinical staff is not on-site.

Health Services typically includes episodic visits for new or recurring medical or dental symptoms through a sick call system; chronic care management for chronic and infectious diseases through enrollment in chronic care clinics for regular care, routine dental care, medical and dental emergency care for injuries and sudden illness; age-appropriate preventive care to promote optimal health and functional status; restorative care to promote achievable functional status; long-term care; and end-of-life care.

The Health Services Unit at Special Management Unit (SMU) at AUSP Thomson functions as an ambulatory clinic. The medical staff consists of physicians, advanced level providers, other clerical staff and administrative ancillary support staff.

Health Services Staff is available seven days per week. Regular hours of operation are 6:00 a.m. to 12:00 midnight.

To obtain after-hours emergency services, notify a staff member of your emergency immediately. Emergency medical care may be administered if an injury or illness requires emergency treatment.

## Categories of Care

The BOP of Prisons assigns medical problems to one (1) of five (5) categories of care:

1. Medically Necessary-Acute or Emergent: A condition that, if not immediately treated, is life-threatening, likely to cause blindness, or irreversible loss of life or function.

2. Medically Necessary-Non-Emergent: A condition that, if untreated, will result in premature death, or interfere with the possibility of later repair, or creates a level of pain or discomfort which impairs the ability to conduct activities of daily living.

3. Medically Acceptable-Not Always Necessary: Medical conditions whose treatment may be delayed without jeopardizing the life, sight, or bodily function of the patient.

4.  Limited Medical Value: Medical conditions in which treatment provides little or no medical value, are not likely to provide substantial long term gain, or are expressly for the inmate's convenience.

5.  Extraordinary: Medical interventions are deemed extraordinary if they affect the life of another individual, such organ transplantation, or are considered investigational in nature.

The BOP to include all inmates at AUSP Thomson will treat all Medically Necessary Emergent and Non-Emergent Conditions. All other conditions falling within the Medically Acceptable-Not Always Necessary category are essentially elective procedures that, if requested, will always require justification and approval by the Institution's Utilization Review Committee.

Medical problems falling within the Limited Medical Value or Extraordinary categories are ordinarily not treated by the BOP.

**Consultants and Referrals**
All medical care that is provided will be consistent with community standards of care.  When available, and when required, community consultants will be contracted for commonly needed services such as cardiology, dermatology, general surgery, ophthalmology, optometry, orthopedics, psychiatry, urology, and radiology. Additionally, patients may also be referred to BOP Medical Referral Centers.

**Emergency Medical Treatment**
A healthcare provider is available during normal working hours.  Should you become ill or injured after normal daily rounds by the clinical provider, you must notify a staff member.  The healthcare provider will arrange for the most appropriate time for you to be seen in the clinic.  Once your emergency status has been evaluated, you will either be treated the same day "as an emergency" or referred to Sick Call for treatment in accordance with the triage protocol.

**Medical Sick Call System**
All inmates in the SMU program will be seen by medical staff cell side on a frequent basis. Every precaution will be made to maintain patient privacy. When deemed necessary, an inmate may be removed to the medical examination room or the main Health Services Unit for further intervention(s).  Medical staff making frequent rounds will attempt to establish verbal contact with each inmate. All inmates requesting to see either a physician or a dentist will be scheduled with the appropriate clinician after the evaluation made by the provider during his/her daily rounds. Only conditions deemed emergent will be managed immediately by the clinician.  No routine sick call will be held on weekends or holidays.

A BOP issued ID card must be brought, presented, or displayed on the outside of every SMU door each time you are seen, assessed or treated by medical staff.

**Emergency Medical Treatment**

All emergencies or injuries receive priority for treatment. Appropriate medical care will be provided by institution clinical staff, on-call staff if after hours, or by community emergency medical providers. Clinicians covering evenings, weekends and holidays provide treatment for acute medical problems and directly observed pill lines.

**Medication Administration (Pill Line)**
All medications will be delivered to the cells of inmates assigned to Levels One, Two, and Three.

Hours of Pill Line at SMU

- Daily 6:00 a.m. to 6:30 a.m.
- Daily 3:00 p.m. to 4:00 p.m.

Pill line times may be adjusted due to changes in meal schedules, an institution emergency, adverse weather, etc.

**Over-the-Counter-Medication (OTC)**
Inmates in the SMU program may have limited access to OTC medications available in the commissary. You may only purchase pre-approved OTC items.

Inmates who are listed on the TRUFACS/BEMR database as indigent may receive up to two (2) OTC medications per week from the institution pharmacy with supplies ranging from seven to 30 days, depending on the medication. Indigent inmates will complete the "Over – the – Counter medication request form and will submit it to medical staff completing medical rounds on Wednesdays.

**Health Services Related Questions**
All inmates in the SMU program will have the opportunity to submit health services related questions via an Inmate Request to Staff form. The forms may be obtained from the Unit Officer or a Health Services staff member.

The forms must be turned in during daily sick call rounds, between 6:00 a.m. and 7:15 a.m. on Monday, Tuesday, Thursday or Friday.

You must turn in the form yourself to the provider making the rounds in order to have your medical complaint addressed appropriately. The provider will triage your complaint and will determine if your complaint requires same day attention or may choose to put you on call-out for evaluation at a later day.

**Notice to Inmates - Inmate Copayment Program**
Pursuant to the Federal Prisoner Health Care Copayment Act (FHCCA) of 2000 (P.L. 106-294, 18 U.S.C. 4048), the BOP and AUSP Thomson provide notice of the Inmate Copayment Program for health care, effective October 3, 2005.

A. Application: The Inmate Copayment Program applies to anyone in an institution under the BOP's jurisdiction and anyone who has been charged with or convicted of an offense against the United States, except inmates in inpatient status at a Medical Referral Center (MRC). All inmates in outpatient status at the MRCs, and inmates assigned to the General Population at these facilities, are subject to co-pay fees.

B.   Health Care Visits with a Fee:   You must pay a fee of $2.00 for health care services, charged to your Inmate Commissary Account, per health care visit, if you receive health care services in connection with a health care visit that you requested, except for services described in section C below.

These requested visits include Sick Call and after-hours requests to see a health care provider.  If you ask a non-medical staff member to contact medical staff to request a medical evaluation on your behalf for a health service not listed in section C below, you will be charged a $2.00 co-pay fee for that visit.

You must pay a fee of $2.00 for health care services, charged to your Inmate Commissary Account, per health care visit, if you are found responsible through the Disciplinary Hearing Process to have injured an inmate who, as a result of the injury, requires a health care visit.

C.   Health Care Visits With No Fee:

A copayment will not be charged for:

- Health care services based on health care staff referrals.
- Health care, staff approved, follow up treatment for a chronic condition.
- Preventive health care services.
- Emergency services.
- Diagnosis or treatment of chronic infectious diseases.
- Mental health care.
- Substance abuse treatment.

If a health care provider orders or approves any of the following:

- Blood pressure monitoring
- Glucose monitoring
- Insulin injections
- Chronic care clinics
- TB testing
- Vaccinations
- Wound care
- Patient education

Your health care provider will determine if the type of appointment scheduled is subject to a co-pay fee.

D.   Inmates without Funds:   An inmate without funds (indigent inmate) is defined as an inmate who has not had a trust fund account balance of $6.00 for the past 30 days. You will not be charged a healthcare service fee if you are considered indigent and unable to pay the fee.  Health care services will never be denied due to insufficient funds. However, the Warden may impose restrictions on an inmate to prevent abuse of this provision.

Example: An inmate shows a pattern of depleting his or her commissary funds before requesting health care services.

If an inmate is NOT indigent, but does not have sufficient funds to make the co-pay fee on the date of the appointment, a debt will be established by TRUFACS, and the amount will be deducted as funds are deposited into the inmate's Commissary Account.

**Eyeglasses**
You may request a vision screen by signing up through sick-call procedures. You will be assessed by a healthcare provider to discuss your concern and scheduled accordingly. An eye examination may be ordered by your healthcare provider based on need. If, after examination by the optometrist, it is determined you require prescription eye wear, a pair of standard issue eyeglasses will be provided. Inmates may retain their eyeglasses at admission if there are no security concerns; however, the BOP will not repair personal glasses. Glasses will not be allowed to be sent from home. The BOP will furnish prescription eyeglasses with a current prescription in the medical file. You are entitled to one pair of eyeglasses per year. If you misplace or damage the eyeglasses within the one year period, a $20.00 fee will be imposed for replacement.

**Contact Lenses**
Contact lenses may be prescribed only when, in the clinical judgment of the optometrist with the concurrence of the Clinical Director and Health Services Administrator they are deemed medically necessary. Inmates arriving at SMU Thomson with contact lenses not previously approved by a BOP provider, will be allowed to retain them pending further eye examination by the BOP optometrist. If not medically necessary, the inmate will be prescribed eyeglasses and the contact lenses will be mailed home once the eyeglasses are received.

**Inmate Review of Medical Records**
An inmate seeking review and copies of his medical records must complete a BP-148, Inmate Request to Staff Member in order to review or receive copies of the record. The BP-148 shall be addressed to the Medical Records Department. Prior to review of records by the inmate (or copies given to the inmate) the records will be reviewed by Health Services staff to determine if a legitimate security concern exists (i.e. whether there is any information which, if disclosed to the inmate, might reasonably be expected to harm the inmate or another person). The institution physician may have to be consulted by the reviewer in evaluating records for release.

The reason for this review is that certain information may be exempt from mandatory disclosure to the inmate under the provisions of the Freedom of Information Act. If this is the case, the inmate will need to make a written request to the Central Office, Office of General Counsel, Freedom of Information (FOI) Section, 320 First Street N.W., Washington, D.C. 20534. If the reviewing staff member determines that no harmful information is contained in the record, the inmate will be notified that he may review or

receive copies of the information requested.  Copies will be provided in a reasonable amount of time.  **A & O Physical Examination**
If you are newly committed to the BOP, you will receive a complete physical examination within 14 calendar days of your arrival to the institution.  This examination includes a complete physical, various screening tests, and immunizations.

Inmates transferring from other federal institutions will have their record reviewed for any required medical testing or examinations.  HIV, Hepatitis C and immunizations are offered to each newly committed inmate upon arrival, during the Admission and Orientation presentation and during preventive care clinics.  Additionally, inmates may submit a written request for testing if needed.

Inmates who have a chronic medical condition and are enrolled in a Chronic Care clinic will be assessed by the physician within 14 days of arrival for a reevaluation of the medical condition and medication needs.


**Preventive Health Care**
The Preventative Health Care Clinic is being offered to inmates to promote healthy living, prevent disease, provide screening for infectious diseases, cancer and chronic diseases, and update immunizations. If you are interested in participating in the clinic, you may request a Preventative Health Care appointment by submitting your request to Health Services via an Inmate Request to Staff form.

**Annual Immunization/Tuberculosis Screening**
All inmates will be scheduled for the tuberculosis screening on an annual basis. This screening will be in the form of the PPD skin test.

During the flu season, which is typically in early winter, inmates will be offered the influenza vaccine or "flu shot" according to BOP clinical guidelines and inmates' medical priority.  When available, you will be instructed to submit a request via an Inmate Request to Staff form.

**Testing for Communicable Diseases**
There are several diseases that can potentially be spread in a prison environment.  Three of the more serious diseases are Human Immunodeficiency Virus (HIV) which causes AIDS, Hepatitis B and C, and Tuberculosis (TB).

The viruses that cause chronic infection, such as HIV and hepatitis B and C can only be passed from an infected person to another by providing a means for a small quantity of their blood or semen to come into contact with your blood stream.  This means you are likely to develop one of these diseases if you participate in high-risk behaviors with an infected person.  These high-risk activities includes sexual contact, sharing needles, syringes, or other drug paraphernalia, tattooing, and body piercing.

Inmates may request screening for infectious diseases whether or not they have been involved in high-risk behavior at any time through an Inmate Request to Staff Member form or during a clinical encounter with a medical provider.

Tuberculosis is usually spread through the air when inhaling the mist from someone with the disease who has sneezed or coughed. The BOP and AUSP Thomson test each inmate upon arrival at the institution and yearly testing for this disease is mandatory. If you think you may have been exposed to someone in the past with tuberculosis, inform Health Services.

**Administrative Concerns/Grievances**
You may seek review of issues related to Health Services fees through the BOP's Administrative Remedy Program (see 28 C.F.R. part 542).

If you have concerns or questions of an administrative nature concerning Health Services, you may address them in writing via an Inmate Request to Staff Member (cop-out), or discuss them with the HSA or designee during mainline.

If you are unable to resolve your issue, you may pursue your complaint through the formal Administrative Remedy process. You have a right to necessary medical and dental care. However, if a treatment and/or care plan has been recommended, you may choose to refuse the treatment. You will be expected to sign a refusal form which will be placed in your medical record.

**Living Wills**
Inmates are entitled to a Living Will, otherwise known as an Advance Directive. This is a legal document by which a patient expresses his/her health care wishes in the event of a terminal or irreversible condition, during which that individual is no longer able to communicate such wishes to the health care provider due to incapacitation.

If you want to have a Living Will, the criteria and procedures are as follows:

1.    Obtain a copy of the Illinois statue pertaining to Living Wills.
2.    Contact family and/or legal counsel to have the document    prepared.
3.    When the inmate has received a copy of the legal document, he must    make an appointment with the Clinical Director for a review of    the
document and discussion of his legal request. A copy will be    placed    in the inmate's medical record.

At no time will any BOP staff assist an inmate in preparing a Living Will. If an inmate has questions concerning a Living Will, he will be directed to the Health Services Administrator.

In the absence of a Living Will or Advanced Directive, the BOP will ensure life-sustaining measures such as Cardiopulmonary Resuscitation, ventilators, and other life support mechanics are provided.

Removal from life support will require court action either by the BOP or the affected inmate's family.

**Dental Services**

Dental services for routine care and emergency are available through dental services.

Hours of Operation:
Monday to Friday 6:30 a.m. to 3:30 p.m.

Inmates must be in proper uniform and with ID on person for any dental appointment.

**Dental Sick Call Procedure**
Dental sick call is reserved for severe pain, swelling, acute infection, and other urgent dental care needs. Co-pay is applied at the time of assessment. No routine care procedures will be done during sick call.

During medical staff sick call rounds, medical staff will accept dental sick call request and forwarded to dental.

**Dental Routine Care**
Dental routine care is elective and as such, eligible inmates need to sign up for the National Routine Care List.

AUSP Thomson does have automatic recall cleaning. All inmates need to sign up for a yearly periodic exam and cleaning. Inmates cannot sign up for next year's periodic exam/cleaning any sooner than 9 months after last periodic exam/cleaning.

Sign up procedure: Inmates can request in writing an Inmate Request to Staff addressed to Dental Services.

Removing inmates from routine care list: If inmate has more than 2 failed appointments (no show with un-excused absence) in a 6 month period, the inmate will be removed from routine care list.

Acceptable excused absences:

- A staff member contacts Dental Services requesting an inmate to be excused.
- A conflict with an inmate visit confirmed in Sentry.
- If an inmate is ill and cannot keep the dental appointment
- If medical staff encounter a note regarding patient sick call in BEMR present for the appointment day.

Refusal: Inmates can refuse part or all routine dental care. Refusing certain parts of dental care does not exclude inmates from receiving other treatment planned dental care or emergency care unless it is a specific procedure. Example: Dentures cannot be made if an inmate refuses extraction.

Inmates can rescind refusal by submitting an Inmate Request to Staff. When a refusal is rescinded, the request will be processed as a new request.

Specialty Care: For eligible dental services that cannot be provided by Dental Services, specialty care through BOP or a non-BOP consultant is available.

**After Hours Dental Emergency**
Report to any staff member, so that they can contact Medical/Dental Services.

**Dental Appliances**
All dental appliances (including, but not limited to mouth guards, dentures, and retainers), regardless of origin (BOP, State, outside), need to be recorded in the BOP charting system as "dental appliances."

Inmates with multiple sets of dental appliances will only be allowed to keep one set. The remaining set(s) can be sent home at the inmate's expense, or they will be discarded.

**Administrative Concerns/Grievances**
You may seek a review of issues related to Health Service fees through the BOP's Administrative Remedy Program (see 28 CFR part 542).

If you have concerns or questions of an administrative nature concerning Health Services, you may address them, in writing via an Inmate Request to Staff Member, or discuss them with the Health Service Administrator or designee during rounds.

If you have concerns or questions on dental service policy and procedure, send an Inmate Request to Staff addressing it directly to Dental Services.

**Commissary Oral Health Aids & OTC Medications**
All inmates are eligible to purchase oral health aid through commissary.

Commissary list will include list of available oral health aid items.

OTC Medication: The OTC medication list is included in the commissary list for purchase.

- Purchasing OTC medication on non-assigned commissary day:  The Dentist will sign & stamp an authorization form and clearly mark OTC medication item authorized to purchase.
- Procedures for an inmate unable to afford OTC medication:  An inmate without funds (indigent), is defined as an inmate who has not had a trust fund account balance of $ 6.00 for the past 30 days per Program Statement 6541.02, Over-the-Counter Medications, and will be eligible to receive OTC pain med as stated in the program statement.

**Inmate Health Care Rights and Responsibilities**
While in the custody of the BOP you have the right to receive health care in manner that recognizes your basic human rights, and you also accept the responsibility to cooperate with your health care plans and respect the basic human rights of your health care providers.

| RIGHTS | RESPONSIBILITIES |
|---|---|
| 1.  You have the right to access health care services, based on the local procedures at this institution. | 1.  You have the responsibility to comply with the health care policies of this institution and follow recommended |

Health services include medical and dental sick call and all support services. If inmate co-pay system exists in your institution, Health Services cannot denied due to lack (verified) of personal funds to pay for your care.

2. You have the right to know the name and professional status of your health care providers and to be treated with respect, consideration and dignity.

3. You have the right to address any concern regarding your health care to any member of the institution staff including the physician, the Health Services Administrator, members of the Unit Team, the Associate Warden and the Warden.

4. You have the right to provide the BOP with Advance Directives or a Living Will that would provide the BOP with instructions if you are admitted as an inpatient to a hospital.

5. You have the right to be provided with information regarding your diagnosis, treatment and prognosis. This includes the right to be informed of health care outcomes that differ significantly from the anticipated outcome.

6. You have the right to obtain copies of certain releasable portions of your health record.

7. You have the right to be examined in privacy.

8. You have the right to participate in health promotion and disease prevention programs, including those

treatment plans established for you, by health care providers. You have the responsibility to pay an identified fee for any health care encounter initiated by yourself, excluding emergency care. You will also pay the fee for the care of any other inmate on whom you intentionally inflict bodily harm or injury.

2. You have the responsibility to treat these providers as professionals and follow their instructions to maintain and improve your overall health.

3. You have the responsibility to address your concerns in the accepted format, such as the Inmate Request to Staff Member form, main line, or the accepted Inmate Grievance Procedures.

4. You have the responsibility to provide the BOP with accurate information to complete this agreement.

5. You have the responsibility to keep this information confidential.

6. You have the responsibility to be familiar with the current policy and abide by such to obtain these records.

7. You have the responsibility to comply with security procedures should security be required during your examination.

8. You have the responsibility to maintain your health and not to endanger yourself, or others, by participating in activity that could result in the

providing education regarding infectious diseases.

spreading or catching an infectious disease.

9.  You have the right to report complaints of pain to your health care provider, have your pain assessed and managed in a timely and medically acceptable manner, be provided information about pain and pain management, as well as information on the limitations and side effects of pain treatments.

9.  You have the responsibility to communicate with your health care provider honestly regarding your pain and your concerns about your pain. You also have the responsibility to keep your provider informed of both positive and negative changes in your condition to assure timely follow up.

10.  You have the right to receive prescribed medications and treatments in a timely manner, consistent with the recommendations of the prescribing health care provider.

10.  You have the responsibility to be honest with your health care provider(s), to comply with prescribed treatments and follow prescription orders. You also have the responsibility not to provide any other person your medication or other prescribed item.

11.  You have the right to be provided healthy and nutritious food. You have the right to instructions regarding a healthy diet.

11.  You have the responsibility to eat healthy and not abuse or waste food or drink.

12.  You have the right to request a routine physical examination, as defined by BOP Policy. (If you are under the age of 50, once every two years; if over the age of 50, once a year and within one year of your release).

12.  You have the responsibility to notify medical staff that you wish to have an examination.

13.  You have the right to dental care as defined in BOP Policy to include preventative services, emergency and routine care.

13.  You have the responsibility to maintain your oral hygiene and health.

14.  You have the right to a safe, clean and healthy environment, including smoke-free living areas.

14.  You have the responsibility to maintain the cleanliness of personal and common areas and safety in consideration of others. You have the responsibility to follow smoking regulations.

15.  You have the right to refuse medical treatment in accordance with BOP Policy. Refusal of certain diagnostic tests for infectious

15.  You have the responsibility to notify health services regarding any ill-effects that occur as a result of your refusal. You also accept the

diseases can result in administrative action against you. You have the right to be counseled regarding the possible ill-effects of refusing medical treatment.

responsibility to sign the treatment refusal form.

CONTACT WITH THE COMMUNITY AND PUBLIC

**Correctional Systems**
The CMC, SCSS, or Correctional Systems staff make regular visits to the SMU. This ensures inmates have an opportunity to address mail concerns.

**Correspondence**
In most cases, inmates are permitted to correspond with the public, family members, and others without prior approval. Outgoing mail from a sentenced inmate in an administrative institution may not be sealed by the inmate and may be read and inspected by staff. The outgoing envelope must have the inmate's committed name, register number, and complete institution return address in the upper left hand corner.

Inmates will be responsible for the contents of all of their letters. Correspondence containing threats, extortion, etc., may result in disciplinary action and prosecution for violation of federal laws.

Inmates may be placed on restricted correspondence status based on misconduct or as a result of classification. The inmate is notified of this placement and has the opportunity to respond.

**Mail Operations**
Mail service to inmates is provided on a five-day schedule, Monday through Friday, excluding holidays.

Upon admission to the institution, inmates complete a BP-407 Acknowledgments of Inmate. By executing Part 1-I of the BP-407 electing not to receive their general correspondence, all general correspondence received shall be returned to the sender, unopened with the endorsement "refused."

All incoming general correspondence and all outgoing mail (except "special mail") are subject to inspection and random reading by staff. Mail is collected by Correctional Services staff member prior to the completion of the evening watch shift. Inmates on indigent status requiring postage may be required to hand outgoing mail directly to a member of their Unit Team for processing.

**Incoming Publications**
The BOP permits inmates to subscribe to and receive publications without prior approval. The term publication means a book, booklet, pamphlet, or similar document, or a single issue of a magazine, periodical, newsletter, newspaper, plus such other materials addressed to a specific inmate, such as advertising brochures, flyers, and catalogs. An inmate may only receive hard cover publications and newspapers from the publisher, a book club, or a bookstore.

At administrative institutions, an inmate may receive softcover publications only from the publisher, a book club, or a bookstore.

**Special Mail**

Special Mail is a category of correspondence sent to the following: President and Vice President of the United States, the U.S. Department of Justice (including the BOP), U.S. Attorneys Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other Federal and State law enforcement offices, attorneys, and representatives of the news media.

Special mail also includes correspondence received from the following: President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the BOP but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts.

A designated staff member opens incoming Special Mail in the presence of the inmate. These items will be checked for physical contraband, funds, and for qualification as Special Mail; the correspondence will not be read or copied if the sender has adequately identified himself/herself on the envelope and the front of the envelop clearly indicates that the correspondence is "Special Mail – Open only in the presence of the inmate" or with similar language. Without adequate identification as Special Mail, the staff may treat the mail as general correspondence. In this case, the mail may be opened, read, and inspected.

