## IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| CARLTON THEODORE LANDIS | ) | |
| (#24449-056), | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. 20 CV 50168 |
| | ) | |
| v. | ) | |
| | ) | HON. IAIN D. JOHNSTON |
| WARDEN ANDREW CIOLLI,[1] ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

### MEMORANDUM OPINION AND ORDER

Undoubtably, many factual disputes exist in the record on the motion currently before the Court. The Court need not—indeed, cannot— resolve those disputes now. But there are no genuine issues of material fact that this action was filed before the administrative remedies were exhausted.

\*    \*    \*

Plaintiff Carlton Theodore Landis, a federal prisoner, has brought this *pro se* civil lawsuit seeking mandamus and injunctive relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* Landis claims that correctional officials at the U.S. Penitentiary in Thomson, Illinois, have wrongfully denied him placement in protective custody despite hostilities from other prisoners, who allegedly know him to be an informant. This matter is before the Court for ruling on Defendants' motion for summary judgment based on Landis's purported failure to exhaust administrative remedies before filing suit. For the reasons set forth in this opinion, the motion is granted.

---

1 The warden of AUSP Thomson is now Andrew Ciolli. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant to this suit.

## I.     Legal Standard

### Rule 56 of the Federal Rules of Civil Procedure

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.  v. Catrett*, 477 U.S. 317, 322 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 830 (7th Cir. 2019).  In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457 (7th Cir. 2020) (citations omitted).  At the summary judgment stage, it is not the role of the courts "to evaluate the weight of the evidence, to judge the credibility of witnesses or to determine the ultimate truth of the matter, but simply to determine whether there exists a genuine issue of triable fact."  *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 818-19 (7th Cir. 2015) (citation omitted).

## II.     Factual Background

### A.  Parties

Plaintiff Carlton Landis is a federal prisoner, incarcerated at the United States Penitentiary located in Thomson, Illinois, at all times relevant.

Defendant Andrew Ciolli is USP-Thomson's warden.  Defendant Jacob Doerer is the associate warden at Thomson.  Defendant Kirby is a Thomson correctional officer who holds the rank of captain.

### B.  Undisputed Material Facts

Landis transferred to USP-Thomson in or around August of 2019.  Either immediately or at some point after Landis' arrival at Thomson, prison officials placed him in the facility's Special

Management Unit ("SMU"). In March 2020, Landis moved from one area of the SMU into its G-Unit (or "Golf Unit") subdivision.

On or about April 20, 2020, Landis reported to the prison staff that he was a "verified informant." Landis revealed to each of the named Defendants that he was assisting law enforcement agents in connection with a criminal investigation of some kind. Landis further informed Defendants that he had been placed into a cell with a cellmate who was somehow aware that he was cooperating with authorities. Landis claimed that his cellmate had assaulted him because of this fact. Landis indicated that other prisoners in his cellblock also knew he was an informant. Landis told Defendants that because of this, he faced constant threats, harassment, and attacks from his cellmate and other fellow prisoners. So, Landis asked to be placed in protective custody rather than remaining in general population.

According to Landis, Defendants promised to "deal with the problem." (R. 8, Amend. Comp., at ¶ 4.) However, at least as of May 2020, when Landis submitted his amended complaint, Defendants had not moved him to protective custody. Nor, to Landis's knowledge, had they taken any other measures to ensure his safety.

Every inmate who is committed or transferred to a federal Bureau of Prisons facility participates in an admission and orientation program (A&O Program) unless the inmate is on some kind of status that precludes attendance in the program. Inmates participate in the A&O program every time they arrive at a new facility.

The A&O program consists of two components, an institution component and a unit component. The institutional component provides inmates with general information regarding institution-wide regulations. The unit component provides unit-specific information from the team staff in the inmate's assigned unit. One required portion of the institutional component is to

3

describe the BOP's administrative remedy program. Similarly, a required portion of the unit component reviews the BOP's administrative remedy program.