Inmate Correspondence with Representatives of the News Media: An inmate may write, following Special Mail procedures, to representatives of the news media when specified by name and title. The inmate may not receive compensation or anything of value for correspondence with the news media. The inmate may not act as a reporter, publish under a byline, or conduct a business or profession while in BOP custody.

Representatives of the news media may initiate correspondence with an inmate. Correspondence from a representative of the news media will be opened, inspected for contraband, for qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to BOP regulations.

**Correspondence between Confined Inmates**

An inmate may be permitted to correspond with an inmate confined in another penal or correctional institution. This is permitted if the other inmate is either a member of the immediate family (mother, father, sister, child, or spouse), or party in a current legal action (or a witness) in which both parties are involved. The Unit Manager at each

institution must approve the correspondence if both inmates are housed in Federal institutions.

## Rejection of Correspondence
The Warden may reject general correspondence sent by or to an inmate if it is determined to be detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity.

## Notification of Rejection
The Warden will give written notice to the sender concerning the rejection of mail and the reasons for rejection. The sender of the rejected correspondence may appeal the rejection. The inmate may also be notified of the rejection of correspondence and the reasons for it. The inmate also has the right to appeal the rejection. The Warden shall refer the appeal to a designated officer other than the one who originally disapproved the correspondence. Rejected correspondence ordinarily will be returned to the sender.

## Change of Address/Forwarding of Mail
Mail Room staff will make available to an inmate who is being released or transferred a change of address form. General correspondence (as opposed to special mail) will be forwarded to the new address for 30 days. After 30 days, general correspondence is returned to sender with the notation "Not at this address – return to sender." Staff will use all practical means to forward special mail. After 30 days, the SENTRY address will be used to forward special mail.

## Certified/Registered Mail
Inmates may use certified, registered, or insured mail services. Other mail services such as stamp collecting, express mail, cash on delivery (COD), and private carriers are not provided.

## Telephones
Telephone privileges are a supplemental means of maintaining community and family ties. Telephones are to be used for lawful purposes only. Threats, extortion, etc. may result in prosecution. All inmate telephones are subject to monitoring and recording. Inmates must contact their Case Manager to arrange an unmonitored attorney call.

While policy specifically allows inmates to make one call every three months, there is no specific limit on the number of phone calls that an inmate may make. It is expected that each inmate will handle his calls in such a manner that will allow the equal use of the phones by all inmates. Calls are limited to fifteen (15) minutes in duration. Each inmate is allowed 300 minutes of calling time per month, unless on

telephone restriction. Telephones will not be used to conduct a business.

Inmates are allowed to have thirty (30) approved numbers on their phone list. In order to use the system, you will have to transfer funds from your commissary account to your individual telephone account. There are telephones located in each housing unit for your use. No third party, credit card calls, 1-800, 1-900, 1-888, or 1-976 can be made on these lines. Collect calls can also be made to pre-approved telephone numbers.

Inmates will be given their SECRET PAC (nine digits) number by your Correctional Counselor. This will allow you to place a call by first entering the telephone number followed by your nine digit PAC number. Giving or selling your PAC number will result in disciplinary action. All calls are automatically terminated after fifteen (15) minutes. A waiting period may be established between calls.

It is each inmates responsibility to maintain their PAC in a way to ensure no other inmate has access to it. Inmates found to be sharing their telephone account with other inmates will result in disciplinary action taken with all inmates involved. Third part telephone contact will also result in disciplinary action. This could include, but is not limited to three way calls, call forwarding, the use of two or more telephones to communicate, and/or ANY circumstance in which the party called establishes third party telephone contact.

## ACCESS TO LEGAL SERVICES

### Legal Correspondence
Legal correspondence from attorneys will be treated as Special Mail if it is adequately marked. The envelope must be marked with the attorney's name and an indication that he/she is an attorney and the front of the envelope must be marked as "Special Mail - open only in the presence of the inmate" or with similar language clearly indicating the particular correspondence qualifies as legal mail and the attorney is requesting the correspondence be opened only in the inmate's presence. It is the responsibility of the inmate to advise his/her attorney of these requirements. If legal mail is not adequately marked, it may be opened as general correspondence.

### Attorney Visits
Attorneys are encouraged to visit during regular visiting hours, by advance appointment. However, visits from an attorney can be arranged at other times based on the circumstances of each case and the availability of staff. Attorney visits will be subject to visual monitoring, but not audio monitoring.

**Legal Material**
During attorney visits, a reasonable amount of legal materials may be allowed in the visiting area, with prior approval.  Legal material may be transferred, but is subject to inspection for contraband.  Inmates are expected to handle the transfer of legal materials through the mail as often as possible.

**Attorney Phone Calls**
In order to make an unmonitored phone call with an attorney, the inmate must demonstrate to the Unit Team the need, such as an imminent court deadline.  Inmates are responsible for the expense of unmonitored attorney telephone calls.  When possible, it is preferred that inmates place an unmonitored, collect legal call.  Phone calls placed through the regular inmate phones are subject to monitoring.

**Law Library**
Electronic Law Libraries (ELL):  Inmates are afforded access to legal materials and an opportunity to prepare legal documents in the ELL. Resources are available for inmates to prepare legal material via Trust Fund.

**Notary Public**
Under the provisions of 18 USC 4004, Case Managers are authorized to notarize documents.  A recent change in the law allows that a statement to the effect that papers which an inmate signs are true and correct under penalty of perjury will suffice in Federal courts and other Federal agencies, unless specifically directed to do otherwise.  Some states will not accept a government notarization for real estate transactions, automobile sales, etc.  In these cases, it will be necessary to contact unit staff for arrangements with contacting a notary public from outside the institution.

**Copies of Legal Material phone call**
In accordance with institution procedures, inmates may copy material necessary for their research or legal matters.  A copying machine is available in the Education Department for inmate use for a nominal fee. Individuals who have no funds and who can demonstrate a clear need for particular copies may submit a written request for a reasonable amount of free duplication through the unit team.

**Federal Tort Claims**
If the negligence of institution staff results in personal injury or property loss or damage to an inmate, it can be the basis of a claim under the Federal Tort Claims Act.  To file such a claim, inmates must complete a Standard Form 95.  They can obtain this form by submitting

an Inmate Request to Staff Member or requesting one through your Correctional Counselor.

## Freedom of Information/Privacy Act of 1974

The Privacy Act of 1974 forbids the release of information from agency records without a written request, or without the prior written consent of the individual to whom the record pertained, except for specific instances.  All formal requests for access to records about another person and/or agency record other than those pertaining to themselves shall be processed through the Freedom of Information Act (FOIA), 5 USC 552.  Requests may be made in writing to the FOIA Branch, Central Office, 320 First St., N.W., Washington, D.C. 20534.

## Inmate Access to Central Files and Other Documents

An inmate may request to view his/her central file (minus the FOIA section) under the supervision of his/her Case Manager by submitting a cop-out to the Unit Team.  An inmate does not need to submit a FOIA Act Request to the Director of the BOP unless the information requested is in the FOIA Exempt section.  Likewise, an inmate wishing to review his/her medical file should send a request to Health Services.

An inmate can request access to the non-disclosable documents in his central file and medical file, or other documents concerning himself that are not in his central file or medical file, by submitting a Freedom of Information Act Request to the Director of the BOP, Attention: FOI Request.  A request on the behalf of an inmate by an attorney, for records concerning that inmate, will be treated as a Privacy Act Request if the attorney has forwarded an inmate's written consent to disclose materials.  If a document is deemed to contain information exempt from disclosure, any reasonable part of the record will be provided to the attorney after the deletion of the exempt portions.

## Executive Clemency

The BOP advises all inmates that the President of the United States is authorized under the Constitution to grant executive clemency by pardon, commutation of sentence, or reprieve.  A pardon is an executive act of grace that is a symbol of forgiveness.  It does not connote innocence nor does it expunge the record of conviction. A pardon restores civil rights and facilitates the restoration of professional and other licenses that may have been lost by reason of the conviction. Other forms of executive clemency include commutation of sentence (reduction of sentence imposed after a conviction), and a reprieve (the suspension of execution of a sentence for a period of time).  Inmates should contact their assigned Case Manager for additional information regarding this program.

**Commutation of Sentence**
The BOP also advises inmates on commutation of sentences. Commutation of sentence is usually the last chance to correct an injustice which has occurred in the criminal justice process. Inmates applying for commutation of sentence must do so on forms available from the assigned unit team. The rules governing these petitions are available in the Law Library.

**Pardon**
A pardon may not be applied for until the expiration of at least five (5) years from the date of release from confinement. In some cases involving crimes of a serious nature, such as violation of Narcotics Laws, Gun Control Laws, Income Tax Laws, Perjury, and violation of public trust involving personal dishonesty, fraud involving substantial sums of money, violations involving organized crime, or crimes of a serious nature, a waiting period of seven years is usually required.

**Compassionate Release/Reduction in Sentence**
The Director of the BOP may move an inmate's sentencing court for reduction in sentence (RIS) for an inmate presenting extraordinary and compelling circumstances. See 18 U.S.C. § 3582 and Program Statement on *Compassionate Release/Reduction in Sentence*. The BOP may consider both medical and non-medical circumstances. The BOP consults with the U.S. Attorney's Office that prosecuted the inmate and will notify any victims of the inmate's current offense. If the RIS is granted, the judge will issue an order for the inmate's release and he or she will then usually begin serving the previously imposed term of supervised release. If an inmate's RIS request is denied, the inmate will be provided a statement of reasons for the denial. The inmate may appeal a denial through the Administrative Remedy Procedure. Denials by the General Counsel or the Director are final agency decisions and are not appealable. Inmates who feel their request is of an emergency nature (e.g., a terminal medical condition) may state as such in accordance with the regulation. (See 28 CFR part 542, subpart B).

**<u>PROBLEM RESOLUTION</u>**

**Inmate Request to Staff Member**
An Inmate Request to Staff Member (form BP-S148), commonly called a Cop-Out, is used to make a written request to a staff member. Any type of request can be made with this form. Cop-outs may be obtained in the living units from the Correctional Officer on duty. Staff members will answer the request within a reasonable period of time.

**Administrative Remedy Process**

The BOP emphasizes and encourages the resolution of complaints. The first step of the Administrative Remedy process is to attempt an <u>Informal Resolution</u>, utilizing the appropriate Informal Resolution form. (See the Administrative Remedy Institution Supplement, Attachment A.) When an informal resolution is not successful, an inmate can access the Administrative Remedy Program. All Administrative Remedy forms may be obtained from your assigned Correctional Counselor or Unit Team member.

If the issue cannot be informally resolved, a formal complaint may be filed with a Request for Administrative Remedy (formerly BP-229), commonly referred to as a BP-9. The inmate may place a single complaint or related issues on the form. If the form contains multiple unrelated issues, the submission will be rejected. The inmate will return the completed BP-9 to the Correctional Counselor, who will deliver it to the Administrative Remedy Coordinator (BP-9 will be rejected unless processed through staff). The BP-9 complaint must be filed within twenty (20) calendar days from the date on which the basis for the incident or complaint occurred, unless it was not feasible to file within that period of time which should be documented in the complaint. Institution staff has twenty (20) calendar days to act on the complaint and to provide a written response to the inmate. This time limit for the response may be extended for an additional twenty (20) calendar days. The inmate will be notified of the extension.

If the inmate is not satisfied with the Warden's response to the BP-9, he may file an appeal to the Regional Director. This appeal must be received in the Regional Office within twenty (20) calendar days from the date of the BP-9 response. The regional appeal is filed on a Regional Administrative Remedy Appeal (form BP-230), commonly referred to as a BP-10, and must include the appropriate number of copies of the BP-9 form, the Warden's response, and any exhibits. The regional appeal must be answered within thirty (30) calendar days, but the time limit may be extended an additional thirty (30) days. The inmate will be notified of the extension

If the inmate is not satisfied with the Regional Director's response, he may appeal to the General Counsel in the Central Office. The national appeal must be made on the Central Office Administrative Remedy Appeal (form BP-231), commonly referred to as a BP-11, and must have the appropriate number of copies of the BP-9, BP-10, both responses, and any exhibits. The national appeal must be answered within forty (40) calendar days, but the time limit may be extended an additional twenty (20) days. The inmate will be notified of the extension.

When filing a Request for Administrative Remedy or an Appeal (BP-9, BP-10, or BP-11), the form should contain the following information:

· Statement of Facts
· Grounds for Relief
· Relief Requested

## Sensitive Complaints

If an inmate believes a complaint is of a sensitive nature and he would be adversely affected if the complaint became known to the institution, he may file the complaint directly to the Regional Director. The inmate must explain, in writing, the reason for not filing the complaint with the institution. If the Regional Director agrees the complaint is sensitive, it shall be accepted and a response to the complaint will be processed. If the Regional Director does not agree the complaint is sensitive, the inmate will be advised in writing of that determination and the complaint will be returned. The inmate may then pursue the matter by filing a BP-9 at the institution.

## General Information

When a complaint is determined to be of an emergency and threatens the inmate's immediate health or welfare, the reply must be made as soon as possible, usually within seventy-two (72) hours from the receipt of the complaint.

For detailed instructions see Program Statement 1330.16, <u>Administrative Remedy Program</u>.

## <u>DISCIPLINARY PROCEDURES</u>

Inappropriate sexual behavior towards staff and other inmates will not be tolerated. Inappropriate sexual behavior is defined as verbal or physical conduct perceived as a sexual proposal, act, or threat. Examples of inappropriate inmate sexual behavior include: displaying sexually explicit materials; making sexually suggestive jokes, comments, proposals, and gestures; and engaging in stalking, indecent exposure, masturbation, or physical contact. Inmates who engage in this type of behavior will be disciplined and sanctioned accordingly, through the inmate discipline process.

## Discipline

The inmate discipline program helps ensure the safety, security, and orderly operation for all inmates. Violations of BOP rules and regulations are handled by the Unit Discipline Committee (UDC) and, for more serious violations, the Disciplinary Hearing Officer (DHO). Upon arrival at an institution, inmates are advised of the rules and regulations and are provided with copies of the Prohibited Acts and Available Sanctions, as well as local regulations.

**Inmate Discipline Information**
When a staff member witnesses or reasonably believes an inmate has committed a prohibited act, a staff member will issue an incident report, a written copy of the charges against an inmate. The incident report will ordinarily be delivered to the inmate within 24 hours of the time staff became aware of the inmate's involvement in the incident. If the incident is referred for prosecution, the incident report is delivered by the end of the next work day after it has been released for administrative processing. An informal resolution of the incident may be attempted at any stage of the discipline process. If an informal resolution is accomplished, the incident report will be removed from the inmate's central file. Informal resolution is encouraged for all violations in the Moderate and Low severity categories. Staff may suspend disciplinary proceedings up to two calendar weeks while informal resolution is undertaken. If an informal resolution is not accomplished, staff will reinstate the discipline process at the stage at which they were suspended. Violations in the Greatest and High severity categories cannot be informally resolved and must be forwarded to the DHO for final disposition.

**Initial Hearing**
Inmates will ordinarily be given an initial hearing within five (5) work days after the incident report is issued, excluding the day it was issued, weekends, and holidays. The Warden must approve, in writing, the any extension over five (5) days. The inmate is entitled to be present at the initial hearing and may make statements and present documentary evidence. The UDC must give its decision in writing to the inmate by the close of the next work day. The UDC may make findings on Moderate and Low severity offenses. The UDC will automatically refer Greatest and High severity offenses to the DHO for final disposition.

**Discipline Hearing Officer (DHO)**
The Disciplinary Hearing Officer (DHO) conducts disciplinary hearings on all Greatest and High severity prohibited acts and other violations referred by the UDC at the Moderate and Low severity levels. The DHO may not hear any case not referred by the UDC. An inmate will be provided with advance written notice of the charge(s) not less than 24 hours before the inmate's appearance before the DHO. Inmates may waive this requirement. Inmates may appear before the DHO either in person or electronically (for example, by video or telephone conferencing). The Warden provides a full-time staff member to represent an inmate, if requested. An inmate may make statements and present documentary evidence on his or her behalf. The inmate may request witnesses appear at the DHO hearing to provide statements. The DHO will call witnesses who have information directly relevant to the charge(s) and are

reasonably available. The DHO will request a statement from all unavailable witnesses whose testimony is deemed relevant. Inmates may not question a witness at the hearing; however, the staff representative and/or the DHO will question the witness(es). An inmate may submit a list of questions for the witness(es) to the DHO if there is no staff representative. An inmate has the right to be present throughout the DHO hearing, except during deliberations. The inmate charged may be excluded during appearances of outside witnesses or when institution security may be jeopardized. The DHO may postpone or continue a hearing for good cause or disposition when the case does not warrant DHO involvement, or may refer an incident report back for further investigation or review. The DHO will give the inmate a written copy of the decision and disposition, ordinarily within 15 days of the decision.

**Appeals of Disciplinary Actions**
Appeals of all disciplinary actions may be made through the Administrative Remedy Program. The initial reviewing official for the UDC is the Warden. The decision of the DHO is final and subject to review only by the Regional Director through the Administrative Remedy program. Appeals are made to the Regional Director (BP-230) and the General Counsel (BP-231). On appeal, the reviewing authority (Warden, Regional Director, or General Counsel) considers:

- Whether the UDC or DHO substantially complied with regulations on inmate discipline.
- Whether the UDC or DHO based its decision on facts. If there is conflicting evidence, whether the decision was based on the greater weight of the evidence.
- Whether an appropriate sanction was imposed for the severity level of the prohibited act, and other relevant circumstances.

**Special Housing Unit Status**
Special Housing Units (SHUs) are housing units in BOP institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates. SHU helps ensure the safety, security, and orderly operation of correctional facilities, and protect the public by providing alternative housing assignments for inmates removed from the general population.

When placed in the SHU, you are either in administrative detention (A/D) status or disciplinary segregation (D/S) status.

Administrative detention (A/D) status: A/D is an administrative status which removes you from the general population when necessary to ensure

the safety, security, and orderly operation of correctional facilities, or protect the public.  Administrative detention status is non-punitive, and can occur for a variety of reasons.

You may be placed in A/D status for the following reasons:
(a)  Pending Classification or Reclassification: You are a new commitment pending classification or under review for Reclassification.  This includes newly arrived inmates from the bus, airlift, and U. S. Marshals Service.

(b)  Holdover Status: You are in holdover status during transfer to a designated institution or other destination.

(c)  Removal from general population: Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and:

(1)  Investigation: You are under investigation or awaiting a hearing for possibly violating a BOP regulation or criminal law;

(2)  Transfer: You are pending transfer to another institution;

(3)  Protection cases: You requested, or staff determined, you require administrative detention status for your own protection; or

(4)  Post-disciplinary detention: You are ending confinement in disciplinary segregation status, and your return to the general population would threaten the safety, security, and orderly operation of a correctional facility, or public safety.

When placed in A/D status, you will receive a copy of the administrative detention order, ordinarily within 24 hours, detailing the reason(s) for your placement.  However, when placed in A/D status pending classification or while in holdover status, you will not receive an administrative detention order.

In A/D status you are ordinarily allowed a reasonable amount of personal property and reasonable access to the commissary.

Disciplinary segregation (D/S) status: D/S is a punitive status imposed only by a Discipline Hearing Officer (DHO) as a sanction for committing a prohibited act(s).  When you are placed in D/S status, as a sanction for violating BOP regulations, you will be informed by the DHO at the end of your discipline hearing.

In D/S status, your personal property will be impounded, with the exception of limited reading/writing materials and religious articles. Your commissary privileges may also be limited. In either status, your amount of personal property may be limited for reasons of fire safety or sanitation. The Warden may modify the quantity and type of personal property allowed. Personal property may be limited or withheld for reasons of security, fire safety, or housekeeping. The unauthorized use of any authorized item may result in the restriction of the item. If there are numerous misuses of an authorized item, the Warden may determine that the item will not be issued in the SHU.

Program staff, including unit staff, will arrange to visit inmates in a SHU within a reasonable time after receiving the inmate's request. A Health Services staff member will visit you daily to provide necessary medical care. While in SHU, you may continue taking your prescribed medications. In addition, after every 30 calendar days of continuous placement in either A/D or D/S status, a Mental Health staff will examine and interview you.

**RELEASE**

**Sentence Computation**
The Designation and Sentence Computation Center (DSCC), located in Grand Prairie, Texas, is responsible for the computation of inmate sentences. Once staff at the DSCC have certified the sentence computation as being accurate, staff will provide the inmate with a copy of his or her sentence computation data. Any questions concerning good time, jail time credit, parole eligibility dates, full term dates, or release dates are resolved by staff upon inmate request for clarification.

**Fines and Costs**
In addition to jail time, the court may impose committed or non-committed fines and/or costs. Committed fines mean that the inmate will remain in prison until the fine is paid, makes arrangements to pay the fine, or qualifies for release under the provisions of Title 18 USC, Section 3569 (Discharge of indigent prisoner). Non-committed fines have no condition of imprisonment based on payment of fines or costs. Payments for a non-committed fine or cost are not required for release from prison or transfer to a contract residential reentry center.

**Detainers**
Case management staff may give assistance to offenders in their efforts to have detainers against them disposed of, either by having the charges dropped, by restoration to probation or parole status, or by arrangement for concurrent service of the state sentence. The degree to which the

staff can assist in such matters as these will depend on individual circumstances.

The Interstate Agreement on Detainers Act (IADA) allows for the disposition of untried charges, indictments, information, or complaints that have been lodged as a detainer by party states. The United States of America, the District of Colombia, and any U.S. state or territory that has codified the IADA into its statutes have been identified as party states. The states of Mississippi and Louisiana, the Commonwealth of Puerto Rico, and the territories have not joined the IADA to date.

**Good Conduct Good Time**
This applies to inmates sentenced for an offense committed on or after November 1, 1987, under the Sentencing Reform Act of 1984 (SRA), the Violent Crime Control Law Enforcement Act (VCCLEA), or Prison Litigation Reform Act (PLRA).

The SRA became law on November 1, 1987. The two most significant changes made to sentencing statutes concern good time and parole issues. There are no provisions for parole under the SRA. The only good time available under the SRA is 54 days of Good Conduct Time (GCT) for each year served on the sentence. No GCT is applied to life terms, or to sentences of 1 year or less. Good time is not awarded under the SRA until the end of each year served on the sentence, and may be awarded in part or in whole, contingent upon behavior during the year. Once awarded, GCT earned under the SRA is vested, and may not be forfeited at a later time.

For inmates convicted under the VCCLEA, for offenses committed from September 13, 1994, through April 25, 1996, the 54 days of GCT earned for each year served on the sentence will not vest if an inmate does not have a high school diploma or a GED, and the inmate is not making satisfactory progress toward earning a GED. Unsatisfactory progress is determined by the institution Education Department.

For inmates sentenced under the PLRA, for offenses committed on or after April 26, 1996, the GCT earned for time spent in service of the sentence does not vest. In addition, if an inmate does not have a high school diploma or a GED, and the inmate is not making satisfactory progress toward earning a GED, only 42 days of GCT will be earned for each year in the service of the sentence. Unsatisfactory progress is determined by the institution Education Department.

The amount of GCT an inmate is eligible to receive is based on the amount of time served on the sentence, not the length of the sentence. This calculation method has been upheld by the U.S. Supreme Court.

**THE GOOD TIME DISCUSSIONS BELOW DO NOT APPLY TO INMATES SENTENCED UNDER THE NEW SENTENCING GUIDELINES.**

**Good Time**
Good Time awarded by the BOP under statutes enacted prior to November 1, 1987, has the effect of reducing the stated term of the sentence that is, it advances the date when release will be mandatory if the offender is not paroled at an earlier date. The award of Good Time does not in itself advance the offender's release date. It has that effect only if the offender would not otherwise be paroled before the mandatory date.