Inmates typically cannot be given a work assignment at an institution until they have completed the A&O program. Staff at some facilities will note in the so-called SENTRY system, which tracks job assignments, when an inmate has completed the A&O program. SENTRY reflects that Landis completed the A&O program at USP-Petersburg Medium, Atlanta Penitentiary, FCI Bennettsville, Pollock Medium, Marion Penitentiary, Yazoo Penitentiary, and Allenwood Penitentiary.

Inmates at USP-Thomson, who are assigned to the SMU, do not attend large-group admission and orientation sessions. Instead, inmates on SMU status are supposed to receive the printed SMU handbook and an MP3 player that contains an audio version of the SMU handbook. Thomson's A&O handbook details how the BOP's administrative remedy process works, as does the handbook for the SMU. Landis signed an intake screening form acknowledging that he had been provided with a copy of Thomson's A&O handbook, but he now states that he never received the handbook and that he did not understand what he was signing. This self-created factual dispute does not prevent summary judgment. Landis concedes that he did receive an MP3 player during the intake process in August 2019. Additional undisputed facts discussed later also establish that Landis' new assertion that he did not receive the handbook does not prevent summary judgment.

The BOP's administrative remedy process is generally the same at every federal facility. There may be some local variation in terms of how to obtain or submit a form, or how to conduct an initial informal attempt at resolution. But the formal process is identical at every BOP facility in terms of rules, time limits, and forms.

4

Inmates must first attempt to resolve a concern informally before filing a formal grievance. If an inmate submits an informal resolution form (BP-8) to a staff member and does not get a response, that inmate is still required to file a formal grievance (BP-9) with the warden within 20 days of the incident giving rise to the complaint.

All formal inmate requests and appeals filed under the administrative remedy process are logged into the BOP's computer system and assigned a remedy identification number.

Landis is and was familiar with the administrative remedy process. Landis has submitted some 190 administrative remedy requests and/or appeals since being sentenced to BOP custody.

### C. Disputed Material Facts

The Administrative Remedy Clerk at Thomson has filed a declaration attesting that the administrative remedy process "was and continues to be available to inmate Landis." (R. 94-1, ECF pg. 208,[2] Defendants' Exhibit B, Declaration of Bree Reicks, ¶ 7.) And one of Landis' prison counselors (Zumkehr) has similarly vouched that he provides inmates with administrative remedy forms and other forms seeking prison action upon request after determining which form is most appropriate. Zumkehr explains that, in addition to the informal request forms (BP-8s), and formal request forms (BP-9s), there is an oft-used form titled "Inmate Request to Staff Member" (form BP-S148, commonly called a "Cop-Out"). Zumkehr makes clear that under BOP rules, Cop-Out forms are not part of the administrative exhaustion process and do not qualify as the required attempt at seeking informal resolution before submitting a formal request. Zumkehr further maintains that when a grievance is denied at one level, it is his practice to automatically provide the inmate with the necessary form for appealing to the next level of review.

---

[2] Because Defendants' Exhibits A-D and attachments consist of 252 pages, the Court includes the specific ECF page number for the reader's ease of access.

According to Defendants, Landis failed to submit any grievance at all pertaining to the matters alleged in his amended complaint—neither an informal BP-8 request nor a formal BP-9 request, as required to satisfy the administrative exhaustion process. More specifically, Defendants contend that Landis never submitted any administrative remedy complaints or requests relating to (1) an alleged assault committed by his cellmate, (2) threats, harassment, and attacks from other inmates, or (3) a denial of his request for protective custody.

In contrast, Landis asserts that the administrative process is not, as a practical matter, available to him. He claims that grievance forms have not been accessible to him since April 2020 because his unit team has provided him only with two informal grievance forms (and no formal grievance forms) since he has been in the SMU's G-Unit at USP-Thomson.

Landis relates that he was left with no choice but to submit Cop-Outs as a last resort in the absence of other BOP forms. He further states that he never expected his Cop-Outs to be treated as administrative remedy requests. The parties differ as to whether Defendants would have entertained requests made in Cop-Out forms as an alternative to the formal administrative exhaustion process.