**Statutory Good Time**
Under 18 U.S. Code 4161, an offender sentenced to a definite term of six months or more is entitled a deduction from his term, computed as follows, if the offender has faithfully observed the rules of the institution and has not been disciplined:

Not greater than one year - 5 days for each month of the not less than six months or more than one year sentence.
More than 1 year, less than 3 years - 6 days for each month of the stated sentence.
At least 3 years, less than 5 years - 7 days for each month of the stated sentence.
At least 5 years, less than 10 years - 8 days for each month of the stated sentence.
10 years or more - 10 days for each month of the stated sentence.
At the beginning of a prisoner's sentence, the full amount of statutory good time is credited, subject to forfeiture if the prisoner commits disciplinary infractions.

The following applies only to inmates sentenced for an offense committed prior to November 1, 1987.

**Extra Good Time**
The BOP awards extra good time credit for performing exceptionally meritorious service, performing duties of outstanding importance, or for employment in an Industry or Camp. An inmate may earn only one type of good time award at a time (e.g., an inmate earning industrial or Camp good time is not eligible for meritorious good time), except that a lump sum award may be given in addition to another extra good time award. Neither the Warden nor the DHO may forfeit or withhold extra good time.

The Warden may disallow or terminate the awarding of any type of Extra Good Time (except for lump sum awards), but only in a non-disciplinary context and only upon recommendation of staff. The DHO may disallow or terminate the awarding of any type of Extra Good Time, (except lump sum

awards) as a disciplinary sanction.  Once an awarding of meritorious good time has been terminated, the Warden must approve a new staff recommendation in order for the award to recommence.  A disallowance means that an inmate does not receive an Extra Good Time award for only one calendar month.  A disallowance must be for the entire amount of extra good time for that calendar month. There may be no partial disallowance.  A decision to disallow or terminate extra good time may not be suspended pending future consideration.  A retroactive award of meritorious good time may not include a month in which Extra Good Time has been disallowed or terminated.

**Residential Reentry Center Good Time**
Extra good time for an inmate in a Federal or contract Residential Reentry Center is awarded automatically beginning on arrival at that facility and continuing as long as the inmate is confined to the Center, unless the award is disallowed.

**Camp Good Time**
An inmate assigned to a camp is automatically awarded Extra Good Time, beginning on the date of commitment to the camp, and continuing as long as the inmate is assigned to the camp unless the award is disallowed.

**Lump Sum Awards**
Any staff member may recommend to the Warden the approval of an inmate for a lump sum award of Extra Good Time.  Such recommendations must be for an exceptional act or service that is not a part of a regularly assigned duty.  The Warden may make lump sum awards of Extra Good Time of not more than thirty (30) days.  If the recommendation is for more than thirty days, and the Warden agrees, the Warden will refer the recommendation to the Regional Director, who may approve the award.

**Good Time Procedures**
Extra Good Time is awarded at a rate of three days per month during the first twelve months, and at the rate of five days per month thereafter (i.e., the first twelve months, as stated, means 11 months and 30 days -Day for Day - of earning Extra Good Time before an inmate can start earning five days per month.

**Parole**
Parole is release from incarceration under conditions established by the U.S. Parole Commission.  Parole is not a pardon or an act of clemency. A parolee remains under the supervision of a U.S. Probation Officer until the expiration of his full term.  Federal inmates sentenced prior to 1987 are ordinarily permitted an opportunity to appear before the Parole Commission within 120 days of commitment (EXEMPTIONS: inmates sentenced before September 6, 1977 and inmates with a minimum parole eligibility

of ten years). Inmates sentenced in the District of Columbia Superior Court who are eligible for parole will normally receive a parole hearing 180 days prior to their parole eligibility date. If the inmate chooses not to appear before the Parole Board for the initial hearing, a waiver must be given to the Case Manager prior to the time of the scheduled parole hearing. This waiver will be made part of the Parole Commission file and the inmate's central file.

All inmates who previously waived a parole hearing are eligible to appear before the Parole Board at any regularly scheduled hearing after they waive. Application for a parole hearing must be made at least 60 days before the first day of the month of the hearings. The Parole Board conducts hearings at most BOP institutions every two months.

Applications, to the Parole Commission for a hearing, are the responsibility of the inmate, but in certain cases the Unit Team will assist the inmate if necessary. Application forms may be obtained from the Case Manager.

Following the hearing, the inmate will be advised of the tentative decision reached in the case by the hearing examiners. The recommendations of the hearing examiner must be confirmed by the Regional Office of the Parole Board. This confirmation usually takes three to four weeks and is made through the mail on a form called a Notice of Action. Federal inmates may appeal a decision made the Parole Commission by obtaining the appropriate forms from the Case Manager. Inmates with a District of Columbia Superior Court case cannot appeal a decision made by the Parole Commission. If granted a presumptive parole date (a parole date more than six months following the hearing), a parole progress report will be sent to the Parole Board three to six months before the parole date.

Parole may be granted to a detainer or for the purpose of deportation. The inmate should have an approved residence and an approved employer before being released on parole.

**Residential Reentry Center Placement**

Inmates who are nearing release, and who need assistance in obtaining a job, residence or other community resources, may be referred for placement at a Residential Reentry Center (RRC).

The Residential Reentry Management Regional Administrator supervises services provided to offenders housed in contract facilities and participating in specialized programs in the community. The Residential Reentry Manager (RRM) links the BOP with the U.S. Courts, other Federal

agencies, State and local governments, and the community. Located strategically throughout the country, the RRM is responsible for developing and maintaining a variety of contract facilities and programs, working under the supervision of the appropriate regional administrator.

Community programs have two major emphases: residential community-based programs provided by RRCs and programs that provide intensive nonresidential supervision to offenders in the community.

**Community-Based Residential Programs**
The community-based residential programs available include both typical RRCs and work release programs provided by local detention facilities. The RRCs provide a suitable residence, structured programs, job placement and counseling while monitoring the offender's activities. They also provide drug testing and counseling, and alcohol monitoring and treatment. While in these programs, employed offenders are required to pay subsistence to help defray the cost of their confinement. The inmate's payment rate during RRC residence is 25 percent of the inmate's gross income.

Most BOP community-based residential programs are proved in RRCs. These facilities contract with the BOP to provide residential correctional programs near the offender's home community. RRCs are used primarily for three types of offenders:


· Those nearing release from a BOP institution, as a transitional service while the offender is finding a job, locating a place to live, and reestablishing family ties.
· Those under community supervision who need guidance and supportive services beyond what can be provided through regular supervision by U.S. Probation.
· Those serving short sentences of imprisonment and terms of community confinement.

Each RRC now provides two components within one facility, a prerelease component and a community corrections component. The prerelease component assists offenders making the transition from an institutional setting to the community, or as a resource while under supervision. The community corrections component is more restrictive. Except for employment and other required activities, the offenders are required to main at the RRC, where recreation, visiting, and other activities are provided in-house.

The other option for community-based residential programming is local detention facilities. Some local jails and detention centers are used to confine offenders serving short sentences. Many have work release programs where an offender is employed in the community during the day and returns to the institution at night. These facilities may also be used for offenders sentenced to terms of intermittent confinement such as nights, weekends, or other short intervals. Some of these local facilities have work release programs similar to the community corrections component in a RRC, serving to facilitate the transition from the institution to the community.

**The Adam Walsh Child Protection and Safety Act**
The Adam Walsh Child Protection and Safety Act (Pub. L. 109-248) was signed into law on July 27, 2006. The legislation organizes sex offenders into 3 tiers, and mandates that Tier 3 offenders update their whereabouts every 3 months. It makes failure to register and update information a felony. It also creates a national sex offender registry and instructs each state and territory to apply identical criteria for posting offender data on the Internet (i.e., offender's name, address, date of birth, place of employment, photograph, etc.).

## INMATE RIGHTS AND RESPONSIBILITIES

| <u>RIGHTS</u> | <u>RESPONSIBILITIES</u> |
|---|---|
| 1. You have the right to expect that you will be treated in a respectful, impartial, and fair manner. | 1. You are responsible for treating inmates and staff in the same manner. |
| 2. You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution. | 2. You have the responsibility to know and abide by them. |
| 3. You have the right to freedom of religious affiliation, and | 3. You have the responsibility to recognize and respect the rights |

voluntary religious worship.

of others in this regard.

4. You have the right to health care, which includes nutritious meals, proper bedding and clothing, and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles and medical dental treatment.

4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it.

5. You have the right to visit and correspond with family members, and friends, and correspond with members of the news media in accordance with BOP rules and institution guidelines.

5. It is your responsibility to conduct yourself properly during visits. You will not engage in inappropriate conduct during visits to include sexual acts and introduction of contraband, and to not violate the law or BOP guidelines through correspondence.

6. You have the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.)

6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court.

7. You have the right to legal counsel from an attorney of your choice by interviews and correspondence.

7. It is your responsibility to use the services of an attorney honestly and fairly.

8. You have the right to participate in the use of law library reference material to assist you in resolving legal problems. You also have the right to receive help when it is through a legal assistance program.

8. It is your responsibility to use the resources in keeping with the procedures and schedule prescribed and to respect the rights of other inmates to the use of the materials and assistance.

10. You have the right to

10. You have the responsibility to

| | |
|---|---|
| participate in education, vocational training and employment as far as resources are available, and in keeping with your interests, needs, and abilities. | take advantage of activities which may help you live a successful and law-abiding life within the institution and the community. You will be expected to abide by the regulations governing the use of such activities. |
| 11. You have the right to use your funds for commissary and other purchase, consistent with institution security and good order, for opening bank and/or savings accounts, and for assisting your family, in accordance with BOP rules. | 11. You have the responsibility to make use of your funds in a manner consistent with your release plans, your family needs, and for other obligations that you may have. |

**PROHIBITED ACTS AND AVAILABLE SANCTIONS**

**GREATEST SEVERITY LEVEL PROHIBITED ACTS**

100   Killing.

101   Assaulting any person, or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished).

102   Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure institution.

103   Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, e.g., in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329).

104   Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon.

105   Rioting.

106   Encouraging others to riot.

107   Taking hostage(s).

108   Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

109   (Not to be used).

110   Refusing to provide a urine sample; refusing to breathe into a Breathalyzer; refusing to take part in other drug abuse testing.

111   Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

112   Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

113   Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

114   Sexual assault of any person, involving non-consensual touching by force or threat of force.

115   Destroying and/or disposing of any item during a search or attempt to search.

196   Use of the mail for an illegal purpose or to commit or further a Greatest category prohibited act.

197   Use of the telephone for an illegal purpose or to commit or further a Greatest category prohibited act.

198   Interfering with a staff member in the performance of duties most like another Greatest severity prohibited act. This charge is to be used only when another charge of Greatest severity is not accurate. The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

199   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act. This charge is to be used only when another charge of Greatest severity is not accurate. The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.

**AVAILABLE SANCTIONS FOR GREATEST SEVERITY LEVEL PROHIBITED ACTS**

A.    Recommend parole date rescission or retardation.

B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1.  Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.    Disciplinary segregation (up to 12 months).

D.    Make monetary restitution.

E.    Monetary fine.

F.    Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G.    Change housing (quarters).

H.    Remove from program and/or group activity.

I.    Loss of job.

J.    Impound inmate's personal property.

K.    Confiscate contraband.

L.    Restrict to quarters.

M.    Extra duty.

**HIGH SEVERITY LEVEL PROHIBITED ACTS**

200   Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.

201   Fighting with another person.

202   (Not to be used).

203   Threatening another with bodily harm or any other offense.

204   Extortion; blackmail; protection; demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing.

205   Engaging in sexual acts.

206 Making sexual proposals or threats to another.

207 Wearing a disguise or a mask.

208 Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure.

209 Adulteration of any food or drink.

210 (Not to be used).

211 Possessing any officer's or staff clothing.

212 Engaging in or encouraging a group demonstration.

213 Encouraging others to refuse to work, or to participate in a work stoppage.

214 (Not to be used).

215 (Not to be used).

216 Giving or offering an official or staff member a bribe, or anything of value.

217 Giving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose.

218 Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00, or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value.

219 Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored).

220 Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized by staff).

221 Being in an unauthorized area with a person of the opposite sex without staff permission.

222 (Not to be used).

223 (Not to be used).

224   Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate).

225   Stalking another person through repeated behavior which harasses, alarms, or annoys the person, after having been previously warned to stop such conduct.

226   Possession of stolen property.

227   Refusing to participate in a required physical test or examination unrelated to testing for drug abuse (e.g., DNA, HIV, tuberculosis).

228   Tattooing or self-mutilation.

229   Sexual assault of any person, involving non-consensual touching without force or threat of force.

296   Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence).

297   Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act.

298   Interfering with a staff member in the performance of duties most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

299   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. This charge is to be used only when another charge of High severity is not accurate. The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

**AVAILABLE SANCTIONS FOR HIGH SEVERITY LEVEL PROHIBITED ACTS**

A.    Recommend parole date rescission or retardation.

B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1   Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.    Disciplinary segregation (up to 6 months).

D.    Make monetary restitution.

E.    Monetary fine.

F.    Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G.    Change housing (quarters).

H.    Remove from program and/or group activity.

I.    Loss of job.

J.    Impound inmate's personal property.

K.    Confiscate contraband.

L.    Restrict to quarters.

M.    Extra duty.


**MODERATE SEVERITY LEVEL PROHIBITED ACTS**

300   Indecent Exposure.

301   (Not to be used).

302   Misuse of authorized medication.

303   Possession of money or currency, unless specifically authorized, or in excess of the amount authorized.

304   Loaning of property or anything of value for profit or increased return.

305   Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels.

306   Refusing to work or to accept a program assignment.

307     Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, e.g. failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110).

308     Violating a condition of a furlough.

309     Violating a condition of a community program.

310     Unexcused absence from work or any program assignment.

311     Failing to perform work as instructed by the supervisor.

312     Insolence towards a staff member.

313     Lying or providing a false statement to a staff member.

314     Counterfeiting, forging, or unauthorized reproduction of any document, article of identification, money, security, or official paper (may be categorized in terms of greater severity according to the nature of the item being reproduced, e.g., counterfeiting release papers to effect escape, Code 102).

315     Participating in an unauthorized meeting or gathering.

316     Being in an unauthorized area without staff authorization.

317     Failure to follow safety or sanitation regulations (including safety regulations, chemical instructions, tools, MSDS sheets, OSHA standards).

318     Using any equipment or machinery without staff authorization.

319     Using any equipment or machinery contrary to instructions or posted safety standards.

320     Failing to stand count.

321     Interfering with the taking of count.

322     (Not to be used).

323     (Not to be used).

324     Gambling.

325     Preparing or conducting a gambling pool.

326     Possession of gambling paraphernalia.

327     Unauthorized contacts with the public.

328 Giving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization.

329 Destroying, altering, or damaging government property, or the property of another person, having a value of $100.00 or less.

330 Being unsanitary or untidy; failing to keep one's person or quarters in accordance with posted standards.

331 Possession, manufacture, introduction, or loss of a non-hazardous tool, equipment, supplies, or other non-hazardous contraband (tools not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety) (other non-hazardous contraband includes such items as food, cosmetics, cleaning supplies, smoking apparatus and tobacco in any form where prohibited, and unauthorized nutritional/dietary supplements).

332 Smoking where prohibited.

333 Fraudulent or deceptive completion of a skills test (e.g., cheating on a GED, or other educational or vocational skills test).

334 Conducting a business; conducting or directing an investment transaction without staff authorization.

335 Communicating gang affiliation; participating in gang related activities; possession of paraphernalia indicating gang affiliation.

336 Circulating a petition.

396 Use of the mail for abuses other than criminal activity which do not circumvent mail monitoring; or use of the mail to commit or further a Moderate category prohibited act.

397 Use of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act.

398 Interfering with a staff member in the performance of duties most like another Moderate severity prohibited act. This charge is to be used only when another charge of Moderate severity is not accurate. The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.

399   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Moderate severity prohibited act. This charge is to be used only when another charge of Moderate severity is not accurate. The offending conduct must be charged as "most like" one of the listed Moderate severity prohibited acts.

**AVAILABLE SANCTIONS FOR MODERATE SEVERITY LEVEL PROHIBITED ACTS**

A.    Recommend parole date rescission or retardation.

B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1   Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

C.    Disciplinary segregation (up to 3 months).


D.    Make monetary restitution.

E.    Monetary fine.

F.    Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

G.    Change housing (quarters).

H.    Remove from program and/or group activity.

I.    Loss of job.

J.    Impound inmate's personal property.

K.    Confiscate contraband.

L.    Restrict to quarters.

M.    Extra duty.

**LOW SEVERITY LEVEL PROHIBITED ACTS**

400   (Not to be used).

401   (Not to be used).

402   Malingering, feigning illness.

403   (Not to be used).

404     Using abusive or obscene language.

405     (Not to be used).

406     (Not to be used).

407     Conduct with a visitor in violation of Bureau regulations.

408     (Not to be used).

409     Unauthorized physical contact (e.g., kissing, embracing).

498     Interfering with a staff member in the performance of duties most like another Low severity prohibited act.  This charge is to be used only when another charge of Low severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.

499     Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Low severity prohibited act.  This charge is to be used only when another charge of Low severity is not accurate.  The offending conduct must be charged as "most like" one of the listed Low severity prohibited acts.

**AVAILABLE SANCTIONS FOR LOW SEVERITY LEVEL PROHIBITED ACTS**

B.1     Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).

C.      Make monetary restitution.

D.      Monetary fine.

E.      Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).

F.      Change housing (quarters).

G.      Remove from program and/or group activity.

H.      Loss of job.

I.      Impound inmate's personal property.

J.      Confiscate contraband

K.   Restrict to quarters.

L.   Extra duty

**Table 2.   ADDITIONAL AVAILABLE SANCTIONS FOR REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL**

| Prohibited Act Severity Level | Time Period for Prior Offense (same code) | Frequency of Repeated Offense | Additional Available Sanctions |
|---|---|---|---|
| Low Severity (400 Level) | 6 months | 2nd offense | 1. Disciplinary segregation (Up to 1 month). 2. Forfeit earned SGT, or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanctions may not be suspended). |
| | | 3rd or more offense | Any available Moderate severity level sanction (300 series). |
| Moderate Severity (300 Level) | 12 months | 2nd offense | 1. Disciplinary segregation (Up to 12 months). 2. Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3rd offense | Any available High severity level sanction (200 series). |
| High Severity (200 level) | 18 months | 2nd offense | 1. Disciplinary segregation (up to 12 months). 2. Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3rd offense or more | Any available Greatest severity level sanction (100 series). |
| Greatest Severity (100 level) | 24 months | 2nd or more offense | Disciplinary Segregation (up to 18 months). |

# U. S. Department of Justice
# Federal Bureau of Prisons



# Sexually Abusive Behavior
# Prevention and Intervention

An Overview for Offenders

**You Have the Right to be Safe from Sexually Abusive Behavior**
The Federal Bureau of Prisons has a zero tolerance policy against sexual abuse and sexual harassment. While you are incarcerated, no one has the right to pressure you to engage in sexual acts.

You do not have to tolerate sexually abusive/harassing behavior or pressure to engage in unwanted sexual behavior from another inmate or a staff member. Regardless of your age, size, race, ethnicity, gender or sexual orientation, you have the right to be safe from sexually abusive behavior.

**What Can You Do To Prevent Sexually Abusive Behavior?**
Here are some things you can do to protect yourself and others against sexually abusive behavior:

- Carry yourself in a confident manner at all times. Do not permit your emotion (fear/anxiety) to be obvious to others.
- Do not accept gifts or favors from others. Most gifts or favors come with strings attached to them.
- Do not accept an offer from another inmate to be your protector.
- Find a staff member with whom you feel comfortable discussing your fears and concerns.
- Be alert! Do not use contraband substances such as drugs or alcohol; these can weaken your ability to stay alert and make good judgments.
- Be direct and firm if others ask you to do something you don't want to do. Do not give mixed messages to other inmates regarding your wishes for sexual activity.
- Stay in well-lit areas of the institution.
- Choose your associates wisely. Look for people who are involved in positive activities like educational programs, psychology groups, or religious services. Get involved in these activities.
- Trust your instincts. If you sense that a situation may be dangerous, it probably is. If you fear for your safety, report your concerns to staff.

**What Can You Do if You Are Afraid or Feel Threatened?**
If you are afraid or feel you are being threatened or pressured to engage in sexual behaviors, you should discuss your concerns with staff. Because this can be a difficult topic to discuss, some staff, like

psychologists, are specially trained to help you deal with problems in this area.

If you feel immediately threatened, approach any staff member and ask for assistance. It is part of his/her job to ensure your safety. If it is a staff member that is threatening you, report your concerns immediately to another staff member that you trust, or follow the procedures for making a confidential report.

**What Can You Do if You Are Sexually Assaulted?**

If you become a victim of a sexually abusive behavior, you should report it immediately to staff who will offer you protection from the assailant. You do not have to name the inmate(s) or staff assailant(s) in order to receive assistance, but specific information may make it easier for staff to know how best to respond. You will continue to receive protection from the assailant, whether or not you have identified him or her (or agree to testify against him/her).

After reporting any sexual assault, you will be referred immediately for a medical examination and clinical assessment. Even though you many want to clean up after the assault it is important to see medical staff BEFORE you shower, wash, drink, eat, change clothing, or use the bathroom. Medical staff will examine you for injuries which may or may not be readily apparent to you. They can also check you for sexually transmitted diseases, pregnancy, if appropriate, and gather any physical evidence of assault. The individuals who sexually abuse or assault inmates can only be disciplined and/or prosecuted if the abuse is reported. Regardless of whether your assailant is an inmate or a staff member, it is important to understand that you will never be disciplined or prosecuted for being the victim of a sexual assault.

**How to Report an Incident of Sexually Abusive Behavior?**

It is important that you tell a staff member if you have been sexually assaulted or have been a victim of sexual harassment. It is equally important to inform staff if you have witnessed sexually abusive behavior. You can tell your case manager, Chaplain, Psychologist, SIS, the Warden or any other staff member you trust. BOP staff members are instructed to keep reported information confidential and only discuss it with the appropriate officials on a need to know basis concerning the inmate-victim's welfare and for law enforcement or investigative purposes. There are other means to confidentiality report sexually abusive behavior if you are not comfortable talking with staff.

- Write directly to the Warden, Regional Director or Director. You can send the Warden an Inmate Request to Staff Member (Cop-out) or a letter reporting the sexually abusive behavior. You may also send a letter to the Regional Director or Director of the Bureau

of Prisons. To ensure confidentiality, use special mail procedures.

- File an Administrative Remedy. You can file a Request for Administrative Remedy (BP-9). If you determine your complaint is too sensitive to file with the Warden, you have the opportunity to file your administrative remedy directly with the Regional Director (BP-10). You can get the forms from your counselor or other unit staff.

- Write the Office of the Inspector General (OIG) which investigates allegations of staff misconduct by employees of the U.S. Department of Justice; all other sexual abuse/harassment allegations will be forwarded by the OIG to the BOP. OIG is a component of the Department of Justice and is not a part of the Bureau of Prisons. The address is:

**Office of the Inspector General**
**U.S. Department of Justice**
**Investigations Division**
**950 Pennsylvania Avenue, N.W.**
**Room 4706**
**Washington, D.C. 20530**

E-mail OIG. You can send an e-mail directly to OIG by clicking on the TRULINCS Request to Staff tab and selecting the Department Mailbox titled, DOJ Sexual Abuse Reporting. This method of reporting is processed by OIG during normal business hours, Monday – Friday. It is not a 24-hour hotline. For immediate assistance, contact institution staff.