Landis declares that he did, in any case, complete and submit the two informal grievances to Counselor Zumkehr regarding the matters at issue in this lawsuit. He says that he received no response to either request for informal resolution. The Court is required to accept these assertions, as questionable as they are.

Assuming that Landis did submit a BP-8 informal grievance (or *two* grievances) that went unanswered, the parties also dispute whether Landis could have filed a formal grievance without first receiving a written response to his informal grievance(s). Landis argues that if an inmate does not receive a response to his informal grievance, then he is effectively precluded from pursuing a

formal grievance. He insists that, in his experience, without a written response to the informal grievance, correctional officials invariably reject the formal grievance and instruct the inmate to file an informal grievance first. Defendants deny that contention. This factual dispute does not prevent summary judgment. As shown later, assuming Landis submitted an informal grievance but could not file a formal grievance, the time from the assumed filing of the informal grievance to the filing of this action show that this action was filed prematurely.

Landis further maintains that Zumkehr prevented him from filing a formal request for an administrative remedy, irrespective of its viability. Landis claims that Zumkehr has never once given him a formal grievance form despite requests to do so. Zumkehr denies that he ever refused such a request. Zumkehr repudiates Landis' claims that he prevented Landis from pursuing an administrative remedy request at the institutional level, or to appeal to the BOP's Central and Regional Offices. Again, this factual dispute is insufficient to prevent summary judgment.

In response to Defendants' motion for summary judgment, Landis seemed to suggest that he has never been able to file a single formal grievance since moving to Thomson's G-Unit at the end of March 2020. Zumkehr has provided documentation demonstrating that such a stance is inconsistent with prison records. According to Zumkehr's declaration and accompanying SENTRY report, Landis filed approximately 16 formal grievances (BP-9s), 15 regional appeals (BP-10s), and 6 national appeals (BP-11s) at USP-Thomson between September 25, 2019, and July 7, 2020. Zumkehr shows that Landis has submitted at least 5 of those administrative remedy requests or appeals since residing in G-Unit.

In his surreply, Landis explains that he intended to convey simply that he has been unable to procure forms from the G-Unit prison staff. He qualifies his earlier representation to clarify that he was able to complete the administrative exhaustion process as to certain concerns unrelated to

the present lawsuit only because he already had forms in his possession from his prior housing unit and/or obtained additional forms from fellow inmates in G-Unit.

## III.    Analysis

Although the parties disagree as to many of the facts concerning the "availability" of the administrative exhaustion process and Landis's efforts to pursue those administrative procedures, none of those disputed facts are outcome-determinative. The record makes clear that Landis filed suit without giving Defendants a meaningful opportunity to investigate and resolve his safety concerns and respond to any informal grievance.

### A.  PLRA's General Exhaustion Requirement

The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1856 (2016) (same); *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020) (same). The PLRA's exhaustion requirement applies to "all actions brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citations and internal punctuation omitted) (holding that *Bivens* plaintiffs must exhaust administrative remedies before bringing suit); *see also Fredrickson v. Heisner*, No. 18 CV 3582, 2019 WL 952126, at *3 (N.D. Ill. Feb. 27, 2019) (same, citing *Porter*).

The courts in this circuit have recognized that the exhaustion requirement applies to prisoner claims under the Administrative Procedure Act. [3]  *See, e.g., Richmond v. Scibana*, 387

---

3 There is a relative paucity of cases in this circuit analyzing administrative exhaustion in the context of federal prisoners' conditions and APA claims. This opinion thus cites multiple decisions addressing

F.3d 602, 607 (7th Cir. 2004); *Robinson v. Sherrod*, 631 F.3d 839, 843 (7th Cir. 2011) (petitioner challenging the adequacy of his medical care who mistakenly sought relief under habeas corpus law had no ripe *Bivens* claims in the absence of exhaustion; furthermore, his failure to exhaust "would have barred any alternative form of relief as well—whether under section 2241 of the Judicial Code, the Federal Tort Claims Act, or the Administrative Procedure Act."); *Sebolt v. Fed. Bureau of Prisons*, No. 17 CV 0105, 2018 WL 3241297, at *1 (S.D. Ind. July 3, 2018) (the exhaustion requirement applies to APA suits).