Note: These e-mails:

- are untraceable at the local institution,
- are forwarded directly to OIG,
- will not be saved in your e-mail 'Sent' list,
- do not allow for a reply from OIG,
- If you want to remain anonymous to the BOP, you must request it in the e-mail to OIG.

Third-party Reporting. Anyone can report such abuse on your behalf by accessing the BOP's public website, specifically:

**http://www.bop.gov/inmate programs/sa prevention reporting.jsp.**

**Understanding the Investigative Process**

Once the sexually abusive behavior is reported, the BOP and/or other appropriate law enforcement agencies will conduct an investigation. The purpose of the investigation is to determine the nature and scope of the abusive behavior. You may be asked to give a statement during the investigation. If criminal charges are brought, you may be asked to testify during the criminal proceedings.

Counseling Programs for Victims of Sexually Abusive Behavior

Most people need help to recover from the emotional effects of sexually abusive behavior. If you are the victim of sexually abusive behavior, whether recent or in the past, you may seek counseling and/or advice from a psychologist or chaplain. Crisis counseling, coping skills, suicide prevention, mental health counseling, and spiritual counseling are all available to you.

Contact your local Rape Crisis Center (RCC): Your institution may have a Memo of Understanding (MOU) with a local RCC. If so, Psychology Services can provide you with the contact information. If no MOU exists, you may seek services through Psychology Services.

**Management Program for Inmate Assailants**

Those who sexually abuse/assault/harass others while in the custody of the BOP will be disciplined and prosecuted to the fullest extent of the law. If you are an inmate assailant, you will be referred to Correctional Services for monitoring. You will be referred to Psychology Services for an assessment of risk and treatment and management needs. Treatment compliance or refusal will be documented and decisions regarding your conditions of confinement and release may be effected. If you feel that you need help to keep from engaging in sexually abusive behaviors, psychological services are available.

**Policy Definitions**

Prohibited Acts: Inmates who engage in inappropriate sexual behavior can be charged with following Prohibited Acts under the Inmate Disciplinary Policy.

Code 114/ (A): Sexual Assault by Force

Code 205/ (A): Engaging in a Sex Act

Code 206/ (A): Making a Sexual Proposal

Code 221/ (A): Being in an Unauthorized Area with a Member of the Opposite Sex

Code 229/ (A): Sexual Assault without Force

Code 300/ (A): Indecent Exposure

Code 404/ (A): Using Abusive or Obscene Language

Staff Misconduct: The Standards of Employee Conduct prohibit employees from engaging in, or allowing another person to engage in sexual, indecent, profane or abusive language or gestures, and inappropriate visual surveillance of inmates. Influencing, promising or threatening an inmate's safety, custody, privacy, housing, privileges, work detail or program status in exchange for sexual favors is also prohibited.

What is sexually abusive behavior? According to federal law (Prison Rape Elimination Act of 2003) sexually abusive behavior is defined as:

Rape: The carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person FORCIBLY or against that person's will;

The carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person not forcibly or against the person's will, where the victim is incapable of giving consent because of his/her youth or his/her temporary or permanent mental or physical incapacity; or

The carnal knowledge, oral sodomy, or sexual assault with an object or sexual fondling of a person achieved through the exploitation of the fear or threat of physical violence or bodily injury;

Carnal Knowledge: Contact between the penis and vulva or the penis and the anus, including penetration of any sort, however slight;

Oral Sodomy: Contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

Sexual Assault with an Object: The use of any hand, finger, object, or other instrument to penetrate, however slightly, the genital or anal opening of the body of another person (NOTE: This does NOT apply to custodial or medical personnel engaged in evidence gathering or legitimate medical treatment, nor to health care provider's performing body cavity searches in order to maintain security and safety within the prison).

Sexual Fondling: The touching of the private body parts of another person (including the genitalia, anus, groin, breast, inner thigh, or buttocks) for the purpose of sexual gratification.

Sexual Harassment: Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate/detainee/resident to another; or repeated verbal comments or gestures of a sexual nature to an inmate/detainee/resident by a staff member/contractor/volunteer, including demeaning references to gender, sexually suggestive, or derogatory comments about body or clothing, or obscene language or gestures.

Sexual Misconduct (staff only):  The use of indecent sexual language, gestures, or sexually oriented visual surveillance for the purpose of sexual gratification.

An incident is considered Inmate-on-Inmate Abuse/Assault when any sexually abusive behavior occurs between two or more inmates.  An incident is considered Staff-on-Inmate Abuse/Assault when any sexually abusive behavior is initiated by a staff member toward one or more inmates.  It is also considered Staff-on-Inmate Abuse/Assault if a staff member willingly engages in sexual acts or contacts that are initiated by an inmate.

NOTE: Sexual acts or contacts between two or more inmates, even when no objections are raised, are prohibited acts, and may be illegal. Sexual acts or contacts between an inmate and a staff member, even when no objections are raised by either party, are always forbidden and illegal. Inmates who have been sexual assaulted by another inmate or staff member will not be prosecuted or disciplined for reporting the assault. However, inmates will be penalized for knowingly filing any false report.

**\*\* Please be aware that both male and female staff routinely work and visit inmate housing areas. \*\***

Contact Offices:

**U.S. Department of Justice**
**Office of the Inspector General**
**Investigations Division**
950 Pennsylvania Avenue, NW Suite 4706
Washington, D.C. 20530-0001

**Federal Bureau of Prisons**
**Central Office**
**National PREA Coordinator**
320 First Street, NW, Room 554
Washington, D.C. 20534

**Federal Bureau of Prisons**
**Mid-Atlantic Regional Office**
**Regional PREA Coordinator**
302 Sentinel Drive, Suite 200
Annapolis Junction, MD  20701

**Federal Bureau of Prisons**
**North Central Regional Office**
**Regional PREA Coordinator**
Gateway Complex Tower II, 8th Floor
400 State Avenue
Kansas City, KS 66101-2492

**Federal Bureau of Prisons**
**Northeast Regional Office**
**Regional PREA Coordinator**
U.S. Customs House, 7th Floor
2nd and Chestnut Streets
Philadelphia, Pennsylvania 19106

**Federal Bureau of Prisons**
**South Central Regional Office**
**Regional PREA Coordinator**
U.S. Armed Forces Reserve Complex
344 Marine Forces Drive
Grand Prairie, Texas 75051

**Federal Bureau of Prisons**
**Southeast Regional Office**
**Regional PREA Coordinator**
3800 North Camp Creek Parkway, SW
Building 2000
Atlanta, GA 30331-5099

**Federal Bureau of Prisons**
**Western Regional Office**
**Regional PREA Coordinator**
7338 Shoreline Drive
Stockton, CA 95219

Third-party reporting (outside of institution):

**http://www.bop.gov/inmate_programs/sa_prevention_reporting.jsp**

**APPENDIX A**

**SMU GOALS**

SMU seeks to impart attitudes and skills necessary for inmates to successfully function in general population at other BOP penitentiaries. These skills include enhanced communication; tolerance of other racial, ethnic or geographic groups; negative peer pressure resistance; gang membership resistance; and problem-solving methods alternative to violence. These skills and abilities will only be acquired and used when participants exhibit attitudes of willingness and open-mindedness.

Participants' success in developing these attitudes and skills will be exhibited by their completion of SMU treatment assignments, participation in SMU treatment groups (when assigned), and absence of institution misconduct.

**SMU Treatment Curriculum**

Level 1: 6-8 Months

1. Write "Criminal History Autobiography.
2. Complete workbooks entitled:
   -Basic Cognitive Skills
   -My Change Plan
   -Values for Responsible Living
   -Anger
   -Living As If


For those dedicated to self-betterment you may be eligible to complete the "Starting Point" series. Speak to you treatment specialist regarding this option.

Level 2-3: 5 Months

1. Attend 45 minute weekly out of cell groups focused on criminal thinking, rational decision making, and emotional regulation.

**APPENDIX B**

**Approved Property List for All SMU Levels**

Levels One, Two, Three, and Complete:

```
One   (1)   MP3 Player, ear buds and USB Charger
One   (1)   Bible, Koran or other religious scriptures, religious rug,
            Kufi
One   (1)   Pair of prescription eyeglasses and one (1) case
One   (1)   Cubic foot of legal materials
Eight (8)   Personal letters
Six   (6)   Photographs
Two   (2)   Books of stamps
One   (1)   Address book
One   (1)   Wedding band
One   (1)   Pair shorts, grey color only (Phase III, Complete)
One   (1)   Pair of sweatpants, grey color only (Phase III, Complete)
One   (1)   Sweatshirt, grey color only (Phase III, Complete)
One   (1)   Pair of thermal pants (Phase III, Complete)
One   (1)   Thermal shirt (Phase III, Complete)
One   (1)   Pair of tennis shoes/sneakers (submit written request to
            Correctional Services' Property Officer.)
            (Phase III, Complete)
```

- Soap and shampoo will be provided by staff during scheduled showers.
- All other items authorized on the commissary shopping list.

Level Two/Three Housing Units Only:

```
One   (1)   Pair of tennis shoes/sneakers
```

Submit written request to Correctional Services Property Officer

# DECLARATION OF JACOB DOERER

## ATTACHMENT 5

## Landis Intake Acknowledgment Form

```
NAME.......: LANDIS, CARLTON THEODORE      UNIT.....:        E
REGISTER NO: 24449-056                     DOB (AGE):
RACE / SEX.: BLACK / MALE                  ETHNIC...: OTHER THAN HISP
RESIDENCE..:                               RSP OF...: TOM A-BOP HLD
```

****************** I N M A T E   I N T E R V I E W ******************

DATE / TIME ARRIVED: 7/30/19  7⁴¹ₚ        TIME INTERVIEWED: 7/31/2019 3·

1) DO YOU KNOW OF ANY REASON THAT YOU SHOULD NOT BE
   PLACED IN GENERAL POPULATION ?                    YES ✓  NO ___  — cooperated + tells other inmates

2) HAVE YOU ASSISTED LAW ENFORCEMENT AGENTS IN ANY WAY ?   YES ✓  NO ___

3) ARE YOU A CIM CASE ?                              YES ✓  NO ___

4) HAVE YOU TESTIFIED AGAINST ANYONE IN COURT ?      YES ✓  NO ___

5) ARE YOU A MEMBER/ASSOCIATE OF ANY GANG ?          YES ___  NO ✓

6A) HAVE YOU EVER BEEN SEXUALLY ASSAULTED ?          YES ✓  NO ___

6B) HAVE YOU RECENTLY BEEN SEXUALLY ASSAULTED ?      YES ✓  NO ___

INTERVIEWER COMMENTS: 2) Cooperated, testified + Assisted FBI
Stated he reported staff misconduct @ ALP in 11/2018 + @ LEW in
3/2019   Referred to Psychology + CAPTAIN PREA

CIRCLE ONE:
I (HAVE) / HAVE NOT RECEIVED A BUREAU OF PRISONS "ADMISSIONS AND
ORIENTATION BOOKLET" DEFINING MY "RIGHTS AND RESPONSIBILITIES" AND THE
PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE".

DO YOU WISH TO SELF-IDENTIFY YOUR SEXUAL
ORIENTATION, GENDER IDENTITY, ANY DISABILITIES,
AND/OR SELF-PERCEPTION OF VULNERABILITY ?      YES ___  NO ✓  N/A ___

INMATE COMMENT: N/A

INMATE SIGNATURE: X _____        DATE: 7/31/19

INTERVIEWER: _____  TITLE: CSW        DATE: 7/31/19

****************** S T A F F   C H E C K L I S T ******************

PSI REVIEWED ?                                      YES ✓  NO ___    I-TRAN SEG
CENTRAL FILE REVIEWED ?                             YES ✓  NO ___
IS THERE A HISTORY OF SEXUALLY AGGRESSIVE BEHAVIOR ? YES ___  NO ✓
COMMENTS: _____

MULTIBLE 295s

IF GENERAL PHYSICAL APPEARANCE IS NOT GOOD, EXPLAIN: Appears OK.

PSYCH ALERT (YES/NO)......: (NO)        (IF YES, DO NOT RELEASE TO GENERAL
                                        POPULATION, NOTIFY PSYCHOLOGY)
OK FOR GENERAL POPULATION: YES ___  NO ✓  (IF NO, EXPLAIN)_____

                    TRAN SEG

# DECLARATION OF JACOB DOERER

## ATTACHMENT 6

## Landis MP3 Acknowledgment Form

# AUSP THOMSON SMU

# INMATE MP3 PLAYER, EAR BUDS, AND USB CHARGER NOTICE

You are being issued a San Disk Clip Jam MP3 Player with ear buds and access to a USB charger valued at $37.70. This radio is issued to you based on your need to receive certain in-cell educational/vocational/leisure content through this radio.

You will be responsible for this MP3 player, ear buds and charger, and you must return them upon completion of the SMU program, or at the request of the unit team.

Failure to return these items in working condition will result in you receiving an incident report and, if found guilty, being charged for the cost of the MP3 player, ear buds and/or charger. Your Commissary privileges will be suspended until the cost is paid.

Inmate Name and Register No: Inmate Name # _Carlton Landis #24449-056_

Inmate Signature: _Carlton Landis_          Date: _8/2/19_

Staff Witness Signature/Title: _____ /CSW_

# DECLARATION OF JACOB DOERER
# ATTACHMENT 7
# PROGRAM STATEMENT 1330.18
# ADMINISTRATIVE REMEDY PROGRAM



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:            OGC/LIT
NUMBER:    1330.18
DATE:         January 6, 2014

# Administrative Remedy Program

*/s/*
*Approved*:  Charles E. Samuels, Jr.
Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE  §542.10**

**a.  Purpose.  The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.**

Inmates seeking a formal review of issues relating to sexual abuse should use the regulations promulgated by the Department of Justice under the Prison Rape Elimination Act, 42 U.S.C. § 15606, et seq.  These procedures are provided in Section 16 of this Program Statement.

**b.  Scope.  This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.**

The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

**c.  Statutorily-mandated Procedures.  There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.**

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

■ A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.
■ Each request, including appeals, will be responded to within the time frames allowed.
■ A record of Inmate Administrative Remedy Requests and Appeals will be maintained.
■ Bureau policies will be more correctly interpreted and applied by staff.

3. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

P1330.17    Administrative Remedy Program (8/20/2012)

b. **Directives Referenced**

P1320.06    Federal Tort Claims Act (8/1/03)
P4500.08    Trust Fund/Deposit Fund Manual (5/4/12)
P5212.07    Control Unit Programs (2/20/01)
P5214.04    HIV Positive Inmates Who Pose Danger to Other, Procedures for Handling of (2/4/98)
P5264.08    Inmate Telephone Regulations (1/24/08)
P5270.09    Inmate Discipline Program (7/8/11)
P5324.11    Sexually Abusive Behavior Prevention and Intervention Program (12/31/13)
P5890.13    SENTRY - National On-Line Automated Information System (12/14/99)

28 CFR 301 Inmate Accident Compensation
28 CFR 16.10 Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c. Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19; and 28 CFR Part 115 – Prison Rape Elimination Act National Standards

4. **STANDARDS REFERENCED**

■ American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4236 and 3-4271
■ American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-22, and 3-ALDF-3E-11 5.

5. **RESPONSIBILITY §542.11**

a. **The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

(1)  **Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;**

See Section 13 for further information on remedy processing, including use of SENTRY.

**(2)  Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;**

The receipt is generated via SENTRY.

**(3)  Conduct an investigation into each Request or Appeal;**

**(4)  Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

(5)  The Warden shall appoint one staff member, ordinarily above the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk).  The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk.  The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6)  The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e,g., Clerk, unit staff) have the knowledge needed to operate the procedure.  The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries; e.g., abstracts, subject codes, status codes, and dates.  The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of Administrative Remedies appealed to higher levels.

(7)  The Administrative Remedy Clerk shall be responsible for all clerical processing of Administrative Remedies, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

(8)  The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from

SENTRY promptly after delivery to the inmate.  CCMs are responsible for this function for inmates under their supervision.

**b.  Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.**

6.  **RESERVED**

7.  **INFORMAL RESOLUTION §542.13**

**a.  Informal Resolution.  Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy.  Each warden shall establish procedures to allow for the informal resolution of inmate complaints.**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff.  These procedures may not operate to limit inmate access to formal filing of a Request.

**b.  Exceptions.  Inmates in CCCs are not required to attempt informal resolution. An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part.  An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement **Inmate Discipline Program**.

8.  **INITIAL FILING §542.14**

**a.  Submission.  The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**

In accord with the settlement in *Washington* v. *Reno*, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9) (BP-229), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy

Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

**b.  Extension.  Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.**

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required.  If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request.  Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

**c.  Form**

**(1)  The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).**

The following forms are appropriate:

- Request for Administrative Remedy, Form BP-9 (BP-229), is appropriate for filing at the institution.
- Regional Administrative Remedy Appeal, Form BP-10 (BP-230), is appropriate for submitting an appeal to the regional office.
- Central Office Administrative Remedy Appeal, Form BP-11 (BP-231), is appropriate for submitting an appeal to the Central Office.

**(2)  The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.  For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

**(3)  The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page.**

**The inmate must provide an additional copy of any continuation page.  The inmate must submit one copy of supporting exhibits.  Exhibits will not be returned with the response.  Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4)  The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor).  CCC inmates may mail their Requests to the CCM.**

**d.  Exceptions to Initial Filing at Institution**

**(1)  Sensitive Issues.  If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden shall allow a reasonable extension of time for such a resubmission.**

**(2)  DHO Appeals.  DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.**

See the Program Statement **Inmate Discipline Program**.

**(3)  Control Unit Appeals.  Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.**

See the Program Statement **Control Unit Programs**.

**(4)  Controlled Housing Status Appeals.  Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.**

See the Program Statement **Procedures for Handling HIV Positive Inmates Who Pose Danger to Other.**

**9.  APPEALS  § 542.15**

**a.  Submission.  An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional**

**Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in §542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.**

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office. The deadlines have been made deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt. Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

**b. Form**

**(1) Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal.**

**(2) An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

**(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page. The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal). The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).**

c. **Processing**. The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10.  **ASSISTANCE §542.16**

**a.  An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal.  An inmate may also obtain assistance from outside sources, such as family members or attorneys.  However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff**.

**b.  Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English.  Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.**

For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem.

11.  **RESUBMISSION §542.17**

**a.  Rejections.  The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b.  Notice.  When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.**

(1)  **Sensitive Submissions**.  Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate.  Only a rejection notice will be provided to the inmate.  However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2)  **Defects**.  Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects.

Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3)  **Criteria for Rejection**.  When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise.  Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or

problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely.

**c.  Appeal of Rejections.  When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level.  The Coordinator at that level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing.  The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.**

12.  **RESPONSE TIME §542.18**

**If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days.  If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing.  If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level.  Staff shall inform the inmate of this extension in writing.  Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.**

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the "Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office.  Notice of extension ordinarily is made via SENTRY notice.

13.  **REMEDY PROCESSING**

a.  **Receipt**.  Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form.  Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number.  The "Case Number" is the purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

All submissions received by the Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

Sensitive issues, when the inmate claims that his or her safety or well-being would be placed in danger if it became known at the institution that the inmate was pursuing the issue, should be

withheld from logging in until answered and/or should be logged into SENTRY with sufficient vagueness as to subject code and abstract to accommodate the inmate's concerns.

A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member. If the event(s) occurred at a previous institution, staff at that previous institution shall provide, promptly upon request, any investigation or other assistance needed by the institution answering the Request. If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request.

b. **Investigation and Response Preparation**. The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation. Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision. Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals. Where appropriate; e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings. Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided. Such documents and notes shall be retained with the case file copy. When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal. Requested staff shall provide such statements promptly. For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c. **Responses**. Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision. The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn. This abstract should be complete, but as brief as possible. The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information. The response should be written to be released to any inmate and the general public under the Freedom of Information Act (FOIA) and the Privacy Act. Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d. **Response Time Limits**. Responses shall be made as required in Section 12 of this Program Statement.

e. **Index Completion**. When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in

Attachment A. Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter. The abstract shall be taken from the response's first paragraph. Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted. For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract, before the closing entry is made by the Clerk.

f. **Response Distribution**. For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material. Three copies shall be returned to the inmate. An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office. One copy shall be sent to the Warden at the original filing location. The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate. One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the regional office where the Regional Appeal was answered, and one to the Warden's Administrative Remedy File at the original filing location.

g. **File Maintenance**. The Warden's Administrative Remedy File and Administrative Remedy Files at the Regional Offices and Central Office shall be maintained in a manner that assures case files are readily accessible to respond to inquiries from Federal Bureau of Prisons staff, inmates, and the public. Institutions shall file Regional and Central Office response copies with the inmate's institution submission copy. Regional offices shall file copies of Central Office responses with the inmate's Regional Appeal file. Each location shall maintain copies of supporting material and investigation notes with the case file.

When a Regional or Central Office Appeal was not preceded by a lower level filing, the institution and regional copies shall be filed at the institution and region having responsibility for the inmate at the time of response.

To provide information and feedback, Wardens and Regional Directors are encouraged to route response file copies from subsequent appeal levels to the Coordinator and the appropriate department head or person who investigated and drafted the response at their respective levels.

14. **ACCESS TO INDEXES AND RESPONSES §542.19**

**Inmates and members of the public may request access to Administrative Remedy indexes and responses, for which inmate names and Register Numbers have been removed, as indicated below. Each institution shall make available its index, and the indexes of its regional office and the Central Office. Each regional office shall make available its index, the indexes of all institutions in its region, and the index of the Central Office. The Central Office shall make available its index and the indexes of all institutions and regional offices. Responses may be requested from the location where they are maintained and must be identified by**

**Remedy ID number as indicated on an index. Copies of indexes or responses may be inspected during regular office hours at the locations indicated above, or may be purchased in accordance with the regular fees established for copies furnished under the Freedom of Information Act (FOIA).**

At present, fees are detailed in 28 CFR § 16.10, which specifies a charge of $.10 per page duplicated and no charge for the first 100 pages. Staff shall forward funds received for purchase of index and response copies to the FOIA/Privacy Act Section, Office of General Counsel, Central Office.

Any location may produce its index or that of another location by making the appropriate entries on a SENTRY retrieval transaction, and specifying the "SAN" (sanitized) output format.

## 15. RECORDS MAINTENANCE AND DISPOSAL

a. **Disposal Authority**. The authority for Administrative Remedy records disposal is the "job number" NC1-129-83-07 provided by the National Archives.

b. **Administrative Remedy Indexes**. SENTRY Administrative Remedy indexes shall be maintained in computer-accessible form for 20 years, then destroyed. Pre-SENTRY indexes shall be maintained at the site of creation for 20 years, then destroyed.

c. **Administrative Remedy Case Files**. Administrative Remedy Case Files shall be destroyed three full years after the year in which the cases were completed (i.e., response completed). For cases submitted since implementation of the SENTRY module (July 1990), at the end of each calendar year (beginning at end of 1993), run SENTRY index retrieval transactions to identify the lowest case number for cases answered (status = cl* and status date in the appropriate range) during the calendar year ended three years previously. Cases below that number must be destroyed. Thus, cases answered in 1990 would be destroyed at the end of 1993; cases answered in 1991 would be destroyed at the end of 1994, etc.

To identify the lowest case number for cases answered during a given year, it may be necessary to check indexes with "Date Received" in the year in question as well as those with "Date Received" in the previous year.