"The Supreme Court has emphasized that prisoners must take advantage of all procedures that are actually available." *Williams*, 957 F.3d at 831 (citing *Ross*, 136 S. Ct. at 1854-55). The primary objective of requiring prisoners to exhaust administrative remedies "is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (emphasis in original) (citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006); *Schillinger v. Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020)); *see also Jones v. Carter*, No. 13 CV 7242, 2015 WL 4251291, at *3 (N.D. Ill. July 14, 2015) ("The purpose of the exhaustion requirement is to keep prisoner grievances in prisons and out of the courts….").

To satisfy the PLRA's exhaustion requirement, a "prisoner must take all the steps the prison offers … and do so properly." *Williams*, 957 F.3d at 833 (citing *Ngo,* 548 U.S. at 90; *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The courts in this circuit take a "strict compliance approach" to exhaustion." *Cross v. Aguinaldo*, No. 18 CV 0972, 2020 WL 7042899, at *1 (N.D. Ill. Nov. 30, 2020) (citing *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006)). An inmate must comply with the rules established

---

exhaustion issues in the framework of the far more common prisoner civil rights actions under 42 U.S.C. § 1983. The distinction is without a difference.

by the government with respect to the form, timeliness, and content of grievances. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Pozo*, 286 F.3d at 1023-25; *Torres v. Pfister*, No. 15 CV 11547, 2017 WL 3386120, at *4 (N.D. Ill. Aug. 7, 2017).

Administrative remedies have not been exhausted unless and until the inmate has given the process an opportunity to work and followed through with administrative appeals. *Worthem v. Boyle*, 404 F. App'x 45, 46 (7th Cir. 2010) (unpublished opinion) (citing *Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004); *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002)). Prisoners who fail to properly avail themselves of the grievance process may lose the right to sue. *Fleming v. Illinois Dep't of Corr.*, No. 16 CV 50074, 2017 WL 1833207, at *3 (N.D. Ill. May 8, 2017); *see also Torres*, 2017 WL 3386120, at *4 (same).

Correctional officials bear the burden of pleading and proving failure to exhaust. *See, e.g., Jones* v. *Bock*, 549 U.S. 199, 212 (2007) (inmates need not specifically plead exhaustion); *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) ("It was not [the inmate]'s burden to establish that the grievance process was unavailable; it was the officers' burden to show that [the inmate] did not exhaust available remedies"); *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) ("it is important to remember that exhaustion is an affirmative defense, and consequently the burden of proof is on the prison officials"); *Malcom v. Ryan*, No. 18 CV 7941, 2020 WL 4273993, at *4 (N.D. Ill. July 24, 2020) (correctional officials must plead and prove non-exhaustion) (citations omitted).

### B. Federal Bureau of Prisons Exhaustion Process

The Bureau of Prisons has an established administrative remedy process whereby federal inmates can seek formal review of any complaint regarding any aspect of their imprisonment. *See* 28 C.F.R. §§ 542.10-542.19. An inmate must first attempt informal resolution of his or her

complaint by presenting the issue informally to staff (via the BP-8 form). 28 C.F.R. § 542.13(a). The prison employee to whom the BP-8 is directed must then attempt to resolve the issue. *Id.*

If the complaint cannot be resolved informally, the inmate must submit a formal complaint to the warden, on a designated BP-9 form. 28 C.F.R. §§ 542.13-542.14. The inmate must submit the BP-9 within twenty days of the event that triggered the inmate's complaint. 28 C.F.R. § 542.14(a). The warden has 20 days to respond to the formal complaint. 28 C.F.R. § 542.18.

If the inmate is not satisfied with the warden's response, the inmate must appeal to the appropriate regional director (using the BP-10 form), within twenty calendar days of the date of the warden's decision. 28 C.F.R. § 542.15(a). The regional director has 30 days to respond to the appeal. 28 C.F.R. § 542.18.