Cases maintained under the pre-SENTRY numbering and filing system should be destroyed according to the following schedule:

**YEAR OF CASE #          DESTROY AT END OF**

## 16. ADMINISTRATIVE REMEDY PROCEDURES UNDER THE PRISON RAPE ELIMINATION ACT (PREA)

Title 42 U.S.C. §15607 (a) required the Attorney General to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape. Title 42 USC § 15607(b) states that the national standards shall apply immediately to the Federal Bureau of Prisons upon adoption of the final rule. The final rule is published in Title 28 C.F.R. Part 115. This section only addresses administrative remedy procedures in relation to issues of sexual

abuse, and shall not constitute the sole response of the agency to allegations of sexual abuse. Appropriate steps to address the safety and security of inmates shall be made in accordance with the other provisions of the PREA regulations, and the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**.

## §115.52  Exhaustion of administrative remedies.

**(a)  An agency shall be exempt from this standard if it does not have administrative procedures to address inmate grievances regarding sexual abuse.**

The Federal Bureau of Prisons has an administrative remedy system, and therefore section 115.52 (a) does not apply.  The following sections, 115.52 (b) through 115.52 (g), apply to inmates seeking a formal review of issues relating to sexual abuse.  For any issue not specified in sections 115.52 (b) through 115.52 (g) below, the administrative remedy system outlined in Sections 1 through 15 of this Program Statement applies.

**(b)(1)  The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse.**

"Sexual abuse" is defined for the purposes of this section in 28 C.F.R. § 115.6, as referenced in the Bureau's policy on Sexually Abusive Behavior Prevention and Intervention Program.

Administrative remedies regarding allegations of sexual abuse may be filed at any time.  For all other issues, the 20 calendar day period specified in Section 8 of this Program Statement shall be followed.  Accordingly, administrative remedies regarding an allegation of sexual abuse shall not be rejected as untimely under Section 11 of this Program Statement, above.

Once filed, the inmate should follow the time requirements for appeal, as stated in Section 9 of this Program Statement, above.

**(2)  The agency may apply otherwise-applicable time limits on any portion of a grievance that does not allege an incident of sexual abuse.**

If the inmate includes on a single form multiple unrelated issues, the portion of the administrative remedy regarding allegations of sexual abuse should be accepted and processed. The inmate shall be advised to use a separate form for each unrelated issue.

**(3)  The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse.**

Inmates are not required to attempt informal resolution under Section 7 of this Program Statement, above, regarding allegations of sexual abuse.

**(4)  Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.**

**(c)  The agency shall ensure that**

**(1)  an inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint, and**

**(2)  such grievance is not referred to a staff member who is the subject of the complaint.**

Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision.  Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals.  Where appropriate, e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

**(d)(1)  The agency shall issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance.**

**(2)  Computation of the 90-day time period shall not include time consumed by inmates during the course of an administrative appeal.**

**(3)  The agency may claim an extension of time to respond, of up to 70 days, if the normal time period for response is insufficient to make an appropriate decision. The agency shall notify the inmate in writing of any such extension and provide a date by which a decision will be made.**

**(4)  At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly-noticed extension, the inmate may consider the absence of a response to be a denial at that level.**

Time frames in this section are consistent with Section 12 of this Program Statement, above.

**(e)(1)  Third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, shall be permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse, and shall also be permitted to file such requests on behalf of inmates.**

**(2)  If a third party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.**

**(3)  If the inmate declines to have the request processed on his or her behalf, the agency shall document the inmate's decision.**

This section is applicable only to allegations of sexual abuse; inmates must personally file administrative remedies relating to other issues.

The inmate's approval of the remedy filed on his or her behalf shall be documented, and include the inmate's signature. An inmate's decision to decline to have the remedy processed on his or her behalf should also be documented, and include the inmate's signature. The documentation should be retained in the agency Administrative Remedy File at the appropriate level and on Sentry in accordance with Section 13 of this Program Statement.

Responses to third party remedies should be provided to the inmate who is the subject of the remedy.

An inmate is required to personally file any subsequent appeal. However, the inmate may receive assistance in preparing the appeal in accordance with Section 10 of this Program Statement, above.

**(f)(1) The agency shall establish procedures for the filing of an emergency grievance where an inmate is subject to a substantial risk of imminent sexual abuse.**

This section applies when an administrative remedy alleges a substantial risk of imminent sexual abuse. If a remedy meets both of these criteria, the remedy will receive expedited processing, as described below.

Section 12 of this Program Statement provides for an "emergency" administrative remedy as required by section 115.52(f). An expedited BP-9 (BP-229) response shall be provided if a remedy is determined to be of an emergency nature which threatens the inmate's immediate health or welfare. *See* 28 C.F.R. § 542.18.

The inmate shall clearly mark "Emergency" on the BP-9 (BP-229), and explain, in writing, the reason for filing as an emergency administrative remedy under this section.

If an inmate files an emergency administrative remedy with the Warden, the local Administrative Remedy Coordinator shall make a determination as to whether the remedy alleges a substantial risk of imminent sexual abuse. If the local Administrative Remedy Coordinator agrees that the administrative remedy meets the criteria for an emergency administrative remedy, the request shall be accepted, and receive expedited processing as stated below.

If the remedy is rejected for failing to meet the criteria of an emergency grievance under this section, a rejection notice will be provided to the inmate, and the remedy will be processed in accordance with the usual time frames indicated above.

**(2) After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, the agency shall immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and shall issue a final agency decision within five calendar days. The initial response and final agency decision shall document the agency's determination whether the inmate is in**

**substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance.**

If an inmate files the emergency grievance with the institution under Section 12 of this Program Statement, above, alleging a substantial risk of imminent sexual abuse, an expedited BP-9 (BP-229) response shall be provided within 48 hours. Best efforts to provide BP-10 (BP-230) and BP-11 (BP-231) responses within five calendar days should also be made in accordance with the provisions on exhaustion referenced above. If the inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level.

Inmates may also file "sensitive" administrative remedies under Section 8 of this Program Statement, above, regarding allegations of sexual abuse. If an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the remedy became known at the institution, the inmate may submit the remedy directly to the appropriate Regional Director. *See* 28 C.F.R. § 542.14 (d) (1). "Sensitive" grievances should be processed in accordance with Section 8 and Section 11 of this Program Statement, and the expedited response times specified in this section do not apply.

**(g) The agency may discipline an inmate for filing a grievance related to alleged sexual abuse only where the agency demonstrates that the inmate filed the grievance in bad faith.**

The maintenance of an effective sexual abuse prevention policy, and general secure and orderly running of an institution, requires that inmates be held responsible for manipulative behavior and false allegations. Allegations of false reports will be considered by staff in accordance with the procedures and standards of the Inmate Discipline Program policy.

## 17. INSTITUTION SUPPLEMENT

Each Warden shall forward a copy of any Institution Supplement developed to implement this Program Statement to the Regional Administrative Remedy Coordinator and to the National Inmate Appeals Administrator in the Central Office.

*Records Retention Requirements*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CARLTON THEODORE LANDIS (24449-056), | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 20 C 50168 ) |
| WARDEN RIVERS, ASSOCIATE WARDEN DOERER, and CAPTAIN KIRBY, | ) Judge Pallmeyer ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS LOCAL RULE 56.1 STATEMENT OF FACTS**

**EXHIBIT B**
**DECLARATION OF BREE REICKS**

Respectfully submitted,

JOHN R.LAUSCH, Jr.
United States Attorney

By: s/ Monica V. Mallory
    MONICA V. MALLORY
    Assistant United States Attorney
    327 South Church Street
    Rockford, Illinois 61101
    (815) 987-4444
    monica.mallory@usdoj.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

CARLTON THEODORE LANDIS,           )
                                   )
              Plaintiff,           )
                                   )     Case No. 20 CV 50168
       v.                          )
                                   )     Judge Rebecca R. Pallmeyer
CHRISTOPHER RIVERS, Warden, USP    )
Thomson, et al.,                   )
                                   )
              Defendants.          )

## DECLARATION OF BREE REICKS

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, the undersigned, Bree Reicks, hereby make the following declaration, under penalty of perjury pursuant to the provisions of 28 U.S.C. § 1746:

1. I have been employed by the United States Department of Justice, Federal Bureau of Prisons (BOP), since April of 2016. I am currently the Warden's Secretary at the United States Penitentiary in Thomson, Illinois (USP Thomson). I have held this position since March of 2018. As part of my duties, I am the Administrative Remedy Clerk for USP Thomson. I have access to SENTRY, the BOP's computer system that tracks and stores information and records, including inmate administrative remedy filings and housing assignments.

2. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. All documents attached hereto are true and correct copies of files and records maintained by the BOP.

3. I am familiar with the BOP's Administrative Remedy Program, including the BOP's Program Statement 1330.18, Administrative Remedy Program. The BOP's Administrative Remedy Program is an internal formal three-step grievance procedure by which inmates may complain about various aspects of their confinement. Prior to beginning the formal appeal process, however, inmates must first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a formal request. The informal attempt is referred to as a BP-8, and USP Thomson staff use a paper form to accept and respond to BP-8s. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the Warden within twenty (20) calendar days after the date upon which the basis for the request occurred. 28 C.F.R. § 542.14. This is known as a Request for Administrative Remedy, or BP-9. _Id._ This is the initial step of the formal Administrative Remedy process. The inmate can appeal

the Warden's response by submitting an appeal on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. The inmate can appeal the Regional Director's response by submitting an appeal on the appropriate form (BP-11) to Central Office within thirty (30) calendar days of the date the Regional Director signed the response. Appeal to Central Office is the final step in the administrative appeal process. If during this process, the inmate does not receive a response to his submission, the inmate may consider such submission as denied and proceed to the next level. *See* Attachment 1, Program Statement 1330.18, <u>Administrative Remedy Program</u>.

4. If during the administrative remedy process, the inmate does not receive a response from the Warden, Regional Director, or Central Office within the allotted time frames including extensions, the inmate may consider such response or appeal as denied and appeal to the next level. 28 C.F.R. §542.14(b) & 542.18.

5. When an inmate files a formal request or appeal as part of the administrative remedy process, a BOP employee, typically the local administrative remedy clerk, will stamp the form with the date it was received, log the form into SENTRY, and write a "Remedy ID" number, as assigned by SENTRY, on the form. All submissions received, whether they are ultimately accepted or rejected, are entered into SENTRY. *See* Attachment 1, P.S. 1330.18, ¶ 13(a).

6. I understand that inmate Carlton Theodore Landis, Register Number 24449-056, has filed an amended complaint with the court, alleging that due to his "verified informant" status he should be placed in protective custody and that his request for protective custody was denied. I futher understand that Landis alleges that he was assaulted by his cellmate, Jerry Ballard, and that he was subject to threats and harassment by other inmates. As the Administrative Remedy Clerk for USP Thomson, I process all the BP-9 Requests for Administrative Remedy and utilize SENTRY. I reviewed SENTRY for the administrative remedy filings of inmate Carlton Landis. As of June 15, 2020, Landis has not submitted a request for administrative remedy or an appeal to either regional or central office related to his request for protective custody, any assault related to his cellmate, or any other matter related to his amended complaint while at USP Thomson. *See* Attachment 2, Administrative Remedy Generalized Retrieval, dated June 15, 2020. Accordingly, he failed to exhaust BOP's administrative remedy procedure.

///

///

7. The administrative remedy process was and continues to be available to inmate Landis. Landis has been able to submit 190 administrative remedy requests or appeal. *See* Attachment 2.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct.

Executed this 24 day of July, 2020.

Bree Reicks
Warden's Secretary
Federal Bureau of Prisons
USP Thomson

# DECLARATION OF BREE REICKS
## ATTACHMENT 1
## PROGRAM STATEMENT 1330.18
## ADMINISTRATIVE REMEDY PROGRAM



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:            OGC/LIT
NUMBER:    1330.18
DATE:         January 6, 2014

# Administrative Remedy Program

*/s/*
*Approved*:  Charles E. Samuels, Jr.
Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE  §542.10**

**a.  Purpose.  The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.**

Inmates seeking a formal review of issues relating to sexual abuse should use the regulations promulgated by the Department of Justice under the Prison Rape Elimination Act, 42 U.S.C. § 15606, et seq.  These procedures are provided in Section 16 of this Program Statement.

**b.  Scope.  This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.**

The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

**c.  Statutorily-mandated Procedures.  There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.**

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

■ A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.
■ Each request, including appeals, will be responded to within the time frames allowed.
■ A record of Inmate Administrative Remedy Requests and Appeals will be maintained.
■ Bureau policies will be more correctly interpreted and applied by staff.

3. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

P1330.17     Administrative Remedy Program (8/20/2012)

b. **Directives Referenced**

P1320.06     Federal Tort Claims Act (8/1/03)
P4500.08     Trust Fund/Deposit Fund Manual (5/4/12)
P5212.07     Control Unit Programs (2/20/01)
P5214.04     HIV Positive Inmates Who Pose Danger to Other, Procedures for Handling of (2/4/98)
P5264.08     Inmate Telephone Regulations (1/24/08)
P5270.09     Inmate Discipline Program (7/8/11)
P5324.11     Sexually Abusive Behavior Prevention and Intervention Program (12/31/13)
P5890.13     SENTRY - National On-Line Automated Information System (12/14/99)

28 CFR 301 Inmate Accident Compensation
28 CFR 16.10 Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c. Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19; and 28 CFR Part 115 – Prison Rape Elimination Act National Standards

4. **STANDARDS REFERENCED**

■ American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4236 and 3-4271
■ American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-22, and 3-ALDF-3E-11 5.

5. **RESPONSIBILITY §542.11**

a. **The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

(1)  **Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;**

See Section 13 for further information on remedy processing, including use of SENTRY.

**(2)  Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;**

The receipt is generated via SENTRY.

**(3)  Conduct an investigation into each Request or Appeal;**

**(4)  Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

(5)  The Warden shall appoint one staff member, ordinarily above the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk).  The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk.  The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6)  The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e,g., Clerk, unit staff) have the knowledge needed to operate the procedure.  The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries; e.g., abstracts, subject codes, status codes, and dates.  The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of Administrative Remedies appealed to higher levels.

(7)  The Administrative Remedy Clerk shall be responsible for all clerical processing of Administrative Remedies, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

(8)  The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from

SENTRY promptly after delivery to the inmate. CCMs are responsible for this function for inmates under their supervision.

**b. Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.**

6. **RESERVED**

7. **INFORMAL RESOLUTION §542.13**

**a. Informal Resolution. Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. Each warden shall establish procedures to allow for the informal resolution of inmate complaints.**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff. These procedures may not operate to limit inmate access to formal filing of a Request.

**b. Exceptions. Inmates in CCCs are not required to attempt informal resolution. An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part. An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement **Inmate Discipline Program**.

8. **INITIAL FILING §542.14**

**a. Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**

In accord with the settlement in *Washington* v. *Reno*, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9) (BP-229), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy

Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

**b.  Extension.  Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.**

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required.  If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request.  Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

**c.  Form**

**(1)  The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).**

The following forms are appropriate:

■ Request for Administrative Remedy, Form BP-9 (BP-229), is appropriate for filing at the institution.
■ Regional Administrative Remedy Appeal, Form BP-10 (BP-230), is appropriate for submitting an appeal to the regional office.
■ Central Office Administrative Remedy Appeal, Form BP-11 (BP-231), is appropriate for submitting an appeal to the Central Office.

**(2)  The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.  For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

**(3)  The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page.**

**The inmate must provide an additional copy of any continuation page.  The inmate must submit one copy of supporting exhibits.  Exhibits will not be returned with the response.  Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.**

**(4)  The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor).  CCC inmates may mail their Requests to the CCM.**

**d.  Exceptions to Initial Filing at Institution**

**(1)  Sensitive Issues.  If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.**

**(2)  DHO Appeals.  DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.**

See the Program Statement **Inmate Discipline Program**.

**(3)  Control Unit Appeals.  Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.**

See the Program Statement **Control Unit Programs**.

**(4)  Controlled Housing Status Appeals.  Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.**

See the Program Statement **Procedures for Handling HIV Positive Inmates Who Pose Danger to Other.**

**9.  APPEALS  § 542.15**

**a.  Submission.  An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional**

**Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in §542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.**

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office. The deadlines have been made deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt. Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

**b. Form**

**(1) Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal.**

**(2) An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

**(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page. The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal). The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).**

c. **Processing**. The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

10. **ASSISTANCE §542.16**

**a. An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal. An inmate may also obtain assistance from outside sources, such as family members or attorneys. However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff**.

**b. Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English. Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.**

For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem.

11. **RESUBMISSION §542.17**

**a. Rejections. The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b. Notice. When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.**

(1) **Sensitive Submissions**. Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate. Only a rejection notice will be provided to the inmate. However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2) **Defects**. Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects.

Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3) **Criteria for Rejection**. When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise. Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or

problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely.

**c. Appeal of Rejections. When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level. The Coordinator at that level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing. The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.**

12. **RESPONSE TIME §542.18**

**If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.**

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the "Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office. Notice of extension ordinarily is made via SENTRY notice.

13. **REMEDY PROCESSING**

a. **Receipt**. Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form. Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number. The "Case Number" is the purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

All submissions received by the Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

Sensitive issues, when the inmate claims that his or her safety or well-being would be placed in danger if it became known at the institution that the inmate was pursuing the issue, should be

withheld from logging in until answered and/or should be logged into SENTRY with sufficient vagueness as to subject code and abstract to accommodate the inmate's concerns.

A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member. If the event(s) occurred at a previous institution, staff at that previous institution shall provide, promptly upon request, any investigation or other assistance needed by the institution answering the Request. If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request.

b. **Investigation and Response Preparation**. The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation. Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision. Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals. Where appropriate; e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings. Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided. Such documents and notes shall be retained with the case file copy. When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal. Requested staff shall provide such statements promptly. For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c. **Responses**. Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision. The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn. This abstract should be complete, but as brief as possible. The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information. The response should be written to be released to any inmate and the general public under the Freedom of Information Act (FOIA) and the Privacy Act. Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d. **Response Time Limits**. Responses shall be made as required in Section 12 of this Program Statement.

e. **Index Completion**. When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in

Attachment A.  Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter.  The abstract shall be taken from the response's first paragraph.  Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted.  For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract, before the closing entry is made by the Clerk.

f.  **Response Distribution**.  For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material.  Three copies shall be returned to the inmate.  An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office.  One copy shall be sent to the Warden at the original filing location.  The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate.  One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the regional office where the Regional Appeal was answered, and one to the Warden's Administrative Remedy File at the original filing location.

g.  **File Maintenance**.  The Warden's Administrative Remedy File and Administrative Remedy Files at the Regional Offices and Central Office shall be maintained in a manner that assures case files are readily accessible to respond to inquiries from Federal Bureau of Prisons staff, inmates, and the public.  Institutions shall file Regional and Central Office response copies with the inmate's institution submission copy.  Regional offices shall file copies of Central Office responses with the inmate's Regional Appeal file.  Each location shall maintain copies of supporting material and investigation notes with the case file.

When a Regional or Central Office Appeal was not preceded by a lower level filing, the institution and regional copies shall be filed at the institution and region having responsibility for the inmate at the time of response.

To provide information and feedback, Wardens and Regional Directors are encouraged to route response file copies from subsequent appeal levels to the Coordinator and the appropriate department head or person who investigated and drafted the response at their respective levels.

14.  **ACCESS TO INDEXES AND RESPONSES §542.19**

**Inmates and members of the public may request access to Administrative Remedy indexes and responses, for which inmate names and Register Numbers have been removed, as indicated below.  Each institution shall make available its index, and the indexes of its regional office and the Central Office.  Each regional office shall make available its index, the indexes of all institutions in its region, and the index of the Central Office.  The Central Office shall make available its index and the indexes of all institutions and regional offices.  Responses may be requested from the location where they are maintained and must be identified by**

**Remedy ID number as indicated on an index. Copies of indexes or responses may be inspected during regular office hours at the locations indicated above, or may be purchased in accordance with the regular fees established for copies furnished under the Freedom of Information Act (FOIA).**

At present, fees are detailed in 28 CFR § 16.10, which specifies a charge of $.10 per page duplicated and no charge for the first 100 pages. Staff shall forward funds received for purchase of index and response copies to the FOIA/Privacy Act Section, Office of General Counsel, Central Office.

Any location may produce its index or that of another location by making the appropriate entries on a SENTRY retrieval transaction, and specifying the "SAN" (sanitized) output format.

## 15. RECORDS MAINTENANCE AND DISPOSAL

a. **Disposal Authority**. The authority for Administrative Remedy records disposal is the "job number" NC1-129-83-07 provided by the National Archives.

b. **Administrative Remedy Indexes**. SENTRY Administrative Remedy indexes shall be maintained in computer-accessible form for 20 years, then destroyed. Pre-SENTRY indexes shall be maintained at the site of creation for 20 years, then destroyed.

c. **Administrative Remedy Case Files**. Administrative Remedy Case Files shall be destroyed three full years after the year in which the cases were completed (i.e., response completed). For cases submitted since implementation of the SENTRY module (July 1990), at the end of each calendar year (beginning at end of 1993), run SENTRY index retrieval transactions to identify the lowest case number for cases answered (status = cl* and status date in the appropriate range) during the calendar year ended three years previously. Cases below that number must be destroyed. Thus, cases answered in 1990 would be destroyed at the end of 1993; cases answered in 1991 would be destroyed at the end of 1994, etc.

To identify the lowest case number for cases answered during a given year, it may be necessary to check indexes with "Date Received" in the year in question as well as those with "Date Received" in the previous year.

Cases maintained under the pre-SENTRY numbering and filing system should be destroyed according to the following schedule:

**YEAR OF CASE #**          **DESTROY AT END OF**

## 16. ADMINISTRATIVE REMEDY PROCEDURES UNDER THE PRISON RAPE ELIMINATION ACT (PREA)

Title 42 U.S.C. §15607 (a) required the Attorney General to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape. Title 42 USC § 15607(b) states that the national standards shall apply immediately to the Federal Bureau of Prisons upon adoption of the final rule. The final rule is published in Title 28 C.F.R. Part 115. This section only addresses administrative remedy procedures in relation to issues of sexual

abuse, and shall not constitute the sole response of the agency to allegations of sexual abuse. Appropriate steps to address the safety and security of inmates shall be made in accordance with the other provisions of the PREA regulations, and the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**.

## §115.52  Exhaustion of administrative remedies.

### (a)  An agency shall be exempt from this standard if it does not have administrative procedures to address inmate grievances regarding sexual abuse.

The Federal Bureau of Prisons has an administrative remedy system, and therefore section 115.52 (a) does not apply.  The following sections, 115.52 (b) through 115.52 (g), apply to inmates seeking a formal review of issues relating to sexual abuse.  For any issue not specified in sections 115.52 (b) through 115.52 (g) below, the administrative remedy system outlined in Sections 1 through 15 of this Program Statement applies.

### (b)(1)  The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse.

"Sexual abuse" is defined for the purposes of this section in 28 C.F.R. § 115.6, as referenced in the Bureau's policy on Sexually Abusive Behavior Prevention and Intervention Program.

Administrative remedies regarding allegations of sexual abuse may be filed at any time.  For all other issues, the 20 calendar day period specified in Section 8 of this Program Statement shall be followed.  Accordingly, administrative remedies regarding an allegation of sexual abuse shall not be rejected as untimely under Section 11 of this Program Statement, above.

Once filed, the inmate should follow the time requirements for appeal, as stated in Section 9 of this Program Statement, above.

### (2)  The agency may apply otherwise-applicable time limits on any portion of a grievance that does not allege an incident of sexual abuse.

If the inmate includes on a single form multiple unrelated issues, the portion of the administrative remedy regarding allegations of sexual abuse should be accepted and processed. The inmate shall be advised to use a separate form for each unrelated issue.

### (3)  The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse.

Inmates are not required to attempt informal resolution under Section 7 of this Program Statement, above, regarding allegations of sexual abuse.