If the inmate is dissatisfied with the response from the regional director, the inmate must file a national appeal (BP-11) with the Office of General Counsel in Washington, D.C. within 30 calendar days of the date the regional director signed the response. 28 C.F.R. § 542.15(a). Appeal to the General Counsel's Office is the final administrative appeal within the BOP. *Id.*

Prison employees record all formal inmate requests and appeals submitted pursuant to the administrative remedy process. The requests are logged into the BOP's computer system and assigned a remedy identification number.

### C. No Material Question as to Whether Plaintiff Exhausted Before Bringing Suit

The record establishes that Landis filed suit without giving the administrative grievance process a legitimate opportunity to accomplish its purpose. As noted earlier, the Court is aware that there are factual challenges concerning (1) whether the exhaustion process was "available" to Landis in the G-Unit at USP-Thomson at the time of the events giving rise to this lawsuit; and (2) if so, whether Landis attempted to exhaust those available administrative procedures with regard

to his claimed need for protection before he commenced suit. But the Court need not reach those factual disputes. Accepting all of Landis's facts as true, he filed this action immediately after filing an informal administrative request, without giving prison officials an opportunity to respond.

Landis cannot reasonably argue that he did not know how to pursue the grievance process at USP-Thomson. *See Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) ("[W]e are not holding that a prisoner's subjective unawareness of a grievance procedure excuses his non-compliance…. The PLRA does not excuse a failure to exhaust based on a prisoner's ignorance of administrative remedies, so long as the prison has taken reasonable steps to inform the inmates about the required procedures."); *see also Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014) (court construes only reasonable inferences in favor of non-movant, not every conceivable inference); *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (inferences supported only by conjecture and speculation are not reasonable).Having participated in many previous A&O program sessions at other penitentiaries during his two terms of federal imprisonment, it strikes the Court as irrelevant whether Landis attended another A&O program session upon arrival at Thomson. Furthermore, it is immaterial whether he received a hard copy of Thomson's orientation handbook, as he acknowledges that he received an MP3 player that contained an audio version of the A&O handbook. More importantly, Landis had already filed nearly 200 requests for administrative remedies before his transfer to Thomson; indeed, he resumed filing grievances shortly after his arrival there. Landis' familiarity with the administrative remedy process is not disputed.

Landis correctly points out that he had to exhaust only available steps of the grievance process. "The exhaustion requirement … 'hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable

ones.'" *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting *Ross*, 136 S. Ct. at 1858). For instance, "[a]n administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance and, in so doing, prevents that prisoner from exhausting administrative remedies." *Reid*, 962 F.3d at 329 (citing *Dole*, 438 F.3d at 809) (administrative remedies were rendered unavailable where prison officials acknowledged that prisoner deposited his grievance for pick-up, but it was somehow lost).

In *Ross*, *supra*, the Supreme Court offered three examples of situations in which a finding of unavailability might be appropriate: (1) prison officials are "consistently unwilling to provide any relief to aggrieved inmates," thereby making the process a dead-end; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" and (3) prison officials actively thwart inmates' attempts to take advantage of the procedure. *Ross*, 136 S. Ct. at 1853-54; *see also Ramirez*, *supra*, 906 F.3d at 538 (same, citing *Ross*); *DeBenedetto v. Salas*, No. 13 CV 7604, 2020 WL 2836764, at *3-4 (N.D. Ill. June 1, 2020) (same).

The U.S. Court of Appeals for the Seventh Circuit has emphasized that "these were only examples [in *Ross*], not a closed list." *Ramirez*, 906 F.3d at 538 (concluding that the grievance process was unavailable where corrections officials failed to explain it to native Spanish-speaker they knew to be unable to read or speak English); *cf.*, *Reid*, 962 F.3d at 331 (prison administration's ambiguous and conflicting responses to inmate's grievances "so obscured the administrative process that it became unknowable and, thus, unavailable" to the prisoner-plaintiff); *Jones v. Nelson*, 729 F. App'x 467, 469 (7th Cir. 2018) (unpublished opinion) ("A grievance process can be rendered unavailable to an inmate on account of physical incapacitation…."); *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (grievance procedures were "unavailable" for purposes of

the PLRA where inmate was shackled to a hospital bed and prison employees failed to inform him of his right to file a grievance).