### (4)  Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.

**(c)  The agency shall ensure that**

**(1)  an inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint, and**

**(2)  such grievance is not referred to a staff member who is the subject of the complaint.**

Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision.  Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals.  Where appropriate, e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

**(d)(1)  The agency shall issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance.**

**(2)  Computation of the 90-day time period shall not include time consumed by inmates during the course of an administrative appeal.**

**(3)  The agency may claim an extension of time to respond, of up to 70 days, if the normal time period for response is insufficient to make an appropriate decision. The agency shall notify the inmate in writing of any such extension and provide a date by which a decision will be made.**

**(4)  At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly-noticed extension, the inmate may consider the absence of a response to be a denial at that level.**

Time frames in this section are consistent with Section 12 of this Program Statement, above.

**(e)(1)  Third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, shall be permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse, and shall also be permitted to file such requests on behalf of inmates.**

**(2)  If a third party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.**

**(3)  If the inmate declines to have the request processed on his or her behalf, the agency shall document the inmate's decision.**

This section is applicable only to allegations of sexual abuse; inmates must personally file administrative remedies relating to other issues.

The inmate's approval of the remedy filed on his or her behalf shall be documented, and include the inmate's signature. An inmate's decision to decline to have the remedy processed on his or her behalf should also be documented, and include the inmate's signature. The documentation should be retained in the agency Administrative Remedy File at the appropriate level and on Sentry in accordance with Section 13 of this Program Statement.

Responses to third party remedies should be provided to the inmate who is the subject of the remedy.

An inmate is required to personally file any subsequent appeal. However, the inmate may receive assistance in preparing the appeal in accordance with Section 10 of this Program Statement, above.

**(f)(1) The agency shall establish procedures for the filing of an emergency grievance where an inmate is subject to a substantial risk of imminent sexual abuse.**

This section applies when an administrative remedy alleges a substantial risk of imminent sexual abuse. If a remedy meets both of these criteria, the remedy will receive expedited processing, as described below.

Section 12 of this Program Statement provides for an "emergency" administrative remedy as required by section 115.52(f). An expedited BP-9 (BP-229) response shall be provided if a remedy is determined to be of an emergency nature which threatens the inmate's immediate health or welfare. *See* 28 C.F.R. § 542.18.

The inmate shall clearly mark "Emergency" on the BP-9 (BP-229), and explain, in writing, the reason for filing as an emergency administrative remedy under this section.

If an inmate files an emergency administrative remedy with the Warden, the local Administrative Remedy Coordinator shall make a determination as to whether the remedy alleges a substantial risk of imminent sexual abuse. If the local Administrative Remedy Coordinator agrees that the administrative remedy meets the criteria for an emergency administrative remedy, the request shall be accepted, and receive expedited processing as stated below.

If the remedy is rejected for failing to meet the criteria of an emergency grievance under this section, a rejection notice will be provided to the inmate, and the remedy will be processed in accordance with the usual time frames indicated above.

**(2) After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, the agency shall immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and shall issue a final agency decision within five calendar days. The initial response and final agency decision shall document the agency's determination whether the inmate is in**

**substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance.**

If an inmate files the emergency grievance with the institution under Section 12 of this Program Statement, above, alleging a substantial risk of imminent sexual abuse, an expedited BP-9 (BP-229) response shall be provided within 48 hours. Best efforts to provide BP-10 (BP-230) and BP-11 (BP-231) responses within five calendar days should also be made in accordance with the provisions on exhaustion referenced above. If the inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level.

Inmates may also file "sensitive" administrative remedies under Section 8 of this Program Statement, above, regarding allegations of sexual abuse. If an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the remedy became known at the institution, the inmate may submit the remedy directly to the appropriate Regional Director. *See* 28 C.F.R. § 542.14 (d) (1). "Sensitive" grievances should be processed in accordance with Section 8 and Section 11 of this Program Statement, and the expedited response times specified in this section do not apply.

**(g) The agency may discipline an inmate for filing a grievance related to alleged sexual abuse only where the agency demonstrates that the inmate filed the grievance in bad faith.**

The maintenance of an effective sexual abuse prevention policy, and general secure and orderly running of an institution, requires that inmates be held responsible for manipulative behavior and false allegations. Allegations of false reports will be considered by staff in accordance with the procedures and standards of the Inmate Discipline Program policy.

17. **INSTITUTION SUPPLEMENT**

Each Warden shall forward a copy of any Institution Supplement developed to implement this Program Statement to the Regional Administrative Remedy Coordinator and to the National Inmate Appeals Administrator in the Central Office.

*Records Retention Requirements*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

# DECLARATION OF BREE REICKS

## ATTACHMENT 2

## ADMINISTRATIVE REMEDY
## GENERALIZED RETRIEVAL

```
       FUNCTION: L-P SCOPE: REG   EQ 24449-056    OUTPUT FORMAT: UNSAN
 ------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
 DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
 DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
 DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
 STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
 SUBJECTS: _____ _____ _____ ____ ____ _____ _____ _____ _____ _____
 EXTENDED: _ REMEDY LEVEL: _ _           RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
 RCV  OFC : EQ _____      ____      ____      ____      ____      ____
 TRACK:  DEPT: _____ _____ _____ _____ _____ _____
        PERSON: ____      ____      ____      ____      ____      ____
          TYPE: ____      ____      ____      ____      ____      ____
 EVNT FACL: EQ _____      ____      ____      ____      ____      ____
 RCV FACL.: EQ _____      ____      ____      ____      ____      ____
 RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
 RCV QTR..: EQ _____ _____ _____ _____ _____ _____
 ORIG FACL: EQ _____      ____      ____      ____      ____      ____
 ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
 ORIG QTR.: EQ _____ _____ _____ _____ _____ _____
```

```
 G0002      MORE PAGES TO FOLLOW . . .
```

```
REMEDY-ID      REG      NAME                      ORIG UNIT OR LOC/QTRS/FACL
              STATUS-DATE    STATUS     DATE-RCV   RCV-OFC  RCV-FACL EVNT-FACL
              SUBJ1/SUBJ2 --------------------ABSTRACT-------------------------

456141-R1     24449-056  LANDIS, C            B UNIT    B06-618L   ATL
              06-14-2007     REJ    06-06-2007    SER      ATL      ATL
              20DM/     DHO HEARING DATE 05-10-07, CODE 201

534888-F1     24449-056  LANDIS, C            UNIT B-3  B31-132U   BEN
              05-08-2009     CLO    04-17-2009    BEN      BEN      BEN
              24FM/     COMPLAINT CEREMONIAL MEAL PREPARATION

534888-R1     24449-056  LANDIS, C            UNIT B-3  B31-132U   BEN
              07-02-2009     CLO    05-29-2009    SER      BEN      BEN
              24FM/     ALLEGES CEREMONIAL MEAL WAS INADEQUATE

582585-F1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              04-19-2010     CLO    03-26-2010    POM      POM      POM
              34AM/     EDUC STAFF MISCONDUCT- TEACHING METHOD

582585-R1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              06-24-2010     CLD    04-28-2010    SCR      POM      POM
              34AM/     EDUC STAFF MISCONDUCT- TEACHING METHOD

598708-F1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              07-15-2010     REJ    07-15-2010    POM      POM      POM
              13DM/     WANTS CIMS REMOVED

582585-A1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              02-23-2011     CLO    07-19-2010    BOP      POM      POM
              34AM/     EDUC STAFF MISCONDUCT- TEACHING METHOD

602299-F1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              08-19-2010     CLD    08-11-2010    POM      POM      POM
              13CM/     WANTS CIM WITHDRAWN

602299-R1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              10-15-2010     CLD    08-25-2010    SCR      POM      POM
              13CM/     WANTS CIM WITHDRAWN

605498-F1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              09-17-2010     CLD    09-02-2010    POM      POM      POM
              25ZM/     WANTS LINES REMOVED FROM SIDEWALKS

609076-F1     24449-056  LANDIS, C            D UNIT    D04-223U   POM
              09-29-2010     REJ    09-29-2010    POM      POM      POM
              13AM/     PROGRAM REVIEW DOCS NOT CORRECT
```

```
REMEDY-ID      REG     NAME                      ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE    STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
               SUBJ1/SUBJ2 --------------------ABSTRACT-------------------------

605498-R1    24449-056   LANDIS, C              D UNIT    D04-223U   POM
             11-09-2010      CLD     09-30-2010   SCR      POM       POM
             25ZM/       WANTS LINES REMOVED FROM SIDEWALKS

610354-F1    24449-056   LANDIS, C              D UNIT    D04-223U   POM
             10-22-2010      CLO     10-08-2010   POM      POM       POM
             13AM/       INACCURATE INFO DURING PROGRAM REVIEW

610355-F1    24449-056   LANDIS, C              D UNIT    D04-223U   POM
             10-21-2010      CLD     10-08-2010   POM      POM       POM
             25AM/       JUMPSUITS ARE NOT APPROPRIATE ATTIRE

610377-F1    24449-056   LANDIS, C              D UNIT    D04-223U   POM
             10-22-2010      CLD     10-08-2010   POM      POM       POM
             11FM/       WANTS APPROVAL OF INMATE ORGANIZ

620123-F1    24449-056   LANDIS, C              A/O       C07-403U   LVN
             12-28-2010      REJ     12-28-2010   LVN      LVN       LVN
             15ZM/34CM   ALLEGES DISCRIMINATION BY LCP-NO CELL MOVE APPROVED

620124-F1    24449-056   LANDIS, C              A/O       C07-403U   LVN
             12-28-2010      REJ     12-28-2010   LVN      LVN       LVN
             15ZM/34CM   ALLEGES DISCRIMINATION BY LCP-NO MATERIALS FOR NOI

622679-F1    24449-056   LANDIS, C              A/O       C07-403U   LVN
             02-08-2011      CLO     01-17-2011   LVN      LVN       LVN
             15BM/34AM   ALLGS DSCRMNTN BY LCP AGAINST NATION OF ISLAM-CELLS

622680-F1    24449-056   LANDIS, C              A/O       C07-403U   LVN
             02-10-2011      CLD     01-17-2011   LVN      LVN       LVN
             15BM/34AM   ALLGS DSCRMNTN BY LCP AGAINST NATION OF ISLAM-MTRLS

627479-R1    24449-056   LANDIS, C              A/O       C07-403U   LVN
             02-09-2011      REJ     02-09-2011   NCR      LVN       LVN
             13HM/       HOUSING ASSIGNMENT

627481-R1    24449-056   LANDIS, C              A/O       C07-403U   LVN
             02-09-2011      REJ     02-09-2011   NCR      LVN       LVN
             15CM/34CM   DISCRIMINATION

622680-R1    24449-056   LANDIS, C              A/O       C07-403U   LVN
             02-28-2011      REJ     02-28-2011   NCR      LVN       LVN
             15BM/34AM   ALLGS DSCRMNTN BY LCP AGAINST NATION OF ISLAM-MTRLS
```

```
REMEDY-ID      REG     NAME                        ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE    STATUS    DATE-RCV   RCV-OFC  RCV-FACL EVNT-FACL
               SUBJ1/SUBJ2 -------------------ABSTRACT-------------------------

622679-R1    24449-056   LANDIS, C                  A/O        C07-403U  LVN
             04-25-2011       REJ      04-22-2011    NCR       LVN      LVN
             15BM/34AM  ALLGS DSCRMNTN BY LCP AGAINST NATION OF ISLAM-CELLS

622680-R2    24449-056   LANDIS, C                  A/O        C07-403U  LVN
             04-25-2011       REJ      04-22-2011    NCR       LVN      LVN
             15BM/34AM  ALLGS DSCRMNTN BY LCP AGAINST NATION OF ISLAM-MTRLS

645190-F1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             06-26-2011       REJ      06-24-2011    LVN       LVN      LVN
             36GM/34CM  ALLEGES STFF DSCRMNTN & RETLATN ON 3/14/2011

645191-F1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             06-26-2011       REJ      06-24-2011    LVN       LVN      LVN
             36GM/34CM  ALLEGES STFF DSCRMNTN ON 02/22/2011

645195-F1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             06-26-2011       REJ      06-24-2011    LVN       LVN      LVN
             25ZS/      REQ RETURN OF LCP MATERIALS

645322-F1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             07-01-2011       CLD      06-24-2011    LVN       LVN      LVN
             36GS/34BM  ALLEGES XFER THE RESULT OF RETLTN-RE $50,000 COMPNST

645191-R1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             06-30-2011       REJ      06-30-2011    NCR       LVN      LVN
             36GM/34CM  ALLEGES STFF DSCRMNTN ON 02/22/2011

645190-R1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             06-30-2011       REJ      06-30-2011    NCR       LVN      LVN
             36GM/34CM  ALLEGES STFF DSCRMNTN & RETLATN ON 3/14/2011

645322-R1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             09-01-2011       REJ      09-01-2011    NCR       MAR      LVN
             36GS/34BM  ALLEGES XFER THE RESULT OF RETLTN-RE $50,000 COMPNST

645195-R1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             09-01-2011       REJ      09-01-2011    NCR       MAR      LVN
             25ZS/      REQ RETURN OF LCP MATERIALS

645191-A1    24449-056   LANDIS, C                  CL2 LCP    Z01-103LAD LVN
             09-22-2011       REJ      09-06-2011    BOP       MAR      LVN
             36GM/34CM  ALLEGES STFF DSCRMNTN ON 02/22/2011
```

```
REMEDY-ID     REG      NAME                    ORIG UNIT OR LOC/QTRS/FACL
              STATUS-DATE   STATUS    DATE-RCV   RCV-OFC  RCV-FACL EVNT-FACL
              SUBJ1/SUBJ2 -------------------ABSTRACT------------------------

645190-A1    24449-056   LANDIS, C             CL2 LCP    Z01-103LAD LVN
             09-23-2011      REJ     09-07-2011   BOP       MAR       LVN
             36GM/34CM  ALLEGES STFF DSCRMNTN & RETLATN ON 3/14/2011

656873-F1    24449-056   LANDIS, C             UM NORTH   Y01-124U   MAR
             09-30-2011      CLD     09-19-2011   MAR       MAR       MAR
             19FM/      REQUESTS MORE TIME IN RRC PLACEMENT

645195-A1    24449-056   LANDIS, C             CL2 LCP    Z01-103LAD LVN
             10-25-2011      REJ     10-12-2011   BOP       MAR       LVN
             25ZS/      REQ RETURN OF LCP MATERIALS

645322-A1    24449-056   LANDIS, C             CL2 LCP    Z01-103LAD LVN
             10-25-2011      REJ     10-12-2011   BOP       MAR       LVN
             36GS/34BM  ALLEGES XFER THE RESULT OF RETLTN-RE $50,000 COMPNST

656873-R1    24449-056   LANDIS, C             UM NORTH   Y01-124U   MAR
             12-05-2011      CLD     10-17-2011   NCR       MAR       MAR
             19FM/      REQUESTS MORE TIME IN RRC PLACEMENT

796326-F1    24449-056   LANDIS, C             A          A02-063U   PEM
             10-06-2014      CLD     10-01-2014   PEM       PEM       PEM
             36EM/      C/O NOT GETTING COPIES OF INDEX

796326-R1    24449-056   LANDIS, C             A          A02-063U   PEM
             11-19-2014      CLD     10-23-2014   MXR       PEM       PEM
             36EM/      C/O NOT GETTING COPIES OF INDEX

796326-A1    24449-056   LANDIS, C             A          A02-063U   PEM
             06-09-2015      CLO     12-02-2014   BOP       PEM       PEM
             36EM/      C/O NOT GETTING COPIES OF INDEX

808285-F1    24449-056   LANDIS, C             A          A02-091U   PEM
             02-02-2015      CLD     01-26-2015   PEM       PEM       PEM
             33HM/36EM  WANTS INDEXES FROM 2012-PRESENT

808285-R1    24449-056   LANDIS, C             A          A02-091U   PEM
             03-19-2015      CLD     02-24-2015   MXR       PEM       PEM
             33HM/36EM  WANTS INDEXES FROM 2012-PRESENT

889775-F1    24449-056   LANDIS, C             JULIET     Z01-114UAD YAP
             01-25-2017      REJ     01-25-2017   YAP       YAP       YAP
             34AM/      INAPPROPRIATE CONDUCT


G0002      MORE PAGES TO FOLLOW . . .
```

```
REMEDY-ID      REG      NAME                    ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE    STATUS    DATE-RCV    RCV-OFC  RCV-FACL  EVNT-FACL
               SUBJ1/SUBJ2 --------------------ABSTRACT-------------------------

890317-F1     24449-056  LANDIS, C               JULIET      Z01-114UAD YAP
              01-30-2017      REJ    01-30-2017    YAP      YAP       YAP
              34ZM/    OTHER STAFF COMPLAINT

892602-F1     24449-056  LANDIS, C               JULIET      Z01-115UAD YAP
              03-22-2017      CLD    02-22-2017    YAP      YAP       YAP
              13ZM/    OTHER CLASSIFICATION MATTERS

893075-F1     24449-056  LANDIS, C               JULIET      Z01-115UAD YAP
              02-24-2017      REJ    02-24-2017    YAP      YAP       YAP
              10AM/    PROCTECTIVE CUSTODY

893075-R1     24449-056  LANDIS, C               JULIET      Z01-115UAD YAP
              03-13-2017      REJ    03-10-2017    SER      YAP       YAP
              10AM/    PROCTECTIVE CUSTODY

894940-F1     24449-056  LANDIS, C               JULIET      Z01-114UAD YAP
              04-28-2017      CLO    03-14-2017    YAP      YAP       YAP
              34ZM/    OTHER COMPLAINT AGAINST STAFF

895124-F1     24449-056  LANDIS, C               JULIET      Z01-114UAD YAP
              06-07-2017      CLO    03-15-2017    YAP      YAP       YAP
              34ZM/    OTHER COMPLAINT AGAINST STAFF

895125-F1     24449-056  LANDIS, C               JULIET      Z01-114UAD YAP
              04-28-2017      CLO    03-15-2017    YAP      YAP       YAP
              34AM/    UNPROFESSIONAL CONDUCT

896022-R1     24449-056  LANDIS, C               JULIET      Z01-114UAD YAP
              03-23-2017      REJ    03-21-2017    SER      YAP       YAP
              22AS/10ZM  REQ. RELEASE FROM SHU/TRANSFER

892602-R1     24449-056  LANDIS, C               JULIET      Z01-115UAD YAP
              05-04-2017      CLO    04-07-2017    SER      YAP       YAP
              10ZM/    REQ. TRANSFER

899679-F1     24449-056  LANDIS, C               JULIET      Z02-120UAD YAP
              08-31-2017      CLD    04-25-2017    YAP      YAP       YAP
              22AM/    ADMINISTRATIVE DETENTION

899679-R1     24449-056  LANDIS, C               JULIET      Z02-120UAD YAP
              07-13-2017      CLD    06-15-2017    NER      ALP       YAP
              22AM/    ADMINISTRATIVE DETENTION
```