In the case currently before the Court, Landis admits that he was able to submit two requests for informal resolution to Zumkehr. Because he filed suit immediately thereafter, this suit is premature. Landis did not give prison officials the opportunity to address his concerns through the grievance process before bringing this action.

"By its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable." *Chambers*, *supra*, 956 F.3d at 984 (emphasis in original) (quoting *Ford*, 362 F.3d at 398-400). "A premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting his administrative remedies." *Chambers*, 956 F.3d at 984 (citing *Ford*, 362 F.3d at 401); *see also Golden v. Stutleen*, 535 F. App'x 526, 527 (7th Cir. 2013) (unpublished opinion) ("A claim filed before the full administrative process is finished must be dismissed without prejudice.") (citations omitted). A prisoner "can sue only after the entire process is finished…." *Golden*, 535 F. App'x at 527 (citations omitted).

Finalizing the grievance process while suit is pending does not satisfy the mandatory exhaustion prerequisite. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed." *Green v. Furlow*, No. 18-CV-05359, 2020 WL 2735377, at *3 (N.D. Ill. May 26, 2020) (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) ("a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.")).

14

Here, Landis' own timeline shows that he made no good-faith effort to exhaust grievance procedures before commencing this action. In his amended complaint, Landis indicates that he relayed his concerns about his safety to Defendants "on or about April 20, 2020." [R. 8, Amended Complaint, ¶ 1.] In his summary judgment materials, Landis further testifies that "[i]n April of 2020" he turned in two requests for informal resolution to his prison counselor, Zumkehr, but that he received no response. [R. 37-1, Declaration of Carlton Theodore Landis, ¶ 5.] Landis provides no exact dates, but he presumably did so on or after his April 20 colloquy with Defendants.

Landis' trust fund officer certified the account statement portion of his IFP application on April 26, 2020, 6 days or so after Landis met with Defendants. Landis dated and signed the original complaint that launched this lawsuit on April 28, 2020. The Clerk of Court received Landis' initiating documents in this matter on April 29, 2020, the very next day. In other words, Landis gave correctional officials—at most—8 days to investigate and respond to his informal remedy request before he instigated this action. Therefore, any questions concerning Landis' ability and efforts to take the intervening step[s] of attempting to pursue the formal administrative remedy process are not material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit" preclude summary judgment.).

Landis cannot save this lawsuit simply by showing exhaustion of his claims by the time he filed his amended complaint. In *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) and *Cannon v. Washington*, 418 F.3d 714, 720 (7th Cir. 2005), the Seventh Circuit reversed dismissal on the basis of non-exhaustion when the plaintiffs asserted new claims against new defendants after exhausting their administrative remedies between the filing of his original and amended complaints. The court of appeals reasoned in *Barnes* that "[t]he filing of the amended complaint was the functional equivalent of filing a new complaint" under the circumstances. 420 F.3d at

15

678.  But the court of appeals recently underscored in *Chambers* that "[t]hose cases addressed amended complaints raising new claims that the plaintiff had exhausted while litigation was ongoing."  956 F.3d at 984.  Here, as in *Chambers*, Landis asserts the same, essential claims against the same Defendants in both his original and amended complaints.  He amended only because he had to choose a single, core claim to pursue under this case number.  *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (citing Fed. R. Civ. P. 18, 20); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Therefore, he had to fully exhaust administrative remedies before filing suit; exhaustion while the suit is pending warrants dismissal.  *Chambers*, 956 F.3d at 984.