G0002      MORE PAGES TO FOLLOW . . .

```
REMEDY-ID      REG       NAME                       ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE      STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
               SUBJ1/SUBJ2 --------------------ABSTRACT------------------------


910147-F1      24449-056  LANDIS, C                  CHALLENIIA B01-103L   ALP
               08-01-2017       CLO     07-26-2017    ALP      ALP       ALP
               34AM/      ASM


899679-A1      24449-056  LANDIS, C                  JULIET     Z02-120UAD YAP
               10-26-2017       CLD     08-14-2017    BOP      ALP       YAP
               22AM/      ADMINISTRATIVE DETENTION


910147-R1      24449-056  LANDIS, C                  CHALLENIIA B01-103L   ALP
               09-20-2017       CLG     08-24-2017    NER      ALP       ALP
               34AM/      ASM


913958-F1      24449-056  LANDIS, C                  CHALLENIIA Z01-116UAD ALP
               09-05-2017       CLO     08-30-2017    ALP      ALP       ALP
               37AS/      PREA


914469-F1      24449-056  LANDIS, C                  CHALLENIIA Z01-116UAD ALP
               09-14-2017       CLO     09-06-2017    ALP      ALP       ALP
               34AS/      CLAIMS STAFF MISCONDUCT - INVESTIGATING


914470-F1      24449-056  LANDIS, C                  CHALLENIIA Z01-116UAD ALP
               09-14-2017       CLO     09-06-2017    ALP      ALP       ALP
               34AS/      ASM - SHU PROPERTY


914781-R1      24449-056  LANDIS, C                  CHALLENIIA Z01-116UAD ALP
               09-08-2017       REJ     09-07-2017    NER      ALP       ALP
               34AS/      STAFF COMPLAINT


913958-R1      24449-056  LANDIS, C                  CHALLENIIA Z01-116UAD ALP
               10-11-2017       CLD     09-22-2017    NER      ALP       ALP
               34AS/      STAFF MADE FALSE REPORTS IN RETALIATION


918407-F1      24449-056  LANDIS, C                  CHALLENIIA Z02-132UDS ALP
               10-18-2017       CLO     10-16-2017    ALP      ALP       ALP
               37AS/      ASM - PREA


918749-F1      24449-056  LANDIS, C                  CHALLENIIA Z02-132UDS ALP
               10-23-2017       CLO     10-18-2017    ALP      ALP       ALP
               37AS/      ASM - PREA


918863-F1      24449-056  LANDIS, C                  CHALLENIIA Z02-132UDS ALP
               10-23-2017       CLO     10-19-2017    ALP      ALP       ALP
               37AS/      ASM - PREA
```

```
REMEDY-ID      REG      NAME                       ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE      STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
               SUBJ1/SUBJ2 --------------------ABSTRACT-------------------------


919995-R1      24449-056  LANDIS, C                 CHALLENIIA Z02-134UDS ALP
               11-16-2017      CLD    10-23-2017     NER      ALP       ALP
               20DS/      DHO APPEAL


913958-A1      24449-056  LANDIS, C                 CHALLENIIA Z01-116UAD ALP
               11-13-2017      CLD    10-23-2017     BOP      ALP       ALP
               34AS/      STAFF MADE FALSE REPORT AGAINST YOU IN RETALIATION


918407-R1      24449-056  LANDIS, C                 CHALLENIIA Z02-132UDS ALP
               11-29-2017      CLD    11-01-2017     NER      ALP       ALP
               37AS/      ASM - PREA


918863-R1      24449-056  LANDIS, C                 CHALLENIIA Z02-132UDS ALP
               11-07-2017      REJ    11-03-2017     NER      ALP       ALP
               37AS/      ASM - PREA


918749-R1      24449-056  LANDIS, C                 CHALLENIIA Z02-132UDS ALP
               11-07-2017      REJ    11-06-2017     NER      ALP       ALP
               37AS/      ASM - PREA


921196-F1      24449-056  LANDIS, C                 CHALLENIIA Z02-134UDS ALP
               11-30-2017      CLO    11-09-2017     ALP      ALP       ALP
               34AS/      ASM


921822-F1      24449-056  LANDIS, C                 CHALLENIIA Z02-131UDS ALP
               11-30-2017      CLO    11-16-2017     ALP      ALP       ALP
               34AS/      ASM - 11/12/17


922043-R1      24449-056  LANDIS, C                 CHALLENIIA Z02-131UDS ALP
               12-12-2017      CLD    11-16-2017     NER      ALP       ALP
               20DS/      DHO APPEAL


922045-R1      24449-056  LANDIS, C                 CHALLENIIA Z02-131UDS ALP
               12-12-2017      CLD    11-16-2017     NER      ALP       ALP
               20DS/      DHO APPEAL


918749-R2      24449-056  LANDIS, C                 CHALLENIIA Z02-132UDS ALP
               12-12-2017      CLG    11-16-2017     NER      ALP       ALP
               37AS/      ASM - PREA


918863-R2      24449-056  LANDIS, C                 CHALLENIIA Z02-132UDS ALP
               12-12-2017      CLG    11-17-2017     NER      ALP       ALP
               37AS/      ASM - PREA
```

```
REMEDY-ID      REG      NAME                    ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE     STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
               SUBJ1/SUBJ2 --------------------ABSTRACT--------------------


922725-F1    24449-056   LANDIS, C                 CHALLENIIA Z02-131UDS ALP
             11-30-2017     CLD     11-27-2017    ALP      ALP      ALP
             34AS/      ASM - 11/7/17


922727-F1    24449-056   LANDIS, C                 CHALLENIIA Z02-131UDS ALP
             12-05-2017     CLD     11-27-2017    ALP      ALP      ALP
             21AS/      UDC APPEAL


922730-F1    24449-056   LANDIS, C                 CHALLENIIA Z02-131UDS ALP
             11-30-2017     CLD     11-27-2017    ALP      ALP      ALP
             34AS/      ASM - DHO HEARINGS


924991-F1    24449-056   LANDIS, C                 CHALLENIIA Z04-235LDS ALP
             01-19-2018     CLO     12-15-2017    ALP      ALP      ALP
             34AS/      ASM - RESTRAINTS


922725-R1    24449-056   LANDIS, C                 CHALLENIIA Z02-131UDS ALP
             12-19-2017     REJ     12-18-2017    NER      ALP      ALP
             34AS/      ASM - 11/7/17


921196-R1    24449-056   LANDIS, C                 CHALLENIIA Z02-134UDS ALP
             01-11-2018     CLG     12-18-2017    NER      ALP      ALP
             34AS/      ASM


922730-R1    24449-056   LANDIS, C                 CHALLENIIA Z02-131UDS ALP
             01-11-2018     CLG     12-18-2017    NER      ALP      ALP
             34AS/      ASM - DHO HEARINGS


921822-R1    24449-056   LANDIS, C                 CHALLENIIA Z02-131UDS ALP
             01-11-2018     CLG     12-18-2017    NER      ALP      ALP
             34AS/      ASM - 11/12/17


918407-A1    24449-056   LANDIS, C                 CHALLENIIA Z02-132UDS ALP
             01-26-2018     CLO     12-21-2017    BOP      ALP      ALP
             37AS/      ASM - PREA


919995-A1    24449-056   LANDIS, C                 CHALLENIIA Z02-134UDS ALP
             01-09-2018     REJ     12-26-2017    BOP      ALP      ALP
             20DS/      DHO APPEAL


925963-F1    24449-056   LANDIS, C                 CHALLENIIA Z04-235LAD ALP
             12-27-2017     REJ     12-27-2017    ALP      ALP      ALP
             34AS/      SMU HEARING
```

```
REMEDY-ID      REG     NAME                      ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE    STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
               SUBJ1/SUBJ2 --------------------ABSTRACT------------------------

929007-F1      24449-056   LANDIS, C             G-BLOCK    G03-308L   LEW
               02-02-2018      CLD      01-29-2018   LEW      LEW       LEW
               13HS/       WANTS PUT IN "PROTECTIVE CUSTODY"

929017-F1      24449-056   LANDIS, C             G-BLOCK    G03-308L   LEW
               01-31-2018      CLD      01-29-2018   LEW      LEW       LEW
               34AS/       STAFF THREATENING HIM

929223-F1      24449-056   LANDIS, C             G-BLOCK    G03-308L   LEW
               01-30-2018      REJ      01-30-2018   LEW      LEW       LEW
               34AS/       STAFF FALSIFYING THREATENING I/R AGAINST HIM

929225-F1      24449-056   LANDIS, C             G-BLOCK    G03-308L   LEW
               02-02-2018      CLD      01-30-2018   LEW      LEW       LEW
               23DS/34AS   STAFF APPLIED RESTRAINTS TO TIGHT

929512-F1      24449-056   LANDIS, C             G-BLOCK    G03-308L   LEW
               02-01-2018      REJ      02-01-2018   LEW      LEW       LEW
               23ZS/       WANTS STAFF TO STOP PUTTING HIM IN RESTRAINTS

929514-F1      24449-056   LANDIS, C             G-BLOCK    G03-308L   LEW
               02-07-2018      CLD      02-01-2018   LEW      LEW       LEW
               11GS/       WANTS ENSURED HE WILL BE SAFE IF HE GOES TO REC

929514-R1      24449-056   LANDIS, C             G-BLOCK    G03-308L   LEW
               03-28-2018      CLG      02-26-2018   NER      LEW       LEW
               11GS/       WANTS ENSURED HE WILL BE SAFE IF HE GOES TO REC

933172-F1      24449-056   LANDIS, C             J-BLOCK    J03-323L   LEW
               03-12-2018      CLD      03-09-2018   LEW      LEW       LEW
               22ES/23ZS   STAFF KEPT TIGHTENING RESTRAINTS

933180-F1      24449-056   LANDIS, C             J-BLOCK    J03-323L   LEW
               03-09-2018      REJ      03-09-2018   LEW      LEW       LEW
               23ZS/       USING RESTRAINTS TO FORCE HIM TO ACCEPT CELLMATE

935629-A1      24449-056   LANDIS, C             J-BLOCK    J03-323L   LEW
               04-16-2018      CLD      03-19-2018   BOP      LEW       ALP
               15IS/34AS   APPEALS SMU REFERRAL/ALLEGES DID NOT WAIVE HEARING

934882-F1      24449-056   LANDIS, C             J-BLOCK    J03-324L   LEW
               03-28-2018      CLD      03-26-2018   LEW      LEW       LEW
               16ZS/       OUTGOING MAIL IS BEING TAMPERED WITH
```

G0002      MORE PAGES TO FOLLOW . . .

```
REMEDY-ID     REG     NAME                        ORIG UNIT OR LOC/QTRS/FACL
              STATUS-DATE    STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
              SUBJ1/SUBJ2 --------------------ABSTRACT-------------------------

934889-F1    24449-056   LANDIS, C                J-BLOCK    J03-324L   LEW
             03-28-2018       CLD    03-26-2018   LEW       LEW       LEW
             34AS/     STAFF FABIRCATED THREATENING SHOTS

933172-A1    24449-056   LANDIS, C                J-BLOCK    J03-323L   LEW
             04-17-2018       REJ    03-27-2018   BOP       LEW       LEW
             22ES/23ZS STAFF KEPT TIGHTENING RESTRAINTS

935563-F1    24449-056   LANDIS, C                J-BLOCK    J03-324L   LEW
             04-05-2018       CLD    03-30-2018   LEW       LEW       LEW
             13HS/     WANTS PROTECTIVE CUSTODY

929007-A1    24449-056   LANDIS, C                G-BLOCK    G03-308L   LEW
             04-17-2018       REJ    04-02-2018   BOP       LEW       LEW
             13HS/     WANTS PUT IN "PROTECTIVE CUSTODY"

929017-A1    24449-056   LANDIS, C                G-BLOCK    G03-308L   LEW
             04-17-2018       REJ    04-02-2018   BOP       LEW       LEW
             34AS/     STAFF THREATENING HIM

929225-A1    24449-056   LANDIS, C                G-BLOCK    G03-308L   LEW
             04-17-2018       REJ    04-02-2018   BOP       LEW       LEW
             23DS/34AS STAFF APPLIED RESTRAINTS TO TIGHT

934889-R1    24449-056   LANDIS, C                J-BLOCK    J03-324L   LEW
             05-11-2018       CLD    04-12-2018   NER       LEW       LEW
             34AS/     STAFF COMPLAINT: U.O.F AND FABRICATED I.R.

933172-R1    24449-056   LANDIS, C                J-BLOCK    J03-323L   LEW
             05-07-2018       REJ    05-04-2018   NER       LEW       LEW
             22ES/23ZS STAFF KEPT TIGHTENING RESTRAINTS

929007-R1    24449-056   LANDIS, C                G-BLOCK    G03-308L   LEW
             05-07-2018       REJ    05-04-2018   NER       LEW       LEW
             13HS/     WANTS PUT IN "PROTECTIVE CUSTODY"

929225-R1    24449-056   LANDIS, C                G-BLOCK    G03-308L   LEW
             05-10-2018       REJ    05-08-2018   NER       LEW       LEW
             23DS/34AS STAFF APPLIED RESTRAINTS TO TIGHT

929007-A2    24449-056   LANDIS, C                G-BLOCK    G03-308L   LEW
             06-01-2018       REJ    05-21-2018   BOP       LEW       LEW
             13HS/     WANTS PUT IN "PROTECTIVE CUSTODY"
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
REMEDY-ID     REG     NAME                       ORIG UNIT OR LOC/QTRS/FACL
              STATUS-DATE    STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
              SUBJ1/SUBJ2 --------------------ABSTRACT------------------------

933172-A2    24449-056   LANDIS, C                J-BLOCK    J03-323L   LEW
             06-01-2018      REJ     05-21-2018     BOP       LEW       LEW
             22ES/23ZS   STAFF KEPT TIGHTENING RESTRAINTS

929225-A2    24449-056   LANDIS, C                G-BLOCK    G03-308L   LEW
             06-13-2018      REJ     06-05-2018     BOP       LEW       LEW
             23DS/34AS   STAFF APPLIED RESTRAINTS TO TIGHT

947095-F1    24449-056   LANDIS, C                D-BLOCK    D01-104L   LEW
             07-24-2018      CLD     07-18-2018     LEW       LEW       LEW
             13ZS/13HS   WANTS PC - FEARS FOR HIS LIFE

947097-F1    24449-056   LANDIS, C                D-BLOCK    D01-104L   LEW
             07-24-2018      CLD     07-18-2018     LEW       LEW       LEW
             13HS/34AS   STAFF FALSIFIED REPORTS/WANTS MOVED TO XBLOCK

947290-F1    24449-056   LANDIS, C                D-BLOCK    D01-104L   LEW
             07-30-2018      CLO     07-19-2018     LEW       LEW       LEW
             13HS/      WANTS PROTECTIVE CUSTODY

947097-R1    24449-056   LANDIS, C                D-BLOCK    D01-104L   LEW
             09-05-2018      CLD     08-06-2018     NER       LEW       LEW
             13HS/34AS   STAFF FALSIFIED REPORTS/WANTS MOVED TO XBLOCK

947290-R1    24449-056   LANDIS, C                D-BLOCK    D01-104L   LEW
             09-14-2018      CLD     08-16-2018     NER       LEW       LEW
             13HS/      WANTS PROTECTIVE CUSTODY AND OLD CELL ASSIGNMENT

947097-A1    24449-056   LANDIS, C                D-BLOCK    D01-104L   LEW
             10-31-2018      CLO     09-24-2018     BOP       LEW       LEW
             13HS/34AS   STAFF FALSIFIED REPORTS/WANTS MOVED TO XBLOCK

956132-F1    24449-056   LANDIS, C                G-BLOCK    G03-311L   LEW
             10-18-2018      CLD     10-10-2018     LEW       LEW       LEW
             11GS/34AS   STAFF DENIED HIM RECREATION SEVERAL TIMES

956256-F1    24449-056   LANDIS, C                G-BLOCK    G03-311L   LEW
             10-26-2018      CLO     10-10-2018     LEW       LEW       LEW
             34BS/      STAFF ASSAULTED/THREATENED HIM

947290-A1    24449-056   LANDIS, C                D-BLOCK    D01-104L   LEW
             11-16-2018      CLD     10-23-2018     BOP       LEW       LEW
             13HM/      WANTS PROTECTIVE CUSTODY AND OLD CELL ASSIGNMENT
```

```
REMEDY-ID     REG      NAME                      ORIG UNIT OR LOC/QTRS/FACL
              STATUS-DATE    STATUS    DATE-RCV  RCV-OFC  RCV-FACL EVNT-FACL
              SUBJ1/SUBJ2 --------------------ABSTRACT--------------------------
```

956132-R1    24449-056   LANDIS, C              G-BLOCK   G03-311L   LEW
             11-29-2018       CLO    10-30-2018    NER      LEW       LEW
             11GS/34AS   STAFF DENIED HIM RECREATION SEVERAL TIMES

959264-F1    24449-056   LANDIS, C              G-BLOCK   G03-312L   LEW
             11-16-2018       CLD    11-08-2018    LEW      LEW       LEW
             13ZS/       ASKING TO BE PROTETED FORM OTHER I/MS THREATS

956256-R1    24449-056   LANDIS, C              G-BLOCK   G03-311L   LEW
             12-14-2018       CLD    11-13-2018    NER      LEW       LEW
             34BS/       STAFF ASSAULTED/THREATENED HIM

959264-R1    24449-056   LANDIS, C              G-BLOCK   G03-312L   LEW
             12-10-2018       REJ    12-07-2018    NER      LEW       LEW
             13ZS/       ASKING TO BE PROTETED FORM OTHER I/MS THREATS

956132-A1    24449-056   LANDIS, C              G-BLOCK   G03-311L   LEW
             03-27-2019       CLD    12-18-2018    BOP      LEW       LEW
             11GM/34AM   ALLEGES DENIED/REFUSED RECREATION SEVERAL TIMES

963087-F1    24449-056   LANDIS, C              G-BLOCK   G03-315L   LEW
             12-31-2018       CLD    12-19-2018    LEW      LEW       LEW
             11ZS/34AS   OFFICERS HAVE BEEN DENYING HIM RECREATION

959264-R2    24449-056   LANDIS, C              G-BLOCK   G03-312L   LEW
             02-07-2019       CLD    12-31-2018    NER      LEW       LEW
             13ZS/       REQ FOR PROTECTION

963087-R1    24449-056   LANDIS, C              G-BLOCK   G03-315L   LEW
             02-14-2019       CLO    01-15-2019    NER      LEW       LEW
             11ZS/34AS   OFFICERS HAVE BEEN DENYING HIM RECREATION

956256-A1    24449-056   LANDIS, C              G-BLOCK   G03-311L   LEW
             03-14-2019       CLO    01-28-2019    BOP      LEW       LEW
             34BS/       STAFF ASSAULTED/THREATENED HIM

967256-F1    24449-056   LANDIS, C              G-BLOCK   G03-317L   LEW
             02-11-2019       CLD    02-07-2019    LEW      LEW       LEW
             23ZS/       CLAIMS STAFF ARE MISUSING RESTRAINTS

959264-A1    24449-056   LANDIS, C              G-BLOCK   G03-312L   LEW
             03-08-2019       REJ    02-21-2019    BOP      LEW       LEW
             13ZS/       ASKING TO BE PROTETED FORM OTHER I/MS THREATS
```

G0002      MORE PAGES TO FOLLOW . . .

```
REMEDY-ID      REG      NAME                     ORIG UNIT OR LOC/QTRS/FACL
             STATUS-DATE     STATUS    DATE-RCV   RCV-OFC  RCV-FACL EVNT-FACL
             SUBJ1/SUBJ2 --------------------ABSTRACT--------------------------

967256-R1    24449-056  LANDIS, C              G-BLOCK    G03-317L   LEW
             03-27-2019      CLD    02-25-2019    NER       LEW       LEW
             23ZS/     CLAIMS STAFF ARE MISUSING RESTRAINTS

970558-F1    24449-056  LANDIS, C              G-BLOCK    G03-319L   LEW
             03-15-2019      CLD    03-11-2019    LEW       LEW       LEW
             34AS/     STAFF ARE HINDERING HIS LEGAL MAIL/REMEDY PROCESS

970997-F1    24449-056  LANDIS, C              G-BLOCK    G03-319L   LEW
             03-14-2019      REJ    03-14-2019    LEW       LEW       LEW
             34AS/     CLAIMS OFFICER THREW AWAY ANOTHER INMATES PROPERTY

963087-A1    24449-056  LANDIS, C              G-BLOCK    G03-315L   LEW
             04-26-2019      CLO    03-14-2019    BOP       LEW       LEW
             11ZS/34AS  OFFICERS HAVE BEEN DENYING HIM RECREATION

959264-A2    24449-056  LANDIS, C              G-BLOCK    G03-312L   LEW
             05-10-2019      CLD    04-01-2019    BOP       LEW       LEW
             13ZS/     REQ FOR PROTECTION

973060-F1    24449-056  LANDIS, C              G-BLOCK    G03-320L   LEW
             04-05-2019      CLD    04-03-2019    LEW       LEW       LEW
             25FS/     CLAIMS ENCUMBRANCE VIOLATES HIS RIGHTS

970997-R1    24449-056  LANDIS, C              G-BLOCK    G03-319L   LEW
             04-04-2019      REJ    04-03-2019    NER       LEW       LEW
             34AS/     CLAIMS OFFICER THREW AWAY ANOTHER INMATES PROPERTY

973060-R1    24449-056  LANDIS, C              G-BLOCK    G03-320L   LEW
             04-26-2019      REJ    04-23-2019    NER       LEW       LEW
             25FS/     CLAIMS ENCUMBRANCE VIOLATES HIS RIGHTS

967256-A1    24449-056  LANDIS, C              G-BLOCK    G03-317L   LEW
             05-06-2019      CLO    04-24-2019    BOP       LEW       LEW
             23ZS/     CLAIMS STAFF ARE MISUSING RESTRAINTS

973060-R2    24449-056  LANDIS, C              G-BLOCK    G03-320L   LEW
             06-12-2019      CLD    05-13-2019    NER       LEW       LEW
             25FS/     CLAIMS ENCUMBRANCE VIOLATES HIS RIGHTS

982208-F1    24449-056  LANDIS, C              G-BLOCK    G03-324L   LEW
             06-27-2019      CLD    06-25-2019    LEW       LEW       LEW
             28BS/     HAS BEEN DENIED MENTAL HEALTH TREATMENT
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

```
REMEDY-ID      REG      NAME                        ORIG UNIT OR LOC/QTRS/FACL
              STATUS-DATE    STATUS    DATE-RCV    RCV-OFC  RCV-FACL EVNT-FACL
              SUBJ1/SUBJ2 --------------------ABSTRACT--------------------------

983464-F1     24449-056   LANDIS, C              G-BLOCK    G03-325L   LEW
              07-12-2019       CLD     07-08-2019    LEW       LEW        LEW
              26DS/    HIS MEDICATION NEEDS CHANGED/WANTS EVALUATED

973060-A1     24449-056   LANDIS, C              G-BLOCK    G03-320L   LEW
              08-15-2019       CLD     07-09-2019    BOP       LEW        LEW
              25FS/    CLAIMS ENCUMBRANCE VIOLATES HIS RIGHTS

982208-R1     24449-056   LANDIS, C              G-BLOCK    G03-324L   LEW
              07-22-2019       REJ     07-11-2019    NER       LEW        LEW
              28BS/    HAS BEEN DENIED MENTAL HEALTH TREATMENT

984830-F1     24449-056   LANDIS, C              G-BLOCK    G03-325L   LEW
              07-26-2019       CLD     07-22-2019    LEW       LEW        LEW
              26AS/    WANTS EVALUATED FOR ANXIETY

983464-R1     24449-056   LANDIS, C              G-BLOCK    G03-325L   LEW
              08-23-2019       CLD     07-25-2019    NER       LEW        LEW
              26DS/    HIS MEDICATION NEEDS CHANGED/WANTS EVALUATED

982208-R2     24449-056   LANDIS, C              G-BLOCK    G03-324L   LEW
              09-27-2019       CLO     07-29-2019    NER       LEW        LEW
              28BS/    HAS BEEN DENIED MENTAL HEALTH TREATMENT

989836-F1     24449-056   LANDIS, C              E-UNIT     Z02-010UAD TOM
              09-24-2019       CLO     09-05-2019    TOM       TOM        TOM
              23ZS/    APPLICATION OF RESTRAINTS

989842-F1     24449-056   LANDIS, C              E-UNIT     Z02-010UAD TOM
              09-24-2019       CLD     09-05-2019    TOM       TOM        TOM
              22CS/    WINDOW FLAP

993556-R1     24449-056   LANDIS, C              E-UNIT     Z02-011LDS TOM
              10-09-2019       REJ     10-07-2019    NCR       TOM        TOM
              20DM/    DHO APPEAL

989836-R1     24449-056   LANDIS, C              E-UNIT     Z02-010UAD TOM
              11-07-2019       CLO     10-07-2019    NCR       TOM        TOM
              23ZS/    APPLICATION OF RESTRAINTS

994792-F1     24449-056   LANDIS, C              E-UNIT     Z02-009LDS TOM
              10-23-2019       REJ     10-23-2019    TOM       TOM        TOM
              23ZS/    APPLICATION OF RESTRAINTS
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

```
REMEDY-ID     REG       NAME                        ORIG UNIT OR LOC/QTRS/FACL
              STATUS-DATE     STATUS    DATE-RCV   RCV-OFC  RCV-FACL  EVNT-FACL
              SUBJ1/SUBJ2 --------------------ABSTRACT-------------------------

994793-F1     24449-056  LANDIS, C              E-UNIT      Z02-009LDS TOM
              10-23-2019     REJ    10-23-2019    TOM     TOM       TOM
              34AS/     ALLEGES STAFF MISCONDUCT

989842-R1     24449-056  LANDIS, C              E-UNIT      Z02-010UAD TOM
              11-05-2019     REJ    11-01-2019    NCR     TOM       TOM
              22CS/     WINDOW SECURITY MAGNET PLACEMENT

994793-R1     24449-056  LANDIS, C              E-UNIT      Z02-009LDS TOM
              11-18-2019     REJ    11-13-2019    NCR     TOM       TOM
              34AS/     ALLEGES STAFF MISCONDUCT

994792-R1     24449-056  LANDIS, C              E-UNIT      Z02-009LDS TOM
              11-18-2019     REJ    11-13-2019    NCR     TOM       TOM
              23ZS/     APPLICATION OF RESTRAINTS

997085-F1     24449-056  LANDIS, C              E-UNIT      Z02-012LDS TOM
              11-22-2019     CLO    11-15-2019    TOM     TOM       TOM
              34AS/     ALLEGE STAFF MISCONDUCT

997315-F1     24449-056  LANDIS, C              E-UNIT      Z02-012LDS TOM
              11-18-2019     REJ    11-15-2019    TOM     TOM       TOM
              23ZS/     USE OF RESTRAINTS

997334-F1     24449-056  LANDIS, C              E-UNIT      Z02-012LDS TOM
              11-25-2019     CLO    11-15-2019    TOM     TOM       TOM
              26AS/     DELAY IN MEDICAL CARE

997315-R1     24449-056  LANDIS, C              E-UNIT      Z02-012LDS TOM
              12-05-2019     REJ    12-03-2019    NCR     TOM       TOM
              23ZS/     USE OF RESTRAINTS

989836-A1     24449-056  LANDIS, C              E-UNIT      Z02-010UAD TOM
              01-06-2020     REJ    12-05-2019    BOP     TOM       TOM
              23ZS/     APPLICATION OF RESTRAINTS

997334-R1     24449-056  LANDIS, C              E-UNIT      Z02-012LDS TOM
              12-23-2019     CLO    12-06-2019    NCR     TOM       TOM
              26AS/     DELAY IN MEDICAL CARE

997085-R1     24449-056  LANDIS, C              E-UNIT      Z02-012LDS TOM
              01-29-2020     CLO    12-06-2019    NCR     TOM       TOM
              34AS/     ALLEGE STAFF MISCONDUCT
```

G0002      MORE PAGES TO FOLLOW . . .