The Court additionally stresses that Landis' professed lack of confidence in the grievance process at USP-Thomson, without more, would not exempt him from using the process if he were able to do so.  "[E]xhaustion is mandatory and not waivable."  *Lewis v. Dart*, No. 17 CV 4181, 2018 WL 3630158, at *3 (N.D. Ill. July 31, 2018).  "[P]erceived futility is no excuse when procedural avenues remain available to a grievant; he must make the attempt."  *Edens v. O'Brien*, No. 14 CV 50056, 2016 WL 4191756, at *9 (N.D. Ill. Aug. 9, 2016) (citing *Thornton v. Snyder*, 428 F.3d 690, 694 ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement."); *Flournoy v. Schomig*, 152 F. App'x 535, 537 (7th Cir. 2005) ("[A]lthough [plaintiff] argues generally that waiting for an answer to the inter-facility grievance was futile, he had to give the system a chance."); *Perez*, 182 F.3d at 536 ("As for the possibility that administrative remedies could be declared futile *ex ante*, without ever being tried … [n]o one can know whether administrative requests will be futile; the only way to find out is to try.").

Even assuming that Landis somehow had good reason to suspect that attempting to avail himself of the formal administrative remedy process would be pointless, controlling precedent

teaches that his personal conviction did not exempt him from at least waiting to see the outcome of his informal grievance before resorting to litigation.

Furthermore, insofar as Landis argues that prison officials frustrated his efforts to pursue administrative exhaustion, his own chronology defeats his claim. Landis contends that his ability to avail himself of grievance procedures "abruptly end[ed] on April 13, 2020," ostensibly when he was relocated to the G-Unit in Thomson's SMU. (R. 37-1, Landis Decl., ¶ 4). But even if it turned out to be a reality that USP-Thomson's grievance system became closed to Landis on April 13, 2020, it is difficult to conceive how he could have already arrived at that conclusion with any certainty just a week or so later, when he met with Defendants, and then suddenly filed, per his own sworn statements, informal grievances.

For purposes of this motion, the Court assumes (without finding) that Landis submitted two informal grievances on or after April 20, 2020. Prison rules appear to have no concrete deadlines for a counselor to respond to a request for informal resolution. *See* 28 C.F.R. § 542.13. But Landis acted overly precipitously in filing suit just a few days later.

In his surreply brief, Landis says that he actually filed an informal grievance "on or about the end of March, 2020," before he ever spoke to Defendants about his apprehensions about his safety. [R. 57, Plaintiff's Sur-reply to Defendants' Reply Memorandum," p. 3, ¶ 14.] But Landis cannot circumvent the purpose of summary judgment and create sham issues of fact by contradicting his prior sworn testimony. *Cesario v. Jewel Food Stores, Inc.*, No. 17 CV 0319,

---

4 Landis cites paragraphs 36-38 of his amended complaint [R. 11] for that proposition. The "Statement of Claim" section of the amended complaint consists of only 6 paragraphs. (*Id.*, p. 4.) But of course Landis was not required to plead exhaustion in his complaint or amended complaint. And while it is well established that statements in a motion or a brief are not evidence and carry no weight, *see, e.g., Gurley v. Johnson*, No. 14 CV 1009, 2015 WL 4148668, at *1 (N.D. Ill. July 8, 2015) (citations omitted), the Court has taken Landis' factual assertion into account because it concerns a matter about which he could properly testify. *See* Fed. R. Evid. 602.

2020 WL 996498, at *2 (N.D. Ill. Mar. 2, 2020) (citing *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (collecting cases)).  Landis already submitted a declaration giving April 2020 as the date of submission of his BP-8 requests.

In any event, that alternative sequence of events would not clear up why Landis thought Defendants were amenable to suit within a week of his expressing his concerns to them.  If Landis were unable to get past Zumkehr, as he insists, then Defendants would have had no way of knowing about his worries for his safety until he alerted them on April 20, 2020.  He still waited only a week or so after speaking to them before he brought suit.