```
REMEDY-ID      REG     NAME                        ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE     STATUS    DATE-RCV   RCV-OFC  RCV-FACL EVNT-FACL
               SUBJ1/SUBJ2 --------------------ABSTRACT--------------------

989842-R2    24449-056   LANDIS, C              E-UNIT     Z02-010UAD TOM
             02-28-2020      CLO    12-06-2019    NCR      TOM      TOM
             22CS/     WINDOW SECURITY MAGNET PLACEMENT

989836-A2    24449-056   LANDIS, C              E-UNIT     Z02-010UAD TOM
             01-30-2020      CLO    12-11-2019    BOP      TOM      TOM
             23ZS/34AS  ALLEGES STAFF TIGHTENED WRIST/LEG RESTRAINTS

1000761-F1   24449-056   LANDIS, C              E-UNIT     Z02-014LDS TOM
             12-19-2019      REJ    12-19-2019    TOM      TOM      TOM
             34AS/     ALLEGE INAPPROPRIATE STAFF BEHAVIOR

994792-F2    24449-056   LANDIS, C              E-UNIT     Z02-009LDS TOM
             12-19-2019      REJ    12-19-2019    TOM      TOM      TOM
             23ZS/     APPLICATION OF RESTRAINTS

1000769-F1   24449-056   LANDIS, C              E-UNIT     Z02-014LDS TOM
             12-19-2019      REJ    12-19-2019    TOM      TOM      TOM
             34AS/     ALLEGE STAFF MISCONDUCT ON DIFFERENT INMATE

1000761-F2   24449-056   LANDIS, C              E-UNIT     Z02-014LDS TOM
             12-19-2019      REJ    12-19-2019    TOM      TOM      TOM
             34AS/     ALLEGE INAPPROPRIATE STAFF BEHAVIOR

1000769-R1   24449-056   LANDIS, C              E-UNIT     Z02-014LDS TOM
             12-19-2019      REJ    12-19-2019    NCR      TOM      TOM
             34AS/     ALLEGE STAFF MISCONDUCT ON DIFFERENT INMATE

1000769-F2   24449-056   LANDIS, C              E-UNIT     Z02-014LDS TOM
             12-20-2019      REJ    12-20-2019    TOM      TOM      TOM
             34AS/     ALLEGE STAFF MISCONDUCT ON DIFFERENT INMATE

1003345-F1   24449-056   LANDIS, C              E-UNIT     Z02-012LAD TOM
             01-31-2020      CLG    01-15-2020    TOM      TOM      TOM
             15IS/     SMU PROGRAMS FOR "EXHIBITIONISM"

1004276-F1   24449-056   LANDIS, C              E-UNIT     Z02-011LAD TOM
             01-24-2020      REJ    01-24-2020    TOM      TOM      TOM
             26DS/     REQUESTING CHANGE OF MEDICATION

1004479-F1   24449-056   LANDIS, C              E-UNIT     Z02-011LAD TOM
             01-29-2020      CLO    01-24-2020    TOM      TOM      TOM
             34AS/     ALLEGE STAFF MISCONDUCT DUE TO THREATENING/INTIMIDAT
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

```
REMEDY-ID      REG      NAME                     ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE    STATUS    DATE-RCV   RCV-OFC RCV-FACL EVNT-FACL
               SUBJ1/SUBJ2 -------------------ABSTRACT------------------------


1000761-R1   24449-056   LANDIS, C                E-UNIT    Z02-014LDS TOM
             01-30-2020        REJ    01-30-2020   NCR     TOM      TOM
             34AS/    ALLEGE INAPPROPRIATE STAFF BEHAVIOR

997315-R2    24449-056   LANDIS, C                E-UNIT    Z02-012LDS TOM
             02-03-2020        REJ    01-31-2020   NCR     TOM      TOM
             23ZS/    USE OF RESTRAINTS

997334-A1    24449-056   LANDIS, C                E-UNIT    Z02-012LDS TOM
             03-10-2020        CLO    02-03-2020   BOP     TOM      TOM
             26AS/    DELAY IN MEDICAL CARE

1005560-F1   24449-056   LANDIS, C                E-UNIT    Z02-010LAD TOM
             02-05-2020        REJ    02-05-2020   TOM     TOM      TOM
             23CS/    CELL SEARCH

1005597-F1   24449-056   LANDIS, C                E-UNIT    Z02-010LAD TOM
             02-28-2020        CLO    02-05-2020   TOM     TOM      TOM
             26DS/    CHANGE IN MEDICATION

997085-A1    24449-056   LANDIS, C                E-UNIT    Z02-012LDS TOM
             02-07-2020        REJ    02-05-2020   BOP     TOM      TOM
             34AS/    ALLEGE STAFF MISCONDUCT

1004479-R1   24449-056   LANDIS, C                E-UNIT    Z02-011LAD TOM
             03-04-2020        CLO    02-10-2020   NCR     TOM      TOM
             34AS/    ALLEGE STAFF MISCONDUCT DUE TO THREATENING/INTIMIDAT

1003345-R1   24449-056   LANDIS, C                E-UNIT    Z02-012LAD TOM
             02-26-2020        CLD    02-10-2020   NCR     TOM      TOM
             15IS/    SMU PROGRAMS FOR "EXHIBITIONISM"

1006607-F1   24449-056   LANDIS, C                E-UNIT    Z02-010LAD TOM
             02-13-2020        REJ    02-13-2020   TOM     TOM      TOM
             33HS/    DISAGREES WITH 20 DAY FILING LIMIT

1000761-R2   24449-056   LANDIS, C                E-UNIT    Z02-014LDS TOM
             02-18-2020        REJ    02-14-2020   NCR     TOM      TOM
             34AS/    ALLEGE INAPPROPRIATE STAFF BEHAVIOR

1005560-R1   24449-056   LANDIS, C                E-UNIT    Z02-010LAD TOM
             02-27-2020        REJ    02-24-2020   NCR     TOM      TOM
             23CS/    CELL SEARCH



G0002       MORE PAGES TO FOLLOW . . .
```

```
REMEDY-ID      REG      NAME                       ORIG UNIT OR LOC/QTRS/FACL
               STATUS-DATE      STATUS    DATE-RCV  RCV-OFC  RCV-FACL  EVNT-FACL
               SUBJ1/SUBJ2 -------------------ABSTRACT-------------------------

997315-R3      24449-056   LANDIS, C                E-UNIT     Z02-012LDS TOM
               03-03-2020       REJ      03-03-2020    NCR      TOM      TOM
               23ZS/     USE OF RESTRAINTS

997085-A2      24449-056   LANDIS, C                E-UNIT     Z02-012LDS TOM
               04-13-2020       CLO      03-06-2020    BOP      TOM      TOM
               34AS/     ALLEGE STAFF MISCONDUCT

1003345-A1     24449-056   LANDIS, C                E-UNIT     Z02-012LAD TOM
               05-27-2020       CLD      04-13-2020    BOP      TOM      TOM
               28BM/28ZM WANTS DIAGNOSIS AND TREATMENT FOR "EXHIBITIONISM"
```

```
           190 REMEDY SUBMISSION(S) SELECTED
  G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| CARLTON THEODORE LANDIS (24449-056), | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 20 C 50168 |
| WARDEN RIVERS, ASSOCIATE WARDEN DOERER, and CAPTAIN KIRBY, | ) ) ) ) | Judge Pallmeyer |
| Defendants. | ) | |

## DEFENDANTS LOCAL RULE 56.1 STATEMENT OF FACTS

### EXHIBIT C
### LANDIS INMATE PROFILE

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Monica V. Mallory_____
    MONICA V. MALLORY
    Assistant United States Attorney
    327 South Church Street
    Rockford, Illinois 61101
    (815) 987-4444
    monica.mallory@usdoj.gov

```
              24449-056            REG
REGNO: 24449-056                FUNCTION: PRT DOB/AGE.:█████████
NAME.: LANDIS, CARLTON THEODORE             R/S/ETH.: B/M/O      WALSH: YES
RSP..: TOM-THOMSON ADMIN USP                MILEAGE.: 745 MILES
PHONE: 815-259-1000      FAX: 815-259-0186
 PROJ REL METHOD: GOOD CONDUCT TIME RELEASE      FBI NO..: 869465VA6
 PROJ REL DATE..: 06-11-2030                     INS NO..: N/A
 PAR ELIG DATE..: N/A                            SSN.....: 242699545
 PAR HEAR DATE..:              PSYCH: NO       DETAINER: NO          CMC..: YES
OFFN/CHG RMKS: SRV,57 MO.CRIME:5:13CR-189-1BO,BNK ROBY,170MO/3SRT.5:03CR114-
OFFN/CHG RMKS: 001.PWITD COC BASE:POSS F/A DRG TRFK CRME-144 MOS/5 YRS S/R
    FACL CATEGORY  - - - -  CURRENT ASSIGNMENT - - - - -  EFF DATE  TIME
    TOM  ADM-REL   A-DES     DESIGNATED, AT ASSIGNED FACIL 03-26-2020 1313
    TOM  CARE LEVEL CARE1    HEALTHY OR SIMPLE CHRONIC CARE 06-09-2014 1419
    TOM  CARE LEVEL CARE1-MH CARE1-MENTAL HEALTH          05-08-2014 1334
    TOM  COR COUNSL CCC G1   G1-2 CCC, J. ZUMKEHR         04-29-2020 1745
    TOM  CASE MGT   BIR CERT N BIRTH CERTIFICATE - NO     05-03-2017 1304
    TOM  CASE MGT   CFSR     CERT FOOD SINCERITY REMOVAL  11-01-2010 1425
    TOM  CASE MGT   DEPEND N DEPENDENTS UNDER 21 - NO     05-22-2017 2022
    TOM  CASE MGT   LCP FAIL E LIFE CONNECT PROG FAIL-EXPEL 04-14-2011 1025
    TOM  CASE MGT   PHOTO ID N PHOTO ID - NO              05-03-2017 1304
    TOM  CASE MGT   RPP PART RELEASE PREP PGM PARTICIPATES 08-22-2011 0902
    TOM  CASE MGT   SMU LEV 1 SMU PARTICIPANT - LEVEL 1   03-26-2020 1413
    TOM  CASE MGT   SSN CARD N SOCIAL SECURITY CARD - NO  05-03-2017 1304
    TOM  CASE MGT   VET P/S N PARENT/SPOUSE VETERAN - NO  05-22-2017 2022
    TOM  CASE MGT   VETERAN N VETERAN - NO                05-22-2017 2022
    TOM  CASE MGT   VWP AUTO VICTIM/WITNESS PGM AUTO UPDATE 04-15-2014 0645
    TOM  CASE MGT   V94 CDA913 V94 CURR DRG TRAF ON/AFT 91394 01-06-2004 1105
    TOM  CASE MGT   V94 CVA913 V94 CURR VIOL ON/AFTER 91394 01-06-2004 1106
    TOM  CASE MGT   V94 PV   V94 PAST VIOLENCE            01-06-2004 0849
    TOM  CASE MGT   WA NO CONV WALSH ACT HIST-NO CONVICTION 04-12-2019 1157
    TOM  CORR SVCS  RAN NEG  RANDOM DRG TST-NEGATIVE      05-17-2006 1754
    TOM  CORR SVCS  SAT NEG  SATURATION DRG TST-NEGATIVE  01-25-2007 1433
    TOM  CASEWORKER CSW G1   G1-2 CSW, DWYER, D.          03-26-2020 1313
    TOM  CUSTODY    IN       IN CUSTODY                   04-14-2014 1407
    TOM  DRUG PGMS  DAP NO INT DRUG ABUSE PROGRAM NO INTEREST 05-12-2014 1608
    TOM  DRUG PGMS  ED COMP  DRUG EDUCATION COMPLETE      01-08-2015 1239
    TOM  DESIG/SENT CHARLIE  TEAM CHARLIE                 04-14-2014 1407
    TOM  DESIG/SENT FNCE YES FNCE-FULLY COMPLIED W/JUD REC 04-17-2014 1334
    TOM  EDUC INFO  ESL HAS  ENGLISH PROFICIENT           01-08-2004 1430
    TOM  EDUC INFO  GED HAS  COMPLETED GED OR HS DIPLOMA  01-19-2005 1304
    TOM  FIN RESP   REFUSE   FINANC RESP-REFUSES          06-14-2018 0841
    TOM  FIRST STEP FTC INELIG FTC-INELIGIBLE-REVIEWED    11-26-2019 1008
    TOM  FIRST STEP R-HI     HIGH RISK RECIDIVISM LEVEL   11-26-2019 1007
    TOM  LEVEL      HIGH     SECURITY CLASSIFICATION HIGH 03-21-2016 0747
    TOM  MED DY ST  REG DUTY NO MEDICAL RESTR--REGULAR DUTY 05-07-2014 1203
    TOM  PGM REVIEW SEP      SEPTEMBER PROGRAM REVIEW     09-21-2020 1022
    TOM  PSYCH TRMT CHG FAIL E CHALLENGE FAIL-EXPELLED    08-25-2017 1218
    TOM  QUARTERS   G03-050L HOUSE G/RANGE 03/BED 050L    06-14-2020 1059
    TOM  RELIGION   NATION   NATION OF ISLAM              10-04-2004 1201

G0017      WARNING : NOTIFICATIONS ARE REQUIRED PER P.S. 1490.06
G0002      MORE PAGES TO FOLLOW . . .
```

```
   TOMDA  535.03 *          INMATE PROFILE           *       06-15-2020
PAGE 002 OF 002                                               12:33:46
        24449-056              REG
REGNO: 24449-056              FUNCTION: PRT DOB/AGE.:██████████
NAME.: LANDIS, CARLTON THEODORE            R/S/ETH.: B/M/O    WALSH: YES
RSP..: TOM-THOMSON ADMIN USP               MILEAGE.: 745 MILES
PHONE: 815-259-1000      FAX: 815-259-0186
     FACL CATEGORY  - - - - - CURRENT ASSIGNMENT - - - - - - EFF DATE  TIME
     TOM  UNIT       G-UNIT    G UNIT MANAGER, BORDEN, B.     03-26-2020 1313
     TOM  WAITNG LST A&O COMPLT INSTITUTIONAL A&O COMPLETE    12-02-2019 1009
     TOM  WAITNG LST CIM COMPLT CIM PACKET COMPLETE           03-12-2020 1259
     TOM  WAITNG LST FLESH     MEAL W/ FLESH                  02-05-2020 1100
     TOM  WAITNG LST SMU LEV CH SMU LEV CHANGE EFFECTIVE DATE 09-26-2020 1413
     TOM  WAITNG LST SMU RVW 90 SMU INMATE 90 DAY REVIEW      09-20-2020 1017
     TOM  WAITNG LST SMU START  SMU PROGRAM START DATE        03-26-2020 1413
     TOM  WAITNG LST SMU 30 DAY SMU 30 DAY CONDITION REVIEW   06-25-2020 0832
     TOM  WRK DETAIL SMU-UNASSG SMU UNASSIGNED                03-26-2020 1313




G0017       WARNING : NOTIFICATIONS ARE REQUIRED PER P.S. 1490.06
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CARLTON THEODORE LANDIS (24449-056), | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20 C 50168 |
| | ) |
| WARDEN RIVERS, ASSOCIATE | ) Judge Pallmeyer |
| WARDEN DOERER, and CAPTAIN | ) |
| KIRBY, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS LOCAL RULE 56.1 STATEMENT OF FACTS**

**EXHIBIT D**
**LANDIS INMATE ADMISSIONS AND RELEASE HISTORY**

Respectfully submitted,

JOHN R.LAUSCH, Jr.
United States Attorney

By: s/ Monica V. Mallory
MONICA V. MALLORY
Assistant United States Attorney
327 South Church Street
Rockford, Illinois 61101
(815) 987-4444
monica.mallory@usdoj.gov

```
  REG NO..: 24449-056 NAME....: LANDIS, CARLTON THEODORE
  CATEGORY: ARS      FUNCTION: PRT       FORMAT:
```

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| TOM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-26-2020 1313 | CURRENT |
| TOM | ADM CHANGE | RELEASE FOR ADMISSION CHANGE | 03-26-2020 1310 | 03-26-2020 1313 |
| TOM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 12-02-2019 1421 | 03-26-2020 1310 |
| TOM | ADM CHANGE | RELEASE FOR ADMISSION CHANGE | 12-02-2019 1420 | 12-02-2019 1421 |
| TOM | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 07-30-2019 1941 | 12-02-2019 1420 |
| 3-D | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-30-2019 2041 | 07-30-2019 2041 |
| 3-D | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-30-2019 0713 | 07-30-2019 2041 |
| LEW | TRANS SEG | TRANSFER-SEGREGATION | 07-30-2019 0713 | 12-02-2019 1421 |
| LEW | A-DES | DESIGNATED, AT ASSIGNED FACIL | 12-29-2017 1011 | 07-30-2019 0713 |
| 5-T | RELEASE | RELEASED FROM IN-TRANSIT FACL | 12-29-2017 1011 | 12-29-2017 1011 |
| 5-T | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 12-29-2017 0919 | 12-29-2017 1011 |
| ALP | TRANSFER | TRANSFER | 12-29-2017 0919 | 12-29-2017 0919 |
| ALP | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-01-2017 1531 | 12-29-2017 0919 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-01-2017 1531 | 05-01-2017 1531 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-01-2017 1531 | 05-01-2017 1531 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 05-01-2017 0730 | 05-01-2017 0730 |
| OKL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 04-26-2017 1640 | 05-01-2017 0730 |
| 7-V | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-26-2017 1740 | 04-26-2017 1740 |
| 7-V | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-26-2017 0525 | 04-26-2017 1740 |
| YAP | TRANSFER | TRANSFER | 04-26-2017 0425 | 04-26-2017 0425 |
| YAP | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-17-2016 1300 | 04-26-2017 0425 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-17-2016 1400 | 03-17-2016 1400 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-17-2016 0900 | 03-17-2016 1400 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 03-17-2016 0800 | 03-17-2016 0800 |
| OKL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 03-08-2016 1530 | 03-17-2016 0800 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-08-2016 1630 | 03-08-2016 1630 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-08-2016 1255 | 03-08-2016 1630 |
| ATL | HLD REMOVE | HOLDOVER REMOVED | 03-08-2016 1255 | 03-08-2016 1255 |
| ATL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 03-07-2016 1530 | 03-08-2016 1255 |
| B09 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-07-2016 1530 | 03-07-2016 1530 |
| B09 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-07-2016 0339 | 03-07-2016 1530 |
| PEM | TRANSFER | TRANSFER | 03-07-2016 0339 | 03-07-2016 0339 |
| PEM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 04-29-2014 1551 | 03-07-2016 0339 |
| 9-L | RELEASE | RELEASED FROM IN-TRANSIT FACL | 04-29-2014 1551 | 04-29-2014 1551 |
| 9-L | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 04-14-2014 1512 | 04-29-2014 1551 |
| DSC | ADMIN REL | ADMINISTRATIVE RELEASE | 04-14-2014 1412 | 04-14-2014 1412 |
| DSC | A-ADMIN | ADMINISTRATIVE ADMISSION | 04-14-2014 1407 | 04-14-2014 1412 |
| CRL | GCT REL | GOOD CONDUCT TIME RELEASE | 10-18-2012 0714 | 04-14-2014 1407 |
| CRL | A-DES | DESIGNATED, AT ASSIGNED FACIL | 06-19-2012 1614 | 10-18-2012 0714 |
| 3-M | RELEASE | RELEASED FROM IN-TRANSIT FACL | 06-19-2012 1614 | 06-19-2012 1614 |
| 3-M | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 06-18-2012 2055 | 06-19-2012 1614 |

```
  G0002        MORE PAGES TO FOLLOW . . .
```

```
  REG NO..: 24449-056 NAME....: LANDIS, CARLTON THEODORE
  CATEGORY: ARS      FUNCTION: PRT      FORMAT:
```

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| MAR | FURL TRANS | FURL W/UNESCORTED TRF TO A CCC | 06-18-2012 1955 | 06-18-2012 1955 |
| MAR | A-DES | DESIGNATED, AT ASSIGNED FACIL | 08-15-2011 1647 | 06-18-2012 1955 |
| A02 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 08-15-2011 1747 | 08-15-2011 1747 |
| A02 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 08-15-2011 1030 | 08-15-2011 1747 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 08-15-2011 0930 | 08-15-2011 0930 |
| OKL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 07-14-2011 1030 | 08-15-2011 0930 |
| B18 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-14-2011 1130 | 07-14-2011 1130 |
| B18 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-14-2011 0556 | 07-14-2011 1130 |
| LVN | TRANSFER | TRANSFER | 07-14-2011 0456 | 07-14-2011 0456 |
| LVN | A-DES | DESIGNATED, AT ASSIGNED FACIL | 11-08-2010 1148 | 07-14-2011 0456 |
| B17 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 11-08-2010 1248 | 11-08-2010 1248 |
| B17 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 11-08-2010 0555 | 11-08-2010 1248 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 11-08-2010 0455 | 11-08-2010 0455 |
| OKL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 10-27-2010 1115 | 11-08-2010 0455 |
| B17 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 10-27-2010 1215 | 10-27-2010 1215 |
| B17 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 10-27-2010 0405 | 10-27-2010 1215 |
| POM | TRANSFER | TRANSFER | 10-27-2010 0305 | 10-27-2010 0305 |
| POM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 10-26-2009 1415 | 10-27-2010 0305 |
| B17 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 10-26-2009 1515 | 10-26-2009 1515 |
| B17 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 10-26-2009 0535 | 10-26-2009 1515 |
| OKL | HLD REMOVE | HOLDOVER REMOVED | 10-26-2009 0435 | 10-26-2009 0435 |
| OKL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 10-21-2009 1700 | 10-26-2009 0435 |
| A01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 10-21-2009 1800 | 10-21-2009 1800 |
| A01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 10-21-2009 1036 | 10-21-2009 1800 |
| ATL | HLD REMOVE | HOLDOVER REMOVED | 10-21-2009 1036 | 10-21-2009 1036 |
| ATL | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 10-15-2009 1855 | 10-21-2009 1036 |
| B03 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 10-15-2009 1855 | 10-15-2009 1855 |
| B03 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 10-15-2009 1250 | 10-15-2009 1855 |
| BEN | TRANSFER | TRANSFER | 10-15-2009 1250 | 10-15-2009 1250 |
| BEN | A-DES | DESIGNATED, AT ASSIGNED FACIL | 05-15-2008 1045 | 10-15-2009 1250 |
| B03 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 05-15-2008 1045 | 05-15-2008 1045 |
| B03 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 05-15-2008 0607 | 05-15-2008 1045 |
| ATL | HLD REMOVE | HOLDOVER REMOVED | 05-15-2008 0607 | 05-15-2008 0607 |
| ATL | A-DES | DESIGNATED, AT ASSIGNED FACIL | 06-19-2006 1707 | 05-15-2008 0607 |
| B09 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 06-19-2006 1707 | 06-19-2006 1707 |
| B09 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 06-19-2006 0400 | 06-19-2006 1707 |
| PEM | TRANSFER | TRANSFER | 06-19-2006 0400 | 06-19-2006 0400 |
| PEM | A-DES | DESIGNATED, AT ASSIGNED FACIL | 12-16-2003 1642 | 06-19-2006 0400 |
| 2-D | RELEASE | RELEASED FROM IN-TRANSIT FACL | 12-16-2003 1642 | 12-16-2003 1642 |
| 2-D | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 12-02-2003 1109 | 12-16-2003 1642 |
| CRL | ADMIN REL | ADMINISTRATIVE RELEASE | 12-02-2003 1109 | 12-02-2003 1109 |

```
  G0002       MORE PAGES TO FOLLOW . . .
```

```
 REG NO..: 24449-056 NAME....: LANDIS, CARLTON THEODORE
 CATEGORY: ARS      FUNCTION: PRT        FORMAT:
```

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP | DATE/TIME |
|-----|-----------|-------------|-----------------|------|-----------|
| CRL | A-ADMIN | ADMINISTRATIVE ADMISSION | 12-02-2003 1100 | 12-02-2003 | 1109 |

G0000        TRANSACTION SUCCESSFULLY COMPLETED