In sum, even if Landis submitted an informal request (or requests) for an administrative remedy after voicing his concerns to Defendants, he nearly simultaneously filed suit without giving them time to consider and respond to his request(s) for placement in protective custody.  Therefore, Landis filed suit prematurely, without regard to whether the next step (the formal grievance process) was available to him in Thomson's G-Unit.  Because dismissal on the basis of non-exhaustion is appropriate on this basis alone, no *Pavey* hearing is necessary to resolve other contested issues of fact.  *See Pavey v. Conley*, 663 F.3d 899, 905-06 (7th Cir. 2011); *Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015) (the court need hold an evidentiary hearing to settle the question only when exhaustion ("or its lack") is not readily apparent from the record).  Defendants' motion for summary judgment on grounds of non-exhaustion is granted.

As a final concern, the Court imparts a word of caution to Landis about his potential exposure to the imposition of sanctions if he were to be found to have engaged in fraudulent conduct.  Rule 11 of the Federal Rules of Civil Procedure provides that by signing a pleading, a party represents to the Court, in essence, that the factual contentions he makes are true and have evidentiary support or likely will have evidentiary support after further investigation.  Fed. R. Civ.

P. 11(b). "District judges have the inherent authority to impose sanctions—including dismissal— when a litigant engages in conduct that abuses the judicial process." *White v. Williams*, 423 F. App'x 645, 646-47 (7th Cir. 2011) (unpublished). Sanctions may be appropriate when a litigant "intentionally mislead[s] the court in pursuit of an illicit benefit." *Wilson v. Wexford Med. Servs.*, 751 F. App'x 956, 957 (7th Cir. 2019) (unpublished); *see also Martin v. Fowler*, 804 F. App'x 414, 416 (7th Cir. 2020) (same).

The Court has made no credibility determinations in ruling on Defendants' motion for summary judgment. Nevertheless, the Court is compelled to observe that Landis's account progressively evolved in contradictory directions in his successive briefs opposing summary judgment. For example, Landis' timeline, facts relating to his ability to procure forms, and statements concerning his capacity to request an administrative remedy differed in his first brief and his surreply. Landis seemingly modified his narrative directly in response to obstacles to suit Defendants enumerated in their reply brief. These and other discrepancies in the record engender concern that Landis' summary judgment materials may contain falsehoods.

Landis currently has three other lawsuits pending in this district and division. The Court warns Landis that he is subject to sanctions, including monetary penalties and/or referral to the Northern District's Executive Committee to consider filing restrictions if, in the future, the Court finds that he has intentionally made any false representations, whether to improperly defeat summary judgment or for any other illicit benefit. Neither misstatements of fact nor hyperbole have any place in pleadings, motions, or testimony. Landis must be meticulously truthful, forthcoming, and exacting in all statements and submissions to the Court. Before submitting any document to the Clerk of Court in any of his cases, Landis should carefully review the filing to ensure its complete accuracy.

## IV.    Conclusion

For all of the foregoing reasons, Defendants' motion for summary judgment [R. 27] is granted.  Landis plainly filed suit before exhausting administrative remedies.  Accordingly, his claims are dismissed without prejudice to re-filing suit upon completion of any administrative exhaustion procedures that remain available to him.  *Ford*, 362 F.3d at 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice") (emphasis in original).  Although dismissal is without prejudice, Landis has no further recourse in federal court at this time.  This dismissal therefore constitutes a final, appealable order.  *See Maddox*, 655 F.3d 709, 716 (7th Cir. 2011) (explaining that order dismissing section 1983 claim for failure to exhaust administrative remedies is appealable where there are no further remedies that the plaintiff can pursue).  Final judgment will be entered.

If Landis wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).  If Landis appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome.  *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998).  If the appeal should be found to be non-meritorious, the Court of Appeals could assess Plaintiff a "strike" under 28 U.S.C. § 1915(g).  If Landis seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in the district court stating the issues he intends to present on appeal.  *See* Fed. R. App. P. 24(a)(1).

Landis need not bring a motion to reconsider this Court's ruling to preserve his appellate rights.  However, if Landis wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).  Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment.  *See* Fed. R. Civ. P. 59(e).  The time to file a motion pursuant to Rule 59(e) cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).  A timely Rule 59(e) motion

suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).


Date: March 16, 2021          By: _____
                                   Iain D. Johnston
                                   United States District Judge